**The relief described hereinbelow is SO ORDERED.**

**Signed December 19, 2018.**



_____
**Ronald B. King**
**Chief United States Bankruptcy Judge**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| ALL AMERICAN OIL & GAS INCORPORATED, _et al._,[1] | § | Case No. 18-52693-rbk |
| | § | |
| | § | Jointly Administered Under |
| Debtors. | § | Case No. 18-52693-rbk |
| | § | **Re: Docket No. 58** |

**SECOND INTERIM ORDER PURSUANT TO SECTIONS 105, 361, 362, 363, 507 AND 552 OF THE BANKRUPTCY CODE (I) AUTHORIZING THE USE OF CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION, (II) SCHEDULING A FURTHER HEARING PURSUANT TO BANKRUPTCY RULE 4001, AND (III) GRANTING RELATED RELIEF**

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number are: All American Oil & Gas Incorporated (5894); Kern River Holdings Inc. (0508); and Western Power & Steam, Inc. (2088). The location of the Debtors' service address is: 9601 McAllister Freeway, Suite 221, San Antonio, Texas 78216.

1

Upon the motion, dated November 12, 2018 [Docket No. 22], and supplement thereto, dated December 6, 2018 [Docket No. 116] (collectively, the "Motion"),[2] of the debtors and debtors in possession (collectively, the "Debtors") in the above-captioned cases (these "Chapter 11 Cases"), for interim and final orders pursuant to sections 105, 361, 362, 363, 507 and 552 of Title 11 of the United States Code, 11 U.S.C. § 101, et seq. (the "Bankruptcy Code") and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), seeking authorization to:

(a)     use the Cash Collateral (as defined below) of, and to provide adequate protection to, the (i) First Lien Agents and First Lien Lenders (each as defined below) under that certain Amended and Restated Credit Agreement dated as of September 30, 2016, by and among Kern River Holdings Inc. ("KRH"), as Borrower, All American Oil & Gas Incorporated ("AAOG") and Western Power & Steam, Inc. ("WPS"), as Guarantors (pursuant to that certain Amended and Restated Guaranty, dated as of September 30, 2016, in favor of the First Lien Agent (as defined below) (the "First Lien Guaranty")), the Lenders party thereto from time to time (the "First Lien Lenders"); and Kern Cal Oil 7, LLC, as successor Administrative Agent (in such capacity, the "First Lien Administrative Agent") (as amended, modified or supplemented and in effect from time to time, the "First Lien Credit Agreement"), and all of the security, pledge, control, and collateral agreements and documents executed in connection with the First Lien Credit Agreement (the "First Lien Security Documents", and together with the First Lien Credit Agreement, First Lien Guaranty, the First Lien Hedging Contracts, the First Lien Treasury Management Agreements, and all other Loan Documents (as defined in the First Lien Credit Agreement), the "First Lien Loan Documents") in favor of Kern Cal Oil 7, LLC, as successor

---

[2]     Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion or the 2015 Intercreditor Agreement (as defined below).

Collateral Agent (in such capacity, the "First Lien Collateral Agent", and together with the First Lien Administrative Agent, the "First Lien Agent", and together with the First Lien Lenders, First Lien Hedging Counterparties, and First Lien Treasury Counterparties, the "First Lien Secured Parties"); and (ii) Second Lien Agent and Second Lien Lenders (each as defined below) under that certain Second Lien Credit Agreement, dated as of August 31, 2015, by and among KRH, as Borrower; AAOG and WPS, as Guarantors (pursuant to that certain Guaranty dated as of August 31, 2015, in favor of the Second Lien Agent (the "Second Lien Guaranty")), the Lenders party thereto from time to time (the "Second Lien Lenders"), and Kern Cal Oil 7, LLC, as successor Administrative Agent (in such capacity, the "Second Lien Administrative Agent") (as amended, modified or supplemented and in effect from time to time, the "Second Lien Credit Agreement"), and all of the security, pledge, control, and collateral agreements and documents executed in connection with the Second Lien Credit Agreement (collectively, the "Second Lien Security Documents"; together with the Second Lien Credit Agreement, the Second Lien Guaranty, and all other Loan Documents (as defined in the Second Lien Credit Agreement), the "Second Lien Loan Documents"; and collectively with the First Lien Loan Documents, the "Pre-Petition Loan Documents") in favor of Kern Cal Oil 7, LLC, as successor Collateral Agent (in such capacity, the "Second Lien Collateral Agent"; together with the Second Lien Administrative Agent, the "Second Lien Agent"; and collectively with the First Lien Agent, the "Pre-Petition Agents"; the Second Lien Agent and Second Lien Lenders, collectively, the "Second Lien Secured Parties"), on account of any diminution in the value of the First Lien Secured Parties' and Second Lien Secured Parties' interests in the Pre-Petition Collateral (as defined below) resulting from the (x) use of Cash Collateral and (y) the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code;

4826-6496-4995.1
12/19/2018 9:05 AM

(b)      seeking entry of this second interim order (this "Second Interim Order") following the December 13, 2018 hearing (the "Second Hearing") on the Motion pursuant to Bankruptcy Rule 4001;

(c)      requesting that a Further Hearing be scheduled on or before January 7, 2019 (the "Further Hearing"); and

(d)      requesting that notice procedures in respect of the Further Hearing be established by this Court to consider entry of a final order authorizing, among other things, the use of Cash Collateral and grant of adequate protection on a final basis.

