**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| ALL AMERICAN OIL & GAS INCORPORATED, *et al.*, | § | Case No. 18-52693-rbk |
| | § | |
| | § | Jointly Administered Under |
| Debtors. | § | Case No. 18-52693-rbk |
| | § | |

**JOINT CHAPTER 11 PLAN OF LIQUIDATION**

**DATED March 21, 2019**

**DYKEMA GOSSETT PLLC**

Deborah D. Williamson (TX 21617500)
dwilliamson@dykema.com
Patrick L. Huffstickler (TX 10199250)
phuffstickler@dykema.com
Danielle N. Rushing (TX 24086961)
drushing@dykema.com

112 East Pecan Street, Suite 1800
San Antonio, Texas 78205
Telephone: (210) 554-5500
Facsimile: (210) 226-8395

*- and -*

**HOGAN LOVELLS US LLP**

Richard L. Wynne (CA 120349)
*Pro hac vice* admission
richard.wynne@hoganlovells.com
Bennett L. Spiegel (CA 129558)
*Pro hac vice* admission
bennett.spiegel@hoganlovells.com
Erin N. Brady (CA 215038)
*Pro hac vice* admission
erin.brady@hoganlovells.com

1999 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 785-4600
Facsimile: (310) 785-4601

Counsel for Debtors

# TABLE OF CONTENTS

**ARTICLE I DEFINITIONS AND INTERPRETATION** ...........................................................1

    1.1    Rules of Interpretation ..................................................1
    1.2    Computation of Time ....................................................1
    1.3    Definitions....................................................................2
    1.4    Defined Terms .............................................................2

**ARTICLE II TREATMENT OF UNCLASSIFIED CLAIMS AGAINST THE DEBTOR**...........................................................................................12

    2.1    Unclassified Claims ...................................................12
    2.2    Treatment of Allowed Administrative Claims...............12
    2.3    Bar Dates for the Filing and Assertion of Administrative Claims and Professional Fee Claims...............................13
    2.4    Treatment of Allowed Priority Tax Claims .................14

**ARTICLE III CLASSIFICATION OF CLAIMS AND INTERESTS** .............................14

    3.1    Creation of Classes ....................................................14
    3.2    Claims May Be in More Than One Class .....................14

**ARTICLE IV IDENTIFICATION OF CLASSES OF CLAIMS AND INTERESTS THAT ARE AND ARE NOT IMPAIRED UNDER THIS PLAN**....................15

    4.1    Classes of Claims Not Impaired .................................15
    4.2    Impaired Classes of Claims and Interests ...................15
    4.3    Impairment Controversies ..........................................15

**ARTICLE V TREATMENT OF CLASSES OF CLAIMS AND INTERESTS**....................15

    5.1    Class 1 – Other Priority Claims .................................15
    5.2    Class 2 – Allowed Secured DWT Claim .....................15
    5.3    Class 3 – Secured Claim of Prepetition Secured Parties.......................16
    5.4    Class 4 – Other Secured Claims..................................16
    5.5    Class 5 – General Unsecured Claims ..........................16
    5.6    Class 6 – Intercompany Claims ..................................17
    5.7    Class 7 – CFS Claim ..................................................17
    5.8    Class 8 – Interests .....................................................17

**ARTICLE VI ACCEPTANCE OR REJECTION OF THIS PLAN** ...............................17

    6.1    Classes and Claims Entitled to Vote ..........................17
    6.2    Nonconsensual Confirmation .....................................17

**ARTICLE VII MEANS FOR IMPLEMENTATION OF THIS PLAN AND POST EFFECTIVE DATE GOVERNANCE**..........................................................18

    7.1    The Liquidating Trust ................................................18
    7.2    Disbursing Agent .......................................................20

| | | | |
|---|---|---|---|
| 7.3 | Cancellation of Interests | | 21 |
| 7.4 | Termination of Status; Officers and Directors | | 21 |
| 7.5 | Distribution Procedures | | 21 |
| 7.6 | Effectuating Documents; Further Reorganization Transactions | | 22 |
| 7.7 | Exemption from Certain Transfer Taxes | | 22 |
| 7.8 | Closing of the Chapter 11 Cases | | 22 |

**ARTICLE VIII PROVISIONS GOVERNING DISTRIBUTIONS GENERALLY**..............22

| | | |
|---|---|---|
| 8.1 | Timing and Delivery of Distributions | 22 |
| 8.2 | Method of Cash Distributions | 22 |
| 8.3 | Failure to Negotiate Checks | 22 |
| 8.4 | De Minimis Distributions | 23 |
| 8.5 | Distribution Record Date | 23 |

**ARTICLE IX EXECUTORY CONTRACTS, UNEXPIRED LEASES, AND OTHER AGREEMENTS**.................23

| | | |
|---|---|---|
| 9.1 | Assumption/Rejection | 23 |
| 9.2 | Claims Based on Rejection of Executory Contracts and Unexpired Leases | 23 |
| 9.3 | Reservation of Rights | 24 |

**ARTICLE X PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT, AND UNLIQUIDATED CLAIMS**..................24

| | | |
|---|---|---|
| 10.1 | Objections to Claims | 24 |
| 10.2 | Objection Deadline | 24 |
| 10.3 | Estimation of Claims | 25 |
| 10.4 | No Distributions Pending Allowance | 25 |
| 10.5 | Distributions After Allowance | 26 |
| 10.6 | Reduction of Claims | 26 |
| 10.7 | Compliance with Tax Requirements/Allocations | 26 |

**ARTICLE XI CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THIS PLAN**..................27

| | | |
|---|---|---|
| 11.1 | Conditions Precedent to Confirmation | 27 |
| 11.2 | Conditions Precedent to Effective Date | 27 |
| 11.3 | Substantial Consummation | 28 |
| 11.4 | Waiver of Conditions | 28 |
| 11.5 | Revocation, Withdrawal, or Non-Consummation | 28 |

4836-1657-3326.1
03/21/2019 3:06 PM

**ARTICLE XII AMENDMENTS AND MODIFICATIONS**....................................................28

**ARTICLE XIII RETENTION OF JURISDICTION**................................................28

**ARTICLE XIV COMPROMISES AND SETTLEMENTS**.................................30

**ARTICLE XV**....................................................................................................31

    15.1    Sale Order Controls..........................................................................31

**ARTICLE XVI MISCELLANEOUS PROVISIONS** .........................................31

    16.1    Severability of Plan Provisions .......................................................31
    16.2    Successors and Assigns....................................................................31
    16.3    Releases............................................................................................32
    16.4    Bankruptcy Rule 3016 Compliance .................................................33
    16.5    Exculpation ......................................................................................33
    16.6    Permanent Injunction.......................................................................33
    16.7    Term of Injunctions or Stay ............................................................34
    16.8    Integral to Plan ................................................................................34
    16.9    Binding Effect .................................................................................34
    16.10   Notices .............................................................................................34
    16.11   Setoffs/Counterclaims......................................................................35
    16.12   Recoupment .....................................................................................36
    16.13   Release of Liens...............................................................................36
    16.14   Request for Expedited Tax Review ..................................................36
    16.15   No Admissions .................................................................................36
    16.16   Entire Agreement .............................................................................36
    16.17   Governing Law ................................................................................37

**ARTICLE XVII CONFIRMATION REQUEST**....................................................37

4836-1657-3326.1
03/21/2019 3:06 PM

## JOINT CHAPTER 11 PLAN OF LIQUIDATION
## OF ALL AMERICAN OIL & GAS INCORPORATED

All American Oil & Gas Incorporated ("AAOG"); Manor Oil, Inc., formerly known as Kern River Holdings Inc. ("Manor"); and Hilltop Power, Inc., formerly known as Western Power & Steam, Inc. ("Hilltop", and together with AAOG and Manor, the "Debtors"), the debtors and debtors-in-possession in the above-captioned cases, hereby propose the following Joint Chapter 11 Plan of Liquidation (this "Plan") pursuant to Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"). Although proposed jointly for administrative purposes, this Plan constitutes a separate Plan for each Debtor for the resolution of outstanding claims against and interests in each Debtor pursuant to the Bankruptcy Code. Each Debtor is a proponent of this Plan within the meaning of § 1129 of the Bankruptcy Code. The Plan contemplates no substantive consolidation of any of the Debtors. Reference is made to the Disclosure Statement for a discussion of the Debtors' history, business, properties and operations, projections, risk factors, a summary and analysis of this Plan and certain related matters.

## ARTICLE I
## DEFINITIONS AND INTERPRETATION

### 1.1    Rules of Interpretation

For purposes of this Plan: (a) all Section and Article references in this Plan are to the respective Section or Article of this Plan, as the same may be amended, waived or modified from time to time; (b) the headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof; (c) words denoting the singular number shall include the plural number and vice versa; (d) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (e) in computing any period of time prescribed or allowed by this Plan, Rule 9006(a) of the Federal Rules of Bankruptcy Procedure shall apply; (f) the words "herein," "hereof," "hereto," "hereunder" and other terms of similar import refer to this Plan as a whole and not to any particular Article, Section, subsection or clause contained in this Plan; (g) any reference herein to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (h) any reference herein to an existing document or exhibit filed, or to be filed, shall mean such document or exhibit, as it may have been or may be amended, modified or supplemented from time to time; and (i) the words "include," "includes," "including," and similar words or phrases shall be deemed to be followed by the phrase "without limitation."

### 1.2    Computation of Time

In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply. If any payment, distribution, act or deadline under this Plan is required to be made or performed or occurs on a day that is not a Business Day, then the making of such payment or distribution, the performance of such act or the occurrence of such deadline shall be deemed to be on the next succeeding Business Day, but shall be deemed to have been completed or to have occurred as of the required date.

1.3     Definitions

Terms and phrases, whether capitalized or not, that are used and not defined in this Plan, but that are defined in the Bankruptcy Code, have the meanings ascribed to them in the Bankruptcy Code. Unless otherwise provided in this Plan, the terms defined in Section 1.4 of this Plan (which appear in this Plan as capitalized terms) have the respective meanings set forth in such section, and such meanings shall be equally applicable to the singular and plural forms of the terms defined, unless the context otherwise requires.

1.4     Defined Terms

1.4.1     "AAOG" means All American Oil & Gas Incorporated.

1.4.2     "Acquired Assets" means the Assets of the Debtors that were sold to the Purchasers pursuant to the Purchase Agreement and the Sale Order.

1.4.3     "Administrative Claim" means a Claim for costs and expenses of administration of the Bankruptcy Case entitled to priority under section 503(b) of the Bankruptcy Code including, but not limited to, (i) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Debtors' estates and operating the businesses of the Debtors (such as wages, salaries, reimbursement obligations or commissions for services and payments for goods and other services and leased premises); (ii) Professional Fees; and (iii) all fees and charges assessed against the Debtors' estates pursuant to 28 U.S.C. § 1930.

1.4.4     "Administrative Claims Bar Date" means thirty (30) days after the Effective Date.

1.4.5     "Affiliate" has the meaning set forth in section 101(2) of the Bankruptcy Code.

1.4.6     "Allowed" means:

(a)     with respect to Claims, a Claim (i) which has been scheduled as undisputed, non-contingent and liquidated in the Schedules (subject to the Debtors' right to amend such schedules) and as to which no objection or request for estimation has been filed on or before the Claims/Interests Objection Deadline or the expiration of such other period fixed by the Bankruptcy Court; (ii) as to which a Proof of Claim has been properly and timely filed and either (x) no objection thereto has been timely filed, or if an objection has been timely filed, such portion of which is not subject to such objection, or (y) such Claim has been allowed (but only to the extent allowed) by a Final Order; (iii) which is compromised, settled or otherwise resolved pursuant to the authority granted to the Liquidating Trustee under this Plan; or (iv) which has been expressly allowed under the provisions of this Plan; *provided, however*, that the Claims of the Prepetition Secured Parties in Class 3 are deemed Allowed; *provided further,* that the Claim of KCO, as Holder of the CFS Claim, in Class 7 is also deemed Allowed.