The first interim hearing on the Motion having been held by this Court on November 14, 2018, and the Court having entered an order authorizing the Debtors' use of Cash Collateral on an interim basis on the terms set forth therein on November 15, 2018 [Docket No. 58] (the "First Interim Order"); and the Second Hearing having been held by this Court on December 13, 2018; and upon the record made by the Debtors at the Second Hearing, and the Pre-Petition Agents having consented to entry of this Second Interim Order; and it appearing that the interim relief requested in the Motion to be granted pursuant to this Second Interim Order is in the best interests of the Debtors, their estates and creditors; and after due deliberation and consideration and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT**:

A.      **Petition Date**. On November 12, 2018 (the "Petition Date"), the Debtors filed voluntary petitions for relief with this Court under Chapter 11 of the Bankruptcy Code thus commencing these Chapter 11 Cases. The Debtors are continuing in possession of their property, and operating and managing their businesses, as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

4

B.  **Jurisdiction and Venue**. This Court has jurisdiction over the Chapter 11 Cases and the Motion pursuant to 28 U.S.C. §§ 157(b) and 1334. Consideration of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C.  **Notice**. Service of the Motion and the relief requested therein commenced on December 6, 2018 by the Debtors, whether by telecopy, email, overnight courier or hand delivery, on the Master Service List, which constitutes due and sufficient notice thereof and complies with Bankruptcy Rules 2002 and 4001(b)(2).

D.  **First Lien Loan Facility**. (i) As of the Petition Date, there was $80,100,000 in principal, and (ii) as of the Petition Date, there was $1,491,617.75 in accrued and unpaid interest (at the non-default rate), outstanding under the First Lien Loan Documents, plus accrued and unpaid fees and expenses as provided in the First Lien Loan Documents (the foregoing, together with all other Secured Obligations under, and as defined in the First Lien Credit Agreement, the "First Lien Obligations"). Under the First Lien Loan Documents, as security for the First Lien Obligations, the First Lien Collateral Agent, for the benefit of the First Lien Secured Parties, asserts first-priority liens on and security interests in (the "Pre-Petition First Liens") substantially all of the Debtors' respective assets (collectively, the "Pre-Petition Collateral").

E.  **Second Lien Loan Facility**. (i) As of the Petition Date, there was $50,000,000 in principal and (ii) as of the Petition Date, there was $10,956,242.02 in accrued PIK interest and $1,442,568.46 in unpaid interest (each at the non-default rate), outstanding under the Second Lien Loan Documents, plus accrued and unpaid fees and expenses as provided in the Second Lien Loan Documents (the foregoing, together with all other Secured Obligations under,

and as defined in the Second Lien Credit Agreement, the "Second Lien Obligations", and together with the First Lien Obligations, the "Pre-Petition Obligations"). Under the Second Lien Loan Documents, as security for the Second Lien Obligations, the Second Lien Collateral Agent, for the benefit of the Second Lien Secured Parties, asserts second-priority liens on and security interests in substantially all of the Pre-Petition Collateral (the "Pre-Petition Second Liens", and together with the Pre-Petition First Liens, the "Pre-Petition Liens").

F.      **Intercreditor Agreement**. The First Lien Collateral Agent, Second Lien Collateral Agent, and KRH entered into the Intercreditor Agreement, dated as of August 31, 2015 (the "2015 Intercreditor Agreement"). The 2015 Intercreditor Agreement governs the respective rights and priorities of the First Lien Secured Parties and Second Lien Secured Parties thereunder.

G.      **Hedge Intercreditor Agreement**. BP Energy Company, Shell Trading Risk Management, LLC, and KRH, as Swap Counterparties, KRH, as Borrower, and the First Lien Agent entered into the Intercreditor Agreement, dated as of October 6, 2014 (the "2014 Intercreditor Agreement", and together with the 2015 Intercreditor Agreement, the "Intercreditor Agreements"). The 2014 Intercreditor Agreement governs the respective rights and priorities of the First Lien Secured Parties and First Lien Hedging Counterparties thereunder.

H.      **Cash Collateral**.  The First Lien Secured Parties and Second Lien Secured Parties assert that all of the Debtors' cash constitutes Cash Collateral (as defined below) or proceeds of the Pre-Petition Collateral and, therefore, is Cash Collateral of the First Lien Secured Parties and Second Lien Secured Parties. For purposes of this Second Interim Order, the term "Cash Collateral" shall be deemed to include, without limitation, (a) all "Cash

4826-6496-4995.1
12/19/2018 9:05 AM

Collateral" as defined under section 363 of the Bankruptcy Code, (b) all of the Debtors' cash, and (c) all deposits subject to setoff and cash arising from the collection or other conversion to cash of property of the Debtors in which the First Lien Secured Parties or Second Lien Secured Parties assert security interests, liens or mortgages, regardless of (i) whether such security interests, liens, or mortgages existed as of the Petition Date or arose thereafter pursuant to this Second Interim Order, and (ii) whether the property converted to cash existed as of the Petition Date or arose thereafter (collectively, "Cash Collateral").

I.      **Need to Use Cash Collateral**. An immediate and critical need exists for the Debtors to use the Cash Collateral, consistent with the Second Budget (as defined below), for working capital purposes, other general corporate purposes of the Debtors, and the satisfaction of costs and expenses of administering these Chapter 11 Cases. The Debtors' ability to pay employees, maintain business relationships with their vendors, suppliers and customers, and otherwise finance their operations, is essential to the Debtors' continued viability and success of their Chapter 11 Cases.

J.      **Relief Essential; Best Interest**. The Debtors have requested immediate entry of this Second Interim Order pursuant to Bankruptcy Rule 4001(b)(2).  The First Lien Secured Parties and Second Lien Secured Parties have consented to the adequate protection provided herein solely for purposes of this Second Interim Order.  This Court concludes that the authorization granted herein to the Debtors for use of Cash Collateral is necessary to avoid immediate and irreparable harm to the Debtors and their estates and entry of this Second Interim Order is in the best interest of the Debtors' estates and creditors as its implementation will, among other things, allow for the continued operation of the Debtors' existing businesses.