4836-1657-3326.1
03/21/2019 3:06 PM

(b)     with respect to Interests, an Interest (i) as to which a Proof of Interest has been properly and timely filed and either (x) no objection thereto has been timely filed, or if an objection has been timely filed, such portion of which is not subject to such objection, or (y) such Interest has been allowed (but only to the extent allowed) by a Final Order; (ii) that is recorded in the Schedule of Interests as belonging to the Holder; or (iii) which has been expressly allowed under the provisions of this Plan;

(c)     with respect to any Administrative Claim (i) a Claim (other than a Professional Fee Claim) that represents an actual and necessary expense of preserving the Debtors' estates or operating the businesses of the Debtors, to the extent such Claim is determined by the Liquidating Trustee to constitute an Allowed Administrative Claim; (ii) a Claim that is Allowed in whole or in part by a Final Order, and only to the extent that such Allowed portion is determined pursuant to Final Order to constitute a cost or expense of administration under section 503(b) of the Bankruptcy Code; and (iii) a Claim that represents a Professional Fee Claim to the extent such Professional Fee Claim is Allowed by an order of the Bankruptcy Court; and

(d)     except as otherwise specified in this Plan or a Final Order of the Bankruptcy Court, the amount of an Allowed Claim shall not include interest on such Claim from and after the Petition Date.

1.4.7     "Allowed Secured DWT Claim" means the Secured Claim of Davis Wright Tremaine LLP in the amount of $3,847.50 on account of fees for professional services rendered, which amount is secured by a retainer in excess of such fees and shall be deemed Allowed pursuant to this Plan.

1.4.8     "Assets" means all property of the Debtors' estates as defined in the Bankruptcy Code.

1.4.9     "Ballot" means each of the ballot forms distributed with the Disclosure Statement to Holders of Impaired Claims and/or Interests entitled to vote under Article VI hereof in connection with the solicitation of acceptances of this Plan.

1.4.10     "Bar Date" means January 22, 2019.

1.4.11     "Bankruptcy Code" means title 11 of the United States Code, section 101, et seq., as now in effect or as hereafter amended.

1.4.12     "Bankruptcy Court" means the United States Bankruptcy Court for the Western District of Texas, San Antonio Division or, if such court ceases to exercise jurisdiction, the court or adjunct thereof that exercises jurisdiction over the Chapter 11 Cases.

1.4.13     "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as amended and promulgated under section 2075 of title 28 of the United States Code, together with the local bankruptcy rules for the Bankruptcy Court as now in effect or as the same may from time to time hereafter be modified or amended.

1.4.14     "<u>Business Day</u>" means any day that is not a Saturday, a Sunday or a "legal holiday" within the meaning of Bankruptcy Rule 9006(a).

1.4.15     "<u>Cash</u>" means lawful currency of the United States of America.

1.4.16     "<u>Cash Collateral Orders</u>" means, collectively, the orders of the Bankruptcy Court permitting the Debtors to use the cash collateral of the First Lien Secured Parties and Second Lien Secured Parties on an interim basis, entered on: (i) November 15, 2018, ECF No. 58 (the "<u>First Interim Order</u>"); (ii) December 19, 2018 [ECF No. 161] (the "<u>Second Interim Order</u>"); (iii) January 7, 2019 [ECF No. 223] (the "<u>Third Interim Order</u>"); (iv) January 22, 2019 [ECF No. 311] (the "<u>Fourth Interim Order</u>"); and (v) March 5, 2019 [ECF No. 477] (the "<u>Fifth Interim Order</u>").

1.4.17     "<u>CFS Claim</u>" means, collectively, (i) claim number 16 filed by Camden Financial Services against KRH in the amount of $4,162,000.00; and (ii) claim number 17 filed by Camden Financial Services against AAOG in the amount of $4,162,000.00.

1.4.18     "<u>Chapter 11 Cases</u>" means the bankruptcy cases initiated by the Debtors when they filed their voluntary petitions under Chapter 11 of the Bankruptcy Code on November 12, 2018, jointly administered as Case No. 18-52693.

1.4.19     "<u>Claim</u>" means a claim against the Debtors or any of them, or their property, as such term is defined in section 101(5) of the Bankruptcy Code.

1.4.20     "<u>Claims/Interests Objection Deadline</u>" means the first Business Day that is at least 60 days after the Effective Date, or such later date as may be established by the Bankruptcy Court in accordance with Section 10.2 of this Plan.

1.4.21     "<u>Class</u>" means a category of Claims or Interests, as classified in Article III of this Plan.

1.4.22     "<u>Closing Date</u>" means the date of the closing of the Sale, which occurred on March 1, 2019.

1.4.23     "<u>Collateral</u>" means any property or interest in property of any Debtor's estate subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable state laws.

1.4.24     "<u>Collateral Agents</u>" means, collectively, the First Lien Collateral Agent and Second Lien Collateral Agent.

1.4.25     "<u>Confirmation</u>" or "<u>Confirmation of this Plan</u>" means the approval of this Plan pursuant to section 1129 of the Bankruptcy Code by the Bankruptcy Court.

1.4.26     "<u>Confirmation Date</u>" means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on its docket.

1.4.27　"<u>Confirmation Hearing</u>" means the hearing to consider confirmation of this Plan under section 1128 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

1.4.28　"<u>Confirmation Order</u>" means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code, as such order may be amended, modified, or supplemented.

1.4.29　"<u>Credit Bid</u>" means the credit bid of the Collateral Agents (at the direction of KCO, as "Required Lenders" under each of the First Lien Credit Agreement and Second Lien Credit Agreement) in the amount of not less than $128,500,000.00 for the purchase of substantially all of the Debtors' assets, including, without limitation, all or substantially all of the Acquired Assets, in accordance with section 3.1 of the Purchase Agreement, consisting of (i) the First Lien Secured Claim, and (ii) the Second Lien Secured Claim.

1.4.30　"<u>Debtors</u>" means, collectively: AAOG, Manor and Hilltop.

1.4.31　"<u>Debtor Settlement Parties</u>" means each of the Debtors and their Affiliates, and each of their respective employees, directors and officers.

1.4.32　"<u>Disallowed</u>" means a Claim or Interest or any portion thereof that is not Allowed.

1.4.33　"<u>Disbursing Agent</u>" means KCO, solely in its capacity as Disbursing Agent under the Liquidating Trust Agreement.

1.4.34　"<u>Disclosure Statement</u>" means the Disclosure Statement in support of this Plan dated March 21, 2019 filed at [_____], including all exhibits, appendices, schedules, and annexes attached thereto, as submitted by the Debtors pursuant to section 1125 of the Bankruptcy Code and approved by the Bankruptcy Court, as such Disclosure Statement may be amended, supplemented, or modified from time to time.

1.4.35　"<u>Disputed Claim</u>" means any Claim or any portion thereof which has not become Allowed.  For purposes of this Plan, a Claim that has not been Allowed by a Final Order shall be considered a Disputed Claim, whether or not an objection has been or may be timely filed, if: (i) the amount of the Claim specified in the Proof of Claim exceeds the amount of any corresponding Claim scheduled in the Schedules; (ii) the classification of the Claim specified in the Proof of Claim differs from the classification of any corresponding Claim scheduled in the Schedules; (iii) any corresponding Claim has been scheduled in the Schedules as disputed, contingent or unliquidated; (iv) no corresponding Claim has been scheduled in the Schedules; (v) such Claim is reflected as unliquidated or contingent in the Proof of Claim filed in respect thereof; or (vi) the amount, validity, priority or other rights of the Claim are otherwise being contested.

1.4.36　"<u>Disputed Interest</u>" means any Interest or any portion thereof which has not become Allowed.

1.4.37    "Dykema" means Dykema Gossett, PLLC.

1.4.38    "Effective Date" means the date on which all of the conditions set forth in Section 11.2 have been satisfied.

1.4.39    "Entity" means any corporation, general or limited partnership, limited liability company or partnership, joint venture, association, trust, government agency, body or political subdivision thereof, or unincorporated association, group or body, or other entity, as defined in section 101(15) of the Bankruptcy Code.

1.4.40    "Final Order" means a judgment, order, ruling, or other decree issued and entered by the Bankruptcy Court or by any state or other federal court or other tribunal having jurisdiction over the subject matter thereof, which judgment, order, ruling, or other decree has not been reversed, stayed, modified, or amended and as to which: (i) the time to appeal or petition for review, rehearing or certiorari has expired and as to which no appeal or petition for review, rehearing or certiorari is pending; or (ii) any appeal or petition for review, rehearing or certiorari has been finally decided and no further appeal or petition for review, rehearing or certiorari can be taken or granted.

1.4.41    "First Lien Administrative Agent" means KCO, solely in its capacity as Administrative Agent under the First Lien Credit Agreement.

1.4.42    "First Lien Collateral Agent" means KCO, solely in its capacity as Collateral Agent under the First Lien Security Documents.

1.4.43    "First Lien Credit Agreement" means that certain Amended and Restated Credit Agreement dated as of September 30, 2016, by and among KRH, as Borrower; AAOG and WPS, as guarantors, pursuant to the First Lien Guaranty; the First Lien Lender; and the First Lien Administrative Agent, as amended, modified or supplemented and in effect from time to time.

1.4.44    "First Lien Guaranty" means that certain Amended and Restated Guaranty, dated as of September 30, 2016, in favor of the First Lien Collateral Agent.

1.4.45    "First Lien Lender" means KCO, solely in its capacity as Lender under the First Lien Credit Agreement.

1.4.46    "First Lien Secured Claim" means the Allowed Secured Claim of the First Lien Secured Parties, in the amount of not less than $83,472,346.15, secured by valid, perfected, enforceable and unavoidable first-priority liens on substantially all of the Debtors' assets, including all or substantially all of the Acquired Assets.

1.4.47    "First Lien Secured Parties" means, collectively, the First Lien Collateral Agent, the First Lien Administrative Agent, the First Lien Lender. and any other creditor whose Claim was secured by the Liens held by or *pari passu* with KCO as First Lien Collateral Agent.

1.4.48    "First Lien Security Documents" means all of the security, pledge, control, and collateral agreements and documents executed in connection with the First Lien Credit Agreement evidencing the First Lien Secured Parties' valid, perfected, enforceable and unavoidable first-priority liens on substantially all of the Debtors' assets, including all or substantially all of the Acquired Assets.

1.4.49    "General Unsecured Claim" means any Claim that is not an Administrative Claim, an Other Priority Claim, a Priority Tax Claim, Secured Claim (including the Allowed Secured Claim of DWT, Secured Claim of Prepetition Secured Parties and Other Secured Claims), or an Interest.

1.4.50    "Hilltop" means Hilltop Power, Inc., formerly known as Western Power & Steam, Inc.

1.4.51    "Hogan Lovells" means Hogan Lovells US LLP.

1.4.52    "Holder" means the Person that is the owner of record of a Claim or Interest, as applicable.

1.4.53    "Impaired" means, when used in reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

1.4.54    "Intercompany Claim" means any Claim held by a Debtor against any other Debtor.

1.4.55    "Intercompany Compromise" means the waiver of all Intercompany Claims including without limitation any Intercompany Claims against AAOG as the net debtor under certain Intercompany Claims and the waiver of KRH's Intercompany Claim against WPS based on the payment of all other claims against KRH and WPS in full.

1.4.56    "Interest(s)" means all equity interests in AAOG, including any issued and outstanding common or preferred stock, any restricted equity units, calls, rights, puts, awards, commitments, repurchase rights, unvested or unexercised options, warrants, unvested common interests, unvested preferred interests or any other agreements of any character related to any equity interests in AAOG and/or any other instrument evidencing an ownership interest in AAOG.

1.4.57    "KCO" means Kern Cal Oil 7, LLC.