4826-6496-4995.1
12/19/2018 9:05 AM

Based upon the foregoing findings and conclusions, and upon the record made before this Court by the Debtors at the Second Hearing, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      **Motion Granted**. The Motion is granted, subject to the terms and conditions set forth in this Second Interim Order. This Second Interim Order shall constitute findings of fact and conclusions of law, and shall become effective immediately upon its entry by this Court.

2.      **Authorization to Use Cash Collateral**. The Debtors are authorized to use Cash Collateral on the terms and conditions set forth in this Second Interim Order from the date herof through the earliest to occur of (i) the date of entry of a further interim or final order authorizing the Debtors' continued use of Cash Collateral (a "Further Order"), (ii) January 7, 2019, (iii) the occurrence of an Adequate Protection Payment Default (in accordance with paragraph 5(c) below, but subject to reinstatement in accordance with the terms of paragraph 5(c)), and (iv) the occurrence of the Termination Date (as defined below) (such period, the "Second Interim Period"), in the amounts set forth in the budget attached hereto as **Exhibit 1** (the "Second Budget").

3.      **Budget**.

      a.      As used in this Second Interim Order, "Budget Test Period" means each week, commencing the week of December 10, 2018, during which the Debtors' compliance with the Second Budget shall be tested in accordance with this Second Interim Order. Compliance with the Second Budget shall be tested on a cumulative basis. During each Budget Test Period, the Debtors will not permit (i)(A) the actual aggregate amount of

4826-6496-4995.1
12/19/2018 9:05 AM

Net Receipts (as set forth on the Second Budget) collected to be less than 90% of the aggregate budgeted amount for such Budget Test Period, the "Net Receipt Permitted Deviation"); provided, however, that the First Lien Agent may authorize the Debtor in writing to exceed the Net Receipt Permitted Deviation for any Budget Test Period; or (ii)(A) the actual aggregate amount of Total Disbursements (as set forth on the Second Budget) to be more than 110% of the aggregate budgeted amount of Total Disbursements for such Budget Test Period, or (B) in the case of each line item comprising Total Disbursements, the actual amount of such expenditures to be more than 115% of the budgeted amount for such line item during such Budget Test Period (the deviations permitted by (ii)(A) and (B), together, the "Disbursements Permitted Deviation", and together with the Net Receipt Permitted Deviation, "Permitted Deviations"); provided, however, that the First Lien Agent may authorize the Debtors in writing to exceed the Disbursements Permitted Deviation for any Budget Test Period. Beginning on Monday, December 17, 2018, and on each Monday thereafter, the Debtors shall deliver a budget compliance certificate to the First Lien Agent comparing the actual and budgeted receipts and disbursements for each line item contained in the Interim Budget for the Budget Test Period ending on the immediately preceding Friday, together with a reasonably detailed written explanation of all deviations from the budgeted amounts. Any failure by the Debtors to comply with their obligations under this Paragraph 3(a) (taking into

4826-6496-4995.1
12/19/2018 9:05 AM

account Permitted Deviations) shall constitute a "Budget Default" for purposes of this Second Interim Order.

b.        Except as expressly set forth herein, nothing in the Second Budget or this Second Interim Order shall be deemed or construed as (i) a finding or admission as to the validity of any claim relating to a budgeted amount, (ii) an agreement or promise by the Debtors or any party in interest to pay any such budgeted claim, or (iii) a waiver of the rights of the Debtors or any party in interest to contest any such claim.  The Second Budget may be amended or modified in writing from time to time with the prior written consent of the First Lien Agent or upon entry of an order of this Court authorizing the same.

4.        **Cash Management**. The cash management systems required by the Pre-Petition Loan Documents shall remain in place during the Chapter 11 Cases in accordance with any orders entered by the Court in these Chapter 11 Cases with respect to such systems.

5.        **Adequate Protection**. Subject to the terms and conditions set forth in this Second Interim Order, the First Lien Collateral Agent, for the benefit of the First Lien Secured Parties, and Second Lien Collateral Agent, for the benefit of the Second Lien Secured Parties, are granted the following adequate protection, only to the extent of any diminution in the value of the First Lien Secured Parties' and Second Lien Secured Parties' interests in the Pre-Petition Collateral, including, without limitation, Cash Collateral, from the Petition Date resulting from (a) the use of Cash Collateral and (b) the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code:

4826-6496-4995.1
12/19/2018 9:05 AM

a.    *Replacement Liens*. The First Lien Collateral Agent, for the benefit of the First Lien Secured Parties, and the Second Lien Collateral Agent, for the benefit of the Second Lien Secured Parties, were granted under the First Interim Order and are hereby granted (effective upon the date of entry of the First Interim Order, without the necessity of the Debtors or the First Lien Collateral Agent or Second Lien Collateral Agent to execute mortgages, deeds of trust, security agreements, pledge agreements, control agreements, financing statements or otherwise), valid and perfected, security interests in, and liens upon all present and after-acquired property of the Debtors of any nature whatsoever, including, without limitation, all cash contained in any account maintained or controlled by the Debtors, the proceeds of all causes of action, excluding all claims or causes of action, or proceeds thereof, pursuant to sections 502(d), 544, 545, 547, 548, 549, 550, 551, 553(b) or 724(a) of the Bankruptcy Code or applicable non-bankruptcy law, whether pursuant to applicable federal, state or local law, only to the extent of the priority, enforceability, unavoidability and validity applicable to the First Lien Secured Parties' security interests and liens in the Pre-Petition Collateral and the Second Lien Secured Parties' security interests and liens in the Pre-Petition Collateral as of the Petition Date (collectively, the "Replacement Liens"); provided, however, that the Replacement Liens granted to the Second Lien Collateral, for the benefit of the Second Lien Secured Parties, shall be junior and subordinate in all respects to the Pre-