1.4.58    "KRH" means Kern River Holdings Inc., now known as Manor Oil, Inc.

1.4.59    "KRH II" means Kern River Holdings II LLC, a Delaware limited liability company.

1.4.60    "Lien" means valid and enforceable lien, mortgage, security interest, pledge, charge, encumbrance, or other legally cognizable security device of any kind,

4836-1657-3326.1
03/21/2019 3:06 PM

which is not subject to avoidance or subordination under the Bankruptcy Code or other applicable law.

1.4.61    "Liquidating Trust" means the trust established under Section 7.1 of this Plan.

1.4.62    "Liquidating Trust Agreement" means the agreement setting forth the terms and conditions governing the Liquidating Trust, which shall be filed in the Plan Supplement.

1.4.63    "Liquidating Trust Assets" means (i) Cash in an amount sufficient to fund the Wind-Down Budget; (ii) the ORRI; and (iii) and all Other Assets.

1.4.64    "Liquidating Trustee" means the party designated pursuant to this Plan or the Liquidating Trust Agreement to serve as Liquidating Trustee. The identity of the Liquidating Trustee shall be disclosed in the Plan Supplement.

1.4.65    "Manor" means Manor Oil, Inc., formerly known as Kern River Holdings Inc.

1.4.66    "Ordinary Course Professional" means the professionals retained in these Chapter 11 Cases pursuant to the *Order Authorizing the Debtors to Retain and Compensate Professionals in the Ordinary Course of Business* [ECF No. 309].

1.4.67    "ORRI" means the contingent production payment, structured as an overriding royalty interest, and to be perfected as such, of $550,000 per six-month period (up to a maximum of $5,500,000), payable to the Liquidating Trust semiannually through and including the date that is five years after closing of the Settlement/Sale Transaction, solely to the extent the Purchasers entities' (or their successors' or assigns') realized average price for sales to non-affiliates (measured in a manner consistent with the existing prepetition third party production payments to the Debtors, but for the avoidance of doubt, not deducting the existing burdens of production or taking into account the impact of any hedging of production in making such calculation) exceeds $70.00 per barrel, subject to the other terms, conditions, and deductions set forth in that certain *Assignment of Overriding Royalty Interest* from Kern River Holdings II LLC to AAOG, dated as of 7:01 a.m. Pacific Time on March 1, 2019, which is attached to the Disclosure Statement as Exhibit C. In the event that post-closing Professional Fees incurred and allowed pursuant to either the agreement of KCO or an Order of the Bankruptcy Court exceed $250,000, then such amount above $250,000 and up to $500,000 shall be reimbursable to KCO from the initial proceeds, if any, payable to the Liquidating Trust pursuant to the ORRI.

1.4.68    "Other Assets" means all Assets other than the Acquired Assets.

1.4.69    "Other Priority Claim" means a Claim against any Debtor, other than an Administrative Claim or a Priority Tax Claim, entitled to priority in right of payment pursuant to section 507(a) of the Bankruptcy Code.

8

1.4.70 "Other Secured Claim" means either (i) a Claim, other than a First Lien Secured Claim or Second Lien Secured Claim, that is secured by a lien on property in which any Debtor has an interest, which lien is valid, perfected and enforceable under applicable law or pursuant to a Final Order, or that is subject to setoff under applicable non-bankruptcy law or Bankruptcy Code section 553, to the extent of the value of the creditor's interest in such property or to the extent of the amount subject to setoff, as applicable, all as determined pursuant to Bankruptcy Code section 506(a); or (ii) a Claim, other than a First Lien Secured Claim or Second Lien Secured Claim, which is Allowed under this Plan as a Secured Claim.

1.4.71 "Person" means any person, individual, Entity, or other entity or being of whatever kind, whether or not operating or existing for profit, including, but not limited to, any "person" as such term is defined in section 101(41) of the Bankruptcy Code.

1.4.72 "Petition Date" means November 12, 2018.

1.4.73 "Plan" means this Joint Chapter 11 Plan of Liquidation and any amendments, supplements or modifications thereto.

1.4.74 "Plan Supplement" means such other documents required to be filed pursuant to this Plan, which shall be filed on or before seven (7) days before the date of the hearing on Confirmation of this Plan.

1.4.75 "Prepetition Collateral" means the Collateral securing the First Lien Credit Agreement and Second Lien Credit Agreement.

1.4.76 "Prepetition Secured Parties" means, collectively, the First Lien Secured Parties, Second Lien Secured Parties, and any other creditor whose Claim was secured by the Liens held by or *pari passu* with KCO as First Lien Collateral Agent and Second Lien Collateral Agent.

1.4.77 "Priority Tax Claim" means any Claim of a governmental unit to the extent that such Claim is entitled to a priority in payment under section 507(a)(8) of the Bankruptcy Code.

1.4.78 "Pro Rata" means, at any time, the proportion that the dollar amount, in the case of an Allowed Claim, or shares of Common Stock, in the case of an Allowed Interest, in a particular Class bears to the aggregate dollar amount of all Allowed Claims or the total number of shares of outstanding Common Stock (with respect to Allowed Interests) in such Class.

1.4.79 "Professional" means those Persons retained in this Chapter 11 Cases pursuant to an order of the Bankruptcy Court in accordance with section §§ 327 or 328 of the Bankruptcy Code.

4836-1657-3326.1
03/21/2019 3:06 PM

1.4.80    "Professional Fee Claim" means a Claim by a Professional for compensation and/or reimbursement of expenses pursuant to sections 328, 330, 331 or 503(b) of the Bankruptcy Code.

1.4.81    "Proof of Claim" means any proof of claim filed with the Bankruptcy Court with respect to the Debtors pursuant to Bankruptcy Rules 3001 or 3002.

1.4.82    "Purchase Agreement" means that certain Settlement and Asset Purchase Agreement between the Debtors and Purchasers, dated as of March 1, 2019, and as approved by the Bankruptcy Court pursuant to the Sale Order, including all exhibits and schedules thereto.

1.4.83    "Purchasers" means, collectively, KRH II, WPS II, and KCO, in its capacity as "Buyer" under the Purchase Agreement.

1.4.84    "Rejection Claim" means any Allowed Claim arising from the rejection of a contract or lease under Article IX of this Plan.

1.4.85    "Released Parties" means each of: (i) the Debtors; (ii) the First Lien Secured Parties and Second Lien Secured Parties; (iii) the Professionals; (iv) in each case of (i) through (iii), their predecessors, successors, and assigns, professionals, advisors, accountants, attorneys, investment bankers, and consultants; and (v) in each case of (i) through (iv), their current and former affiliates, subsidiaries, funds, portfolio companies, management companies, employees, agents, directors and officers, and other representatives (each solely in their capacity as such).

1.4.86    "Sale Order" means that certain *Order Granting Motion Pursuant to Sections 105, 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004 6006 and 9019 to Approve (A) Sale of Substantially all Assets Free and Clear of Liens, Claims and Encumbrances to Kern Cal Oil 7 LLC or its Designees(s); (B) Allow the Assumption and Assignment of Certain Leases or Contracts to the Buyer; (C) Approve Settlements and Releases Between the Debtors and Kern Cal Oil 7 LLC and Related Parties; and (D) Grant Related Relief,* dated March 1, 2019, including all exhibits thereto [Dkt. No. 468].

1.4.87    "Schedule of Interests" means the list of Holders of Interests filed separately with the Bankruptcy Court under seal identifying the number of shares and percentage of total outstanding shares comprising each Holder's Interests, which shall be controlling for all purposes, including, without limitation, voting to accept or reject this Plan and determining each such Holder's Pro Rata share of interests in the Liquidating Trust.

1.4.88    "Schedules" means the schedules of assets and liabilities and the statements of financial affairs filed by the Debtors on December 19 and 20, 2018 [ECF Nos. 163, 165 and 166], as amended [ECF Nos. 186, 231], under section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as such schedules or statements have been or may be further modified, amended or supplemented in accordance with Bankruptcy Rule 1009 or orders of the Court through the Confirmation Date.

10

1.4.89 "Second Lien Administrative Agent" means KCO, solely in its capacity as Administrative Agent under the Second Lien Credit Agreement.

1.4.90 "Second Lien Collateral Agent" means KCO, solely in its capacity as Collateral Agent under the Second Lien Security Documents.

1.4.91 "Second Lien Credit Agreement" means that certain Second Lien Credit Agreement dated as of August 31, 2015, by and among KRH, as Borrower; AAOG and WPS, as guarantors, pursuant to the Second Lien Guaranty; the Second Lien Lenders; and the Second Lien Administrative Agent, as amended, modified or supplemented and in effect from time to time.

1.4.92 "Second Lien Guaranty" means that certain Amended and Restated Guaranty, dated as of September 30, 2016, in favor of the Second Lien Collateral Agent.

1.4.93 "Second Lien Lender" means KCO, solely in its capacity as Lender under the Second Lien Credit Agreement.

1.4.94 "Second Lien Secured Claim" means the Allowed Secured Claim of the Second Lien Secured Parties, in the amount of not less than $62,398,810.48, secured by valid, perfected, enforceable and unavoidable second-priority liens on substantially all of the Debtors' assets, including all or substantially all of the Acquired Assets.

1.4.95 "Second Lien Secured Parties" means, collectively, the Second Lien Collateral Agent, Second Lien Administrative Agent, and Second Lien Lender.

1.4.96 "Second Lien Security Documents" means all of the security, pledge, control, and collateral agreements and documents executed in connection with the Second Lien Credit Agreement evidencing valid, perfected, enforceable and unavoidable second-priority liens on substantially all of the Debtors' assets, including all or substantially all of the Acquired Assets.

1.4.97 "Secured Claim" means a Claim that is: (i) secured as provided by section 506(a) of the Bankruptcy Code, in whole or in part, by a Lien on any assets of the Debtors that is not subject to avoidance or subordination under the Bankruptcy Code or applicable non-bankruptcy law, but only to the extent of the value of the Collateral securing such Claim; or (ii) subject to setoff under section 553 of the Bankruptcy Code, but only to the extent of the amount subject to such setoff.

1.4.98 "Secured Claim of Prepetition Secured Parties" means, collectively, the First Lien Secured Claim and Second Lien Secured Claim.

1.4.99 "Settlement/Sale Transaction" means, collectively, (i) the transactions contemplated by the Purchase Agreement; and (ii) the terms of the settlement between the Debtors, Purchasers, and their respective affiliates contained in the Purchase Agreement and in the Sale Order.

4836-1657-3326.1
03/21/2019 3:06 PM

1.4.100    "Trust Beneficiaries" means the Holders of Interests in the proportions indicated in the Schedule of Interests.

1.4.101    "Unliquidated" means when used in reference to a Claim, any Claim, the amount of liability for which has not been fixed, whether pursuant to an agreement, applicable law or otherwise, as of the date on which such Claim is sought to be estimated.

1.4.102    "Voting Agent" means BMC Group, Inc.

1.4.103    "Voting Deadline" means [_____].

1.4.104    "Warrant Interest" means an Interest held under the warrants issued in connection with the Second Lien Credit Agreement, and held by KCO as of the Petition Date.

1.4.105    "Wind-Down Budget" means that certain Wind-Down Budget, as approved by the Court as part of the Sale Order and attached to the Disclosure Statement as Exhibit D. The Sale Order shall govern the administration of the Wind-Down Budget.

1.4.106    "WPS" means Western Power & Steam, Inc., now known as Hilltop Power, Inc.

1.4.107    "WPS II" means Western Power and Steam II LLC, a Delaware limited liability company.

## ARTICLE II
## TREATMENT OF UNCLASSIFIED CLAIMS AGAINST THE DEBTOR

2.1    Unclassified Claims

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified but shall be treated as set forth in this Article II.