11

Petition First Liens and the Replacement Liens granted to the First Lien Collateral Agent, for the benefit of the First Lien Secured Parties, in accordance with the provisions of the Intercreditor Agreements; and provided further, that the Replacement Liens shall be subject and subordinate to any valid, perfected and enforceable pre-Petition Date liens that had priority over the liens of the First Lien Secured Parties and Second Lien Secured Parties to the extent expressly permitted under the First Lien Loan Documents and Second Lien Loan Documents, respectively, or pursuant to applicable law (the "Permitted Prior Liens");

b.  *Superpriority Claims*. The First Lien Secured Parties and Second Lien Secured Parties were granted under the First Interim Order and are hereby granted allowed superpriority claims pursuant to section 507(b) Bankruptcy Code (the "Superpriority Claims"), with priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code other than the Adequate Protection Payment Claim (as defined below), including, but not limited to, sections 105, 326, 328, 330, 331, 503(b), 507(a), 507(b), 1113 and 1114 of the Bankruptcy Code and shall at all times be senior to the rights of the Debtors, and any successor trustee or any creditor, in the Chapter 11 Cases or any subsequent cases or proceedings under the Bankruptcy Code, including, but not limited to, under chapter 7 of the Bankruptcy Code; provided, however, that the Superpriority Claims granted to the Second Lien Secured Parties shall be junior and

4826-6496-4995.1
12/19/2018 9:05 AM

subordinate in all respects to the Superpriority Claims granted to the First Lien Secured Parties, in accordance with the provisions of the Intercreditor Agreements; and *provided* *further*, that the Superpriority Claims shall be subject and subordinate to any Permitted Prior Liens and shall only be granted to the extent of the priority, enforceability, unavoidability and validity applicable to the First Lien Secured Parties' security interests and liens in the Pre-Petition Collateral and the Second Lien Secured Parties' security interests and liens in the Pre-Petition Collateral as of the Petition Date. No cost or expense of administration under sections 105, 503(b) and 507(b) of the Bankruptcy Code shall be senior to, or *pari passu* with, the Superpriority Claims of the First Lien Secured Parties or Second Lien Secured Parties;

c. *Adequate Protection Payments*. As further adequate protection during the Second Interim Period, the Debtors shall pay the Pre-Petition Agent $1,894,716 in cash no later than December 21, 2018 (the "Adequate Protection Payment"). The Pre-Petition Agent is hereby granted a superpriority administrative expense claim in respect of the Debtors' obligations to make such payment (the "Adequate Protection Payment Claim"). The Adequate Protection Payment Claim shall have priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including, but not limited to, sections 105, 326, 328, 330, 331, 503(b), 507(a), 507(b), 1113 and 1114 of the Bankruptcy Code and shall at all times be

4826-6496-4995.1
12/19/2018 9:05 AM

senior to the rights of the Debtors, and any successor trustee or any creditor, in the Chapter 11 Cases or any subsequent cases or proceedings under the Bankruptcy Code, including, but not limited to, under chapter 7 of the Bankruptcy Code.  To the extent the Adequate Protection Payment is not timely made in accordance with the foregoing, an "<u>Adequate Protection Payment Default</u>" shall be deemed to have occurred, and as a result of such Adequate Protection Payment Default: (a) the Debtors' authority to use Cash Collateral shall terminate immediately and automatically, without the need for any further action by any party, notwithstanding anything to the contrary in this Second Interim Order; and (b) the Debtors shall not be permitted to make any payments to any party (or seek authority from the Court to make any such payments) unless and until such Adequate Protection Payment Default is cured in accordance with the following sentence.  The Debtors may cure the Adequate Protection Payment Default by making the Adequate Protection Payment, at which time the Debtors' authority to use Cash Collateral shall be reinstated.

d.    *Maintenance of Going Concern Value.* The First Lien Secured Parties and Second Lien Secured Parties are also deemed to be adequately protected by the Debtors' use of Cash Collateral to continue to operate their businesses, and exploit their assets securing the First Lien Obligations and Second Lien Obligations, in the ordinary course.

4826-6496-4995.1
12/19/2018 9:05 AM

e.    *Reporting.*  The Debtors shall deliver to the First Lien Secured Parties and Second Lien Secured Parties: (a) all financial and other reporting and information required by the terms of the First Lien Loan Documents and Second Lien Loan Documents, in accordance with the terms thereof (and, upon the request of the First Lien Secured Parties or Second Lien Secured Parties, the Debtors shall promptly deliver or re-deliver any such reporting and/or information that was required to be delivered under the First Lien Loan Documents or Second Lien Loan Documents prior to the Petition Date); and (b) beginning on November 19, 2018 and on each Monday thereafter, a Microsoft Excel spreadsheet setting forth all cash receipts and cash disbursements by each of the Debtors during the seven-day period ending on the immediately preceding Friday;

f.    *Additional Adequate Protection*. Lastly, notwithstanding any provision of this Second Interim Order to the contrary, the First Lien Secured Parties and Second Lien Secured Parties will have the right during the Second Interim Period to seek additional adequate protection, provided, that any additional adequate protection provided to the Second Lien Lenders must also be provided to the First Lien Lenders on a senior priority basis in accordance with the provisions of the Intercreditor Agreements, and the Debtors and the Official Committee of Unsecured Creditors (the "Committee") will have the right to object to any such requests for additional adequate protection.

15

6.     **Hedging Obligations**. Subject to the terms and conditions set forth in this Second Interim Order, the Debtors are hereby permitted to use Cash Collateral in the amounts set forth in the Initial Budget to continue performing their obligations to the First Lien Hedging Counterparties under the First Lien Hedging Contracts in the ordinary course of business, consistent at all times with the terms of the First Lien Hedging Contracts and subject to the 2015 Intercreditor Agreement.