2.2    Treatment of Allowed Administrative Claims

Except to the extent that any Holder of an Allowed Administrative Claim agrees to a less favorable treatment, each Holder of an Allowed Administrative Claim (excluding Professional Fee Claims) shall receive from the Liquidating Trustee, in full satisfaction, release and discharge of and in exchange for such Allowed Administrative Claim the amount of such Allowed Administrative Claim, in Cash, on or as soon as practicable after the later of: (i) the Effective Date; (ii) the date that is fourteen (14) days after the date such Administrative Claim is Allowed; and (iii) such other date as may be agreed upon in writing by the holder of such Administrative Claim and the Liquidating Trustee; *provided, however*, that Allowed Administrative Claims representing obligations incurred in the ordinary course of business of the Debtors, if any, shall be paid in full in accordance with the terms and conditions of the particular transactions and any applicable agreements or assumed and assigned to the Purchasers as part of the Settlement/Sale Transaction. To the extent funds in the Wind-Down Budget are insufficient to satisfy any Allowed Administrative Claim, and such Allowed Administrative Claim has not been paid in full

12

pursuant to the Sale Order, Settlement/Sale Transaction, or other Final Order of the Bankruptcy Court, and has not been assumed by Purchasers pursuant to the Settlement/Sale Transaction, any remaining amounts owed will come from proceeds of the ORRI, if any, as and when such payments are received by the Liquidating Trust, before any distributions will be made to Holders of Allowed Priority Tax Claims, Other Priority Claims, Allowed General Unsecured Claims, or Allowed Interests.

Professional Fee Claims shall be paid from a segregated escrow account, funded by the Debtors with all budgeted amounts through the Closing Date for Professionals and Ordinary Course Professionals for which payment has been allocated in the Wind-Down Budget. In addition, KCO has previously funded up to $500,000 through the Wind-Down Budget for the professional fees of Dykema and Hogan Lovells post-closing in order to implement the Settlement/Sale Transaction, seek confirmation and approval of this Plan, and take any necessary steps to conclude the Chapter 11 Cases. In the event that such post-closing fees incurred and allowed pursuant to either the agreement of KCO or an Order of the Bankruptcy Court exceed $250,000, then such amount above $250,000 and up to $500,000 shall be reimbursable to KCO from the proceeds, if any, payable to the Liquidating Trust pursuant to the ORRI. The Debtors will establish a separate segregated escrow account to hold the $500,000 in the Wind-Down Budget for the professional fees of Dykema and Hogan Lovells incurred after March 1, 2019, which amounts will be disbursed by the Liquidating Trustee directly to Dykema and Hogan Lovells once their Professional Fee Claims are Allowed. The Sale Order (including the Wind-Down Budget) shall govern the Administration of the Professional Fee Claim reserves.

2.3    Bar Dates for the Filing and Assertion of Administrative Claims and Professional Fee Claims

Except for Professional Fee Claims, all requests for payment or any other means of preserving and obtaining payment of Administrative Claims that have not been paid in the ordinary course, released or otherwise settled, must be filed with the Bankruptcy Court and served upon the Liquidating Trustee no later than the Administrative Claims Bar Date. Any request for payment of Administrative Claims that is not filed by the Administrative Claims Bar Date will be forever disallowed and barred, and holders of such Claims will not be able to assert such Claims in any manner against the Debtors, the Debtors' estates, the Liquidating Trustee, the Liquidating Trust or any of their respective Affiliates or representatives. Objections to such requests must be filed and served on the requesting party by the later of (a) sixty (60) days after the Effective Date and (b) sixty (60) days after the filing of the applicable request for payment of such Administrative Claims. Notwithstanding the foregoing, any governmental unit may assert an Administrative Claim or other post-petition claim for taxes pursuant to the statutory requirements applicable thereto without regard to the Administrative Claims Bar Date. Nothing in this section shall affect the Liquidating Trustee's right to seek expedited determination of post-petition tax liability pursuant to 11 U.S.C. § 505(b).

With respect to Professional Fee Claims, each Holder of a Professional Fee Claim seeking an award by the Bankruptcy Court of compensation for services rendered and/or reimbursement of expenses incurred from the Closing Date through and including the Effective Date must file and serve its respective final application for allowance of such Professional Fee Claim no later than the date that is thirty (30) days after the Effective Date or such other date as

13

may be fixed by the Court.  Objections to applications of such Professionals for compensation and/or reimbursement of expenses must be filed and served on the Liquidating Trustee and the requesting Professional no later than thirty (30) days after the date on which the applicable application for compensation or reimbursement was served. Payment of the Professional Fee Claims shall be governed by the terms of the Sale Order (including the Wind-Down Budget).

    2.4       Treatment of Allowed Priority Tax Claims

Except to the extent that any Holder of an Allowed Priority Tax Claim agrees to less favorable treatment, each Holder of an Allowed Priority Tax Claim shall receive in full satisfaction, release and discharge of and in exchange for such Allowed Priority Tax Claim, the amount of such Allowed Priority Tax Claim, in Cash, on or as soon as practicable after the latest of: (i) the Effective Date; (ii) the date that is fourteen (14) days after the date such Claim is Allowed; (iii) the date that is five (5) years after the Petition Date; and (iv) such other date as may be agreed upon in writing by the Holder of such Claim. To the extent funds in the Wind-Down Budget are insufficient to satisfy Allowed Priority Tax Claims, any remaining amounts owed will come from proceeds of the ORRI, if any, before any distributions will be made to Holders of Allowed Other Priority Claims, Allowed General Unsecured Claims or Allowed Interests.

# ARTICLE III
# CLASSIFICATION OF CLAIMS AND INTERESTS

    3.1       Creation of Classes

Pursuant to section 1122 of the Bankruptcy Code, this Plan classifies Claims against and Interests in the Debtors in the classes set forth below for all purposes, including voting, confirmation and distribution.

## CLASSIFICATION OF CLAIMS AGAINST THE DEBTORS

| | |
|---|---|
| Class 1 | Other Priority Claims |
| Class 2 | Allowed Secured DWT Claim |
| Class 3 | Secured Claim of Prepetition Secured Parties |
| Class 4 | Other Secured Claims |
| Class 5 | General Unsecured Claims |
| Class 6 | Intercompany Claims |
| Class 7 | CFS Claim |
| Class 8 | Interests |

    3.2       Claims May Be in More Than One Class

A Claim shall be deemed classified in a particular Class only to the extent that the Claim qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim qualifies within the description of such different Class. A Claim is in a particular Class only to the extent that such Claim is Allowed in that Class and has not been paid or otherwise satisfied prior to the Effective Date.

# ARTICLE IV
## IDENTIFICATION OF CLASSES OF CLAIMS AND INTERESTS THAT ARE AND ARE NOT IMPAIRED UNDER THIS PLAN

### 4.1    Classes of Claims Not Impaired

Classes 1, 4, and 6 are not impaired under this Plan, are not entitled to vote and shall be conclusively presumed to accept this Plan under Section 1126(f) of the Bankruptcy Code.

### 4.2    Impaired Classes of Claims and Interests

Classes 2, 3, 5, 7 and 8 are impaired under this Plan.

### 4.3    Impairment Controversies

If a controversy arises as to whether any Class of Claims or Class of Interests is impaired under this Plan, such Class shall be treated as specified in this Plan unless prior to Confirmation of this Plan the Bankruptcy Court shall determine such controversy differently upon objection of the party challenging the characterization of a particular Class of Claims or Class of Interests under this Plan.

# ARTICLE V
## TREATMENT OF CLASSES OF CLAIMS AND INTERESTS

### 5.1    Class 1 – Other Priority Claims

Unless the Holder of an Allowed Other Priority Claim agrees to different treatment, each holder of an Allowed Other Priority Claim shall receive, in full and final satisfaction, settlement, release and discharge of, and in exchange for such Claim, the amount of such Allowed Other Priority Claim in Cash on or as soon as practicable after the latest of: (i) the Effective Date; (ii) the date that is fourteen (14) days after the date such Claim is Allowed; or (iii) such other date as may be agreed upon in writing by the holder of such Claim. To the extent funds in the Wind-Down Budget are insufficient to satisfy Allowed Other Priority Claims, any remaining amounts owed will come from proceeds of the ORRI, if any, as and when such payments are received by the Debtors or their successors, before any distributions will be made to Holders of Allowed General Unsecured Claims or Allowed Interests.

### 5.2    Class 2 – Allowed Secured DWT Claim

The Allowed Secured Claim DWT Claim is secured by a retainer held by DWT in excess of the fees that are the subject of its Claim, and such Claim shall be deemed Allowed pursuant to this Plan in the amount of $3,847.50. The Holder of the Allowed Secured DWT Claim shall receive, in full satisfaction, release and discharge of and in exchange for all of the Allowed Secured DWT Claim, on or as soon as reasonably practicable after the Effective Date, payment, in Cash, in the amount of $3,400.00.

4836-1657-3326.1
03/21/2019 3:06 PM

5.3    Class 3 – Secured Claim of Prepetition Secured Parties

The Prepetition Secured Parties shall receive, in full satisfaction, release and discharge of and in exchange for the Secured Claim of Prepetition Secured Parties, the treatment provided to the Prepetition Secured Parties pursuant to the Settlement/Sale Transaction and the Sale Order. The Purchasers will perform all of their obligations pursuant to the Sale Order, including, without limitation, making payments for those Allowed Claims that the Purchasers agreed to assume pursuant to the Purchase Agreement. Pursuant to the Sale Order and except for those rights and claims under the Sale Order, Purchase Agreement and the Settlement/Sale Transaction, any and all prepetition Claims against the Debtors held by the Prepetition Secured Parties in excess of the Credit Bid as of the Closing Date have been waived, including, without limitation, any Claims held by KCO (or its Affiliates) on account of the Warrant Interests.

5.4    Class 4 – Other Secured Claims

Unless the Holder of an Allowed Other Secured Claim agrees to different treatment, each Holder of an Allowed Other Secured Claim shall receive, in full and final satisfaction, settlement, release and discharge of, and in exchange for such Claim, either: (i) the amount of such Allowed Other Secured Claim in Cash on or as soon as practicable after the latest of (a) the Effective Date, (b) the date that is fourteen (14) days after the date such Claim is Allowed, or (c) such other date as may be agreed upon in writing by the Holder of such Claim; (ii) setoff against the retainer securing such Other Secured Claim held by the Holder of such Claim on the Debtors' accounts; or (iii) the return of the applicable Collateral in satisfaction of the Allowed amount of such Other Secured Claim. Upon satisfaction of such Allowed Other Secured Claim as set forth herein, any Liens securing such Other Secured Claim shall be deemed released. Pursuant to the Wind-Down Budget incorporated into the Sale Order, any amounts owed by Ordinary Course Professionals after payment of all pre-petition and post-petition fees and expenses (other than Professionals as defined in the Sale Order) are to be paid to the Debtors. To the extent applicable, 11 U.S.C. § 362 is modified *nunc pro tunc* to March 1, 2019 to allow setoff of all amounts owed to Ordinary Course Professionals and delivery of the excess retainers to the Debtors.

5.5    Class 5 – General Unsecured Claims

Except to the extent such Allowed General Unsecured Claim is settled or otherwise compromised, or has been assumed by the Purchasers under the Sale Order as part of the Settlement/Sale Transaction, each Holder of an Allowed General Unsecured Claim shall receive, in full satisfaction, release and discharge of and in exchange for all of its Allowed General Unsecured Claim, its Pro Rata share of net proceeds of the ORRI, if any, as and when such net proceeds are received, following payment in full of all Allowed Administrative Tax Claims, Allowed Priority Tax Claims, Allowed Other Priority Claims, and Allowed Other Secured Claims, until such Holder's General Unsecured Claim is paid in full. For the avoidance of doubt, pursuant to paragraph 4(i) of the Sale Order, those Holders of Claims listed on Exhibit C of the Disclosure Statement, whose claims have been assumed by the Purchasers and have been or will be satisfied as part of the Settlement/Sale Transaction, shall not be deemed to be Holders of Class 5 Claims.