7.     **Termination**. Anything in this Second Interim Order to the contrary notwithstanding, the Debtors shall be prohibited from using Cash Collateral (a) immediately upon the occurrence of an Adequate Protection Payment Default, in accordance with paragraph 5(c) above (*provided*, that the Debtors' authority to use Cash Collateral shall automatically be reinstated when such Adequate Protection Payment Default is cured in accordance with paragraph 5(c)), and/or (b) two (2) business days after the provision of written notice from the First Lien Agent to counsel to the Debtors, the U.S. Trustee and counsel to the Committee that an Event of Default (as defined below) has occurred and is continuing (the date such written notice is actually received by the above notice parties, the "Termination Date") unless such Event of Default is cured prior to the Termination Date or an order of the Court is entered to the contrary. For purposes of this Second Interim Order, an "Event of Default" shall occur: (a) upon the appointment of a chapter 11 trustee, (b) if the Chapter 11 Cases are converted to cases under chapter 7, (c) upon the occurrence of a Budget Default or any other violation of the terms of this Order, or (d) upon any failure to satisfy a Sale/Refinancing Preparation Milestone (as defined below).

8.     **Limited Modification of Automatic Stay**. The Debtors are authorized and directed to perform all acts that are deemed reasonably necessary by the First Lien Secured

4826-6496-4995.1
12/19/2018 9:05 AM

Parties and Second Lien Secured Parties to effectuate the terms and conditions of this Second Interim Order. The stay of section 362 of the Bankruptcy Code is hereby modified solely to permit the Debtors, First Lien Secured Parties and Second Lien Secured Parties to accomplish the transactions contemplated by this Second Interim Order.

9. **Replacement Liens Senior to Other Liens**. Subject in all respects to Paragraph 5 above and the Intercreditor Agreements, the Replacement Liens granted pursuant to this Second Interim Order shall be prior and senior to all liens and encumbrances of (a) all other secured creditors (other than the First Lien Secured Parties and Second Lien Secured Parties) in and to such property granted, or arising, subsequent to the date of this Second Interim Order (including, without limitation, liens and security interests, if any, granted in favor of any federal, state, municipal or other governmental unit, commission, board or court for any liability of the Debtors other than taxes), (b) any intercompany claim of any Debtor or subsidiary or affiliate of any Debtor, and (c) any security interest or lien that is avoided or otherwise preserved for the benefit of any Debtor's estate pursuant to section 551 of the Bankruptcy Code; provided, however, that the Replacement Liens shall be subordinate to the Permitted Prior Liens. The Replacement Liens granted pursuant to this Second Interim Order shall constitute valid and duly perfected security interests and liens, and none of the First Lien Secured Parties or Second Lien Secured Parties shall be required to file or serve financing statements, notices of lien or similar instruments which otherwise may be required under federal, state or local law in any jurisdiction, or take any action, including taking possession, to validate and perfect such security interests and liens; and the failure by the Debtors to execute any documentation relating to the Replacement Liens shall in no way affect the validity, perfection or priority of such Replacement Liens. Nothing in this Second Interim Order shall, or be deemed to, affect or

17

modify the Intercreditor Agreements or the respective rights and priorities of the First Lien Secured Parties and Second Lien Secured Parties thereunder.

      10.    **Sale/Refinancing Preparation**.

      a.    Immediately upon entry of this Second Interim Order, the Debtors have agreed to and shall take such steps as reasonably necessary to begin preparing for: (a) a sale process for substantially all of their assets that is designed to commence no later than January 15, 2019 and conclude no later than March 15, 2019 (such process, the "Sale Process"); and (b) a process for soliciting offers to refinance all (but not less than all) of the Pre-Petition Obligations (including, without limitation and for the avoidance of doubt, any fees and expenses payable to the First Lien Secured Parties and/or Second Lien Secured Parties under the Pre-Petition Loan Documents) that is designed to commence no later than January 15, 2019 and conclude no later than March 15, 2019 (such process, the "Refinancing Process"). The Debtors have not committed to initiate either a Sale Process or Refinancing Process, nor has the Court ordered that the Debtors do so, but the Debtors and the Pre-Petition Agents have agreed to negotiate concerning these issues at the Mediation (as defined below), and to have the Debtors prepared to initiate such a process promptly, on or before January 15, 2019.

      b.    The Debtors and the Pre-Petition Agent agree, for purposes of the Sale Process, that the Pre-Petition Agent, on behalf of the First Lien Secured Parties and/or Second Lien Secured Parties, shall have the right to credit bid the relevant Pre-Petition Obligations in connection with such Sale Process; *provided, however*, that the Court shall reserve the right (x) to determine whether any such credit bid is subject to any or all of the claims of holders of unsecured claims (including trade claims) against any of the Debtors that are allowed, after notice and a hearing (and an opportunity for the Pre-Petition Agent to object to any such claims

to be allowed); and (y) to the extent the credit bid is subject to any such claims described in the foregoing clause (x), fashion a remedy concerning preservation of such claims and the right of the holders of such claims to recover on such claims; and *provided, further*, that the Pre-Petition Agent reserves the right to object to allowance of such claims and such objections are hereby preserved. Nothing herein shall release or otherwise affect the rights of the Debtors to assert claims or causes of action against the Pre-Petition Agent and the ability of the Court to fashion a remedy concerning preservation of any such potential claims or causes of action that are unresolved as part of the Sale Process or Refinancing Process.

    c.    In connection with the Sale Process and Refinancing Process, the Debtors shall take the following actions by the following dates (each, a "Sale/Refinancing Preparation Milestone"):

    (i)    No later than January 4, 2019, the Debtors shall have (a) prepared and delivered to the Pre-Petition Agent (i) a proposed timeline for the Sale Process and Refinancing Process; (ii) proposed bid procedures for the Sale Process; (iii) drafts of a form non-disclosure agreement and teaser (the "Initial Marketing Documents") and (iv) an outline of a confidential information memorandum to be provided to potential participants (the "CIM", together with the Initial Marketing Documents, the "Marketing Documents"); and (b) provided to the Pre-Petition Agent a proposed table of contents for the Data Room (as defined below). Additionally, no later than January 4, 2018, the Debtors shall have provided PJT Partners ("PJT") with a proposed list of potential bidders in the Sale Process and financing providers in the Refinancing Process (such potential bidders and financing providers, "Potential Participants"), which list shall be provided to PJT on a professional eyes only basis. Finally, by no later than January 4, 2019, the Debtors shall have prepared and presented to PJT a working draft of a CIM, provided that the working draft CIM shared on January 4, 2019 shall be shared solely with PJT.