4836-1657-3326.1
03/21/2019 3:06 PM

5.6    Class 6 – Intercompany Claims

Pursuant to the Intercompany Compromise, on the Effective Date, all Intercompany Claims not previously transferred to the Purchasers pursuant to the Purchase Agreement, shall be voluntarily waived by the applicable Debtor and extinguished, and any documents that previously evidenced such Intercompany Claim shall be deemed cancelled (all without further action by any Person or the Bankruptcy Court) and shall be null and void and such documents shall evidence no Intercompany Claim against any Debtor. Holders of Intercompany Claims shall not receive or retain any property under this Plan on account of such Intercompany Claim.

5.7    Class 7 – CFS Claim

KCO, as the Holder of the CFS Claim, shall receive, in full satisfaction, release and discharge of and in exchange for its Claim, the treatment provided to such Holder pursuant to the Settlement/Sale Transaction, the Purchase Agreement and the Sale Order. Pursuant to the Purchase Agreement and the Sale Order, the CFS Claim shall have been voluntarily released in full and shall be unenforceable against either Manor or AAOG, all without further action by any Person or the Bankruptcy Court.

5.8    Class 8 – Interests

On the Effective Date, except as provided in Section 7.3 of this Plan, all Interests and equity interests in the other Debtors shall be cancelled and extinguished. All Holders of Allowed Interests in AAOG will be deemed Trust Beneficiaries as of the Effective Date, and shall receive their Pro Rata share of interests in the Liquidating Trust according to the Schedule of Interests. Such Holders will be entitled to periodic distributions from the Liquidating Trust of net proceeds from the ORRI, if any, as and when such payments are received by the Liquidating Trust, following payment in full of any unpaid but Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Other Priority Claims, Allowed Other Secured Claims, and Allowed General Unsecured Claims.

## ARTICLE VI
## ACCEPTANCE OR REJECTION OF THIS PLAN

6.1    Classes and Claims Entitled to Vote

Each Holder of an Allowed Claim or Interest in an impaired Class shall be entitled to vote to accept or reject this Plan. Holders of Claims in Classes not impaired under this Plan shall not be entitled to vote to accept or reject this Plan and shall be presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code. Classes 1, 4, and 6 are not impaired and hence are conclusively presumed to have accepted this Plan. Classes 2, 3, 5, 7 and 8 are impaired, and each Holder of a Claim in Class 2, Class 3, Class 5 or Class 7, or of an Interest in Class 8, is entitled to vote to accept or reject this Plan.

6.2    Nonconsensual Confirmation

If any of the impaired Classes do not vote to accept this Plan by the requisite statutory majorities, the Debtors reserve the right to amend this Plan. If the Holders of Claims in Class 3,

Class 5, or Class 7, or Holders of Interests in Class 8, vote to reject this Plan, the Debtors shall request that the Bankruptcy Court confirm this Plan pursuant to Bankruptcy Code § 1129(b).

## ARTICLE VII
## MEANS FOR IMPLEMENTATION OF THIS PLAN
## AND POST EFFECTIVE DATE GOVERNANCE

7.1     The Liquidating Trust

This Section 7.1 is a general description of the Liquidating Trust and its provisions. The Liquidating Trust Agreement shall be included in the Plan Supplement. To the extent this Section 7.1 is inconsistent with the Liquidating Trust Agreement, the Liquidating Trust Agreement shall control for all purposes.

7.1.1     Creation of the Liquidating Trust

On or before the Effective Date, the Debtors shall take all necessary steps to establish the Liquidating Trust for the benefit of the Trust Beneficiaries by the execution and delivery of the Liquidating Trust Agreement.

7.1.2     Transfer of the Liquidating Trust Assets

On the Effective Date, the Liquidating Trust Assets, including, without limitation, the ORRI, shall be irrevocably transferred to and vest in the Liquidating Trust free and clear of all Liens, Claims, charges and encumbrances. For all U.S. federal income tax purposes, all Persons (including, without limitation, the Debtors and the Liquidating Trustee and the Trust Beneficiaries) shall treat the transfer and assignment of the Liquidating Trust Assets to the Liquidating Trust for the benefit of the Trust Beneficiaries as (a) a transfer directly to the Trust Beneficiaries of their Pro Rata share of the Liquidating Trust Assets in complete liquidation of the Debtors followed by (b) the transfer by the Trust Beneficiaries to the Liquidating Trust of the Liquidating Trust Assets. In accordance with Rev. Proc. 94-45 (Section 3.04), valuations of the Liquidating Trust Assets by the Liquidating Trustee and the Trust Beneficiaries shall be consistent and such valuations shall be used for all federal income tax purposes. The Liquidating Trust will be treated as a grantor trust for U.S. federal tax purposes and, to the extent permitted under applicable law, for state and local income tax purposes. The Trust Beneficiaries will be treated as the grantors and owners of their Pro Rata share of Liquidating Trust Assets for U.S. federal income tax purposes. In accordance with Treasury Regulation Section 1.671-4(a), the Liquidating Trustee will prepare and file an annual Form 1041 for the Liquidating Trust and provide each Trust Beneficiary with a copy thereof along with such Trust Beneficiary's Schedule K-1 or other applicable information, as provided in the Liquidating Trust Agreement. On and after the Effective Date, the Liquidating Trustee may use, acquire and dispose of property and compromise or settle any Claims, without the supervision of or approval by the Bankruptcy Court, and free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than the restrictions expressly imposed by this Plan, the Confirmation Order, Liquidating Trust Agreement, the Sale Order (including the Wind-Down Budget), the Purchase Agreement and/or the Settlement/Sale Transaction.

4836-1657-3326.1
03/21/2019 3:06 PM

### 7.1.3        Purpose of the Liquidating Trust

The Liquidating Trust, duly organized under the laws of Texas, shall be established for the purpose of liquidating and distributing the Liquidating Trust Assets in accordance with Treasury Regulation Section 301.7701-4(d) and any analogous provision of state or local law, including to the extent required by Rev. Proc. 94-45 (Section 3.10), and shall be governed by the Liquidating Trust Agreement.

### 7.1.4        Administration of the Liquidating Trust; Funding

The Liquidating Trust shall be administered by the Liquidating Trustee pursuant to the Liquidating Trust Agreement. Additionally, subject to the terms of the Liquidating Trust Agreement, the Liquidating Trust may borrow against, pledge, hypothecate, otherwise encumber, or convey Liquidating Trust Assets as needed to accomplish the goals of the Liquidating Trust.

The Liquidating Trust Agreement shall provide that the Liquidating Trust Assets shall be used, *first*, to pay the costs in the Wind-Down Budget and fund the administrative costs and expenses of the Liquidating Trust, including, without limitation, the reasonable fees and expenses of the Liquidating Trustee and the reasonable fees and expenses of any professionals employed by the Liquidating Trustee; and *second*, to make periodic distributions as set forth in this Plan and the Liquidating Trust Agreement.

### 7.1.5        The Liquidating Trustee

The identity of the Liquidating Trustee shall be disclosed in the Plan Supplement. The Liquidating Trustee shall retain and have all the rights, powers and duties necessary to carry out their responsibilities under this Plan and the Liquidating Trust Agreement, and as otherwise provided in the Confirmation Order. The Liquidating Trustee shall be the exclusive trustee of the Liquidating Trust Assets for the purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as a representative of the estate appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code. The Liquidating Trustee's liability may be limited by the Liquidating Trust Agreement to include limitations of liability for negligence and any actions except for willful misconduct or fraud. Disbursements from the Liquidating Trust shall be made through the Disbursing Agent.

### 7.1.6        Powers and Duties of the Liquidating Trustee

The Liquidating Trustee shall administer the Liquidating Trust Assets in accordance with this Plan, the Liquidating Trust Agreement, the Sale Order (including the Wind-Down Budget), the Purchase Agreement and the Settlement/Sale Transaction. The powers of the Liquidating Trustee shall include any and all powers and authority necessary to implement this Plan and the Liquidating Trust Agreement including: (i) serving as the sole officer, director and person in control of the Debtors on and after the Effective Date; (ii) holding, managing and liquidating and/or abandoning any of the Liquidating Trust Assets; (iii) investing Cash; (iv) taking all steps to execute all instruments and documents necessary to effectuate distributions to Holders of Allowed Claims in accordance with this Plan including, without limitation, the establishment of any reserves that the Liquidating Trustee deems necessary and/or appropriate; (v) paying, through the Disbursing Agent, Allowed Administrative Claims, Allowed Priority Tax Claims,

Allowed Other Priority Claims, Allowed Other Secured Claims and Allowed General Unsecured Claims in accordance with this Plan; (vi) paying Allowed Professional Fee Claims; (vii) employing, retaining, terminating or replacing professionals to represent it with respect to its responsibilities or otherwise effectuating this Plan and Liquidating Trust Agreement; (viii) paying any and all reasonable fees and expenses of the post-Effective Date Debtors (if any) and any professionals employed by the Liquidating Trustee **without approval of the Bankruptcy Court**; (ix) making periodic distributions of proceeds from the ORRI, if any, as and when such net proceeds are received, through the Disbursing Agent through the Disbursing Agent; (x) administering and paying taxes, including filing tax returns; (xi) requesting an expedited determination of any unpaid tax liability of the Debtors or post-Effective Date Debtors under Bankruptcy Code § 505; (xii) representing the interests of the Debtors or the Liquidating Trust before any taxing authority in all matters, including any action, suit, proceeding or audit; (xiii) taking all steps reasonably necessary and practicable to terminate the corporate existence of the Debtors in accordance with this Plan; (xiv) subject to section 10.1.2 of this Plan, authority to file objections to all Claims and/or Interests and to settle, compromise, or litigate to judgment any objections to Claims filed by the Liquidating Trustee and, subject to the terms of the Liquidating Trust Agreement, authority to settle or compromise any Disputed Claim without the approval of the Bankruptcy Court; (xv) having the authority to prosecute any cause of action that may accrue after the Effective Date in favor of the Liquidating Trustee, including, without limitation, any cause of action retained by the Debtors' estates pursuant to section 2.1(b)(xii) of the Purchase Agreement, and having the authority to compromise, settle, resolve, discontinue, abandon or dismiss all such actions **without approval of the Bankruptcy Court**; (xvi) having the authority to request estimation of any contingent or unliquidated Claim in accordance with and pursuant to the rights provided for in Section 10.3 of this Plan; (xvii) requesting that the Bankruptcy Court estimate any contingent or unliquidated Claim, regardless of whether the Liquidating Trustee, Debtors or Purchasers have previously objected to such Claim or whether the Bankruptcy Court has ruled on any objection; (xviii) undertaking all administrative functions of the Chapter 11 Cases, including the ultimate dissolution of the Debtors and the exclusive authority to seek the closing of the Chapter 11 Cases; and (xix) exercising such other powers as may be vested in it pursuant to order of the Bankruptcy Court, this Plan or the Liquidating Trust Agreement, or as it reasonably deems to be necessary and proper to carry out the provisions of this Plan.

7.2    Disbursing Agent

On the Effective Date, the Disbursing Agent shall be appointed pursuant to this Plan and the Liquidating Trust Agreement, for the purposes of (i) paying unpaid but Allowed Administrative Claims (excluding Allowed Professional Fee Claims), Allowed Priority Tax Claims, Allowed Other Priority Claims, Allowed Other Secured Claims and Allowed General Unsecured Claims in accordance with this Plan; (ii) making periodic distributions to Holders of Interests from net proceeds of the ORRI. In the event of the dissolution, failure to perform resignation, incompetency, or removal of KCO as Disbursing Agent, the Liquidating Trustee shall promptly designate a successor Disbursing Agent. For the avoidance of doubt, the Disbursing Agent has no personal liability for the payment of, and has not assumed liability for, any of the foregoing Claims other than as expressly provided in the Sale Order, the Purchase Agreement, the Wind-Down Budget and the Settlement/Sale Transaction, and shall solely be responsible for transferring assets of the Liquidating Trust as provided herein to Holders of any of the foregoing Claims.