    (ii)    No later than January 10, 2019, the Debtors shall have (a) provided the Pre-Petition Agent with access to the preliminary Data Room; (b) provided the Pre-Petition Agent with a draft of a proposed CIM; and (c) prepared and delivered to the Pre-Petition Agent a draft motion to approve bidding procedures in connection with the Sale Process, which draft motion will not include as an exhibit a form asset purchase

4826-6496-4995.1
12/19/2018 9:05 AM

agreement to be negotiated with potential participants in the Sale Process (such motion, the "Bid Procedures Documents")].

(iii) No later than January 15, 2019, the Debtors shall have (a) provided final forms of the Marketing Documents and Bid Procedures Documents to the Pre-Petition Agent; and (b) established a data room populated with sufficient information to enable potential participants to conduct diligence on the Debtors, their assets and businesses in connection with the Sale Process and/or Refinancing Process (the "Data Room").

11. **Stay, Modification, Reversal or Vacatur**. Any stay, modification, reversal or vacation of this Second Interim Order shall not affect the validity, enforceability or relative priority of the Pre-Petition Liens (to the extent of the validity, enforceability and relative priority of the Pre-Petition Liens as of the Petition Date) or any lien or obligation of the Debtors to the First Lien Secured Parties or Second Lien Secured Parties incurred pursuant to this Second Interim Order. Notwithstanding any such stay, modification, reversal or vacation, all use of Cash Collateral and all obligations incurred by the Debtors pursuant hereto prior to the effective date of such stay, modification, reversal or vacation, shall be governed in all respects by the original provisions hereof, and the First Lien Secured Parties and Second Lien Secured Parties shall be entitled to all the rights, remedies, privileges and benefits, including without limitation, the Replacement Liens and Superpriority Claims granted hereby.

12. **Reservation of Rights**. Except with respect to the matters expressly governed by this Second Interim Order, entry of this Second Interim Order shall be without prejudice to (i) any and all the rights, remedies, claims, causes of action and defenses which any or all of the Debtors, the Committee, or any other party in interest may have against the First Lien Secured Parties and/or Second Lien Secured Parties or any third parties, and any and all rights, remedies, claims, causes of action and defenses which the First Lien Secured Parties and/or Second Lien Secured Parties may have against such rights, remedies, claims, causes of action and defenses of the Debtors, the Committee, or any other party in interest, (ii) any and all rights of the

Committee, or any other party in interest to challenge or dispute the amount, validity, enforceability, priority or perfection of the First Lien Obligations or Second Lien Obligations, the Pre-Petition Liens, the First Lien Loan Documents or the Second Lien Loan Documents, and any defenses and counterclaims of the First Lien Secured Parties and/or Second Lien Secured Parties in connection therewith, or (iii) any and all rights of the First Lien Secured Parties and/or Second Lien Secured Parties to (i) withhold consent to, and object to, the Debtors' use of Cash Collateral after the Termination Date, for any reason, (ii) request additional adequate protection from the Bankruptcy Court, and/or (iii) assert that default rate interest has been and/or is accruing on the First Lien Obligations and/or Second Lien Obligations. Nothing in this Second Interim Order overrules or affects in any way the objection filed by the Pre-Petition Agent to the Debtors' use of Cash Collateral [Docket No. 120] (the "KCO Objection").

13. **Enforceability; Waiver of Any Applicable Stay**. This Second Interim Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof. Notwithstanding Bankruptcy Rules 6004(h), 6006(d), 7062 or 9014 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Second Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Second Interim Order.

14. **Binding Effect; Successors and Assigns**. The provisions of this Second Interim Order are binding upon all parties in interest in these Chapter 11 Cases, including, without limitation, the First Lien Secured Parties, the Second Lien Secured Parties, any Committee, and the Debtors and the successors and assigns of all of the foregoing (including any estate representative or any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the

4826-6496-4995.1
12/19/2018 9:05 AM

estates of the Debtors), and shall inure to the benefit of the First Lien Secured Parties, Second Lien Secured Parties and the Debtors and the successors and assigns of all of the foregoing; provided, however, that the First Lien Secured Parties and Second Lien Secured Parties shall have no obligation to permit the use of Cash Collateral to any trustee or similar responsible person appointed for the estate of any Debtor.

15.     **No Third-Party Beneficiary**. Except as explicitly set forth herein, no rights are created hereunder for the benefit of any third-party, any creditor or any direct, indirect or incidental beneficiary.

16.     **Headings**. The headings in this Second Interim Order are for purposes of reference only and shall not limit or otherwise affect the meaning of this Second Interim Order.

17.     **Order Governs**. In the event of any inconsistency between the provisions of this Second Interim Order, on the one hand, and the Motion, First Interim Order, First Lien Loan Documents, Second Lien Loan Documents, and/or the Intercreditor Agreements, on the other hand, the provisions of this Second Interim Order shall govern and control.