4836-1657-3326.1
03/21/2019 3:06 PM

### 7.3 Cancellation of Interests

On the Effective Date, all Interests and equity interests in the other Debtors shall be terminated and extinguished and any certificates or other documents that previously evidenced ownership of those equity interests shall be deemed cancelled (all without further action by any Person or the Bankruptcy Court) and shall be null and void and such certificates and documents shall evidence no rights, Interests or equity interests in the other Debtors; provided, however, in the event that prior to the Effective Date KCO requests assignment of the equity interests in Manor and/or Hilltop, and such assignment will not have an adverse tax impact on the Debtors (as determined in the Debtors' reasonable discretion), such equity interests shall be conveyed to KCO or its designee(s) free and clear of any liens claims or interests to the greatest extent permissible under Bankruptcy Code Section 363 in furtherance of the Settlement/Sale Transaction. If KCO makes the foregoing election for it or its designee(s) to receive the equity interests of Manor and/or Hilltop, Manor and Hilltop shall retain all Permits (as defined in the Purchase Agreement) issued to them that have not otherwise been previously assigned to the Purchasers.

### 7.4 Termination of Status; Officers and Directors

On the Effective Date, except to the extent that the Liquidating Trustee determines otherwise or KCO exercises the election for it or its designee(s) to receive the equity interests of Manor and/or Hilltop as set forth in Section 7.3 of this Plan, the Debtors shall be deemed dissolved for all purposes without the necessity for any other or further actions to be taken by or on behalf of the Debtors or payments to be made in connection therewith. The Debtors may file with the Office of the Secretary of State for the state of their formation, a certificate of dissolution which may be executed by the Liquidating Trustee without the need for further approval or action from any officers, directors, Holders of Interests in the Debtors or any other party. From and after the Effective Date, the Debtors shall not be required to file any document, or take any other action, or obtain any approval from the Debtors' officers, directors or Holders of Interests, to withdraw their business operations from any states in which any of the Debtors previously conducted its business operations.

On the Effective Date: (i) the positions of the current officers and directors of the Debtors shall be eliminated, and each officer and director shall be terminated (without the necessity of further action); and (ii) to the fullest extent permitted by applicable law, the rights, powers, and duties of the officers and directors of the Debtors shall vest in the Liquidating Trustee.

### 7.5 Distribution Procedures

Any payments or distributions to be made by the Disbursing Agent to Holders of Interests or Holders of Claims as required by this Plan shall be made only to the Holders of Allowed Interests or Holders of Allowed Claims. Any payments or distributions to be made by the Disbursing Agent pursuant to this Plan shall be made on or about the Effective Date of such Plan, or as soon thereafter as practicable, except as otherwise provided for in this Plan. Any payment, delivery or distribution by the Disbursing Agent pursuant to this Plan, to the extent delivered by the United States mail, shall be deemed made when deposited by the Disbursing Agent into the United States mail. No payments or other distributions of property shall be made

on account of any Claim, Interest or portion thereof unless and until such Claim, Interest or portion thereof is Allowed.

### 7.6 Effectuating Documents; Further Reorganization Transactions

The Liquidating Trustee, shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan. The Liquidating Trustee, shall be authorized to certify or attest to any of the foregoing actions.

### 7.7 Exemption from Certain Transfer Taxes

Pursuant to Bankruptcy Code section 1146(a), the issuance, transfer, or exchange of a security, or the making of delivery of an instrument of transfer, provided under this Plan, from the Debtors to the Liquidating Trustee or any other Person pursuant to this Plan may not be taxed under any law imposing a stamp tax or similar tax, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

### 7.8 Closing of the Chapter 11 Cases

The Liquidating Trustee shall have sole authority to seek to close the Chapter 11 Cases in accordance with the Bankruptcy Code and the Bankruptcy Rules.

## ARTICLE VIII
## PROVISIONS GOVERNING DISTRIBUTIONS GENERALLY

### 8.1 Timing and Delivery of Distributions

This Plan and Confirmation Order shall govern distributions and shall include and be consistent with the terms of the other sections of this ARTICLE VIII and other relevant provisions of this Plan, including, without limitation, ARTICLE III of this Plan.

### 8.2 Method of Cash Distributions

Any Cash payment to be made pursuant to this Plan may be made by Cash, draft, check, wire transfer, or as otherwise required or provided in any relevant agreement or applicable law at the option of and in the discretion of the Disbursing Agent, in consultation with the Liquidating Trustee.

### 8.3 Failure to Negotiate Checks

Checks issued in respect of distributions under this Plan shall be null and void if not negotiated within sixty (60) days after the date of issuance. The Liquidating Trustee shall hold any amounts returned in respect of such non-negotiated checks. The Holder of an Allowed Claim

or Allowed Interest with respect to which such check originally was issued shall make requests for reissuance for any such check directly to the Liquidating Trustee. All amounts represented by any voided check will be held until the later of one (1) year after (x) the Effective Date or (y) the date that a particular Claim or Interest is Allowed, and all requests for reissuance by the Holder of the Allowed Claim in respect of a voided check are required to be made prior to such date. Thereafter, all such amounts shall be deemed to be "unclaimed property," and all Claims or Interests in respect of void checks and the underlying distributions shall be forever barred, estopped and enjoined from assertion in any manner against the Liquidating Trustee.

8.4     De Minimis Distributions

No Cash payment of less than one hundred ($100.00) dollars shall be made to the Holder of any Claim or Interest on account of its Allowed Claim or Interest.

8.5     Distribution Record Date

On the Effective Date (the "Distribution Record Date"), all transfer ledgers, transfer books, registers and any other records maintained by the designated transfer agents with respect to ownership of any Claims or Interests will be closed and, for purposes of this Plan, there shall be no further changes in the record Holders of such Claims or Interests (except to the extent that such changes result from the transfer of such Claim or Interest to any heir, executor, administrator, or successor of the Holder of record as of the Effective Date). Except as set forth in this Section 8.5, the Liquidating Trustee shall have no obligation to recognize the transfer of any Claims or Interests occurring after the Distribution Record Date, and will be entitled for all purposes to recognize and deal only with the Holder of any Claim or Interest as of the close of business on the Distribution Record Date, as reflected on such ledgers, books, registers or records.

## ARTICLE IX
## EXECUTORY CONTRACTS, UNEXPIRED LEASES, AND OTHER AGREEMENTS

9.1     Assumption/Rejection

On the Effective Date, all of the Debtors' executory contracts and unexpired leases not previously assumed by the Debtors or assigned to the Purchasers under the Sale Order, the Purchase Agreement and the Settlement/Sale Transaction, will be rejected. A list of previously assumed contracts is attached for informational purposes only to the Disclosure Statement as Exhibit F.

9.2     Claims Based on Rejection of Executory Contracts and Unexpired Leases

Unless otherwise provided by a Bankruptcy Court order, any Rejection Claims must be filed no later than thirty (30) days after the later of the Effective Date or the effective date of rejection.  Any Rejection Claims that are not timely filed shall be disallowed automatically, forever barred from assertion, and shall not be enforceable against the Liquidating Trust without the need for any objection by any Person or further notice to or action, order, or approval of the Bankruptcy Court, and any Rejection Claim shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules or a Proof of Claim to the contrary.  All

Rejection Claims shall be classified as General Unsecured Claims and shall be treated in accordance with the particular provisions of this Plan.

9.3     Reservation of Rights

Nothing contained in this Plan shall constitute an admission by the Debtors that any contract or lease is in fact an executory contract or unexpired lease or that the Debtors have any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Liquidating Trustee shall have thirty (30) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

**ARTICLE X**
**PROCEDURES FOR RESOLVING DISPUTED,**
**CONTINGENT, AND UNLIQUIDATED CLAIMS**

10.1    Objections to Claims

10.1.1     Except as set forth in Section 10.1.2, after the Effective Date, the Liquidating Trustee shall have the exclusive authority to file objections to all Claims and Interests, and the exclusive authority to settle, compromise, or litigate to judgment any objections to Claims or Interests that he or she files.  Subject to the terms of the Liquidating Trust Agreement, the Liquidating Trustee may settle or compromise any Disputed Claim or Disputed Interest without approval of the Bankruptcy Court.

10.1.2     Notwithstanding Section 10.1.1, pursuant to the Sale Order, the Purchaser has been granted standing to object to Claims or cure amounts in the Chapter 11 Cases that relate in any way to the Assumed Liabilities (as defined in the Purchase Agreement) or the Wind-Down Budget, including, without limitation, the contracts assigned to the Purchaser in connection with the Settlement/Sale Transaction, the Pre-Closing Budgeted Fees (as defined in the Sale Order), the Post-Closing Budgeted Fees (as defined in the Sale Order), and any other professional fees and expenses incurred in the Chapter 11 Cases, and the Liquidating Trustee shall assist in such objections as reasonably requested by the Purchaser. The Purchasers shall be responsible for the payment of (i) any fees incurred by the Liquidating Trustee (to the extent the Purchasers request that the Liquidating Trustee prosecute such objections or any related litigation) in prosecuting such objections or any related litigation and (ii) any quarterly fees required to be paid to the Office of the United States Trustee pursuant to sections 1911 through 1930 of chapter 123 of title 28 of the United States Code that are incurred solely as a result of the Chapter 11 Cases remaining open to facilitate the Purchasers' prosecution of such objections or any related litigation.

10.2    Objection Deadline

As soon as practicable, but no later than the Claims/Interests Objection Deadline, the Liquidating Trustee may file objections to Claims and Interests with the Bankruptcy Court and serve such objections on the Holders of the Claims and Interests to which such objections are made. Nothing contained herein, however, shall limit the right of the Liquidating Trustee to

24

object to Claims, if any, filed or amended after the Claims/Interests Objection Deadline. The Claims/Interests Objection Deadline may be extended by the Bankruptcy Court upon motion by the Debtors or Liquidating Trustee, without notice or hearing.

For the avoidance of doubt, no Claim or Interest is or shall be deemed Allowed until the later of the Claims/Interests Objection Deadline of the expiration of some other applicable period of limitation fixed by the Bankruptcy Code, Bankruptcy Rules, or Bankruptcy Court, unless otherwise ordered by a Final Order of the Bankruptcy Court or Allowed pursuant to this Plan.

Notwithstanding the foregoing, any Claims or other payment obligations assumed by KCO or the Purchasers under the Sale Order, the Purchase Agreement and the Settlement/Sale Transactions shall be administered as provided therein. Without limiting the generality of the foregoing, payment with respect to any Claim or payment obligations assumed by the Purchasers shall be subject to the terms of any agreements related to the amounts thereof reached by KCO, the Purchasers and/or their Affiliates with the Holders of such Claims or obligations. Notwithstanding the passage of the Claims/Interests Objection Deadline, any Claims or payment obligations assumed by the Purchasers shall remain subject to any such agreement or any other right or defense available under applicable law or the Sale Order, Purchase Agreement or Settlement/Sale Transaction until such time as they have either been resolved by agreement of the parties or become the subject of a final order of a court of competent jurisdiction. To the extent of any disagreement over the amount of any Claim or other obligation assumed by the Purchasers under the Purchase Agreement, the Bankruptcy Court reserves jurisdiction to hear such disputes.

### 10.3    Estimation of Claims

The Liquidating Trustee may at any time request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to Bankruptcy Code section 502(c), regardless of whether the Liquidating Trustee or the Debtors have previously objected to such Claim or whether the Bankruptcy Court has ruled on any objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal related to any such objection. In the event the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Liquidating Trustee may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim. All of the aforementioned objection, estimation and resolution procedures are cumulative and are not necessarily exclusive of one another.