18.     **Objections**. The Debtors shall, within three (3) business days of entry of this Second Interim Order, mail copies of a notice of the entry of this Second Interim Order, together with a copy of this Second Interim Order, to the parties on the Master Service List. The notice of entry of this Second Interim Order shall state that any party in interest (other than the First Lien Secured Parties and/or Second Lien Secured Parties) objecting to the use of Cash Collateral on a final basis shall file written objections with the United States Bankruptcy Court Clerk for the Western District of Texas no later than December 27, 2018, by 5:00 p.m. Central, which shall be served so that the same are received on or before such date and time by: (a) proposed co-counsel to the Debtors, (i) Hogan Lovells US LLP, 1999 Avenue of the Stars, Suite

1400, Los Angeles, California 90067, Attn: Richard L. Wynne, Bennett L. Spiegel, and Erin N. Brady, and Hogan Lovells US LLP, 875 Third Avenue, New York, New York 10022, Attn.: Christopher R. Bryant and John D. Beck, and (ii) Dykema Gossett PLLC, 112 East Pecan Street, Suite 1800, San Antonio, Texas 78205, Attn.: Deborah D. Williamson, Patrick L. Huffstickler, and Danielle N. Rushing; (b) counsel to the First Lien Agent; (c) counsel to the Second Lien Agent; (d) counsel to the Committee, Brinkman, Portillo Ronk APC, 4333 Park Terrance Drive Suite 205, Westlake, California 91361, Attn.: Daren Brinkman; and (e) the Office of the U.S. Trustee, Office of The United States Trustee, 615 E. Houston Street, Suite 533 San Antonio, TX 78205, Attn: Kevin Epstein.

19.     **Further Hearing**. A Further Hearing to consider entry of a Further Order authorizing the Debtors' continued use of Cash Collateral will be held on January 7, 2019, at 10:30 a.m. prevailing Central time.

20.     **Extension Period Agreements**.  The Debtors and the Pre-Petition Agent agree that:  (a) the Debtors, the First Lien Secured Parties and Second Lien Secured Parties shall participate in a mediation concerning a potential global resolution of the Chapter 11 Cases (the "Mediation"), which Mediation shall be (i) conducted by a mediator that is a former bankruptcy judge, or is otherwise mutually acceptable to the parties, (ii) held on December 19th and 20th, at a location in Los Angeles, California that is mutually agreed by the parties (and may be continued to such later date as may be agreed by the parties at the Mediation), (iii) attended by at least one principal from the Debtors and one principal from the Pre-Petition Agent, and (iv) governed by Appendix L-1001-h of the Local Court Rules of the United States Bankruptcy Court for the Western District of Texas (the "Local Rules") except as otherwise agreed by the parties or ordered by the Court, if the parties cannot agree; (b) prior to the conclusion of the

Mediation, (i) the Debtors shall not file any complaint seeking relief against the Pre-Petition Agent, the First Lien Secured Parties, or the Second Lien Secured Parties, or the respective principals or affiliates of the foregoing, in this Court or any other court, and (ii) the Pre-Petition Agent, First Lien Secured Parties and Second Lien Secured Parties shall not file any motion seeking relief from the automatic stay; (c) prior to January 7, 2019, the Debtors shall not file any chapter 11 plan and neither the Debtors nor the Pre-Petition Agent shall file any motions relating to any potential chapter 11 plan; (d) to the extent that the Pre-Petition Agent's objection to use of Cash Collateral is not resolved in the Mediation, the Debtors and the Pre-Petition Agent shall each be permitted to submit one additional brief to the Court concerning the Debtors' use of Cash Collateral in advance of the Further Hearing, which briefs shall be submitted in accordance with deadlines and page limitations to be agreed by the parties or ordered by the Court, and no other or further briefing shall be submitted by the Debtors or the Pre-Petition Agent; (e) the exhibits and witnesses identified on the exhibit and witness lists filed by the Debtors and the Pre-Petition Agent on December 10, 2018 [Docket Nos. 126 and 127, respectively], and as updated on or before December 12, 2018 (each, an "Exhibit and Witness List") shall be the only witnesses and exhibits relied upon by the Debtors and the Pre-Petition Agent at the Further Hearing and, for the avoidance of doubt, neither the Debtors nor the Pre-Petition Agent shall submit any new expert report concerning valuation of the Debtors' assets that is not already reflected on its Exhibit and Witness List; *provided*, that notwithstanding anything to the contrary herein, the Debtors and the Pre-Petition Agent shall be permitted to submit revised versions of exhibits on their respective Exhibit and Witness Lists to reflect developments occurring between December 13, 2018 and the date of the Further Hearing (inclusive); (f) all objections of the Debtors to the Exhibit and Witness List submitted by the

24

Pre-Petition Agent, and all objections of the Pre-Petition Agent to the Exhibit and Witness List submitted by the Debtors, are hereby preserved by this Second Interim Order; and (g) the Pre-Petition Agent's motion to compel production of the Debtors' valuation report [Docket No. 136] shall be considered by the Court at the Further Hearing. The sole participants in the mediation shall be the First Lien Secured Parties, the Second Lien Secured Parties, the Debtors and their respective counsel and professional advisors.

21. **Mediation Confidentiality**. The Mediation, and any and all confidential information shared between or among the participants and third party neutral(s), shall be governed by the confidentiality provisions set forth in Local Rule L-1001-h(e), which provide:

> Except as otherwise provided herein, a communication relating to the subject matter of any case under Title 11 or adversary proceeding made by a participating in an alternative dispute resolution procedure, whether before or after the institution of formal judicial proceedings, is confidential, is not subject to disclosure, and may not be used as evidence against the participant in any judicial or administrative proceeding.

> (1) Any record made at an alternative dispute resolution procedure is confidential, and the participants or third party neutral(s) facilitating the procedure may not testify, or be required to testify, in any proceedings relating to or arising out of the matter in dispute or be subject to process requiring the disclosure of confidential information or data relating to or arising out of the matter in dispute.