### 10.4    No Distributions Pending Allowance

Notwithstanding any provision in this Plan to the contrary, no distributions, partial or otherwise, shall be made with respect to a Disputed Claim or Disputed Interest until such Claim or Interest becomes an Allowed Claim or Allowed Interest. Subject to the provisions of this Plan, after a Disputed Claim or Disputed Interest becomes an Allowed Claim or Allowed Interest, the Holder of such an Allowed Claim or Allowed Interest will receive all distributions to which such Holder is then entitled under this Plan on the next scheduled distribution date or as

the Liquidating Trustee otherwise determines in its reasonable discretion. No post-Effective Date interest shall be paid on distributions hereunder. If the Holder of a Claim incorporates more than one Claim in a Proof of Claim then: (i) such Claim will be considered one Claim or for purposes of this Plan; and (ii) no such Claim will be bifurcated into an Allowed portion and a Disputed portion.

### 10.5    Distributions After Allowance

As soon as reasonably practicable after the date that an order or judgment of the Bankruptcy Court allowing all or part of any Claim or Interest that is a Disputed Claim or Disputed Interest becomes a Final Order, the Liquidating Trustee shall distribute to the Holder of such Claim or Interest the distribution (if any) that would have been made to such Holder had such Claim or Interest been Allowed when previous distributions were made. After a Disputed Claim or Disputed Interest becomes an Allowed Claim or Allowed Interest or is otherwise resolved, any excess Cash or other property that was reserved on account of such Disputed Claim or Disputed Interest, if any, shall become property of the Liquidating Trust for the benefit of the Trust Beneficiaries.

### 10.6    Reduction of Claims

Notwithstanding the contents of the Schedules, Claims listed therein as undisputed, liquidated and not contingent shall be reduced by the amount, if any, that was paid by the Debtors prior to the Effective Date, including pursuant to orders of the Bankruptcy Court. To the extent such payments are not reflected in the Schedules, such Schedules will be deemed amended and reduced to reflect that such payments were made. Nothing in this Plan shall preclude the Liquidating Trustee from paying Claims that the Debtors were authorized to pay pursuant to any Final Order entered by the Bankruptcy Court prior to the Effective Date.

### 10.7    Compliance with Tax Requirements/Allocations

In connection with this Plan, to the extent applicable, the Liquidating Trustee shall comply with all tax withholding and reporting requirements imposed on it by any governmental unit with respect to all payments to Holders of Allowed Claims and income allocable to and distributions made to Holders of Allowed Interests. Any amounts so withheld shall be deemed paid to the Holder of the Allowed Claim or Allowed Interest, as applicable, subject to withholding. The Liquidating Trustee may require that each Holder complete the appropriate Internal Revenue Service Form W-8BEN, Internal Revenue Service Form W-8BEN-E, or Internal Revenue Service Form W-9, or successor form as applicable, to each Holder; *provided, however,* that the sole remedy in the event a Holder fails to comply with such a request within six months shall be to make a proper withholding of tax to the extent required by applicable law. Notwithstanding any provision in this Plan to the contrary, the Liquidating Trustee shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of a Liquidating Trust Assets to generate sufficient funds to pay applicable withholding taxes with respect to a Holder, withholding distributions pending receipt of information necessary to facilitate such distribution, or establishing any other mechanisms it believes are reasonable and appropriate. If the Liquidating Trustee fails to withhold with respect to any such Holder and is later liable for the amount of

26

such withholding, the Holder shall reimburse the Liquidating Trustee. The Liquidating Trustee reserves the right to allocate all payments and distributions made under this Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, liens and encumbrances. Unless otherwise required by law or provided in this Plan, payments in respect of Allowed Claims shall be allocated first to the principal amount (as determined for U.S. federal income tax purposes) of such Allowed Claims, and then, to the extent the consideration exceeds the principal amount of such Allowed Claims, to any portion of such Allowed Claims for accrued but unpaid interest.

The Liquidating Trustee will in good faith value the Liquidating Trust Assets. The Liquidating Trustee shall make the respective values available from time to time, to the extent relevant, and such values shall be used consistently by all parties to the Liquidating Trust (including, without limitation, the Debtors, the Liquidating Trustee, and the Trust Beneficiaries) for all U.S. federal income tax purposes.

## ARTICLE XI
## CONDITIONS PRECEDENT TO CONFIRMATION
## AND CONSUMMATION OF THIS PLAN

11.1    Conditions Precedent to Confirmation

The following are conditions precedent to the occurrence of Confirmation:

11.1.1    The Bankruptcy Court shall have entered an order, in a form reasonably acceptable to the Debtors, approving the adequacy of the Disclosure Statement; and

11.1.2    The Confirmation Order approving and confirming this Plan, as such Plan may have been modified, amended or supplemented, shall have been entered in form and substance reasonably acceptable to the Debtors.

11.2    Conditions Precedent to Effective Date

The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or waived in accordance with Section 11.4 below:

11.2.1    The Confirmation Order shall have been entered in form and substance reasonably acceptable to the Debtors and such order shall have become a Final Order.

11.2.2    No stay of the Confirmation Order is in effect; and

11.2.3    All documents, instruments and agreements, in form and substance satisfactory to the Debtors, provided for or necessary to implement this Plan (including, without limitation, the Liquidating Trust Agreement) have been executed and delivered.

4836-1657-3326.1
03/21/2019 3:06 PM

11.3    Substantial Consummation

On the Effective Date, this Plan shall be deemed to be substantially consummated under Bankruptcy Code section 1101(2).

11.4    Waiver of Conditions

Each of the conditions set forth in Section 11.2 hereof may be waived in whole or in part by the Debtors.  The failure to satisfy or waive any condition to the Effective Date may be asserted by the Debtors regardless of the circumstances giving rise to the failure of such condition to be satisfied.

11.5    Revocation, Withdrawal, or Non-Consummation

The Debtors reserve the right to revoke or withdraw this Plan at any time prior to the Confirmation Date and to file subsequent plans.  If the Debtors revoke or withdraw this Plan, or if Confirmation or substantial consummation of this Plan does not occur, then: (i) this Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in this Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests) unless otherwise agreed to by the Debtors and any counterparty to such settlement or compromise, and any document or agreement executed pursuant to this Plan shall be deemed null and void; and (iii) nothing contained in this Plan, and no acts taken in preparation for Consummation of this Plan, shall (a) constitute or be deemed to constitute a waiver or release of any Claims by or against, or any Interests in, the Debtors or any other Person, (b) prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors, or (c) constitute an admission of any sort by the Debtors or any other Person.

**ARTICLE XII**
**AMENDMENTS AND MODIFICATIONS**

The Debtors may alter, amend, or modify this Plan under Bankruptcy Code section 1127(a) at any time prior to the Confirmation Date.  After the Confirmation Date and prior to "substantial consummation" of this Plan, as defined in Bankruptcy Code section 1101(2), the Debtors may, under Bankruptcy Code section 1127(b), institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in this Plan, the Disclosure Statement or the Confirmation Order, and such matters as may be necessary to carry out the purposes and effects of this Plan, so long as such proceedings do not materially adversely affect the treatment of Holders of Claims or Interests under this Plan or impair the rights provided to KCO or the Purchasers under the Sale Order (including the Wind-Down Budget), the Purchase Agreement or the Settlement/Sale Transaction; *provided, however*, that prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or order of the Bankruptcy Court.

**ARTICLE XIII**
**RETENTION OF JURISDICTION**

Under Bankruptcy Code sections 105(a) and 1142, and notwithstanding entry of the Confirmation Order and occurrence of the Effective Date, the Bankruptcy Court shall retain

4836-1657-3326.1
03/21/2019 3:06 PM

exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and this Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

(A)     Allow, disallow, determine, liquidate, classify, estimate or establish the priority or Secured or unsecured status of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any objections to the Secured or unsecured status, priority, amount or allowance of Claims or Interests;

(B)     Hear and determine all applications for compensation and reimbursement of expenses of Professionals under Bankruptcy Code sections 327, 328, 330, 331, 503(b), or 1129(a)(4);

(C)     Hear and determine all matters with respect to the assumption or rejection of any executory contract or unexpired lease to which the Debtors are a party or with respect to which the Debtors may be liable, including, if necessary, the nature or amount of any required cure or the liquidating of any claims arising therefrom;

(D)     Hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of, under, or related to, the Chapter 11 Cases;

(E)     Enter and enforce such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of this Plan and all contracts, instruments, releases, and other agreements or documents created in connection with this Plan, the Disclosure Statement or the Confirmation Order;

(F)     Hear and determine disputes arising in connection with the interpretation, implementation, Consummation, or enforcement of this Plan, including disputes arising under agreements, documents or instruments executed in connection with this Plan;

(G)     Consider any modifications of this Plan, cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(H)     Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person with implementation, Consummation, or enforcement of this Plan or the Confirmation Order;

(I)     Enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

(J)     Hear and determine any matters arising in connection with or relating to this Plan, the Disclosure Statement, the Confirmation Order, the Liquidating Trust Agreement or any other contract, instrument, release, or other agreement or document created in connection with any of the foregoing, including, without limitation, to compel performance by the Disbursing Agent and/or the Liquidating Trustee of his, her or its duties;

4836-1657-3326.1
03/21/2019 3:06 PM

(K)     Enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Chapter 11 Cases or pursuant to this Plan, including the Sale Order, the Purchase Agreement and the Settlement/Sale Transaction;

(L)     Recover all assets of the Debtors and property of their estates, wherever located;

(M)     Hear and determine matters concerning state, local, and federal taxes in accordance with Bankruptcy Code sections 346, 505, and 1146;

(N)     Hear and determine all disputes involving any releases granted in this Plan;

(O)     Hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code;

(P)     Enter an order or final decree concluding or closing the Chapter 11 Cases;

and

(Q)     Enforce all orders previously entered by the Bankruptcy Court.

## ARTICLE XIV
## COMPROMISES AND SETTLEMENTS

Pursuant to Bankruptcy Code section 363 and Bankruptcy Rule 9019, and in consideration for the classification, distribution and other benefits provided under this Plan, the provisions of this Plan shall constitute a good faith compromise and settlement of all Claims, Interests and controversies resolved pursuant to this Plan, including, without limitation, all Claims or Interests arising prior to the Petition Date, whether known or unknown, foreseen or unforeseen, asserted or unasserted, arising out of, relating to or in connection with the business or affairs of, or transactions with, the Debtors. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements, and all other compromises and settlements provided for in this Plan, including, without limitation, the Intercompany Compromise, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtors, the estate, Holders of Claims and Interests and other parties in interest, and are fair, equitable and within the range of reasonableness.

4836-1657-3326.1
03/21/2019 3:06 PM

## ARTICLE XV
## RATIFICATION OF THE SALE ORDER, PURCHASE AGREEMENT AND THE
## SETTLEMENT/SALE TRANSACTION

### 15.1 Sale Order Controls

The Sale Order (including the Wind-Down Budget) is hereby ratified in all respects, including the approval of the Purchase Agreement and the Settlement/Sale Transaction approved thereby. Nothing herein or in the Confirmation Order is intended or shall be deemed to modify the Sale Order, the Purchase Agreement or the Settlement/Sale Transaction. All rights of KCO and the Purchasers under the Sale Order, the Purchase Agreement and the Settlement/Sale Transaction are hereby confirmed. To the extent of any inconsistency between the (i) Plan and the Confirmation Order, on the one hand, and (ii) the Sale Order, the Purchase Agreement and the Settlement/Sale Transaction, on the other hand, concerning the rights, benefits and/or powers granted to KCO and the Purchasers or any of their Affiliates and related persons and parties, the Sale Order, the Purchase Agreement and the Settlement/Sale Transaction shall control. Nothing in this Plan or the Confirmation Order shall impose any liability on KCO or the Purchasers that is not otherwise provided in the Sale Order, the Purchase Agreement, Settlement/Sale Transaction (including the Wind-Down Budget).