> (2) An oral communication or written material used in or made as part of an alternative dispute resolution procedure is only admissible or discoverable if it is admissible or discoverable independent of the procedure.

> (3) If this section conflicts with other legal requirements for disclosure of communications or materials, the issue of confidentiality may be presented to any Court having jurisdiction of the proceedings to determine, in camera, whether the facts, circumstances and context of the communications or materials sought to be disclosed warrant a protective order of the Court or whether the communications or materials are subject to disclosure.

Notwithstanding the foregoing, the Protective Order entered into by the First Lien Secured Parties and Lien Secured Parties, on the one hand, and the Debtors, on the other

4826-6496-4995.1
12/19/2018 9:05 AM

hand, and approved by the Court shall remain in full force and effect in these Chapter 11 Cases. Additionally, the confidentiality provisions set forth in this Paragraph 21 shall apply to all information any of the First Lien Secured Parties, the Second Lien Secured Parties or the Debtors share with the official committee of unsecured creditors (the "<u>Committee</u>") and the ad hoc equity holder committee (the "<u>Ad Hoc Committee</u>"), notwithstanding that the Committee and Ad Hoc Committee are not participants in the Mediation.

###

4826-6496-4995.1
12/19/2018 9:05 AM

Prepared and submitted by:

**DYKEMA GOSSETT PLLC**
Deborah D. Williamson
State Bar No. 21617500
dwilliamson@dykema.com
Patrick L. Huffstickler
State Bar No. 10199250
phuffstickler@dykema.com
Danielle N. Rushing
State Bar No. 24086961
drushing@dykema.com
112 East Pecan Street, Suite 1800
San Antonio, Texas 78205
(210) 554-5500
(210) 226-8395 (Fax)

– and –

**HOGAN LOVELLS US LLP**
Richard L. Wynne (CA 120349)
*Pro hac vice* admission
richard.wynne@hoganlovells.com
Bennett L. Spiegel (CA 129558)
*Pro hac vice* admission
bennett.spiegel@hoganlovells.com
Erin N. Brady (CA 215038)
*Pro hac vice* admission
erin.brady@hoganlovells.com
1999 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone:(310) 785-4600
Facsimile:(310) 785-4601

– and –

**HOGAN LOVELLS US LLP**
Christopher R. Bryant (NY 3934973)
*Pro hac vice* admission
chris.bryant@hoganlovells.com
John D. Beck (TX 24073898)
*Pro hac vice* admission
john.beck@hoganlovells.com
Sean A. Feener (NY 5605654)
*Pro hac vice* admission
sean.feener@hoganlovells.com
875 Third Avenue
New York, New York 10022
Telephone: (212) 918-3000
Facsimile: (212) 918-3100
*Proposed Counsel for Debtors and Debtors-in-Possession*

**<u>Exhibit 1</u>**

**Second Budget**

**(Attached)**

4826-6496-4995.1
12/19/2018 9:05 AM

**All American Oil & Gas Inc.**
**4 & 13-Week Budget (Revised 12/13/2018)**
**From:**

| | Week | Week | Week | Week | 4 Week Total |
|---|---|---|---|---|---|
| 12/10/2018 | **1** | **2** | **3** | **4** | **Total** |
| **To:** | 12/10/2018 | 12/17/2018 | 12/24/2018 | 12/31/2018 | 12/10/2018 |
| **1/6/2019 for 4 Week & 03/10/2019 for 13 Week** | 12/16/2018 | 12/23/2018 | 12/30/2018 | 1/6/2019 | 1/6/2019 |
| File: 201809.CE.r26 | **Fcst** | **Fcst** | **Fcst** | **Fcst** | **Fcst** |
| Revenue | $ - | $ 4,152,720 | $ 440,801 | $ - | $4,593,521 |
| Hedge Settlement | - | - | - | - | - |
| Other | - | - | - | - | - |
| **Net Receipts** | **-** | **4,152,720** | **440,801** | **-** | **4,593,521** |
| Employee Payroll + Benefits | ($3,000) | ($183,391) | ($9,421) | ($205,391) | ($401,204) |
| Royalties | - | - | ($749,496) | - | ($749,496) |
| Utilities (incl. Gas Purchases) | - | - | ($5,000) | ($22,430) | ($27,430) |
| Operating Expenses | ($758,671) | ($528,437) | ($1,302,200) | ($132,312) | ($2,721,620) |
| Hedge Disbursements | - | - | - | - | - |
| G&A | ($81,273) | ($97,797) | ($109,214) | ($101,603) | ($389,888) |
| CAPEX | - | - | - | ($25,000) | ($25,000) |
| Other | ($477,992) | - | - | - | ($477,992) |
| **Total Disbursements** | **(1,320,936)** | **(809,626)** | **(2,175,331)** | **(486,737)** | **(4,792,630)** |
| Debt related | - | (1,894,716) | - | - | ($1,894,716) |
| Professional fees and restructuring-related | - | (25,000) | - | - | ($25,000) |
| Court approved | - | - | - | - | - |
| Committee related | - | - | - | - | - |
| US Trustee | - | - | - | - | - |
| Other Disbursements | - | - | - | - | - |
| **Other Disbursements** | **-** | **(1,919,716)** | **-** | **-** | **(1,919,716)** |
| **Net Cash Flow** | **($1,320,936)** | **$1,423,378** | **($1,734,531)** | **$ (486,737)** | **($2,118,825)** |
| Beginning Cash Balance | $3,834,007 | $2,513,071 | $3,936,450 | $2,201,919 | $3,834,007 |
| Net Cash Flow | ($1,320,936) | $1,423,378 | ($1,734,531) | ($486,737) | ($2,118,825) |
| **Ending Cash Flow (Book)** | **$2,513,071** | **$3,936,450** | **$2,201,919** | **$1,715,182** | **$1,715,182** |