## ARTICLE XVI
## MISCELLANEOUS PROVISIONS

### 16.1 Severability of Plan Provisions

If, prior to Confirmation, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### 16.2 Successors and Assigns

Except as set forth in the Liquidating Trust Agreement, the rights, benefits and obligations of any Person named or referred to in this Plan, including any holder of a Claim or Interest, shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, or successor of such entity.

4836-1657-3326.1
03/21/2019 3:06 PM

16.3     Releases

16.3.1     Releases by Holders of Claims and Interests

**Except as otherwise expressly provided in this Plan, the Confirmation Order, the Sale Order (including the Wind-Down Budget), the Purchase Agreement and the Settlement/Sale Transaction on the Effective Date, for good and valuable consideration, a Holder of a Claim against and/or Interest in the Debtors who: (i) votes to accept this Plan; (ii) is deemed to accept this Plan; (iii) abstains from voting on this Plan, and does not opt out of the Releases contained in this Plan; or (iv) votes to reject this Plan and does not opt out of the Releases contained in this Plan, shall be deemed to completely and forever release, waive, void, extinguish and discharge unconditionally, each and all of the Released Parties of and from any and all claims, obligations, suits, judgments, damages, debts, rights, remedies and liabilities of any nature whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are or may be based in whole or part on any act, omission, transaction, event or other circumstance taking place or existing on or prior to the Effective Date (including prior to the Petition Date) in connection with or related to the Debtors, their assets, property and estates, the Chapter 11 Cases, this Plan or the Disclosure Statement.  For the avoidance of doubt, the foregoing releases described in this Plan shall not waive, affect, limit, restrict or otherwise modify the rights of the Debtors and the Liquidating Trustee to object to any Claim or Interest not expressly Allowed under this Plan.**

**Notwithstanding the foregoing and for the avoidance of doubt, the releases provided under the Sale Order, the Purchase Agreement and the Settlement/Sale Transaction shall govern any releases as among KCO, the Purchasers, the Debtors, the Buyer Settlement Parties (as defined in the Purchase Agreement) and the Debtor Settlement Parties (as defined in the Purchase Agreement) and other parties referenced therein, none of which shall be affected by the terms of this Plan.**

16.3.2     Releases Approved by Confirmation Order

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval pursuant to Bankruptcy Rule 9019, of the releases set forth in Section 16.3.1, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that such release is: (i) in exchange for the good and valuable consideration provided by the Released Parties; (ii) a good faith settlement and compromise of the claims released by Section 16.3.1; (iii) in the best interests of the Debtors, their estates and all Holders of Claims and Interests; (iv) fair, equitable and reasonable; (v) given and made after due notice and opportunity for a hearing; and (vi) a bar to any Person asserting any claim released by Section 16.3.1. Notwithstanding the foregoing, nothing in Section 16.3.1 shall release any Released Party or other Entity or Person from its respective rights and obligations under this Plan or the Confirmation Order.**

### 16.3.3    No Waiver

Notwithstanding anything to the contrary contained in this Article XVI, the releases set forth in Section 16.3.1 shall not, and shall not be deemed to, limit, abridge or otherwise affect the rights of the Liquidating Trustee to enforce, sue on, settle or compromise the rights, claims and other matters vested in and retained by the Liquidating Trust pursuant to this Plan or the Confirmation Order.

### 16.4    Bankruptcy Rule 3016 Compliance

The Debtors' compliance with the formal requirements of Bankruptcy Rule 3016(c) shall not constitute an admission that this Plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code.

### 16.5    Exculpation

**The Debtors and the Debtors' Professionals SHALL NOT BE LIABLE FOR ANY cause of action arising out of or related to any act or omission in connection with or relating to: (a) the formulation, preparation, solicitation, dissemination, negotiation, or filing of this Plan, the Plan Supplement, the Disclosure Statement, or any contract, instrument, release, or other agreement or document created or entered into in connection with any of the foregoing; (b) the Chapter 11 Cases; (c) the pursuit of Confirmation of this Plan; (d) the administration and implementation of this Plan; (e) the distribution of property under this Plan; and/or (f) any other prepetition or postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring and/or liquidation of the Debtors. All holders of Claims and Interests are enjoined from asserting or prosecuting any Claim or cause of action against the Debtors or the Debtors' Professionals as to any Claim or cause of action as to which the Debtors and the Debtors' Professionals have been exculpated pursuant to this Plan.**

### 16.6    Permanent Injunction

**Except as otherwise expressly provided in this Plan, the Confirmation Order, the Sale Order (including the Wind-Down Budget), the Purchase Agreement and the Settlement/Sale Transaction, all Persons who have held, hold or may hold Claims against, or Interests in, the Debtors are permanently enjoined, on and after the Effective Date, to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, from: (i) commencing or continuing in any manner any action or other proceeding of any kind against the Debtors, the Liquidating Trust, or their assets with respect to any such Claim or Interest in any venue other than the United States Bankruptcy Court for the Western District of Texas; (ii) the enforcement, attachment, collection, or recovery by any manner or means of judgment, award, decree or order against the Debtors, the Liquidating Trust, or their assets on account of any such Claim or Interest in any venue other than the United States Bankruptcy Court for the Western District of Texas; (iii) creating, perfecting, or enforcing any encumbrance of any kind against the Debtors, the Liquidating Trust, or their assets on account of any such Claim or**

33

Interest in any venue other than the United States Bankruptcy Court for the Western District of Texas; and (iv) asserting any right of setoff, recoupment or subrogation of any kind against any obligation due from the Debtors, the Liquidating Trust, or their assets on account of any such Claim or Interest in any venue other than the United States Bankruptcy Court for the Western District of Texas.

16.7     Term of Injunctions or Stay

Unless otherwise provided in this Plan, the Confirmation Order or the Sale Order, all injunctions or stays provided for in the Chapter 11 Cases under Bankruptcy Code sections 105 or 362 or otherwise, and in existence on the Confirmation Date (excluding any injunctions or stays contained in this Plan or Confirmation Order), shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in this Plan, the Confirmation Order and/or the Sale Order shall remain in full force and effect in accordance with their terms.

16.8     Integral to Plan

Each of the injunctions provided in this Plan is an integral part of this Plan and is essential to its implementation.  Each of the other Persons protected by the injunctions set forth in this Plan shall have the right to independently seek the enforcement of such injunctions.

16.9     Binding Effect

This Plan shall be binding upon and inure to the benefit of the Debtors, all present and former Holders of Claims against and Interests in the Debtors, their successors and assigns, including, but not limited to, the Debtors, and all other parties-in-interest in the Chapter 11 Cases.

16.10    Notices

Any notice, request, or demand required or permitted to be made or provided under this Plan to or upon the Debtors or the Liquidating Trustee shall be: (i) in writing; (ii) served by (a) certified mail, return receipt requested, (b) hand delivery, (c) overnight delivery service or (d) facsimile transmission; and (iii) deemed to have been duly given or made when actually delivered or, in the case of facsimile transmission, when received and telephonically confirmed, addressed as follows:

If to the Liquidating Trustee:

AAOG Liquidating Trust
c/o [_____], Liquidating Trustee
[_____]

4836-1657-3326.1
03/21/2019 3:06 PM

With a copy, which shall not constitute notice, to:

DYKEMA GOSSETT PLLC
Deborah D. Williamson
dwilliamson@dykema.com
Patrick L. Huffstickler
phuffstickler@dykema.com
Danielle N. Rushing
drushing@dykema.com
112 East Pecan Street, Suite 1800
San Antonio, Texas 78205
Telephone: (210) 554-5500
Facsimile: (210) 226-8395

– and –

HOGAN LOVELLS US LLP
Richard L. Wynne
richard.wynne@hoganlovells.com
Bennett L. Spiegel
bennett.spiegel@hoganlovells.com
Erin N. Brady
erin.brady@hoganlovells.com
1999 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 785-4600
Facsimile: (310) 785-4601

16.11   Setoffs/Counterclaims

The Debtors may, but shall not be required to, setoff or counterclaim against any Claim and the payments or other distributions to be made pursuant to this Plan in respect of the Claim, claims of any nature whatsoever the estate may have against the Holder of the Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors of any claim that the estates may have against the Holder. Setoffs or counterclaims arising from events after the Petition Date shall reduce the payouts under any Allowed Claim dollar for dollar. Setoffs or counterclaims arising from pre-petition events shall reduce the amount of the Allowed Claim and, therefore, shall reduce the payout amount proportionally with the reduction in the Allowed Claim. If any counterclaim or setoff asserted by the Debtors exceeds the amount of any Claim, the Holder of such Claim shall not be entitled to any distribution under this Plan, and the Debtors will reserve the right to recover any such excess counterclaim or set-off from the Holder of the applicable Claim. After the Effective Date, the rights afforded to the Debtors under this paragraph shall apply to the Liquidating Trustee. **Except as provided in the Sale Order (including the Wind-Down Budget), the Purchase Agreement (including the ORRI) and the Settlement/Sale Transaction, in no event shall any Holder of Claims or Interests be entitled to setoff any Claim or Interest against any claim, right, or cause of action of the Debtors or the Liquidating Trustee, as applicable,**

35

**unless such Holder has filed a motion with the Bankruptcy Court requesting the authority to perform such setoff on or before the Confirmation Date, and notwithstanding any indication in any Proof of Claim or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to Bankruptcy Code section 553 or otherwise.**

16.12   Recoupment

Except as provided in the Sale Order (including the Wind-Down Budget), the Purchase Agreement (including the ORRI) and the Settlement/Sale Transaction, any Holder of a Claim or Interest shall not be entitled to recoup any Claim or Interest against any claim or right of the Debtors or the Liquidating Trustee, as applicable, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtors on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

16.13   Release of Liens

Except as otherwise provided in this Plan or in any contract, instrument, release, or other agreement or document created pursuant to this Plan or the Sale Order, Purchase Agreement and the Sale/Settlement Transaction, on the Effective Date and concurrently with the applicable distributions made pursuant to this Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Debtors' estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Debtors and their successors and assigns.

16.14   Request for Expedited Tax Review

The Liquidating Trustee shall have the right to request an expedited determination under Bankruptcy Code section 505(b) with respect to tax returns filed, or to be filed, for any and all taxable periods ending after the Petition Date through the Effective Date.

16.15   No Admissions

Notwithstanding anything herein to the contrary, nothing in this Plan shall be deemed as an admission by the Debtors with respect to any matter set forth herein, including liability on any Claim.

16.16   Entire Agreement

This Plan, the Plan Supplement, the Confirmation Order, the Sale Order (including the Wind-Down Budget), the Purchase Agreement and the Settlement/Sale Transaction supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into this Plan.

4836-1657-3326.1
03/21/2019 3:06 PM

16.17   Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of Texas, without giving effect to the principles of conflicts of law thereof, shall govern the construction and implementation of this Plan and any agreements, documents, and instruments executed in connection with this Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control) as well as corporate governance matters with respect to the Debtors.

## ARTICLE XVII
## CONFIRMATION REQUEST

The Debtors request Confirmation of this Plan under Bankruptcy Code section 1129.  If the Holders of Claims in Class 3, Class 5, or Class 7, or Holders of Interests in Class 8, vote to reject this Plan, the Debtors request Confirmation pursuant to Bankruptcy Code section 1129(b), and reserve the right to amend this Plan to the extent (if any) that Confirmation of this Plan under Bankruptcy Code section 1129(b) requires modification.  If Holders of Claims in Class 2 vote to reject this Plan, the Debtors reserve the right to modify the treatment of Class 2 Claims to render such Claims unimpaired.

[*Signature Page Follows*]

4836-1657-3326.1
03/21/2019 3:06 PM

Dated: March 21, 2019

**All American Oil & Gas Incorporated; Manor Oil, Inc.; and Hilltop Power, Inc., DEBTORS**


By: <u>     /s/ *David J. Katz, Esq.*     </u>
Name: <u>     David J. Katz, Esq.     </u>
Title: <u>     Secretary and General Counsel </u>

38