

The relief described hereinbelow is SO ORDERED.

Signed April 24, 2019.

_____
**Ronald B. King**
**Chief United States Bankruptcy Judge**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| ALL AMERICAN OIL & GAS | § | Case No. 18-52693-rbk |
| INCORPORATED, *et al.*, | § | |
| | § | Jointly Administered Under |
| Debtors. | § | Case No. 18-52693-rbk |
| | § | |

**ORDER (I) APPROVING THE ADEQUACY OF THE DISCLOSURE STATEMENT,**
**(II) APPROVING THE SOLICITATION, BALLOT TABULATION AND NOTICE**
**PROCEDURES WITH RESPECT TO CONFIRMATION OF THE DEBTORS'**
**PROPOSED JOINT CHAPTER 11 PLAN OF LIQUIDATION, (III) APPROVING**
**THE FORMS OF BALLOTS AND NOTICES IN CONNECTION THEREWITH,**
**(IV) SCHEDULING CERTAIN DATES WITH RESPECT THERETO, AND**
**(V) GRANTING RELATED RELIEF**

Upon consideration of the motion (the "Motion")[1] of All American Oil & Gas Incorporated ("AAOG"); Manor Oil, Inc., formerly known as Kern River Holdings Inc. ("Manor"); and Hilltop Power, Inc., formerly known as Western Power & Steam, Inc. ("Hilltop", and together with AAOG and Manor, the "Debtors"), the debtors and debtors-in-possession in the above-captioned Chapter 11 Cases, seeking entry of an order (I) approving the adequacy of the Disclosure Statement, (II) approving the solicitation, ballot tabulation and notice procedures with respect to confirmation of the Debtors' proposed Joint Chapter 11 Plan of Liquidation, (III) approving the forms of ballots and notices in connection therewith, (IV) scheduling certain dates with respect thereto, and (V) granting related relief (this "Order"), the Court, having reviewed the Motion and all evidence submitted therewith, finds that (i) the court has jurisdiction over this matter pursuant to 28 U.S.C. § 157, (ii) venue is proper in this district pursuant to 28 U.S.C. § 1408, (iii) this is a core proceeding pursuant to 28 U.S.C. § 157(b), and (iv) notice of the Motion was sufficient under the circumstances. The Court, having determined that good and sufficient cause has been shown, hereby **ORDERS THAT**:

1.      The Motion is GRANTED as set forth herein.

2.      The Disclosure Statement attached hereto as **Exhibit A** is APPROVED as containing "adequate information" as required by Bankruptcy Code section 1125 and compliant with Bankruptcy Rule 3016(c).

3.      The Confirmation Hearing at which the Court will consider confirmation of the Plan will be held before the Honorable Ronald B. King, United States Bankruptcy Judge, in the United States Bankruptcy Court for the Western District of Texas, San Antonio Division, 615 E. Houston St., Courtroom 1, San Antonio, Texas 78205 on June 5, 2019, at 9:30 a.m. (prevailing

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Plan or Motion, as applicable.

Central time). The Confirmation Hearing may be continued from time to time by the Court without further notice.

4. The deadline for filing objections to confirmation of the Plan shall be May 29, 2019, at 5:00 p.m. (prevailing Central time) (the "<u>Plan Objection Deadline</u>"). All objections to confirmation of the Plan must be (a) filed with the Office of the Clerk, United States Bankruptcy Court for the Western District of Texas, San Antonio Division, 615 E. Houston St., Room 597, San Antonio, Texas 78205; (b) served on the following parties so as to be received on or no later than May 3, 2019: (i) the Debtors: All American Oil & Gas Incorporated; Kern River Holdings Inc.; and Western Power & Steam, Inc., 9601 McAllister Freeway, Suite 221, San Antonio, Texas 78216; (ii) Debtors' counsel: Hogan Lovells US LLP, 1999 Avenue of the Stars, Los Angeles, CA, 90067, Attn: Richard L. Wynne, Bennett Spiegel and Erin Brady (Telephone: (310) 785-4600, email: richard.wynne@hoganlovells.com, bennett.spiegel@hoganlovells.com and/or erin.brady@hoganlovells.com) and Dykema Gossett PLLC, 112 E. Pecan Street, Suite 1800, San Antonio, Texas 78205, Attn: Deborah D. Williamson and Danielle N. Rushing (Telephone: (210) 554-5528, email: DWilliamson@dykema.com and/or DRushing@dykema.com); (iii) counsel to the Committee: Brinkman Portillo Ronk, APC, 9500 Ray White Road, Second Floor, Ft. Worth, Texas 76244, Attn: Daren R. Brinkman (Telephone: (682) 226-7437, email: firm@brinkmanlaw.com) and 4333 Park Terrace Drive, Suite 205, Westlake Village, CA 91361, Attn: Daren R. Brinkman (Telephone: (818) 597-2992, email: firm@brinkmanlaw.com); and (iv) United States Department of Justice, Office of the United States Trustee for the Western District of Texas, San Antonio Division, 615 E. Houston St., Room 533, San Antonio, Texas 78205 (Attn: Kevin M. Epstein, email: Kevin.M.Epstein@usdoj.gov).

5.    Any objections to confirmation of the Plan must:

    (a)    be in writing;

    (b)    comply with the Bankruptcy Rules, the Local Rules and orders of this Court;

    (c)    state the name and address of the objecting party, and the nature and amount of any Claim or interest asserted by the objecting party against the estate or property of the Debtors; and

    (d)    state with particularity the legal and factual basis for such objection.

6.    Any objections not timely filed and served in the manner set forth herein may not be considered and may be overruled.

7.    The following dates and deadlines are approved and fixed by this Order:

|  |  |
| --- | --- |
| Voting Record Date | April 18, 2019 |
| Commencement of Solicitation | April 29, 2019 |
| Deadline to File Rule 3018 Motion | May 7, 2019 at 5:00 p.m. Central |
| Deadline to File Plan Supplement | May 22, 2019 at 5:00 p.m. Central |
| Voting Deadline | May 29, 2019 at 5:00 p.m. Central |
| Deadline to Object to Confirmation of Plan | May 29, 2019 at 5:00 p.m. Central |
| Voting Report Deadline | June 3, 2019 at 5:00 p.m. Central |
| Confirmation Hearing | June 5, 2019 at 9:30 a.m. Central |

8.    BMC Group, Inc. is authorized to serve as the Debtors' solicitation and noticing agent (the "Voting Agent") to assist the Debtors in soliciting votes on and providing notice of the Plan, including mailing solicitation packages and notices, receiving and tabulating Ballots cast on the Plan, and certifying to the Court the results of the voting. The date by which the Voting Agent must submit a report a report tabulating the votes cast (the "Voting Report") is June 3, 2019 at 5:00 p.m. (prevailing Central time) (the "Voting Report Deadline").  Ballots may be submitted to the Voting Agent by mail sent to BMC Group, Inc., Attn: AAOG Ballot Processing, P.O. Box 90100, Los Angeles, CA 90009; by hand-delivery or overnight courier to BMC Group,

Inc., Attn: AAOG Ballot Processing, 3732 W 120ᵗʰ Street, Hawthorne, CA 90250; or electronically by email to: aaog@bmcgroup.com.

9.     The voting record date for purposes of determining which Holders of Claims and Holders of Interests are entitled to vote on the Plan and the amount of such Claims and Interests is hereby established as April 18, 2019 (the "Voting Record Date"). The date by which Ballots indicating acceptance or rejection of the Plan must be received by the Voting Agent is May 29, 2019 at 5:00 p.m. (prevailing Central time) (as may be extended from time to time even if the time period has lapsed, the "Voting Deadline"). The period during which Ballots with respect to the Plan will be accepted by the Debtors will terminate on the Voting Deadline. The Debtors may, in their sole discretion, extend the Voting Deadline as facts and circumstances may require without further order from the Court. Except as provided herein, Ballots that are received after the Voting Deadline shall not be counted.

10.     The forms of Ballots attached hereto as **Exhibit B** are approved, subject to the right of the Debtors to make additional correcting, conforming, and formatting changes to such forms of Ballots. Not less than five (5) days after the entry of this Order (the "Solicitation Commencement Date"), the Debtors, through the Voting Agent, shall commence the solicitation and noticing process for Holders of Claims and Interests entitled to vote on the Plan as of the Voting Record Date by placing the solicitation materials and notices approved in this Order in the mail, first class postage prepaid; provided, however, that such date may be extended by court order.

11.     The solicitation materials to be transmitted on or before the Solicitation Commencement Date to Holders of Claims and Interests in classes entitled to vote on the Plan shall include the following: (a) the Confirmation Hearing Notice, (b) the Disclosure Statement,

(c) the Plan, (d) an appropriate ballot, and (e) a pre-addressed return envelope (collectively, the "Solicitation Package").  The Debtors are authorized to transmit the Disclosure Statement and the Plan in CD-ROM or flash drive format or other electronic means, as appropriate, with paper copies of the Plan and the Disclosure Statement available upon request to the Voting Agent.

12.     The following holders of Claims and Interests are permitted to vote on the Plan and thus shall receive the Solicitation Package: Holders of Claims in Class 2, Class 3, Class 5, and Class 7, and Holders of Interests in Class 8, but only Holders of Claims or Interests in such Classes:

> (a)     that have filed timely Proofs of Claim, provided that such Proofs of Claim (i) have not been disallowed by an order of the Court, (ii) have not been reduced by order of the Court or are not subject to an objection pending before the Court for reduction or disallowance (with voting permitted only in the reduced or proposed reduced amount and/or classification, if any), or (iii) do not allege claims that are wholly unliquidated (with voting permitted only with respect to the amount thereof that is fixed);
>
> (b)     that have not filed timely Proofs of Claim but whose Claim is scheduled in the Debtors' Schedules, or any amendments thereto, but are not designated therein as contingent, unliquidated or disputed or listed therein as zero or unknown in amount, in the amounts set forth in the Schedules, or any amendments thereto;
>
> (c)     whose Claims have been Allowed pursuant to the Plan;
>
> (d)     whose Claims have not been satisfied as part of the Settlement/Sale Transaction pursuant to paragraph 5 of the Sale Order; and
>
> (e)     whose Interest is recorded in the Schedule of Interests (as defined below).

13.     Voting creditors who have filed duplicate Claims for the same underlying liability that are classified in the same class, for which an objection to the duplicative claim is pending, should be entitled to receive only one Solicitation Package, including only one Ballot, for voting their Claims with respect to that class.

14.     Holders of Claims scheduled as contingent, unliquidated, or disputed, or for $0.00, for which no proof of claim has been filed, and Claims that have been satisfied as part of the Settlement/Sale Transaction pursuant to paragraph 5 of the Sale Order are not entitled to vote on the Plan. Any Claim or Interest (a) asserted in a Proof of Claim as contingent, wholly unliquidated, or for $0.00, (b) asserted in an untimely Proof of Claim, (c) as to which an objection to the Claim or Interest is pending, (d) asserted in an amount that differs from the number of shares and percentage of total outstanding shares comprising such Interest according to the Schedule of Interests, or (e) are otherwise Disputed Claims or Disputed Interests pursuant to the Plan (each holder of such a Claim or Interest, a "Disputed Holder") shall not entitle the Holder of such Claim or Interest to vote on the Plan except as provided herein or by order of the Court. The Voting Agent shall mail, first class postage prepaid, on or before the Solicitation Commencement Date, the Disputed Holder Package to Disputed Holders, including the Notice of Disputed Holder Status in substantially the form attached hereto as **Exhibit C** (the "Notice of Disputed Holder Status"), which is hereby approved.

15.     Disputed Holders shall not be permitted to vote on the Plan absent having filed a motion seeking to be temporarily allowed to vote on the Plan pursuant to Bankruptcy Rule 3018(a) (a "Rule 3018 Motion").  Rule 3018 Motions must be filed with the Court and served upon the Debtors' counsel and the Voting Agent not later than May 7, 2019 at 5:00 p.m. (prevailing Central time) (the "Rule 3018 Motion Deadline").  Any party filing and serving a Rule 3018 Motion by the Rule 3018 Motion Deadline will be provided a Ballot and be permitted to cast a provisional vote to accept or reject the Plan.  If and to the extent that the Debtors and such party are unable to resolve the issues raised by the Rule 3018 Motion prior to the Voting

Deadline, then at the Confirmation, the Debtors will request that the Court determine whether the provisional Ballot should be counted as a vote on the Plan.

16.     The number of shares and percentage of total outstanding shares held by each Holder of Interests as of the Voting Record Date shall be indicated on the Schedule of Interests filed separately with the Court under seal. Ballots sent to Holders of Interests shall indicate the number of shares and percentage of total outstanding shares comprising such Holder's Interests according to the Schedule of Interests. Holders who wish to contest the information provided in the Schedule of Interests and their Ballots related to their holdings of Interests in AAOG must set forth in any Rule 3018 Motion the basis for their disagreement and the information they believe to be accurate. If any Holder that files a Rule 3018 Motion and the Debtors are unable to reach an agreement as to the Holder's Interests, the Court shall determine number of shares and percentage of total outstanding comprising such Holder's Interests for all purposes, including, without limitation, voting and distribution under the Plan. Absent filing a Rule 3018 Motion before the 3018 Motion Deadline, Holders of Interests are deemed to consent to the information provided in their Ballots and the Schedule of Interests for all purposes, including, without limitation, voting and distribution.

17.     Nothing in this Order affects the Debtors' rights (or any other party's right, if applicable) to object to any Claim or Interest. With respect to any such objection, the Debtors may request, on notice, that any vote cast by the holder of a Claim or Interest to which an objection is pending be disallowed and not counted in determining whether the requirements of section 1126(c) of the Bankruptcy Code have been met. In the absence of any such request, the holder of a Claim or Interest to which an objection is pending shall be entitled to vote in

accordance with its Proof of Claim; scheduled Claim; or Interest as indicated in the Schedule of Interests.

18.     The form of Notice of Non-Voting Status attached hereto as **Exhibit D** satisfies the requirements of Bankruptcy Rule 3017(d) and is hereby approved. The Voting Agent shall mail, first class postage prepaid, on or before the Solicitation Commencement Date, to holders of Administrative Claims, Priority Tax Claims and holders of Claim in Classes 1, 4 and 6, a notice in substantially the form (the "Notice of Non-Voting Status") in lieu of a Solicitation Package. The Debtors shall serve the Notice of Non-Voting Status as set forth in the Motion as soon as reasonably possible after entry of this Order.

19.     No Solicitation Packages or other notices shall be transmitted to any person to whom the Debtors mailed a notice of the commencement of the case and first meeting of creditors or a notice of the bar date for filing Proofs of Claim if either of such notices was returned marked "undeliverable" or "moved no forwarding address" or for a similar reason, unless the Debtors has been informed in writing by such person of that person's new address.

20.     On or as soon as practicable after the Solicitation Commencement Date, the Debtors or the Voting Agent shall mail the Solicitation Package and all forms of Ballots and notices proposed herein to the United States Trustee for informational purposes. Solicitation Packages without Ballots shall be mailed for informational purposes to counter-parties to executory contracts listed on the Debtors' Schedules G who have not filed Proofs of Claim and are not scheduled as creditors on the Debtors' Schedules (excluding those counterparties whose executory contract with any Debtor has been assigned to the Purchasers as part of the Settlement/Sale Transaction), and to other parties on the Master Service List maintained in this

case. No Solicitation Package shall be mailed to Holders of Claims that have been satisfied as part of the Settlement/Sale Transaction pursuant to paragraph 5 of the Sale Order.

21.     The Tabulation Procedures attached hereto as **Exhibit E** are approved. Unless otherwise directed by the Court, the Voting Agent shall follow the guidelines set forth therein in tabulating the votes to accept or reject the Plan.

22.     The form of Plan Supplement Notice attached hereto as **Exhibit F** is approved. The Debtors shall serve the Plan Supplement Notice on the date the Debtors file the Plan Supplement, or as soon as practicable thereafter.

23.     The form of Confirmation Hearing Notice, substantially in the form attached hereto as **Exhibit G** is approved. On or before the Solicitation Commencement Date, the Voting Agent shall serve the Confirmation Hearing Notice on all parties listed in the Master Service List maintained in these Chapter 11 Cases.

24.     The notice procedures approved by this Order constitute good and sufficient notice of the Confirmation Hearing, Plan Objection Deadline and procedures for objecting to confirmation of the Plan. No other or further notice shall be necessary.

25.     The Debtors are authorized to make non-substantive changes to the Disclosure Statement, the Plan, the forms of notices and Ballots and related documents without further Order of the Court, including, without limitation, changes to correct typographical and grammatical errors and to make conforming changes among the Disclosure Statement, the Plan, and any other related materials prior to their mailing to parties in interest.

26.     The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Order.

27.     This Court retains jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Order.

<p align="center">###</p>

<u>Prepared and submitted by</u>:
**DYKEMA GOSSETT PLLC**
Deborah D. Williamson
dwilliamson@dykema.com
Patrick L. Huffstickler
phuffstickler@dykema.com
Danielle N. Rushing
drushing@dykema.com
112 East Pecan Street, Suite 1800
San Antonio, Texas 78205
Telephone: (210) 554-5500
Facsimile: (210) 226-8395

– and –

**HOGAN LOVELLS US LLP**
Richard L. Wynne
Pro hac vice admission
richard.wynne@hoganlovells.com
Bennett L. Spiegel
Pro hac vice admission
bennett.spiegel@hoganlovells.com
Erin N. Brady
Pro hac vice admission
erin.brady@hoganlovells.com
1999 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 785-4600
Facsimile: (310) 785-4601

– and –

Christopher R. Bryant (NY 3934973)
Pro hac vice admission
chris.bryant@hoganlovells.com
John D. Beck (TX 24073898)
Pro hac vice admission
john.beck@hoganlovells.com
Sean A. Feener (NY 5605654)
Pro hac vice admission
sean.feener@hoganlovells.com
875 Third Avenue
New York, New York 10022
Telephone: (212) 918-3000
Facsimile: (212) 918-3100

*Counsel for the Debtors and Debtors-in-Possession*

# Exhibit A

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| | § | |
| ALL AMERICAN OIL & GAS | § | Case No. 18-52693-rbk |
| INCORPORATED, *et al.*, | § | |
| Debtors. | § | Jointly Administered Under |
| | § | Case No. 18-52693-rbk |
| | § | |

**DISCLOSURE STATEMENT FOR DEBTORS'**
**JOINT CHAPTER 11 PLAN OF LIQUIDATION**

**IMPORTANT DATES**

- Date by which Ballots must be received: May 29, 2019, at 5:00 p.m. Central

- Deadline by which objections to Confirmation of the Plan must be Filed and served: May 29, 2019, at 5:00 p.m. Central

- Hearing on Confirmation of the Plan: June 5, 2019, at 9:30 a.m. Central

**DYKEMA GOSSETT PLLC**
Deborah D. Williamson (TX 21617500)
dwilliamson@dykema.com
Patrick L. Huffstickler (TX 10199250)
phuffstickler@dykema.com
Danielle N. Rushing (TX 24086961)
drushing@dykema.com

112 East Pecan Street, Suite 1800
San Antonio, Texas 78205
Telephone: (210) 554-5500
Facsimile: (210) 226-8395

*- and -*

**HOGAN LOVELLS US LLP**
Richard L. Wynne (CA 120349)
*Pro hac vice* admission
richard.wynne@hoganlovells.com
Bennett L. Spiegel (CA 129558)
*Pro hac vice* admission
bennett.spiegel@hoganlovells.com
Erin N. Brady (CA 215038)
*Pro hac vice* admission
erin.brady@hoganlovells.com

1999 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 785-4600
Facsimile. (310) 785-4601

*Counsel for Debtors*

THIS DISCLOSURE STATEMENT CONTAINS SUMMARIES OF CERTAIN PROVISIONS OF THE PLAN AND CERTAIN OTHER DOCUMENTS AND FINANCIAL INFORMATION. THE INFORMATION INCLUDED IN THIS DISCLOSURE STATEMENT IS PROVIDED FOR THE PURPOSE OF SOLICITING ACCEPTANCES OF THE PLAN AND SHOULD NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN TO DETERMINE WHETHER AND HOW TO VOTE ON THE PLAN. THE SUMMARIES OF THE FINANCIAL INFORMATION AND THE DOCUMENTS WHICH ARE ATTACHED TO, OR INCORPORATED BY REFERENCE IN, THIS DISCLOSURE STATEMENT ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO SUCH INFORMATION AND DOCUMENTS AND THE STATEMENTS REFLECTED HEREIN OR THEREIN, RESPECTIVELY. IN THE EVENT OF ANY INCONSISTENCY OR DISCREPANCY BETWEEN A DESCRIPTION IN THIS DISCLOSURE STATEMENT AND THE TERMS AND PROVISIONS OF THE PLAN, OR THE OTHER DOCUMENTS AND FINANCIAL INFORMATION INCORPORATED IN THIS DISCLOSURE STATEMENT BY REFERENCE, THE PLAN OR THE OTHER DOCUMENTS AND FINANCIAL INFORMATION, AS THE CASE MAY BE, SHALL GOVERN FOR ALL PURPOSES.

THE STATEMENTS AND FINANCIAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAVE BEEN MADE AS OF THE DATE OF THIS DISCLOSURE STATEMENT UNLESS OTHERWISE SPECIFIED. HOLDERS OF CLAIMS AND INTERESTS REVIEWING THIS DISCLOSURE STATEMENT SHOULD NOT INFER AT THE TIME OF SUCH REVIEW THAT THERE HAVE BEEN NO CHANGES IN THE FACTS SET FORTH IN THIS DISCLOSURE STATEMENT SINCE THE DATE OF THIS DISCLOSURE STATEMENT OR THE DATES OTHERWISE NOTED. EACH HOLDER OF A CLAIM OR INTEREST ENTITLED TO VOTE ON THE PLAN SHOULD CAREFULLY REVIEW THE PLAN, THIS DISCLOSURE STATEMENT, AND THE PLAN SUPPLEMENT IN THEIR ENTIRETY BEFORE CASTING A BALLOT. THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE LEGAL, BUSINESS, FINANCIAL, OR TAX ADVICE. ENTITIES DESIRING SUCH ADVICE OR ANY OTHER ADVICE SHOULD CONSULT WITH THEIR OWN ADVISORS.

NO ONE IS AUTHORIZED TO GIVE ANY INFORMATION WITH RESPECT TO THE PLAN OTHER THAN THAT WHICH IS CONTAINED IN THIS DISCLOSURE STATEMENT. NO REPRESENTATIONS CONCERNING THE DEBTORS OR THE VALUE OF THEIR PROPERTY HAVE BEEN AUTHORIZED BY THE DEBTORS OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT AND THE DOCUMENTS ATTACHED TO THIS DISCLOSURE STATEMENT. ANY INFORMATION, REPRESENTATIONS, OR INDUCEMENTS MADE TO OBTAIN AN ACCEPTANCE OF THE PLAN THAT ARE OTHER THAN AS SET FORTH, OR INCONSISTENT WITH THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT OR THE DOCUMENTS ATTACHED TO THIS DISCLOSURE STATEMENT AND THE PLAN, SHOULD NOT BE RELIED UPON BY ANY HOLDER OF A CLAIM OR INTEREST.

WITH RESPECT TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS, AND OTHER PENDING, THREATENED, OR POTENTIAL LITIGATION OR OTHER ACTIONS, THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE, AND MAY NOT BE CONSTRUED AS, AN ADMISSION OF FACT, LIABILITY, STIPULATION, OR

WAIVER, BUT RATHER AS A STATEMENT MADE IN THE CONTEXT OF SETTLEMENT NEGOTIATIONS PURSUANT TO RULE 408 OF THE FEDERAL RULES OF EVIDENCE. THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED OR DISAPPROVED BY THE UNITED STATES SECURITIES AND EXCHANGE COMMISSION, NOR HAS THE COMMISSION PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT.

THE FINANCIAL INFORMATION CONTAINED IN OR INCORPORATED BY REFERENCE INTO THIS DISCLOSURE STATEMENT HAS NOT BEEN AUDITED, EXCEPT AS SPECIFICALLY INDICATED OTHERWISE.

THE PROJECTIONS PROVIDED IN THIS DISCLOSURE STATEMENT, WHILE PRESENTED WITH NUMERICAL SPECIFICITY, ARE NECESSARILY BASED ON A VARIETY OF ESTIMATES AND ASSUMPTIONS THAT, THOUGH CONSIDERED REASONABLE BY THE DEBTOR AND ITS PROFESSIONALS, MAY NOT BE REALIZED, AND ARE INHERENTLY SUBJECT TO SIGNIFICANT BUSINESS, ECONOMIC, COMPETITIVE, INDUSTRY, REGULATORY, MARKET, AND FINANCIAL UNCERTAINTIES AND CONTINGENCIES, MANY OF WHICH ARE BEYOND THE DEBTORS' CONTROL. THE DEBTORS CAUTION THAT NO REPRESENTATIONS CAN BE MADE AS TO THE ACCURACY OF THESE PROJECTIONS OR TO THE ABILITY TO ACHIEVE THE PROJECTED RESULTS.

**THE BANKRUPTCY COURT HAS SCHEDULED THE CONFIRMATION HEARING TO COMMENCE ON JUNE 5, 2019, AT 9:30 A.M. PREVAILING CENTRAL TIME BEFORE THE HONORABLE RONALD B. KING, CHIEF UNITED STATES BANKRUPTCY JUDGE, IN THE UNITED STATES BANKRUPTCY COURT FOR THE WESTERN DISTRICT OF TEXAS, SAN ANTONIO DIVISION, 615 E. HOUSTON ST., COURTROOM 1, SAN ANTONIO, TEXAS 78205. THE CONFIRMATION HEARING MAY BE ADJOURNED FROM TIME TO TIME BY THE BANKRUPTCY COURT WITHOUT FURTHER NOTICE EXCEPT FOR AN ANNOUNCEMENT OF THE ADJOURNED DATE MADE AT THE CONFIRMATION HEARING OR ANY ADJOURNMENT OF THE CONFIRMATION HEARING.**

**TO BE COUNTED, THE BALLOT INDICATING ACCEPTANCE OR REJECTION OF THE PLAN MUST BE RECEIVED BY THE VOTING AGENT FOR THE DEBTOR IN THESE CHAPTER 11 CASES, BY NO LATER THAN MAY 29, 2019, AT 5:00 P.M. PREVAILING CENTRAL TIME.**

**OBJECTIONS TO CONFIRMATION OF THE PLAN MUST BE FILED AND SERVED ON OR BEFORE 5:00 P.M. PREVAILING CENTRAL TIME ON MAY 29, 2019. UNLESS OBJECTIONS TO CONFIRMATION ARE TIMELY SERVED AND FILED IN COMPLIANCE WITH THE ORDER APPROVING THIS DISCLOSURE STATEMENT, THEY MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT.**

**TABLE OF CONTENTS**

SUMMARY OF PLAN ...........................................................................................................5

ARTICLE I BACKGROUND ...........................................................................................6

    1.1    Introduction ...................................................................................... 6
    1.2    Sources of Information ...................................................................... 6
    1.3    Overview of Chapter 11 .................................................................... 7
    1.4    Description of Debtors' Businesses and Assets ................................. 7
    1.5    Debtors' Capital Structure ................................................................ 8
    1.6    Events Precipitating the Bankruptcy Case ....................................... 9
    1.7    Administration of the Chapter 11 Cases ........................................... 9

ARTICLE II CLASSIFICATION AND TREATMENT  OF CLAIMS AND INTERESTS........13

    2.1    Introduction .................................................................................... 13
    2.2    Voting; Acceptance by Impaired Classes ....................................... 13
    2.3    Cramdown ....................................................................................... 14
    2.4    Administrative Claims .................................................................... 14
    2.5    Priority Tax Claims ........................................................................ 15
    2.6    Other Priority Claims ..................................................................... 15
    2.7    Allowed Secured DWT Claim ....................................................... 15
    2.8    Secured Claim of Prepetition Secured Parties ............................... 15
    2.9    Other Secured Claims ..................................................................... 16
    2.10    General Unsecured Claims .............................................................. 16
    2.11    Intercompany Claims ...................................................................... 17
    2.12    CFS Claim ....................................................................................... 17
    2.13    Interests .......................................................................................... 17
    2.14    Summary of Proposed Distributions Under the Plan ...................... 18

ARTICLE III MEANS FOR IMPLEMENTATION OF THE PLAN .........................................19

    3.1    Other Assets ................................................................................... 19
    3.2    Operations Between Confirmation Date and Effective Date ........... 19
    3.3    The Liquidating Trust .................................................................... 19
    3.4    Disbursing Agent ........................................................................... 21
    3.5    Cancellation of Interests ................................................................. 22
    3.6    Termination of Status; Officers and Directors ............................... 22
    3.7    Distribution Procedures .................................................................. 23
    3.8    Effectuating Documents; Further Transactions .............................. 23
    3.9    Exemption from Certain Transfer Taxes ........................................ 23
    3.10    Closing of the Debtors' Chapter 11 Cases. ..................................... 23

ARTICLE IV THE SOLICITATION; VOTING PROCEDURES ............................................24

    4.1    Solicitation Package ....................................................................... 24
    4.2    Voting Instructions ......................................................................... 24
    4.3    Voting Tabulation .......................................................................... 25

    4.4    Agreements upon Furnishing Ballots.................................................................. 25

ARTICLE V FEASIBILITY, BEST INTEREST OF THE CREDITORS AND
           LIQUIDATION ...................................................................................26

    5.1    Feasibility of the Plan ..................................................................................... 26
    5.2    Best Interest of Creditors Test ........................................................................ 26

ARTICLE VI CONFIRMATION PROCEDURES.........................................................27

    6.1    The Confirmation Hearing ............................................................................... 27
    6.2    Statutory Requirements for Confirmation of the Plan ..................................... 27
    6.3    Identity of Persons to Contact for More Information ...................................... 30

ARTICLE VII CERTAIN RISK FACTORS AFFECTING THE DEBTOR ...............30

    7.1    Certain Bankruptcy Law Considerations ........................................................ 30

ARTICLE VIII ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF
           THE PLAN .........................................................................................31

    8.1    Liquidation Under Chapter 7; Liquidation Analysis ...................................... 31
    8.2    Alternative Plan .............................................................................................. 32

ARTICLE IX EXECUTORY CONTRACTS, UNEXPIRED LEASES, AND OTHER
           AGREEMENTS....................................................................................32

    9.1    Assumption/Rejection...................................................................................... 32
    9.2    Claims Based on Rejection of Executory Contracts and Unexpired Leases ........ 32
    9.3    Reservation of Rights...................................................................................... 33
    9.4    Nonoccurrence of Effective Date.................................................................... 33

ARTICLE X PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT, AND
           UNLIQUIDATED CLAIMS ...............................................................33

    10.1    Objections to Claims........................................................................................ 33
    10.2    Objection Deadline .......................................................................................... 33
    10.3    Estimation of Claims........................................................................................ 34
    10.4    No Distributions Pending Allowance .............................................................. 34
    10.5    Distributions After Allowance ........................................................................ 35
    10.6    Reduction of Claims ........................................................................................ 35
    10.7    Compliance with Tax Requirements/Allocations ................................................ 35

ARTICLE XI CONDITIONS PRECEDENT TO CONFIRMATION AND
           CONSUMMATION OF THE PLAN ..................................................36

    11.1    Conditions Precedent to Confirmation............................................................ 36
    11.2    Conditions Precedent to Effective Date .......................................................... 36
    11.3    Substantial Consummation .............................................................................. 37
    11.4    Waiver of Conditions...................................................................................... 37
    11.5    Revocation, Withdrawal, or Non-consummation .............................................. 37

ARTICLE XII AMENDMENTS AND MODIFICATIONS.........................................37

ARTICLE XIII RETENTION OF JURISDICTION ....................................................37

ARTICLE XIV COMPROMISES AND SETTLEMENTS .......................................................39

ARTICLE XV MISCELLANEOUS PROVISIONS ...............................................................39

15.1    Bar Dates for Certain Actions........................................................... 39
15.2    Severability of Plan Provisions........................................................ 40
15.3    Successors and Assigns.................................................................... 40
15.4    Releases............................................................................................ 41
15.5    Bankruptcy Rule 3016 Compliance ................................................ 42
15.6    Exculpation ..................................................................................... 42
15.7    Permanent Injunction ...................................................................... 42
15.8    Term of Injunctions or Stay ........................................................... 43
15.9    Binding Effect................................................................................. 43
15.10    Notices ............................................................................................ 43
15.11    Setoffs/Counterclaims..................................................................... 44
15.12    Recoupment ..................................................................................... 44
15.13    Release of Liens .............................................................................. 45
15.14    Request for Expedited Tax Review ................................................. 45
15.15    No Admissions ................................................................................ 45
15.16    Entire Agreement ............................................................................ 45
15.17    Governing Law ............................................................................... 45

ARTICLE XVI CERTAIN U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE
PLAN .................................................................................................................46

16.1    Certain Material U.S. Federal Income Tax Consequences of the Plan................. 46
16.2    Consequences to U.S. Holders of Certain Claims ................................ 47
16.3    Tax Treatment of Liquidating Trust and Its Beneficial Holders........................... 49
16.4    Information Reporting and Withholding .......................................... 51
16.5    Importance of Obtaining Professional Tax Assistance ....................... 51

ARTICLE XVII CONCLUSION AND RECOMMENDATION .................................................51

## TABLE OF EXHIBITS

| Exhibit | Name |
| --- | --- |
| A | Plan of Liquidation |
| B | Creditors Whose Claims Have Been Assumed By the Purchasers Under the Sale Order and Deemed Satisfied By The Debtors |
| C | Assignment of Overriding Royalty Interest |
| D | Wind-Down Budget |
| E | Schedule of Contracts Assumed and Assigned to the Purchasers Under the Sale Order |

## SUMMARY OF PLAN

On March 21, 2019, All American Oil & Gas Incorporated ("AAOG"); Manor Oil, Inc., formerly known as Kern River Holdings Inc. ("Manor"); and Hilltop Power, Inc., formerly known as Western Power & Steam, Inc. ("Hilltop", and together with AAOG and Manor, the "Debtors"), the debtors and debtors-in-possession in the above-captioned cases, filed their Joint Chapter 11 Plan of Liquidation,[1] which proposes to establish a trust to liquidate the Debtors' remaining assets, wind-down their affairs and make distributions to Holders of Claims and Interests. Pursuant to the terms of the Plan and the Liquidating Trust Agreement, a Liquidating Trustee will distribute, through a disbursing agent, the net proceeds of the ORRI (as defined below) and of the net proceeds from any sale or merger of AAOG's stock to Holders of Claims not otherwise paid by the Wind-Down Budget and Holders of Interests after all Claims have been paid in full.

Under the Plan, all Allowed Administrative Claims, all Allowed Priority Tax Claims, and all Other Priority Claims shall be paid in full on or promptly after the Effective Date. The Allowed Secured Claim of Davis Wright Tremaine LLP (the "Allowed Secured DWT Claim") is impaired, and the Holder of the Allowed Secured DWT Claim shall receive, on or as soon as reasonably practicable after the Effective Date, payment in the amount of $3,400.00. Holders of Allowed Other Secured Claims will receive either: (i) the amount of such Allowed Other Secured Claim in Cash; (ii) setoff against the retainer securing such Other Secured Claim held by the Holder of such Claim on the Debtors' accounts; or (iii) the return of the applicable Collateral in satisfaction of the Allowed amount of such Other Secured Claim. The Holder of the Allowed Secured Claim of Prepetition Secured Parties shall receive, in full satisfaction, release and discharge of and in exchange for the Secured Claim of Prepetition Secured Parties, the treatment provided to Prepetition Secured Parties pursuant to the Settlement/Sale Transaction and the Sale Order. Holders of Allowed General Unsecured Claims will receive payment in full on such Holder's Allowed General Unsecured Claim, except to the extent such Allowed General Unsecured Claim is settled or otherwise compromised with the Debtors. Allowed Interests in AAOG shall be exchanged by their Holders for such Holder's Pro Rata share of interests in the Liquidating Trust according to the Schedule of Interests, and the Holders of such Interests shall receive net proceeds of the five and a half year overriding royalty interest (the "ORRI"), if any, and of the net proceeds from any sale or merger of AAOG's stock through periodic distributions from the Liquidating Trust after all Claims have been paid in full.

Although proposed jointly for administrative purposes, the Plan constitutes a separate Plan for each Debtor for the resolution of outstanding claims against and interests in each Debtor pursuant to the Bankruptcy Code. Each Debtor is a proponent of the Plan within the meaning of § 1129 of the Bankruptcy Code. The Plan contemplates no substantive consolidation of any of the Debtors.

---

[1] Capitalized terms used in this Disclosure Statement and not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

# ARTICLE I
# BACKGROUND

### 1.1     Introduction

The Debtors submit the following Disclosure Statement pursuant to Bankruptcy Code section 1125 for the purpose of soliciting votes to accept or reject the Debtors' Plan. A copy of the Plan is attached hereto as **Exhibit A**. This Disclosure Statement describes certain aspects of the Plan, including the treatment of Holders of Allowed Claims and Interests, and also describes certain aspects of the Debtors' operations and other related matters.

On the Petition Date, the Debtors each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court. Pursuant to Bankruptcy Code sections 1107 and 1108, the Debtors continued to operate their businesses and manage their properties as debtors in possession in these Chapter 11 Cases.

### 1.2     Sources of Information

**THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECTED TO A CERTIFIED AUDIT AND IS BASED, IN PART, UPON INFORMATION PREPARED BY PARTIES OTHER THAN THE DEBTORS. THEREFORE, ALTHOUGH THE DEBTORS HAVE MADE EVERY REASONABLE EFFORT TO BE ACCURATE IN ALL MATERIAL MATTERS, THE DEBTORS ARE UNABLE TO WARRANT OR REPRESENT THAT ALL THE INFORMATION CONTAINED HEREIN IS COMPLETELY ACCURATE.**

Except as otherwise expressly indicated, the portions of this Disclosure Statement describing the Debtors, their businesses, properties and management, and the Plan, have been prepared from information furnished by the Debtors.

Certain of the materials contained in this Disclosure Statement are taken directly from other readily accessible documents or are digests of other documents. While the Debtors have made every effort to retain the meaning of such other documents or portions that have been summarized, the Debtors urge that any reliance on the contents of such other documents should depend on a thorough review of the documents themselves. In the event of a discrepancy between this Disclosure Statement and the actual terms of a document, the actual terms of such document shall apply.

The authors of this Disclosure Statement have compiled information from the Debtors without professional comment, opinion or verification and do not suggest comprehensive treatment has been given to matters identified herein. Each Holder of a Claim and/or Interest is urged to independently investigate any such matters prior to reliance.

No statements concerning the Debtors, the value of their property, or the value of any benefit offered to the Holder of a Claim or Interest in connection with the Plan should be relied upon other than as set forth in this Disclosure Statement. In arriving at your decision, you should not rely on any representation or inducement made to secure your acceptance or rejection that is contrary to information contained in this Disclosure Statement, and any such additional

representations or inducements should be reported to counsel for the Debtors, (i) Hogan Lovells US LLP, 875 Third Avenue, New York, New York 10022, Attn.: Sean A. Feener; and (ii) Dykema Gossett PLLC, 112 East Pecan Street, Suite 1800, San Antonio, Texas 78205, Attn: Danielle N. Rushing.

### 1.3 Overview of Chapter 11

Chapter 11 is the principal business reorganization chapter of the Bankruptcy Code. Chapter 11 authorizes a debtor to reorganize its business for the benefit of its creditors, equity interest holders, and other parties in interest. Commencing a chapter 11 case creates an estate that comprises all of the legal and equitable interests of the debtor as of the filing date. The Bankruptcy Code provides that the debtor may continue to operate its business and remain in possession of its property as a "debtor in possession."

The principal objective of a chapter 11 case is to consummate a plan. A plan sets forth the means for satisfying claims against and interests in a debtor. Confirmation of a plan by a bankruptcy court binds a debtor, any issuer of securities thereunder, any person acquiring property under the plan, any creditor or equity interest holder of a debtor, and any other person or entity the bankruptcy court may find to be bound by such plan. Chapter 11 requires that a plan treat similarly situated creditors and similarly situated equity interest holders equally, subject to the priority provisions of the Bankruptcy Code.

Prior to soliciting acceptances of a proposed plan, Bankruptcy Code section 1125 requires a debtor to prepare a disclosure statement containing information of a kind, and in sufficient detail, to enable a hypothetical reasonable investor to make an informed judgment regarding acceptance of the plan. This Disclosure Statement is submitted in accordance with Bankruptcy Code section 1125.

### 1.4 Description of Debtors' Businesses and Assets

AAOG was a small, privately-held oil and gas exploration and production company incorporated in the State of Delaware in December 2003. Headquartered in San Antonio, Texas, AAOG was the holding company for KRH and WPS, its two wholly-owned operating subsidiaries, and provided legal, accounting, human resources, information technology, and other general and administrative services on a cost-effective basis to KRH and WPS. KRH and WPS were both located in Bakersfield, California and incorporated in the State of Delaware. AAOG has approximately 130 shareholders, most of whom live in Europe. AAOG's European shareholders collectively own roughly 41% of AAOG's outstanding shares of common stock. Members and former members of AAOG's management team collectively owned approximately 51% of AAOG's common stock.

The Debtors' businesses were conducted primarily through KRH. KRH owned and operated six oil and gas leases totaling 215 acres and over 100 producing and steam injection wells located in the shallow oil sands on the southwest edge of the Kern River Oil Field near Bakersfield, California. The Kern River Field has produced in excess of 2.6 billion barrels (3.6 billion original oil in place, or "OOIP") and recently produced approximately 66,000 barrels per day. The heavy oil from the Kern River Field can be produced in economic quantities only

through a state-of-the-art steam flood injection that heats up the oil, reducing its viscosity and allowing it to flow to the producing wells. KRH's leases offset ChevronTexaco's properties in the field and were in a down dip position that benefited from gravity drainage, which resulted in high average recoveries. KRH grew from approximately 40 barrels per day in 2010 to an average of over 2,000 barrels per day through October 2018, and annual production for 2017 was 821,859 barrels.

WPS owned and operated a 20-MW power co-generation facility utilizing a gas-powered turbine, and was located adjacent to KRH in the Kern River Field. WPS's operations benefited KRH by supplying power and steam in a cost-effective manner and proved marginally profitable for WPS. WPS sold approximately 2.5 MW of electricity to KRH at approximately $0.10 per kilowatt hour. WPS sold its remaining 17.5 MW of electricity to the public utility, PG&E. WPS generated $10.107 million of revenue in 2017, and generated $10.108 million in revenue for the twelve-month period ending December 31, 2018. As further described herein, the Debtors sold substantially all of their assets to KCO pursuant to Bankruptcy Court order dated March 1, 2019. The closing date occurred on March 1, 2019.

The Debtors' senior managers each had more than 30 years of oilfield experience in engineering, finance, and power generation, while their Boards of Directors, staff, and key consultants had complementary geological, geotechnical, and financial expertise. This team had a proven track record of exploiting underdeveloped assets and making significant acquisitions with competitive advantages through well-established relationships and strategic alliances. The Debtors' management teams also had a significant track record and proven experience in navigating the complexities associated with the development of oil projects in California, which bring with them a host of bureaucratic issues that many other producers are not equipped to resolve. The Debtors' management teams had a long history in California and developed the practical expertise to attack and overcome these bureaucratic hurdles in an efficient (and importantly, profitable) manner.

## 1.5 Debtors' Capital Structure

AAOG was a privately held company. As of March 2019, AAOG had 10 million shares of common stock, par value $0.01 per share ("Common Stock") authorized under its charter documents, of which 6,280,346 shares of Common Stock were issued and outstanding. There were approximately 130 holders of record of AAOG's Common Stock as of October 31, 2018. AAOG had 100,000 shares of preferred stock, par value $0.01, (the "Preferred Stock") authorized. As of the date of this Disclosure Statement, no Preferred Stock has been issued.

As of the Petition Date, the Debtors were justly and lawfully indebted and liable under (i) the First Lien Credit Agreement in the aggregate amount of no less than $83,472,346.15; and (ii) the Second Lien Credit Agreement, in the aggregate amount of no less than $62,398,810.48, both in respect of principal and accrued non-default interest on loans made pursuant to the respective credit agreement.

1.6     **Events Precipitating the Bankruptcy Case**

At the time of their bankruptcy filings, the Debtors were in the midst of a dispute with KCO, which had purchased in full the Debtors' obligations under the First Lien Credit Agreement and Second Lien Credit Agreement. The Debtors contended that KCO had acted in bad faith in its prepetition dealings with the Debtors, including by improperly declaring events of default. KCO, for its part, maintained that its assertion of prepetition events of default was justified and done in good faith, and in any event, KCO had never exercised any pre-petition remedy (other than assessing default interest which was not paid), and that it held valid, perfected first and second lien secured claims against the Debtors in excess of $140 million. The Debtors and KCO have since resolved their disputes, including through an extensive two-day mediation, which has culminated in the Settlement/Sale Transaction and the sale of substantially all of the Debtors' assets to KCO and its wholly-owned subsidiaries, facilitating the payment to creditors and providing the foundation for the Plan. In addition, the Debtors have agreed to the following statement as part of resolving all issues with KCO:

> **There is, and has been, no determination made, or litigation filed alleging that the Purchasers, their Affiliates, or any party acting on their behalf has engaged in any wrongdoing, despite the previous economic disputes. After engaging in a full mediation with a former Bankruptcy Judge, Randall Newsome, the Debtor Settlement Parties believe that the Settlement is in the best interest of all parties involved, and have obtained Court approval of the Settlement/Sale Transaction. Without limiting the generality of the foregoing, the Debtors acknowledge that Cary Meadow did not act as their investment banker and that they know of no facts that indicate that Cary Meadow, Paul Kromwyk nor any other officer, employee or representative of the Purchasers or any of their Affiliates, misused any confidential information related to the Debtors.**

1.7     **Administration of the Chapter 11 Cases**

1.7.1     *First-day Motions*

On the Petition Date, the Debtors filed various motions (collectively, the "First Day Motions") requesting first day relief, including authority to: (i) retain and appoint BMC as the Claims and Noticing Agent [ECF No. 8]; (ii) continue using its existing cash management system, including maintenance of bank accounts and existing business forms and checks [ECF No. 17]; (iii) pay prepetition employee obligations [ECF No. 21]; (iv) pay certain prepetition taxes and fees [ECF No. 20]; (v) prohibit utility providers from altering, refusing or discontinuing service to the Debtors [ECF No. 24]; (vi) make payments to holders of Mineral Interests [ECF No. 15]; (vii) establish notice and objection procedures related to certain transfers of AAOG's Equity Securities [ECF No. 19]; and (viii) use cash collateral of the First and Second Lien Secured Parties [ECF No. 22].

### 1.7.2 *Cash Collateral Motion*

On the Petition Date, among other motions, the Debtors filed the *Debtors' Emergency Motion Pursuant to Sections 105, 361, 362, 363, 507 and 552 of the Bankruptcy Code for Entry of Interim and Final Orders (I) Authorizing the Use of Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling a Final Hearing Pursuant to Bankruptcy Code Rule 4001, and (IV) Granting Related Relief* [ECF No. 27] (the "Cash Collateral Motion"). Under the Cash Collateral Motion, the Debtors sought interim and final approval to use cash collateral without KCO's consent to fund their ongoing operations. Shortly before the first day hearing, KCO and the Debtors agreed on the terms under which the Debtors would be permitted to use cash collateral through the second-day hearing scheduled for mid-December, with KCO and the Debtors reserving all rights with respect to further cash collateral usage, adequate protection, and all other disputed matters. This Court granted initial relief in the form of the First Interim Order consistent with the parties' agreement on an interim basis, following the emergency first day hearings on November 15, 2018.

Following the entry of the First Interim Order, KCO and the Debtors prepared to litigate cash collateral usage at the second-day hearing scheduled for December 13, 2018. KCO filed an objection to further usage of cash collateral on December 7, 2018 [ECF No. 120], and sought discovery from the Debtors in connection therewith. In addition, over the week leading up to the second-day hearing, the Debtors and KCO deposed several potential witnesses in connection with the anticipated cash collateral litigation. During the hearing, the Debtors (through their counsel) announced agreements regarding the Second Interim Order on the Cash Collateral Motion, which included, inter alia, authorization to use cash collateral through January 7, 2019, an adequate protection payment to KCO in the amount of $1,894,716.00 on or before December 21, 2018, and agreements between the Debtors and KCO to attend mediation and begin an expedited sale and refinance process if the mediation proved unsuccessful. The Court entered a third interim cash collateral motion on January 7, 2019, authorizing the Debtors to continue operations while making an additional adequate protection payment to KCO in the amount of $1,400,000 on or before January 11, 2019 [ECF No. 223]. The Court approved further interim use of cash collateral on January 22, 2019 pursuant to the terms set forth in the fourth interim order [ECF No. 311], which permitted the Debtors' continued use of cash collateral through February 22, 2019. A fifth interim order permitting the Debtors' use of cash collateral, which became a Final Order upon the Closing Date, was entered by the Court on March 1, 2019 [ECF No. 466].

### 1.7.3 *Retention of Professionals*

Pursuant to Court order, the Debtors have retained Hogan Lovells US LLP and Dykema Gossett PLLC as their general bankruptcy and restructuring counsel, and Houlihan Lokey, Inc. as their financial advisor.

On December 4, 2018, the U.S. Trustee appointed an official committee of unsecured creditors (the "UCC") in these Chapter 11 Cases [ECF No. 111]. The UCC has retained Brinkman Portillo Ronk, APC as its counsel and Dundon Advisers LLC as financial advisor.

On January 18, 2019, certain of AAOG's equity security holders filed an expedited motion seeking appointment of an official committee of equity security holders (the "Ad Hoc Committee") in these Chapter 11 Cases [ECF No. 280]. On February 12, 2019, following a hearing on its merits, the motion of the Ad Hoc Committee was denied [ECF No. 401].

### 1.7.4    *Resolution of Disputes with KCO*

As is the case with any upstream producer, the Debtors' enterprise value was highly sensitive to fluctuations in oil prices. Immediately after the Petition Date, commodity prices fell significantly (i.e., both spot prices and strip pricing). KCO took the position that replacement liens and superpriority claims were not sufficient adequate protection for purposes of continuing use of cash collateral given KCO's existing blanket liens, which position—if adopted by the Court—would have jeopardized the Debtors' continuing ability to use cash collateral. In addition, the Debtors were concerned that demonstrating adequate protection through the existence of an equity cushion would be difficult in light of the post-petition decline in oil prices and the resulting impact on the Debtors' enterprise value. And given the state of commodity prices and financial performance, the Debtors understood they were unlikely to procure any new or additional financing alternatives.

Both the Debtors and KCO realized that their disputes had the potential to escalate quickly, resulting in lengthy and costly litigation during the course of these cases with an uncertain outcome and extremely high stakes. The Debtors faced the prospect of losing access to cash collateral necessary to continue operating their business and preserve the value of their assets. From the Debtors' perspective, the costs and risks of litigation would have jeopardized the Debtors' ability to provide any recovery to other creditors or equity holders. Consequently, the Debtors agreed to mediate their disputes with KCO before retired Bankruptcy Judge Randall Newsome. The mediation between the Debtors and KCO took place over December 19 and 20, 2018, and was attended by principals from the Debtors and KCO, and their respective counsel and financial advisors/investment bankers. Following two days of negotiations, KCO and the Debtors agreed in principle to the Settlement/Sale Transaction, which would embody a global settlement of the parties' disputes.

### 1.7.5    *Approval of the Settlement/Sale Transaction*

The Debtors sought approval of the Settlement/Sale Transaction by motion to this Court [ECF No. 298] (the "Sale Motion"), which the Court heard at a hearing held on February 21, 2019. The Settlement/Sale Transaction, as approved by order of the Court entered on March 1, 2019 (the "Sale Order"), contemplated a private sale of substantially all of the Debtors' assets to the Purchasers under Section 363(b) of the Bankruptcy Code through the First Lien Collateral Agent's and Second Lien Collateral Agent's credit bid of a portion of the secured debt under the First Lien Credit Agreement and Second Lien Credit Agreement, on the terms of that certain Settlement and Asset Purchase Agreement (the "Purchase Agreement") by and among the Debtors and the Purchasers.

Critically, the Settlement/Sale Transaction provides a full recovery to all unsecured trade creditors and mineral interest holders and a meaningful likelihood of recovery (depending on future oil prices) for Holders of Allowed Interests in AAOG. The Purchasers also assumed

substantially all allowed claims of the Debtors' pre-petition trade creditors, and will provide the ORRI to the Debtors or their successors, which may yield funds to distribute to the Debtors' remaining claimants (if any) and equity security holders, on the terms set forth in that certain *Assignment of Overriding Royalty Interest* from KRH II to AAOG, dated as of 7:01 a.m. Pacific Time on March 1, 2019, and attached to this Disclosure Statement as **Exhibit C**. The ORRI provides for a payment of $550,000 per six-month period (up to a maximum of $5,500,000), payable to the Liquidating Trust semiannually through and including the date that is five and a half years after closing of the Settlement/Sale Transaction, solely to the extent the Purchasers entities' (or their successors' or assigns') realized average price for sales to non-affiliates (measured in a manner consistent with the existing prepetition third party production payments to the Debtors, but for the avoidance of doubt, not deducting the existing burdens of production or taking into account the impact of any hedging of production in making such calculation) exceeds $70.00 per barrel, beginning on April 1, 2019. While the Debtors believe that the realized price per barrel has crested the $70.00 mark since the ORRI period began, there is no assurance that it will remain at such level throughout the first 6 month period or any future measuring period.

### 1.7.6   *Plan of Liquidation*

Following entry of the Sale Order, the Debtors now seek to confirm a chapter 11 plan of liquidation (the "Plan") to, among other things, wind down the Debtors' estates, liquidate any remaining assets, and make distributions to Holders of Allowed Claims and Allowed Interests.

The Plan is the result of extensive negotiations among the Debtors and KCO, and proposes to wind down the Debtors' affairs, and establish and fund a trust to make distributions to Holders of Allowed Claims and Allowed Interests. Under the Plan and the Liquidating Trust Agreement contemplated by the Plan, a Liquidating Trustee, through a disbursing agent, will make distributions to Holders of Allowed Claims pursuant to the amounts provided in that certain wind down budget (the "Wind-Down Budget") approved by KCO as part of the Settlement/Sale Transaction. To the extent funds in the Wind-Down Budget are insufficient to satisfy Allowed Claims, any remaining amounts owed will come from proceeds of the ORRI, if any, as and when such proceeds are received by the Liquidating Trustee, before any distributions will be made to Holders of Interests from net proceeds of the ORRI.

Following approval of the Wind-Down Budget, certain Ordinary Course Professionals and Holders of Other Secured Claims may have drawn-down on retainers held on account for the Debtors in the aggregate amount of approximately $20,000.00. To the extent that any such draw-downs occurred, the Plan contemplates relief from the automatic stay imposed by 11 U.S.C. § 362, granted *nunc pro tunc* to March 1, 2019, to allow setoff of all amounts owed to Ordinary Course Professionals and delivery of any excess retainers to the Debtors pursuant to the terms of the Wind-Down Budget, as set forth more fully in the treatment of Other Secured Claims contained in the Plan.

Pursuant to the Purchase Agreement, the Debtors' names were included among the assets acquired by the Purchasers, and the Debtors have thirty days following the Closing Date to file the relevant documentation to effectuate formal name changes. The Debtor entities formerly known as KRH and WPS have been renamed Manor Oil, Inc. and Hilltop Power, Inc.

The Debtors have been approached regarding a potential sale or merger transaction with an unrelated purchaser of the stock in AAOG solely for the purpose of acquiring AAOG's corporate charter following the Effective Date. Such transaction, if consummated, would provide extra funds for the administration of the trust and to make distributions to Trust Beneficiaries and payments to Holders of Allowed Claims not satisfied by the Wind Down Budget, if any.

### 1.7.7 *Preference and Other Potential Avoidance Actions*

The Bankruptcy Code preserves the Debtors' right to prosecute claims and causes of action which exist outside of bankruptcy, and also empowers the Debtors to prosecute certain claims which are established by the Bankruptcy Code, including claims to avoid and recover preferential transfers and fraudulent conveyances. As part of the Settlement/Sale Transaction, KCO purchased as Acquired Assets all of the Debtors' Causes of Action, including Avoidance Actions, and agreed not to pursue any Avoidance Actions against the Holders of any Assumed Liabilities (as defined in the Purchase Agreement) in order to facilitate smooth and uninterrupted operation of the Debtors' businesses, including for the Debtors' trade creditors.

### 1.7.8 *Exclusivity*

The Debtors have the exclusive right to file a plan in their Chapter 11 Cases until June 10, 2019, and the exclusive right to solicit acceptances until August 9, 2019. [ECF No. 447]

## ARTICLE II
## CLASSIFICATION AND TREATMENT
## OF CLAIMS AND INTERESTS

### 2.1 Introduction

The categories of Claims and Interests set forth below classify Claims and Interests for all purposes, including for purposes of voting, Confirmation and distribution pursuant to the Plan and Bankruptcy Code sections 1122 and 1123(a)(1). A Claim or Interest shall be deemed classified in a particular Class only to the extent that it qualifies within the description of such Class, and shall be deemed classified in other Classes to the extent that any portion of such Claim or Interest qualifies within the description of such other Classes. Notwithstanding anything to the contrary in the Plan, a Claim or Interest shall be deemed classified in a Class only to the extent that such Claim or Interest is Allowed and has not been paid, released, or otherwise settled prior to the Effective Date.

All Claims (except for Administrative Claims and Priority Tax Claims, which are not classified pursuant to Bankruptcy Code section 1123(a)(1)) are classified in the Plan as described in Section 2.6 through Section 2.13 below.

### 2.2 Voting; Acceptance by Impaired Classes

Each Holder of an Allowed Claim or Allowed Interest in an impaired Class shall be entitled to vote to accept or reject the Plan. Holders of Claims in Classes not impaired under the Plan shall not be entitled to vote to accept or reject the Plan and shall be presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Classes 1, 4, and 6 are not

impaired under the Plan, are not entitled to vote and shall be conclusively presumed to accept the Plan under Section 1126(f) of the Bankruptcy Code. Classes 2, 3, 5, 7 and 8 are impaired, and each Holder of an Allowed Claim in Class 2, Class 3, Class 5 or Class 7, or of an Allowed Interest in Class 8, is entitled to vote to accept or reject the Plan.

### 2.3 **Cramdown**

If any of the impaired Classes do not vote to accept the Plan by the requisite statutory majorities, the Debtors reserve the right to amend the Plan. If the Holders of Claims in Class 3, Class 5, or Class 7, or Holders of Interests in Class 8, vote to reject the Plan, the Debtors shall request that the Bankruptcy Court confirm the Plan pursuant to Bankruptcy Code § 1129(b).

### 2.4 **Administrative Claims**

Except to the extent that any Holder of an Allowed Administrative Claim agrees to a less favorable treatment, each Holder of an Allowed Administrative Claim (excluding Professional Fee Claims) shall receive from the Liquidating Trustee, in full and final satisfaction of such Allowed Administrative Claim, the amount of such Allowed Administrative Claim, in Cash, on or as soon as practicable after the later of: (i) the Effective Date; (ii) the date that is fourteen (14) days after the date such Administrative Claim is Allowed; and (iii) such other date as may be agreed upon in writing by the holder of such Administrative Claim and the Liquidating Trustee; *provided, however,* that Allowed Administrative Claims representing obligations incurred in the ordinary course of business of the Debtors, if any, shall be paid in full in accordance with the terms and conditions of the particular transactions and any applicable agreements or assumed and assigned to the Purchasers as part of the Settlement/Sale Transaction. To the extent funds in the Wind-Down Budget are insufficient to satisfy any Allowed Administrative Claim, and such Allowed Administrative Claim has not been paid in full pursuant to the Sale Order, Settlement/Sale Transaction, or other Final Order of the Bankruptcy Court, and has not been assumed by Purchasers pursuant to the Settlement/Sale Transaction, any remaining amounts owed will come from proceeds of the ORRI, if any, as and when such payments are received by the Liquidating Trust, before any distributions will be made to Holders of Allowed Priority Tax Claims, Other Priority Claims, Allowed General Unsecured Claims, or Allowed Interests. The Debtors will seek the consent of any Holder of an Allowed Administrative Claim to provide the treatment described in the foregoing sentence.

Professional Fee Claims shall be paid from a segregated escrow account, funded by the Debtors with all budgeted amounts through the Closing Date for Professionals and Ordinary Course Professionals for which payment has been allocated in the Wind-Down Budget. In addition, KCO has previously funded up to $500,000 through the Wind-Down Budget for the professional fees of Dykema and Hogan Lovells post-closing in order to implement the Settlement/Sale Transaction, seek confirmation and approval of the Plan, and take any necessary steps to conclude the Chapter 11 Cases. In the event that such post-closing fees incurred and allowed pursuant to either the agreement of KCO or an Order of the Bankruptcy Court exceed $250,000, then such amount above $250,000 and up to $500,000 shall be reimbursable to KCO from the proceeds, if any, payable to the Liquidating Trust pursuant to the ORRI. The Debtors will establish a separate segregated escrow account to hold the $500,000 in the Wind-Down Budget for the professional fees of Dykema and Hogan Lovells incurred after March 1, 2019,

which amounts will be disbursed by the Liquidating Trustee directly to Dykema and Hogan Lovells once their Professional Fee Claims are Allowed. The Sale Order (including the Wind-Down Budget) shall govern the Administration of the Professional Fee Claim reserves.

As of the date hereof, the Debtors estimate that, as of the Effective Date, the total amount of Allowed Administrative Expense Claims will be approximately $4,617,502, including approximately $3,640,485 of Allowed Professional Fee Claims.

2.5    **Priority Tax Claims**

Except to the extent that any Holder of an Allowed Priority Tax Claim agrees to less favorable treatment, each Holder of an Allowed Priority Tax Claim shall receive in full and final satisfaction of such Allowed Priority Tax Claim, the amount of such Allowed Priority Tax Claim, in Cash, on or as soon as practicable after the latest of: (i) the Effective Date; (ii) the date that is fourteen (14) days after the date such Claim is Allowed; (iii) the date that is five (5) years after the Petition Date; and (iv) such other date as may be agreed upon in writing by the Holder of such Claim. To the extent funds in the Wind-Down Budget are insufficient to satisfy Allowed Priority Tax Claims, any remaining amounts owed will come from proceeds of the ORRI, if any, before any distributions will be made to Holders of Allowed Other Priority Claims, Allowed General Unsecured Claims or Allowed Interests.

2.6    **Other Priority Claims**

Unless the Holder of an Allowed Other Priority Claim agrees to different treatment, each holder of an Allowed Other Priority Claim shall receive, in full and final satisfaction of such Allowed Other Priority Claim, the amount of such Allowed Other Priority Claim in Cash on or as soon as practicable after the latest of: (i) the Effective Date; (ii) the date that is fourteen (14) days after the date such Claim is Allowed; or (iii) such other date as may be agreed upon in writing by the holder of such Claim. To the extent funds in the Wind-Down Budget are insufficient to satisfy Allowed Other Priority Claims, any remaining amounts owed will come from proceeds of the ORRI, if any, as and when such payments are received by the Debtors or their successors, before any distributions will be made to Holders of Allowed General Unsecured Claims or Allowed Interests.

2.7    **Allowed Secured DWT Claim**

The Allowed Secured DWT Claim is secured by a retainer held by DWT in excess of the fees that are the subject of its Claim, and such Claim shall be deemed Allowed pursuant to the Plan in the amount of $3,847.50. The Holder of the Allowed Secured DWT Claim shall receive, in full and final satisfaction of the Allowed Secured DWT Claim, on or as soon as reasonably practicable after the Effective Date, payment, in Cash, in the amount of $3,400.00.

2.8    **Secured Claim of Prepetition Secured Parties**

The Prepetition Secured Parties shall receive, in full and final satisfaction of the Secured Claim of Prepetition Secured Parties, the treatment provided to the Prepetition Secured Parties pursuant to the Settlement/Sale Transaction and the Sale Order. The Purchasers will perform all of their obligations pursuant to the Sale Order, including, without limitation, making payments

for those Allowed Claims that the Purchasers agreed to assume pursuant to the Purchase Agreement. Pursuant to the Sale Order and except for those rights and claims under the Sale Order, Purchase Agreement and the Settlement/Sale Transaction, any and all prepetition Claims against the Debtors held by the Prepetition Secured Parties in excess of the Credit Bid as of the Closing Date have been waived, including, without limitation, any Claims held by KCO (or its Affiliates) on account of the Warrant Interests.

### 2.9 Other Secured Claims

Unless the Holder of an Allowed Other Secured Claim agrees to different treatment, each Holder of an Allowed Other Secured Claim shall receive, in full and final satisfaction of such Allowed Other Secured Claim, either: (i) the amount of such Allowed Other Secured Claim in Cash on or as soon as practicable after the latest of (a) the Effective Date, (b) the date that is fourteen (14) days after the date such Claim is Allowed, or (c) such other date as may be agreed upon in writing by the Holder of such Claim; (ii) setoff against the retainer securing such Other Secured Claim held by the Holder of such Claim on the Debtors' accounts; or (iii) the return of the applicable Collateral in satisfaction of the Allowed amount of such Other Secured Claim. Upon satisfaction of such Allowed Other Secured Claim as set forth herein, any Liens securing such Other Secured Claim shall be deemed released. Pursuant to the Wind-Down Budget incorporated into the Sale Order, any amounts owed by Ordinary Course Professionals after payment of all pre-petition and post-petition fees and expenses (other than Professionals as defined in the Sale Order) are to be paid to the Debtors. To the extent applicable, 11 U.S.C. § 362 is modified *nunc pro tunc* to March 1, 2019 to allow setoff of all amounts owed to Ordinary Course Professionals and delivery of the excess retainers to the Debtors.

### 2.10 General Unsecured Claims

Except to the extent such Allowed General Unsecured Claim is settled or otherwise compromised, or has been assumed by the Purchasers under the Sale Order as part of the Settlement/Sale Transaction, each Holder of an Allowed General Unsecured Claim shall receive, in full and final satisfaction of its Allowed General Unsecured Claim, its Pro Rata share of net proceeds of the ORRI, if any, as and when such net proceeds are received by the Liquidating Trustee, following payment in full of all Allowed Administrative Tax Claims, Allowed Priority Tax Claims, Allowed Other Priority Claims, and Allowed Other Secured Claims, until such Holder's General Unsecured Claim is paid in full. For the avoidance of doubt, pursuant to paragraph 4(i) of the Sale Order, those Holders of Claims listed on **Exhibit B** of this Disclosure Statement, whose claims have been assumed by the Purchasers and have been or will be satisfied as part of the Settlement/Sale Transaction, shall not be deemed to be Holders of Class 5 Claims. The Debtors believe that the only Allowed Claim in Class 5 is the Claim of Jones Day.

On February 16, 2019, the Debtors filed an objection to Proof of Claim number 23 filed by Edward T. Humphreville in the amount of $216,600. While the Debtors anticipate that their objection will be sustained, if the claim is allowed in any amount such that the Wind Down Budget is insufficient to cover it, recovery in excess of what is in the Wind Down Budget, if any, will come from net proceeds of the ORRI, if any, and net proceeds from any sale of AAOG's stock.

### 2.11 Intercompany Claims

As set forth in the Schedules, as of the Petition Date, Intercompany Claims were as follows: AAOG was indebted to KRH in the amount of $10,305,006.36; KRH was indebted to WPS $2,557,284.90; and AAOG was indebted to WPS in the amount of $307,022.39. Pursuant to the Intercompany Compromise, on the Effective Date, all Intercompany Claims to the extent not acquired or assumed by the Purchasers pursuant to the Purchase Agreement shall be voluntarily waived by the applicable Debtor and extinguished, and any documents that previously evidenced such Intercompany Claim shall be deemed cancelled (all without further action by any Person or the Bankruptcy Court) and shall be null and void and such documents shall evidence no Intercompany Claim against any Debtor. Holders of Intercompany Claims shall not receive or retain any property under the Plan on account of such Intercompany Claim.

### 2.12 CFS Claim

As part of the Settlement/Sale Transaction, pursuant to the terms of a separate settlement agreement by and between Camden Financial Services ("CFS") and the Purchasers (or their Affiliates), CFS assigned to the Purchasers all claims held by CFS against the Debtors. On March 13, 2019, KCO filed notice of transfer of the CFS Claim to KCO, and KCO is the Holder of the CFS Claim [ECF Nos. 494, 495]. In full and final satisfaction of the CFS Claim, KCO shall receive the treatment provided to KCO as the Holder of the CFS Claim pursuant to the Settlement/Sale Transaction, the Purchase Agreement and the Sale Order. Pursuant to the Purchase Agreement and the Sale Order, the CFS Claim shall have been voluntarily released in full and shall be unenforceable against either Manor or AAOG, all without further action by any Person or the Bankruptcy Court.

### 2.13 Interests

On the Effective Date, except as described in Section 3.5 of this Disclosure Statement, all equity interests in Manor and Hilltop shall be cancelled and extinguished. All Holders of Allowed Interests in AAOG will be deemed Trust Beneficiaries as of the Effective Date, and will be deemed to have exchanged their Allowed Interests for their Pro Rata share of interests in the Liquidating Trust according to the Schedule of Interests. Such Holders will be entitled to periodic distributions from the Liquidating Trust of net proceeds from the ORRI, if any, as and when such payments are received by the Liquidating Trust, and net proceeds from any sale or merger of AAOG's stock, following payment in full of any unpaid but Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Other Priority Claims, Allowed Other Secured Claims, and Allowed General Unsecured Claims.

### 2.14 Summary of Proposed Distributions Under the Plan

The table below summarizes the estimated distributions to be made on account of prepetition Claims and Interests under the Plan.

| Class | Type of Claim | Est. Range of Allowed Claims | Est. Percentage of Recovery |
|---|---|---|---|
| 1 | Other Priority Claims | $4,372 | 100% |
| 2 | Allowed Secured DWT Claim | $3,847.50 | 88% |
| 3 | Secured Claim of Prepetition Secured Parties | $145,871,156.63 | 89% |
| 4 | Other Secured Claims | $20,000 | 100% |
| 5 | General Unsecured Claims | $7,678.26[2] | 100% |
| 6 | Intercompany Claims | KRH v. AAOG $10,305,006<br><br>KRH v. WPS $2,557,284<br><br>AAOG v. WPS $307,022 | 0% |
| 7 | CFS Claim | $0-4,162,000 | 0% |
| 8 | Interests | N/A | Based on ORRI proceeds, which may range from $0-$5,500,000.00, and net proceeds from any sale or merger of AAOG's stock, which may range from $0-$180,000.00 |

---

[2] This figure does not include the amount of Proof of Claim number 23, which, as described above, is the subject of a pending objection by the Debtors.

# ARTICLE III
# MEANS FOR IMPLEMENTATION OF THE PLAN

## 3.1    Other Assets

On the Effective Date, all Other Assets shall vest in the Liquidating Trust.

## 3.2    Operations Between Confirmation Date and Effective Date

During the period from the Confirmation Date through and including the Effective Date, the Debtors may continue to operate their businesses in the ordinary course as debtors in possession (to the extent that any operations are necessary after the Closing Date), subject to all applicable orders of the Bankruptcy Court, the Bankruptcy Code and the limitations set forth herein.

## 3.3    The Liquidating Trust

This Section 3.3 is a general description of the Liquidating Trust Agreement and its provisions. The Liquidating Trust Agreement shall be included in the Plan Supplement. To the extent this Section 3.3 is inconsistent with the Liquidating Trust Agreement, the Liquidating Trust Agreement shall control for all purposes.

### 3.3.1    *Creation of the Liquidating Trust*

On or before the Effective Date, the Debtors shall take all necessary steps to establish the Liquidating Trust for the benefit of the Trust Beneficiaries by the execution and delivery of the Liquidating Trust Agreement.

### 3.3.2    *Transfer of the Liquidating Trust Assets*

On the Effective Date, the Liquidating Trust Assets, including, without limitation, the ORRI, shall be irrevocably transferred to and vest in the Liquidating Trust free and clear of all Liens, Claims, charges and encumbrances. For all U.S. federal income tax purposes, all Persons (including, without limitation, the Debtors and the Liquidating Trustee and the Trust Beneficiaries) shall treat the transfer and assignment of the Liquidating Trust Assets to the Liquidating Trust for the benefit of the Trust Beneficiaries as (a) a transfer directly to the Trust Beneficiaries of their Pro Rata share of the Liquidating Trust Assets in complete liquidation of the Debtors followed by (b) the transfer by the Trust Beneficiaries to the Liquidating Trust of the Liquidating Trust Assets. In accordance with Rev. Proc. 94-45 (Section 3.04), valuations of the Liquidating Trust Assets by the Liquidating Trustee and the Trust Beneficiaries shall be consistent and such valuations shall be used for all federal income tax purposes. The Liquidating Trust will be treated as a grantor trust for U.S. federal tax purposes and, to the extent permitted under applicable law, for state and local income tax purposes. The Trust Beneficiaries will be treated as the grantors and owners of their Pro Rata share of Liquidating Trust Assets for U.S. federal income tax purposes. On and after the Effective Date, the Liquidating Trustee may use, acquire and dispose of property and compromise or settle any Claims, without the supervision of

or approval by the Bankruptcy Court, and free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than the restrictions expressly imposed by the Plan, the Confirmation Order, Liquidating Trust Agreement, the Sale Order (including the Wind-Down Budget), the Purchase Agreement and/or the Settlement Sale/Transaction.

### 3.3.3 *Purpose of the Liquidating Trust*

The Liquidating Trust, duly organized under the laws of Texas, shall be established for the purpose of liquidating and distributing the Liquidating Trust Assets in accordance with Treasury Regulation Section 301.7701-4(d) and any analogous provision of state or local law, including to the extent required by Rev. Proc 94-45 (Section 3.10), and shall be governed by the Liquidating Trust Agreement.

### 3.3.4 *Administration of the Liquidating Trust; Funding*

The Liquidating Trust shall be administered by the Liquidating Trustee pursuant to the Liquidating Trust Agreement. Additionally, subject to the terms of the Liquidating Trust Agreement, the Liquidating Trust may borrow against, pledge, hypothecate, otherwise encumber, or convey Liquidating Trust Assets as needed to accomplish the goals of the Liquidating Trust.

The Liquidating Trust Agreement shall provide that the Liquidating Trust Assets shall be used, *first,* to pay the costs in the Wind-Down Budget and fund the administrative costs and expenses of the Liquidating Trust, including, without limitation, the reasonable fees and expenses of the Liquidating Trustee and the reasonable fees and expenses of any professionals employed by the Liquidating Trustee; and *second,* to make periodic distributions as set forth in the Plan and the Liquidating Trust Agreement.

### 3.3.5 *The Liquidating Trustee*

The identity of the Liquidating Trustee shall be disclosed in the Plan Supplement. The Liquidating Trustee shall retain and have all the rights, powers and duties necessary to carry out their responsibilities under the Plan and the Liquidating Trust Agreement, and as otherwise provided in the Confirmation Order. The Liquidating Trustee shall be the exclusive trustee of the Liquidating Trust Assets for the purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as a representative of the estate appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code. The Liquidating Trustee's liability may be limited by the Liquidating Trust Agreement to include limitations of liability for negligence and any actions except for willful misconduct or fraud. Disbursements from the Liquidating Trust shall be made through the Disbursing Agent.

### 3.3.6 *Powers and Duties of the Liquidating Trustee*

The Liquidating Trustee shall administer the Liquidating Trust Assets in accordance with the Plan, the Liquidating Trust Agreement, the Sale Order (including the Wind-Down Budget), the Purchase Agreement and the Settlement/Sale Transaction. The powers of the Liquidating Trustee shall include any and all powers and authority necessary to implement the Plan and the Liquidating Trust Agreement including: (i) serving as the sole officer, director and person in control of the Debtors on and after the Effective Date; (ii) holding, managing and liquidating

and/or abandoning any of the Liquidating Trust Assets; (iii) investing Cash; (iv) taking all steps to execute all instruments and documents necessary to effectuate distributions to Holders of Allowed Claims in accordance with the Plan including, without limitation, the establishment of any reserves that the Liquidating Trustee deems necessary and/or appropriate; (v) paying, through the Disbursing Agent, Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Other Priority Claims, Allowed Other Secured Claims and Allowed General Unsecured Claims in accordance with the Plan; (vi) paying Allowed Professional Fee Claims; (vii) employing, retaining, terminating or replacing professionals to represent it with respect to its responsibilities or otherwise effectuating the Plan and Liquidating Trust Agreement; (viii) paying any and all reasonable fees and expenses of the post-Effective Date Debtors (if any) and any professionals employed by the Liquidating Trustee **without approval of the Bankruptcy Court;** (ix) making periodic distributions of proceeds from the ORRI, if any, as and when such net proceeds are received, through the Disbursing Agent through the Disbursing Agent; (x) administering and paying taxes, including filing tax returns; (xi) requesting an expedited determination of any unpaid tax liability of the Debtors or post-Effective Date Debtors under Bankruptcy Code § 505; (xii) representing the interests of the Debtors or the Liquidating Trust before any taxing authority in all matters, including any action, suit, proceeding or audit; (xiii) taking all steps reasonably necessary and practicable to terminate the corporate existence of the Debtors in accordance with the Plan; (xiv) subject to section 10.1.2 of the Plan, authority to file objections to all Claims and/or Interests and to settle, compromise, or litigate to judgment any objections to Claims filed by the Liquidating Trustee and, subject to the terms of the Liquidating Trust Agreement, authority to settle or compromise any Disputed Claim without the approval of the Bankruptcy Court; (xv) having the authority to prosecute any cause of action that may accrue after the Effective Date in favor of the Liquidating Trustee, including, without limitation, any cause of action retained by the Debtors' estates pursuant to section 2.1(b)(xii) of the Purchase Agreement, and having the authority to compromise, settle, resolve, discontinue, abandon or dismiss all such actions **without approval of the Bankruptcy Court;** (xvi) having the authority to request estimation of any contingent or unliquidated Claim in accordance with and pursuant to the rights provided for in Section 10.3 of the Plan; (xvii) requesting that the Bankruptcy Court estimate any contingent or unliquidated Claim, regardless of whether the Liquidating Trustee, Debtors or Purchasers have previously objected to such Claim or whether the Bankruptcy Court has ruled on any objection; (xviii) undertaking all administrative functions of the Chapter 11 Cases, including the ultimate dissolution of the Debtors and the exclusive authority to seek the closing of the Chapter 11 Cases; (xix) in the Liquidating Trustee's discretion, to hold the stock in AAOG exchanged by the Trust Beneficiaries in order to consummate a transaction, as soon as reasonably possible, for the purchase and sale to, or merger of such stock into the equity interests of, an unrelated third party, and taking any and all actions necessary to pursue and consummate such a transaction; (xx) taking all steps to execute all instruments and documents necessary to effectuate a name change for AAOG; and (xxi) exercising such other powers as may be vested in it pursuant to order of the Bankruptcy Court, the Plan or the Liquidating Trust Agreement, or as it reasonably deems to be necessary and proper to carry out the provisions of the Plan.

3.4     **Disbursing Agent**

On the Effective Date, the Disbursing Agent shall be appointed pursuant to this Plan and the Liquidating Trust Agreement, for the purposes of (i) paying unpaid but Allowed Administrative Claims (excluding Allowed Professional Fee Claims), Allowed Priority Tax

Claims, Allowed Other Priority Claims, Allowed Other Secured Claims and Allowed General Unsecured Claims in accordance with this Plan; (ii) making periodic distributions to Holders of Interests from net proceeds of the ORRI and the net proceeds from any sale or merger of AAOG's stock. In the event of the dissolution, failure to perform resignation, incompetency, or removal of KCO as Disbursing Agent, the Liquidating Trustee shall promptly designate a successor Disbursing Agent. For the avoidance of doubt, the Disbursing Agent has no personal liability for the payment of, and has not assumed liability for, any of the foregoing Claims other than as expressly provided in the Sale Order, the Purchase Agreement, the Wind-Down Budget and the Settlement/Sale Transaction, and shall solely be responsible for transferring assets of the Liquidating Trust as provided herein to Holders of any of the foregoing Claims.

3.5    **Cancellation of Interests**

On the Effective Date, all equity interests in Manor and Hilltop shall be terminated and extinguished and any certificates or other documents that previously evidenced ownership of those equity interests shall be deemed cancelled (all without further action by any Person or the Bankruptcy Court) and shall be null and void and such certificates and documents shall evidence no rights or equity interests in Manor and/or Hilltop; provided, however, in the event that prior to the Effective Date KCO requests assignment of the equity interests in Manor and/or Hilltop, and such assignment will not have an adverse tax impact on the Debtors (as determined in the Debtors' reasonable discretion), such equity interests shall be conveyed to KCO or its designee(s) free and clear of any liens claims or interests to the greatest extent permissible under Bankruptcy Code Section 363 in furtherance of the Settlement/Sale Transaction. If KCO makes the foregoing election for it or its designee(s) to receive the equity interests of Manor and/or Hilltop, Manor and Hilltop shall retain all Permits (as defined in the Purchase Agreement) issued to them that have not otherwise been previously assigned to the Purchasers.

3.6    **Termination of Status; Officers and Directors**

On the Effective Date, except to the extent that the Liquidating Trustee determines otherwise or KCO exercises the election for it or its designee(s) to receive the equity interests in Manor and/or Hilltop as set forth in Section 7.3 of the Plan, Manor and Hilltop shall be deemed dissolved for all purposes without the necessity for any other or further actions to be taken by or on behalf of the Debtors or payments to be made in connection therewith. The Debtors may file with the Office of the Secretary of State for the state of their formation, a certificate of dissolution which may be executed by the Liquidating Trustee without the need for further approval or action from any officers, directors, Holders of Interests in the Debtors or any other party. From and after the Effective Date, the Debtors shall not be required to file any document, or take any other action, or obtain any approval from the Debtors' officers, directors or Holders of Interests, to withdraw their business operations from any states in which any of the Debtors previously conducted its business operations.

On the Effective Date: (i) the positions of the current officers and directors of the Debtors shall be eliminated, and each officer and director shall be terminated (without the necessity of further action); and (ii) to the fullest extent permitted by applicable law, the rights, powers, and duties of the officers and directors of the Debtors shall vest in the Liquidating Trustee.

3.7     **Distribution Procedures**

Any payments or distributions to be made by the Disbursing Agent to Holders of Interests in AAOG or Holders of Claims as required by the Plan shall be made only to the Holders of Allowed Interests in AAOG or Holders of Allowed Claims. Any payments or distributions to be made by the Disbursing Agent pursuant to the Plan shall be made on or about the Effective Date of such Plan, or as soon thereafter as practicable, except as otherwise provided for in the Plan. Any payment, delivery or distribution by the Disbursing Agent pursuant to the Plan, to the extent delivered by the United States mail, shall be deemed made when deposited by the Disbursing Agent into the United States mail. Distributions or deliveries required to be made by the Plan on a particular date shall be deemed to have been made on such date if actually made on such date or as soon thereafter as practicable taking into account the need to establish reserves and account for Disputed Claims. No payments or other distributions of property shall be made on account of any Claim, Interest or portion thereof unless and until such Claim, Interest or portion thereof is Allowed. The Liquidating Trustee may establish reserves for Disputed Claims, and defer or delay distributions to ensure an equitable and ratable distribution to Holders of Allowed Claims and Allowed Interests, in accordance with the terms of the Plan.

3.8     **Effectuating Documents; Further Transactions**

The Liquidating Trustee, shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Liquidating Trustee, shall be authorized to certify or attest to any of the foregoing actions.

3.9     **Exemption from Certain Transfer Taxes**

Pursuant to Bankruptcy Code section 1146(a), the issuance, transfer, or exchange of a security, or the making of delivery of an instrument of transfer, provided under the Plan, from the Debtors to the Liquidating Trustee or any other Person pursuant to the Plan may not be taxed under any law imposing a stamp tax or similar tax, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

3.10     **Closing of the Debtors' Chapter 11 Cases.**

The Liquidating Trustee shall have the sole authority to seek to close the Chapter 11 Cases in accordance with the Bankruptcy Code and the Bankruptcy Rules.

## ARTICLE IV
## THE SOLICITATION; VOTING PROCEDURES

### 4.1    Solicitation Package

Accompanying this Disclosure Statement for the purpose of soliciting votes on the Plan are copies of: (i) the Plan; the (ii) Confirmation Hearing Notice; (iii) an appropriate Ballot, if applicable; (iv) a postage prepaid pre-addressed return envelope; and (v) such other information as the Court may direct or approve (collectively, the "Solicitation Package"). Only Holders eligible to vote in favor of or against the Plan will receive a Ballot as part of their Solicitation Package. If you did not receive a Ballot and believe that you should have, please contact the Debtors' counsel at the address or telephone number set forth in Section 15.10.

### 4.2    Voting Instructions

After carefully reviewing the Plan and this Disclosure Statement, all accompanying exhibits, and the detailed instructions accompanying your Ballot, please indicate your acceptance or rejection of the Plan by voting in favor of or against the Plan on the Ballot. Please complete and sign your Ballot and return it in the envelope provided so that it is RECEIVED by the Voting Agent (as defined in the Disclosure Statement Order) on or before the Voting Deadline (as defined in the Disclosure Statement Order) set forth on the Ballot.

Each Ballot has been coded to reflect the Class of Claims or Interests it represents. Accordingly, in voting to accept or reject the Plan, you must use only the coded Ballot or Ballots sent to you with this Disclosure Statement.

If you have any questions about the procedure for voting your eligible Claim or with respect to the Solicitation Package that you have received, please contact the Voting Agent:

BMC Group, Inc.
PO BOX 90100
LOS ANGELES, CA 90009

Email: aaog@bmcgroup.com

Telephone: 1-888-909-0100

**IN ORDER FOR YOUR VOTE TO BE COUNTED, YOUR VOTE MUST BE ACTUALLY RECEIVED BY THE VOTING AGENT FOR THE DEBTORS ON OR BEFORE 5:00 P.M. PREVAILING CENTRAL TIME ON MAY 29, 2019, AT THE ABOVE ADDRESS. EXCEPT TO THE EXTENT ALLOWED BY THE BANKRUPTCY COURT OR DETERMINED OTHERWISE BY THE DEBTORS, BALLOTS RECEIVED AFTER THE PLAN VOTING DEADLINE WILL NOT BE ACCEPTED OR USED IN CONNECTION WITH THE DEBTOR'S REQUEST FOR CONFIRMATION OF THE PLAN OR ANY MODIFICATION THEREOF.**

**BALLOTS WITH ORIGINAL OR FACSIMILE SIGNATURES ARE ACCEPTABLE. YOU <u>MAY NOT</u> SUBMIT A BALLOT BY FACSIMILE. YOU MAY SUBMIT A BALLOT BY EMAIL TO <u>AAOG@BMCGROUP.COM</u>, BY SCANNING AN ORIGINAL SIGNATURE AND SENDING IN .PDF FORMAT. ONLY ORIGINAL BALLOTS (OR SCANNED ORIGINAL BALLOTS IN THE CASE OF BALLOTS SUBMITTED BY EMAIL) RECEIVED BY THE VOTING AGENT BY THE PLAN VOTING DEADLINE WILL BE COUNTED.**

4.3     **Voting Tabulation**

Under the Bankruptcy Code, for purposes of determining whether the requisite acceptances have been received, only Holders who actually vote will be counted. The failure of a Holder to deliver a duly executed Ballot will be deemed to constitute an abstention by such Holder with respect to voting on the Plan and such abstentions will not be counted as votes for or against the Plan.

Unless otherwise ordered by the Bankruptcy Court, Ballots that are signed, dated, and timely received, but on which a vote to accept or reject the Plan has not been indicated, will not be counted. The Debtors, in their sole discretion, may request that the Voting Agent attempt to contact such voters to cure any such defects in the Ballots.

Except as provided below, unless the applicable Ballot is timely submitted to the Voting Agent before the Voting Deadline, together with any other documents required by such Ballot, the Debtors may, in their sole discretion, reject such Ballot as invalid and decline to utilize it in connection with seeking Confirmation of the Plan.

A vote may be disregarded if the Bankruptcy Court determines, pursuant to Bankruptcy Code section 1126(e), that it was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code.

If a Ballot is signed by a trustee, executor, administrator, guardian, attorney-in-fact, officer of a corporation, or other Person acting in a fiduciary or representative capacity, such Person should indicate such capacity when signing and, unless otherwise determined by the Debtors, must submit proper evidence satisfactory to the Debtors of authority to so act.

The period during which Ballots with respect to the Plan will be accepted by the Debtors will terminate on the Voting Deadline. Except to the extent permitted by the Bankruptcy Court, Ballots that are received after the Voting Deadline will not be counted or otherwise used by the Debtors in connection with the Debtors' request for Confirmation of the Plan (or any permitted modification thereof). IN NO CASE SHOULD A BALLOT BE DELIVERED TO ANY ENTITY OTHER THAN THE VOTING AGENT.

4.4     **Agreements upon Furnishing Ballots**

The delivery of an accepting Ballot to the Voting Agent by a Holder pursuant to one of the procedures set forth above will constitute the agreement of such Holder to accept: (i) all of the terms of, and conditions to, the solicitation and voting procedures approved by the Bankruptcy Court, and (ii) the terms of the Plan; provided, however, all parties in interest

retain their right to object to Confirmation of the Plan pursuant to Bankruptcy Code section 1128.

<center>**ARTICLE V**
**FEASIBILITY, BEST INTEREST OF THE CREDITORS**
**AND LIQUIDATION**</center>

5.1    **Feasibility of the Plan**

Section 1129(a)(11) of the Bankruptcy Code requires that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtors or any successor to the Debtors under the Plan, unless such liquidation or reorganization is proposed in the Plan. The Plan proposed by the Debtors provides for a liquidation of the Debtors' remaining assets and a distribution of Cash to Holders of Claims and Interests in accordance with the priority scheme of the Bankruptcy Code and the terms of the Plan. The ability of the Liquidating Trustee to make the distributions described in the Plan does not depend on future earnings of the Debtors. Accordingly, the Debtors believes that the Plan is feasible and meets the requirements of section 1129(a)(11) of the Bankruptcy Code.

5.2    **Best Interest of Creditors Test**

Before the Plan may be confirmed, the Bankruptcy Court must find (with certain exceptions) that the Plan provides, with respect to each Class, that each Holder of a Claim or Interest in such Class either: (i) has accepted the Plan; or (ii) will receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the amount that such Holder would receive or retain if the Debtors liquidated under chapter 7 of the Bankruptcy Code. In chapter 7 liquidation cases, unsecured creditors and interest holders of a debtor are paid from available assets generally in the following order, with no junior class receiving any payments until all amounts due to senior classes have been paid fully or any such payment is provided for:

- Secured creditors (to the extent of the value of their collateral);

- Administrative and other priority creditors;

- Unsecured creditors;

- Debt expressly subordinated by its terms or by order of the Bankruptcy Court; and

- Interest holders.

As described in the liquidation discussion set forth in Section 8.1 hereof, the Debtors believe that the value of any distributions in a chapter 7 case would be less than the value of distributions under the Plan because, among other reasons, distributions in a chapter 7 case may not occur for a longer period of time, thereby reducing the present value of such distributions. In this regard, the distribution of the proceeds of a liquidation would be delayed until a chapter 7 trustee and its professionals became knowledgeable about the Chapter 11 Cases and the Claims against and Interests in the Debtors. In addition, the Debtors' estates would have to pay the fees

and expenses of a chapter 7 trustee in addition to the Professionals' pre- conversion fees and expenses (thereby further reducing cash available for distribution).

## ARTICLE VI
## CONFIRMATION PROCEDURES

### 6.1 The Confirmation Hearing

Bankruptcy Code section 1128(a) requires the Bankruptcy Court, after notice, to hold a Confirmation hearing (the "<u>Confirmation Hearing</u>"). Bankruptcy Code section 1128(b) provides that any party in interest may object to Confirmation of the Plan.

The Bankruptcy Court has scheduled the Confirmation Hearing for June 5, 2019, at 9:30 a.m. prevailing Central Time, before the Honorable Ronald B. King, Chief United States Bankruptcy Judge, United States Bankruptcy Court for the Western District of Texas, 615 E. Houston St., Courtroom 1, San Antonio, Texas 78205.

Objections to Confirmation of the Plan must be filed and served on the Debtors and the other parties set forth in the order approving this Disclosure Statement, and certain other parties, by no later than 5:00 p.m. prevailing Central time on May 29, 2019, in accordance with the order approving this Disclosure Statement. THE BANKRUPTCY COURT MAY NOT CONSIDER OBJECTIONS TO CONFIRMATION OF THE PLAN IF ANY SUCH OBJECTIONS HAVE NOT BEEN TIMELY SERVED AND FILED IN COMPLIANCE WITH THE ORDER APPROVING THIS DISCLOSURE STATEMENT.

The notice of the Confirmation Hearing will contain, among other things, the deadline to object to Confirmation of the Plan, the Voting Deadline, and the date and time of the Confirmation Hearing.

### 6.2 Statutory Requirements for Confirmation of the Plan

At the Confirmation Hearing, the Bankruptcy Court shall determine whether the requirements of Bankruptcy Code section 1129 have been satisfied. The Debtors believe that the Plan satisfies or will satisfy the applicable requirements, as follows:

- The Plan complies with the applicable provisions of the Bankruptcy Code.

- The Debtors, as Plan proponents, have or will have complied with the applicable provisions of the Bankruptcy Code.

- The Plan has been proposed in good faith and not by any means forbidden by law.

- Any payment made or promised under the Plan for services or for costs and expenses in, or in connection with, the Chapter 11 Cases, or in connection with the Plan and incident to the case, has been disclosed to the Bankruptcy Court, and any such payment: (i) made before the Confirmation of the Plan is reasonable; or (ii) is subject to the approval of the Bankruptcy Court as reasonable if it is to be fixed after the Confirmation of the Plan.

- The Debtors, as Plan proponents, have disclosed the identity and affiliations of any individual proposed to serve, after Confirmation of the Plan, as a director, officer, or voting trustee of the Debtors, an Affiliate of the Debtors participating in the Plan with the Debtors, or a successor to the Debtors under the Plan, and the appointment to, or continuance in, such office of such individual is consistent with the interests of creditors and equity security holders and with public policy.

- The Debtors, as Plan proponents, have disclosed the identity of any insider (as defined in Bankruptcy Code section 101) that will be employed or retained by the Liquidating Trust, and the nature of any compensation for such insider.

- The Plan does not propose any rate change that is subject to approval by a governmental regulatory commission.

- Either each Holder of an impaired Claim or Interest has accepted the Plan, or will receive or retain under the Plan on account of that Claim or Interest, property of a value, as of the Effective Date of the Plan, that is not less than the amount that the Holder would receive or retain if the Debtors were liquidated on that date under chapter 7 of the Bankruptcy Code.

- Each Class of Claims that is entitled to vote on the Plan has either accepted the Plan or is not impaired under the Plan, or the Plan can be confirmed without the approval of each voting Class pursuant to Bankruptcy Code section 1129(b).

- Except to the extent that the Holder of a particular Claim will agree to a different treatment of its Claim, the Plan provides that Administrative Claims, Priority Tax Claims, and Other Priority Claims will be paid in full, in Cash, on the Effective Date, or as soon thereafter as practicable.

- At least one Class of impaired Claims will accept the Plan, determined without including any acceptance of the Plan by any insider holding a Claim of that Class.

- Confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtors or any successors thereto under the Plan unless such a liquidation or reorganization is proposed in the Plan.

- All fees of the type described in 28 U.S.C. § 1930, including the fees of the United States Trustee, will be paid as of the Effective Date.

- The Debtors have no retirement benefit obligations except for 401(k) plans, and such plans are expected to be terminated and will provide for rollover distributions to current participants.

The Debtors believe that: (i) the Plan satisfies or will satisfy all of the statutory requirements of chapter 11 of the Bankruptcy Code; (ii) the Debtors have complied or will have complied with all of the requirements of chapter 11; and (iii) the Plan has been proposed in good faith.

### 6.2.1 *Acceptance by Impaired Classes*

The Bankruptcy Code requires, as a condition to Confirmation, that, except as described in the following section, each Class of Claims or Interests that is impaired under the Plan accept the Plan. A class that is not impaired under a plan of reorganization or liquidation is deemed to have accepted the plan and, therefore, solicitation of acceptances with respect to such class is not required. A class is impaired unless the plan: (i) leaves unaltered the legal, equitable and contractual rights to which the claim or interest entitles the holder of that claim or equity interest; or (ii) notwithstanding any contractual provision or applicable law that entitles the holder of such claim or interest after the occurrence of a default—(a) cures any such default that occurred before or after the commencement of the case under the Bankruptcy Code, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code or of a kind that section 365(b)(2) expressly does not require to be cured; (b) reinstates the maturity of such claim or interest as such maturity existed before such default; (c) compensates the holder of such claim or interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; and (d) if such claim or such interest arises from any failure to perform a nonmonetary obligation, other than a default arising from failure to operate a nonresidential real property lease subject to section 365(b)(1)(A), compensates the holder of such claim or such interest (other than the debtor or an insider) for any actual pecuniary loss incurred by such holder as a result of such failure; and (e) does not otherwise alter the legal, equitable, or contractual rights to which such claim or interest entitles the holder of such claim or interest.

### 6.2.2 *Confirmation Without Acceptance by All Impaired Classes*

Bankruptcy Code section 1129(b) allows a bankruptcy court to confirm a plan, even if an impaired class entitled to vote on the plan has not accepted it, provided that the plan has been accepted by at least one impaired Class. Holders of Allowed Claims in Class 2, Class 3, Class 5, and Class 7 and Allowed Interests in Class 8 are impaired under the Plan and entitled to vote to accept or reject the Plan. The Debtors cannot guarantee that Holders of Allowed Claims in Class 2, Class 3, Class 5, and Class 7 and Allowed Interests in Class 8 will vote to accept the Plan. If the Holders of Claims in Class 3, Class 5, or Class 7 or Holders of Interests in Class 8 vote to reject the Plan, the Debtors intend to seek confirmation of the Plan pursuant to Bankruptcy Code section 1129(b). Bankruptcy Code section 1129(b) states that, notwithstanding an impaired class's failure to accept a plan of reorganization or liquidation, the plan shall be confirmed, at the plan proponent's request, in a procedure commonly known as "cram down," so long as the plan does not "discriminate unfairly" and is "fair and equitable with respect to each class of claims or equity interests that is impaired under, and has not accepted, the plan.

The condition that a plan be "fair and equitable" with respect to a non-accepting class of unsecured claims includes the following requirement that either: (i) the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or (ii) the holder of any claim or equity interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or equity interest any property.

The condition that a plan be "fair and equitable with respect to a class of interests includes the following requirement that either (i) the plan provides that each holder of an interest of such class receive or retain on account of such interest property of a value, as of the effective date of the plan, equal to the greatest of the allowed amount of any fixed liquidation preference to which such holder is entitled, any fixed redemption price to which such holder is entitled, or the value of such interest; or (ii) the holder of any interest that is junior to the interests of such class will not receive or retain under the plan on account of such junior interest any property.

The Debtors reserve the right to alter, amend, modify, revoke or withdraw the Plan or any Exhibit or Schedule, including amending or modifying it to satisfy Bankruptcy Code section 1129(b), if necessary. If the Holder of the Claim in Class 2 votes to reject the Plan, the Debtors reserve the right to modify the treatment of Class 2 Claims to render such Claim unimpaired.

### 6.3     Identity of Persons to Contact for More Information

Any interested party desiring further information about the Plan should contact the Voting Agent at the phone number and/or address listed in Section 4.2 of this Disclosure Statement.

<div align="center">

**ARTICLE VII**
**CERTAIN RISK FACTORS AFFECTING THE DEBTOR**

</div>

PRIOR TO VOTING TO ACCEPT OR REJECT THE PLAN, ALL HOLDERS OF IMPAIRED CLAIMS SHOULD READ AND CAREFULLY CONSIDER THE FACTORS SET FORTH BELOW, AS WELL AS ALL OTHER INFORMATION SET FORTH OR OTHERWISE REFERENCED IN THIS DISCLOSURE STATEMENT. THESE FACTORS SHOULD NOT, HOWEVER, BE REGARDED AS CONSTITUTING THE ONLY RISKS INVOLVED IN CONNECTION WITH THE PLAN AND ITS IMPLEMENTATION.

### 7.1     Certain Bankruptcy Law Considerations

Although the Debtors believes that the Plan will satisfy all requirements necessary for Confirmation by the Bankruptcy Court, there can be no assurance that the Bankruptcy Court will reach the same conclusion. Moreover, there can be no assurance that modifications to the Plan will not be required for Confirmation or that such modifications would not necessitate the re-solicitation of votes. Although the Debtors believe that the Effective Date will occur soon after the Confirmation Date, there can be no assurance as to such timing. In the event the conditions precedent to Confirmation of the Plan have not been satisfied or waived (to the extent possible) by the Debtors or applicable party (as provided in the Plan) as of the Effective Date, then the Confirmation Order will be vacated, no distributions under the Plan will be made, and the Debtors and all Holders of Claims and Interests will be restored to the status quo ante as of the day immediately preceding the Confirmation Date as though such Confirmation Date had never occurred.

# ARTICLE VIII
## ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN

If the Plan is not confirmed and consummated, the alternatives to the Plan include: (i) liquidation of the Debtors under chapter 7 of the Bankruptcy Code; and (ii) an alternative plan.

### 8.1 Liquidation Under Chapter 7; Liquidation Analysis

Notwithstanding acceptance of a plan by a voting impaired class, if an impaired class does not vote unanimously to accept the plan, the bankruptcy court must determine that the plan provides to each member of such impaired class a recovery, on account of each class member's claim or interest, that has a value, as of the effective date, at least equal to the recovery that such class member would receive if the debtor was liquidated under Chapter 7. 11 U.S.C. § 1129(a)(7). This inquiry is often referred to as the "best interests of creditors test."

In a typical Chapter 7 case, a trustee is elected or appointed to liquidate a debtor's assets for distribution to creditors in accordance with the priorities set forth in the Bankruptcy Code. Generally, secured creditors are paid first from the proceeds of sales of the properties securing their liens. If any assets are remaining in the bankruptcy estate after satisfaction of the secured creditors' claims, administrative expenses are next to receive payment. Unsecured creditors are paid from any remaining sales proceeds, according to their respective priorities. Unsecured creditors with the same priority share *pro rata*. Finally, equity security holders receive the balance that remains, if any, after all creditors are paid.

The Debtors believe that the Plan satisfies the best interests of creditors test because, among other things, the recoveries expected to be available to Holders of Allowed Claims under the Plan will be equal to or greater than the recoveries expected to be available in a Chapter 7 liquidation. As of the Effective Date, substantially all of the Debtors' assets will have been liquidated with the exception of the ORRI and any remaining Cash and Cash equivalents. A Chapter 7 trustee would require time to become familiar with the remaining assets, in particular the structure of the ORRI, which would delay the liquidation of the remaining assets. Furthermore, a Chapter 7 trustee may initiate a sale of the ORRI, instead of collecting the contingent production payments over time, in order to generate proceeds for a distribution. A sale of the ORRI would require a lengthy marketing process to generate any proceeds at all due to its contingent nature as currently structured and would most likely involve additional costs for professionals to market the ORRI. In addition, the probability to facilitate a successful, competitive sale process will be low due to the highly-structured nature of the ORRI and the limited buyer universe. Hence, the proceeds resulting from the sale of the ORRI would most likely be less under a Chapter 7 liquidation than collecting the contingent production payments pursuant to the Plan.

Recoveries would be further reduced in comparison with the Plan due to the expenses that would be incurred in a Chapter 7 liquidation, including added expenses for wind down costs, legal costs, and costs incurred by the Chapter 7 trustee in order to complete the administration of the Debtors' estates. See, e.g., 11 U.S.C. § 326(a) (providing for compensation of a Chapter 7 trustee up to three percent of the value of the assets); 11 U.S.C. 503(b)(2) (providing administrative expense status for compensation and expenses of a chapter 7 trustee). Further, the

estates would continue to be obligated to pay all unpaid expenses incurred by the Debtors during the Chapter 11 Cases (such as compensation for Professionals), which may constitute Allowed Claims in any Chapter 7 case. The conversion to Chapter 7 would also require entry of a new bar date for filing claims that would be more than 90 days following conversion of the case to chapter 7. See Fed. R. Bankr. P. 1019(2); 3002(c). Thus, the amount of Claims ultimately filed and Allowed against the Debtors could materially increase, thereby further reducing creditor recoveries versus those available under the Plan.

In light of the foregoing, the Debtors submit that a Chapter 7 liquidation would result in materially reduced distributable proceeds, increased expenses, delayed distributions, and the prospect of additional claims that were not asserted in these Chapter 11 Cases. Accordingly, the Debtors believe that the Plan provides an opportunity to bring the highest return for Holders of Claims and Interests.

### 8.2    Alternative Plan

If the Plan is not confirmed, the Bankruptcy Court could confirm a different plan. The Debtors believes that the Plan, as described herein, enables Holders of Claims and Interests to realize the highest and best value under the circumstances. The Debtors believes that any alternative form of chapter 11 plan is a much less attractive alternative to creditors than the Plan because of the greater returns and certainty provided by the Plan. Other alternatives could involve diminished recoveries, significant delay, uncertainty, and substantial additional administrative costs.

## ARTICLE IX
## EXECUTORY CONTRACTS, UNEXPIRED LEASES, AND OTHER AGREEMENTS

### 9.1    Assumption/Rejection

On the Effective Date, all of the Debtors' executory contracts and unexpired leases not previously assumed by the Debtors or assigned to the Purchasers under the Sale Order, the Purchase Agreement and the Settlement/Sale Transaction, will be rejected. A list of previously assumed contracts is attached for informational purposes only to this Disclosure Statement as **Exhibit E.**

### 9.2    Claims Based on Rejection of Executory Contracts and Unexpired Leases

Unless otherwise provided by a Bankruptcy Court order, any Rejection Claims must be filed no later than thirty (30) days after the later of the Effective Date or the effective date of rejection. Any Rejection Claims that are not timely filed shall be disallowed automatically, forever barred from assertion, and shall not be enforceable against the Liquidating Trust without the need for any objection by any Person or further notice to or action, order, or approval of the Bankruptcy Court, and any Rejection Claim shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules or a Proof of Claim to the contrary. All Rejection Claims shall be classified as General Unsecured Claims and shall be treated in accordance with the particular provisions of the Plan.

9.3     **Reservation of Rights**

Nothing contained in the Plan shall constitute an admission by the Debtors that any contract or lease is in fact an executory contract or unexpired lease or that the Debtors have any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Liquidating Trustee shall have thirty (30) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

9.4     **Nonoccurrence of Effective Date**

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request by the Debtors to extend the deadline for assuming or rejecting unexpired leases pursuant to Bankruptcy Code section 365(d)(4).

**ARTICLE X**
**PROCEDURES FOR RESOLVING DISPUTED,**
**CONTINGENT, AND UNLIQUIDATED CLAIMS**

10.1    **Objections to Claims**

Except as set forth in Section 10.1.2 of the Plan, after the Effective Date, the Liquidating Trustee shall have the exclusive authority to file objections to all Claims, and the exclusive authority to settle, compromise, or litigate to judgment any objections to Claims that he or she files. Subject to the terms of the Liquidating Trust Agreement, the Liquidating Trustee may settle or compromise any Disputed Claim or Disputed Interest without approval of the Bankruptcy Court.

Notwithstanding the foregoing, pursuant to the Sale Order, the Purchaser has been granted standing to object to Claims or cure amounts in the Chapter 11 Cases that relate in any way to the Assumed Liabilities (as defined in the Purchase Agreement) or the Wind-Down Budget, including, without limitation, the contracts assigned to the Purchaser in connection with the Settlement/Sale Transaction, the Pre-Closing Budgeted Fees (as defined in the Sale Order), the Post-Closing Budget Fees (as defined in the Sale Order), and any other professional fees and expenses incurred in the Chapter 11 Cases, and the Liquidating Trustee shall assist in such objections as reasonably requested by the Purchasers. The Purchasers shall be responsible for the payment of (i) any fees incurred by the Liquidating Trustee (to the extent the Purchasers request that the Liquidating Trustee prosecute such objections or any related litigation) in prosecuting such objections or any related litigation and (ii) any quarterly fees required to be paid to the Office of the United States Trustee pursuant to sections 1911 through 1930 of chapter 123 of title 28 of the United States Code that are incurred solely as a result of the Chapter 11 Cases remaining open to facilitate the Purchasers' prosecution of such objections or any related litigation.

10.2    **Objection Deadline**

As soon as practicable, but no later than the Claims/Interests Objection Deadline, the Liquidating Trustee may file objections to Claims and Interests with the Bankruptcy Court and

serve such objections on the Holders of the Claims and Interests to which such objections are made. Nothing contained herein, however, shall limit the right of the Liquidating Trustee to object to Claims, if any, filed or amended after the Claims/Interests Objection Deadline. The Claims/Interests Objection Deadline may be extended by the Bankruptcy Court upon motion by the Debtors or Liquidating Trustee, without notice or hearing.

For the avoidance of doubt, no Claim or Interest is or shall be deemed Allowed until the later of the Claims/Interests Objection Deadline of the expiration of some other applicable period of limitation fixed by the Bankruptcy Code, Bankruptcy Rules, or Bankruptcy Court, unless otherwise ordered by a Final Order of the Bankruptcy Court or Allowed pursuant to the Plan.

Notwithstanding the foregoing, any Claims or other payment obligations assumed by KCO or the Purchasers under the Sale Order, the Purchase Agreement and the Settlement/Sale Transactions shall be administered as provided therein. Without limiting the generality of the foregoing, payment with respect to any Claim or payment obligations assumed by the Purchasers shall be subject to the terms of any agreements related to the amounts thereof reached by KCO, the Purchasers and/or their Affiliates with the Holders of such Claims or obligations. Notwithstanding the passage of the Claims/Interests Objection Deadline, any Claims or payment obligations assumed by the Purchasers shall remain subject to any such agreement or any other right or defense available under applicable law or the Sale Order, Purchase Agreement or Settlement/Sale Transaction until such time as they have either been resolved by agreement of the parties or become the subject of a final order of a court of competent jurisdiction. To the extent of any disagreement over the amount of any Claim or other obligation assumed by the Purchasers under the Purchase Agreement, the Bankruptcy Court reserves jurisdiction to hear such disputes.

10.3 **Estimation of Claims**

The Liquidating Trustee may at any time request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to Bankruptcy Code section 502(c), regardless of whether the Liquidating Trustee or the Debtors have previously objected to such Claim or whether the Bankruptcy Court has ruled on any objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal related to any such objection. In the event the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Liquidating Trustee may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim. All of the aforementioned objection, estimation and resolution procedures are cumulative and are not necessarily exclusive of one another.

10.4 **No Distributions Pending Allowance**

Notwithstanding any provision in the Plan to the contrary, no distributions, partial or otherwise, shall be made with respect to a Disputed Claim or Disputed Interest until such Claim or Interest becomes an Allowed Claim or Allowed Interest. Subject to the provisions of the Plan, after a Disputed Claim or Disputed Interest becomes an Allowed Claim or Allowed Interest, the

Holder of such an Allowed Claim or Allowed Interest will receive all distributions to which such Holder is then entitled under the Plan on the next scheduled distribution date or as the Liquidating Trustee otherwise determines in its reasonable discretion. No post-Effective Date interest shall be paid on distributions hereunder. If the Holder of a Claim incorporates more than one Claim in a Proof of Claim then: (i) such Claim will be considered one Claim or for purposes of the Plan; and (ii) no such Claim will be bifurcated into an Allowed portion and a Disputed portion.

10.5    **Distributions After Allowance**

As soon as reasonably practicable after the date that an order or judgment of the Bankruptcy Court allowing all or part of any Claim or Interest that is a Disputed Claim or Disputed Interest becomes a Final Order, the Liquidating Trustee shall distribute to the Holder of such Claim or Interest the distribution (if any) that would have been made to such Holder had such Claim or Interest been Allowed when previous distributions were made. After a Disputed Claim or Disputed Interest becomes an Allowed Claim or Allowed interest or is otherwise resolved, any excess Cash or other property that was reserved on account of such Disputed Claim or Disputed Interest, if any, shall become property of the Liquidating Trust for the benefit of the Trust Beneficiaries.

10.6    **Reduction of Claims**

Notwithstanding the contents of the Schedules, Claims listed therein as undisputed, liquidated and not contingent shall be reduced by the amount, if any, that was paid by the Debtors prior to the Effective Date, including pursuant to orders of the Bankruptcy Court. To the extent such payments are not reflected in the Schedules, such Schedules will be deemed amended and reduced to reflect that such payments were made. Nothing in the Plan shall preclude the Liquidating Trustee from paying Claims that the Debtors were authorized to pay pursuant to any Final Order entered by the Bankruptcy Court prior to the Effective Date.

10.7    **Compliance with Tax Requirements/Allocations**

In connection with the Plan, to the extent applicable, the Liquidating Trustee shall comply with all tax withholding and reporting requirements imposed on it by any governmental unit with respect to all payments to Holders of Allowed Claims and income allocable to and distributions made to Holders of Allowed Interests. Any amounts so withheld shall be deemed paid to the Holder of the Allowed Claim or Allowed Interest, as applicable, subject to withholding. The Liquidating Trustee may require that each Holder complete the appropriate Internal Revenue Service Form W-8BEN, Internal Revenue Service Form W-8BEN-E, or Internal Revenue Service Form W-9, or successor form as applicable, to each Holder; *provided, however,* that the sole remedy in the event a Holder fails to comply with such a request within six months shall be to make a proper withholding of tax to the extent required by applicable law. Notwithstanding any provision in the Plan to the contrary, the Liquidating Trustee shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the Liquidating Trust Assets to generate sufficient funds to pay applicable withholding taxes with respect to a Holder, withholding distributions pending receipt of information necessary to facilitate such distribution,

or establishing any other mechanisms it believes are reasonable and appropriate. If the Liquidating Trustee fails to withhold with respect to any such Holder and is later liable for the amount of such withholding, the Holder shall reimburse the Liquidating Trustee. The Liquidating Trustee reserves the right to allocate all payments and distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, liens and encumbrances. Unless otherwise required by law or provided in the Plan, payments in respect of Allowed Claims shall be allocated first to the principal amount (as determined for U.S. federal income tax purposes) of such Allowed Claims, and then, to the extent the consideration exceeds the principal amount of such Allowed Claims, to any portion of such Allowed Claims for accrued but unpaid interest.

The Liquidating Trustee will in good faith value the Liquidating Trust Assets. The Liquidating Trustee shall make the respective values available from time to time, to the extent relevant, and such values shall be used consistently by all parties to the Liquidating Trust (including, without limitation, the Debtors, the Liquidating Trustee, and the Trust Beneficiaries) for all U.S. federal income tax purposes.

## ARTICLE XI
## CONDITIONS PRECEDENT TO CONFIRMATION
## AND CONSUMMATION OF THE PLAN

### 11.1    Conditions Precedent to Confirmation

The following are conditions precedent to the occurrence of Confirmation:

11.1.1  The Bankruptcy Court shall have entered an order, in a form reasonably acceptable to the Debtors, approving the adequacy of this Disclosure Statement; and

11.1.2  The Confirmation Order approving and confirming the Plan, as such Plan may have been modified, amended or supplemented, shall have been entered in form and substance reasonably acceptable to the Debtors.

### 11.2    Conditions Precedent to Effective Date

The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or waived in accordance with Section 11.4 below:

11.2.1  The Confirmation Order shall have been entered in form and substance reasonably acceptable to the Debtors and such order shall have become a Final Order.

11.2.2  No stay of the Confirmation Order is effect; and

11.2.3  All documents, instruments and agreements, in form and substance satisfactory to the Debtors, provided for or necessary to implement the Plan (including without limitation, the Liquidating Trust Agreement) have been executed and delivered.

11.3    **Substantial Consummation**

On the Effective Date, the Plan shall be deemed to be substantially consummated under Bankruptcy Code section 1101(2).

11.4    **Waiver of Conditions**

Each of the conditions set forth in Section 11.2 hereof may be waived in whole or in part by the Debtors. The failure to satisfy or waive any condition to the Effective Date may be asserted by the Debtors regardless of the circumstances giving rise to the failure of such condition to be satisfied.

11.5    **Revocation, Withdrawal, or Non-consummation**

The Debtors reserve the right to revoke or withdraw the Plan at any time prior to the Confirmation Date and to file subsequent plans. If the Debtors revoke or withdraw the Plan, or if Confirmation or substantial consummation of the Plan does not occur, then: (i) the Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests) unless otherwise agreed to by the Debtors and any counterparty to such settlement or compromise, and any document or agreement executed pursuant to the Plan shall be deemed null and void; and (iii) nothing contained in the Plan, and no acts taken in preparation for consummation of the Plan, shall (a) constitute or be deemed to constitute a waiver or release of any Claims by or against, or any Interests in, the Debtors or any other Person, (b) prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors, or (c) constitute an admission of any sort by the Debtors or any other Person.

## ARTICLE XII
## AMENDMENTS AND MODIFICATIONS

The Debtors may alter, amend, or modify the Plan under Bankruptcy Code section 1127(a) at any time prior to the Confirmation Date. After the Confirmation Date and prior to "substantial consummation" of the Plan, as defined in Bankruptcy Code section 1101(2), the Debtors may, under Bankruptcy Code section 1127(b), institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan, this Disclosure Statement or the Confirmation Order, and such matters as may be necessary to carry out the purposes and effects of the Plan, so long as such proceedings do not materially adversely affect the treatment of holders of Claims or Interests under the Plan or impair the rights provided to KCO or the Purchasers under the Sale Order (including the Wind-Down Budget), the Purchase Agreement or the Settlement/Sale Transaction; *provided, however,* that prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or order of the Bankruptcy Court.

## ARTICLE XIII
## RETENTION OF JURISDICTION

Under Bankruptcy Code sections 105(a) and 1142, and notwithstanding entry of the Confirmation Order and occurrence of the Effective Date, the Bankruptcy Court shall retain

exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

(A)     Allow, disallow, determine, liquidate, classify, estimate or establish the priority or Secured or unsecured status of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any objections to the Secured or unsecured status, priority, amount or allowance of Claims or Interests;

(B)     Hear and determine all applications for compensation and reimbursement of expenses of Professionals under Bankruptcy Code sections 327, 328, 330, 331, 503(b), or 1129(a)(4);

(C)     Hear and determine all matters with respect to the assumption or rejection of any executory contract or unexpired lease to which the Debtors are a party or with respect to which the Debtors may be liable, including, if necessary, the nature or amount of any required cure or the liquidating of any claims arising therefrom;

(D)     Hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of, under, or related to, the Chapter 11 Cases;

(E)     Enter and enforce such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan, this Disclosure Statement or the Confirmation Order;

(F)     Hear and determine disputes arising in connection with the interpretation, implementation, consummation, or enforcement of the Plan, including disputes arising under agreements, documents or instruments executed in connection with the Plan;

(G)     Consider any modifications of the Plan, cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(H)     Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person with implementation, consummation, or enforcement of the Plan or the Confirmation Order;

(I)     Enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

(J)     Hear and determine any matters arising in connection with or relating to the Plan, this Disclosure Statement, the Confirmation Order, the Liquidating Trust Agreement or any other contract, instrument, release, or other agreement or document created in connection with any of the foregoing, including, without limitation, to compel performance by the Disbursing Agent and/or the Liquidating Trustee of his, her or its duties;

(K)     Enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Chapter 11 Cases or pursuant to the Plan, including the Sale Order, the Purchase Agreement and the Settlement/Sale Transaction;

(L)     Recover all assets of the Debtors and property of their estates, wherever located;

(M)     Hear and determine matters concerning state, local, and federal taxes in accordance with Bankruptcy Code sections 346, 505, and 1146;

(N)     Hear and determine all disputes involving any releases granted in the Plan;

(O)     Hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code;

(P)     Enter an order or final decree concluding or closing the Chapter 11 Cases; and

(Q)     Enforce all orders previously entered by the Bankruptcy Court.

## ARTICLE XIV
## COMPROMISES AND SETTLEMENTS

Pursuant to Bankruptcy Code section 363 and Bankruptcy Rule 9019, and in consideration for the classification, distribution and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Interests and controversies resolved pursuant to the Plan, including, without limitation, all Claims or Interests arising prior to the Petition Date, whether known or unknown, foreseen or unforeseen, asserted or unasserted, arising out of, relating to or in connection with the business or affairs of, or transactions with, the Debtors. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements, and all other compromises and settlements provided for in the Plan, including, without limitation, the Intercompany Compromise, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtors, the estate, Holders of Claims and Interests and other parties in interest, and are fair, equitable and within the range of reasonableness.

## ARTICLE XV
## MISCELLANEOUS PROVISIONS

## 15.1    Bar Dates for Certain Actions

### 15.1.1 *Administrative Claims and Professional Fee Claims*

Except for Professional Fee Claims, all requests for payment or any other means of preserving and obtaining payment of Administrative Claims that have not been paid in the

ordinary course, released or otherwise settled, must be filed with the Bankruptcy Court and served upon the Liquidating Trustee no later than the Administrative Claims Bar Date. Any request for payment of Administrative Claims that is not filed by the Administrative Claims Bar Date will be forever disallowed and barred, and holders of such Claims will not be able to assert such Claims in any manner against the Debtors, the Debtors' estates, the Liquidating Trustee, the Liquidating Trust or any of their respective Affiliates or representatives. Objections to such requests must be filed and served on the requesting party by the later of (a) sixty (60) days after the Effective Date, and (b) sixty (60) days after the filing of the applicable request for payment of such Administrative Claims. Notwithstanding the foregoing, any governmental unit may assert an Administrative Claim or other post-petition claim for taxes pursuant to the statutory requirements applicable thereto without regard to the Administrative Claims Bar Date. Nothing in this section shall affect the Liquidating Trustee's right to seek expedited determination of post-petition tax liability pursuant to 11 U.S.C. § 505(b).

With respect to Professional Fee Claims, each Holder of a Professional Fee Claim seeking an award by the Bankruptcy Court of compensation for services rendered and/or reimbursement of expenses incurred from the Closing Date through and including the Effective Date must file and serve its respective final application for allowance of such Professional Fee Claim no later than the date that is thirty (30) days after the Effective Date or such other date as may be fixed by the Court. Objections to applications of such Professionals for compensation and/or reimbursement of expenses must be filed and served on the Liquidating Trustee and the requesting Professional no later than thirty (30) days after the date on which the applicable application for compensation or reimbursement was served. Payment of the Professional Fee Claims shall be governed by the terms of the Sale Order (including the Wind-Down Budget).

### 15.2    Severability of Plan Provisions

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### 15.3    Successors and Assigns

Except as set forth in the Liquidating Trust Agreement, the rights, benefits and obligations of any Person named or referred to in the Plan, including any holder of a Claim or Interest, shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, or successor of such entity.

### 15.4 Releases

#### 15.4.1 *Releases by Holders of Claims and Interests*

**Except as otherwise expressly provided in the Plan, the Confirmation Order, the Sale Order (including the Wind-Down Budget), the Purchase Agreement and the Settlement/Sale Transaction, on the Effective Date, for good and valuable consideration, a Holder of a Claim against and/or Interest in the Debtors who: (I) votes to accept the Plan, and does not opt out of the Releases contained in the Plan; (II) abstains from voting on the Plan; or (III) votes to reject the Plan, and does not opt out of the Releases contained in the Plan, shall be deemed to completely and forever release, waive, void, extinguish and discharge unconditionally, each and all of the Released Parties of and from any and all claims, obligations, suits, judgments, damages, debts, rights, remedies and liabilities of any nature whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are or may be based in whole or part on any act, omission, transaction, event or other circumstance taking place or existing on or prior to the Effective Date (including prior to the Petition Date) in connection with or related to the Debtors, their assets, property and estates, the Chapter 11 Cases, the Plan or this Disclosure Statement. For the avoidance of doubt, the foregoing releases described in the Plan shall not waive, affect, limit, restrict or otherwise modify the rights of the Debtors and the Liquidating Trustee to object to any Claim or Interest not expressly Allowed under the Plan.**

**Notwithstanding the foregoing and for the avoidance of doubt, the releases provided under the Sale Order, the Purchase Agreement and the Settlement/Sale Transaction shall govern any releases as among KCO, the Purchasers, the Debtors, the Buyer Settlement Parties (as defined in the Purchase Agreement) and the Debtor Settlement Parties (as defined in the Purchase Agreement) and other parties referenced therein, none of which shall be affected by the terms of the Plan.**

#### 15.4.2 *Releases Approved by Confirmation Order*

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval pursuant to Bankruptcy Rule 9019, of the releases set forth in Section 16.3.1, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that such release is: (i) in exchange for the good and valuable consideration provided by the Released Parties; (ii) a good faith settlement and compromise of the claims released by Section 16.3.1 of the Plan; (iii) in the best interests of the Debtors, their estates and all Holders of Claims and Interests; (iv) fair, equitable and reasonable; (v) given and made after due notice and opportunity for a hearing; and (vi) a bar to any Person asserting any claim released by Section 16.3.1. Notwithstanding the foregoing, nothing in Section 16.3 shall release any Released Party or other Entity or Person from its respective rights and obligations under the Plan or the Confirmation Order.**

### 15.4.3 *No Waiver*

Notwithstanding anything to the contrary contained in Article XV of the Plan, the releases set forth in Section 16.3.1 shall not, and shall not be deemed to, limit, abridge or otherwise affect the rights of the Liquidating Trustee to enforce, sue on, settle or compromise the rights, claims and other matters vested in and retained by the Liquidating Trust pursuant to the Plan or the Confirmation Order.

### 15.5    Bankruptcy Rule 3016 Compliance

The Debtors' compliance with the formal requirements of Bankruptcy Rule 3016(c) shall not constitute an admission that the Plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code.

### 15.6    Exculpation

**The Debtors and the Debtors' Professionals SHALL NOT BE LIABLE FOR ANY cause of action arising out of or related to any act or omission in connection with or relating to: (a) the formulation, preparation, solicitation, dissemination, negotiation, or filing of the Plan, the Plan Supplement, this Disclosure Statement, or any contract, instrument, release, or other agreement or document created or entered into in connection with any of the foregoing; (b) the Chapter 11 Cases; (c) the pursuit of Confirmation of the Plan; (d) the administration and implementation of the Plan; (e) the distribution of property under the Plan; and/or (f) any other prepetition or postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring and/or liquidation of the Debtors. All holders of Claims and Interests are enjoined from asserting or prosecuting any Claim or cause of action against the Debtors or the Debtors' Professionals as to any Claim or cause of action as to which the Debtors and the Debtors' Professionals have been exculpated pursuant to the Plan.**

### 15.7    Permanent Injunction

**Except as otherwise expressly provided in the Plan, the Confirmation Order, the Sale Order (including the Wind-Down Budget), the Purchase Agreement and the Settlement/Sale Transaction, all Persons who have held, hold or may hold Claims against, or Interests in, the Debtors are permanently enjoined, on and after the Effective Date, to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, from: (i) commencing or continuing in any manner any action or other proceeding of any kind against the Debtors, the Liquidating Trust, or their assets with respect to any such Claim or Interest in any venue other than the United States Bankruptcy Court for the Western District of Texas; (ii) the enforcement, attachment, collection, or recovery by any manner or means of judgment, award, decree or order against the Debtors, the Liquidating Trust, or their assets on account of any such Claim or Interest in any venue other than the United States Bankruptcy Court for the Western District of Texas; (iii) creating, perfecting, or enforcing any encumbrance of any kind against the Debtors, the Liquidating Trust, or their assets on account of any such Claim or Interest in any venue other than the United States Bankruptcy Court for the Western**

**District of Texas; and (iv) asserting any right of setoff, recoupment or subrogation of any kind against any obligation due from the Debtors, the Liquidating Trust, or their assets on account of any such Claim or Interest in any venue other than the United States Bankruptcy Court for the Western District of Texas.**

### 15.8    Term of Injunctions or Stay

Unless otherwise provided in the Plan, the Confirmation Order or the Sale Order, all injunctions or stays provided for in the Chapter 11 Cases under Bankruptcy Code sections 105 or 362 or otherwise, and in existence on the Confirmation Date (excluding any injunctions or stays contained in the Plan or Confirmation Order), shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan, the Confirmation Order and/or the Sale Order shall remain in full force and effect in accordance with their terms.

### 15.9    Binding Effect

The Plan shall be binding upon and inure to the benefit of the Debtors, all present and former holders of Claims against and Interests in the Debtors, their successors and assigns, including, but not limited to, the Debtors, and all other parties-in-interest in the Chapter 11 Cases.

### 15.10    Notices

Any notice, request, or demand required or permitted to be made or provided under the Plan to or upon the Debtors or the Liquidating Trustee shall be: (i) in writing; (ii) served by (a) certified mail, return receipt requested, (b) hand delivery, (c) overnight delivery service or (d) facsimile transmission; and (iii) deemed to have been duly given or made when actually delivered or, in the case of facsimile transmission, when received and telephonically confirmed, addressed as follows:

If to the Liquidating Trustee:

AAOG Liquidating Trust
c/o [_____], Liquidating Trustee
[_____]

With a copy, which shall not constitute notice, to:

DYKEMA GOSSETT PLLC
Deborah D. Williamson
dwilliamson@dykema.com
Patrick L. Huffstickler
phuffstickler@dykema.com
Danielle N. Rushing
drushing@dykema.com
112 East Pecan Street, Suite 1800
San Antonio, Texas 78205

Telephone: (210) 554-5500
Facsimile: (210) 226-8395

— and —

HOGAN LOVELLS US LLP
Richard L. Wynne
richard.wynne@hoganlovells.com
Bennett L. Spiegel
bennett.spiegel@hoganlovells.com
Erin N. Brady
erin.brady@hoganlovells.com
1999 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 785-4600
Facsimile: (310) 785-4601

### 15.11 Setoffs/Counterclaims

The Debtors may, but shall not be required to, setoff or counterclaim against any Claim and the payments or other distributions to be made pursuant to the Plan in respect of the Claim, claims of any nature whatsoever the estate may have against the Holder of the Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors of any claim that the estates may have against the Holder. Setoffs or counterclaims arising from events after the Petition Date shall reduce the payouts under any Allowed Claim dollar for dollar. Setoffs or counterclaims arising from pre-petition events shall reduce the amount of the Allowed Claim and, therefore, shall reduce the payout amount proportionally with the reduction in the Allowed Claim. If any counterclaim or setoff asserted by the Debtors exceeds the amount of any Claim, the holder of such Claim shall not be entitled to any distribution under the Plan, and the Debtors will reserve the right to recover any such excess counterclaim or set-off from the holder of the applicable Claim. After the Effective Date, the rights afforded to the Debtors under this paragraph shall apply to the Liquidating Trustee. **Except as provided in the Sale Order, (including the Wind-Down Budget), the Purchase Agreement (including the ORRI) and the Settlement/Sale Transaction), in no event shall any holder of Claims or Interests be entitled to setoff any Claim or Interest against any claim, right, or cause of action of the Debtors or the Liquidating Trustee, as applicable, unless such holder has filed a motion with the Bankruptcy Court requesting the authority to perform such setoff on or before the Confirmation Date, and notwithstanding any indication in any Proof of Claim or Interest or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to Bankruptcy Code section 553 or otherwise.**

### 15.12 Recoupment

Except as provided in the Sale Order (including the Wind-Down Budget), the Purchase Agreement (including the ORRI) and the Settlement/Sale Transaction, any Holder of a Claim or Interest shall not be entitled to recoup any Claim or Interest against any Claim or right of the

Debtors or the Liquidating Trustee, as applicable, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtors on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

### 15.13  Release of Liens

Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan or the Sale Order, Purchase Agreement and the Settlement/Sale Transaction, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Debtors' estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Debtors and its successors and assigns.

### 15.14  Request for Expedited Tax Review

The Liquidating Trustee shall have the right to request an expedited determination under Bankruptcy Code section 505(b) with respect to tax returns filed, or to be filed, for any and all taxable periods ending after the Petition Date through the Effective Date.

### 15.15  No Admissions

Notwithstanding anything herein to the contrary, nothing in the Plan shall be deemed as an admission by the Debtors with respect to any matter set forth herein, including liability on any Claim

### 15.16  Entire Agreement

The Plan, the Plan Supplement, the Confirmation Order, the Sale Order (including the Wind-Down Budget), the Purchase Agreement and the Settlement/Sale Transaction supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

### 15.17  Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of Texas, without giving effect to the principles of conflicts of law thereof, shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control) as well as corporate governance matters with respect to the Debtors.

# ARTICLE XVI
## CERTAIN U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

### 16.1    Certain Material U.S. Federal Income Tax Consequences of the Plan

The following discussion summarizes certain material federal income tax consequences of the implementation of the Plan to certain holders of the Allowed Secured Claim of Prepetition Secured Parties and Allowed General Unsecured Claims. For the avoidance of doubt, Allowed Claims include any Disputed Claim when such Claim becomes Allowed under the Plan. This summary does not address the U.S. federal income tax consequences to Holders whose Claims are entitled to payment in full in Cash or are otherwise unimpaired under the Plan (i.e., Holders of Allowed Other Priority Claims, Allowed Priority Tax Claims, Allowed Other Secured Claims).

This summary is based on the Internal Revenue Code of 1986, as amended (the "IRC"), existing and proposed Treasury regulations promulgated thereunder ("Treasury Regulations"), judicial decisions, and published administrative rules and pronouncements of the Internal Revenue Service ("IRS") as in effect on the date hereof, all of which are subject to change, possibly on a retroactive basis. Any such change could significantly affect the U.S. federal income tax consequences described below.

The U.S. federal income tax consequences of the Plan are complex and are subject to significant uncertainties. The Debtors have not requested a ruling from the IRS or an opinion of counsel with respect to any of the tax aspects of the Plan. The discussion below is not binding upon the IRS or the courts. Thus, no assurance can be given the IRS would not assert, or that a court would not sustain, a different position than any position discussed in this Disclosure Statement.

The following discussion does not address the U.S. federal income tax consequences to Holders of Allowed Claims in Class 3 (Secured Claim of Prepetition Secured Parties) or Class 5 (General Unsecured Claims) that are not U.S. Holders. For purposes of this discussion, a U.S." Holder" is a holder that is: (i) an individual citizen or resident of the United States for U.S. federal income tax purposes; (ii) a corporation (or other entity treated as a corporation for U.S. federal income tax purposes) created or organized under the laws of the United States, any state thereof, or the District of Columbia; (iii) an estate the income of which is subject to U.S. federal income taxation regardless of the source of such income; or (iv) a trust (a) if a court within the United States is able to exercise primary jurisdiction over the trust's administration and one or more U.S. persons have authority to control all substantial decisions of the trust, or (b) that has a valid election in effect under applicable Treasury Regulations to be treated as a U.S. person.

This discussion does not purport to address all aspects of U.S. federal income taxation that may be relevant to certain holders of Allowed Secured Claim of Prepetition Secured Parties or Allowed General Unsecured Claims in light of their individual circumstances, nor does it purport to address the U.S. federal income tax consequences of the Plan to holders that are subject to special treatment under U.S. federal income tax laws (including, without limitation, non-U.S. Holders, brokers, dealers and traders in securities, banks, mutual funds, insurance companies, financial institutions, thrifts, small business investment companies, regulated

investment companies, tax-exempt organizations, certain expatriates, or former long term residents of the United States, pass-through entities or investors in pass-through entities, and those holding Claims as part of a hedge, straddle, conversion, constructive sale or conversion transaction). This discussion assumes, except where otherwise indicated, that such Claims are held as "capital assets" (generally, property held for investment) within the meaning of section 1221 of the IRC. In addition, this summary does not address state, local or foreign income or other tax consequences of the Plan.

If a holder is a partnership, other pass-through entity or a disregarded entity for U.S. federal income tax purposes, the tax treatment of a partner in or owner of such entity generally will depend upon the status of the partner or owner, and the activities of the entity. Partners or owners of other pass-through entities as well as non-U.S. Holders and other holders that are subject to special treatment under U.S. federal income tax law should consult their respective tax advisors regarding the U.S. federal income tax consequences of the Plan.

**ACCORDINGLY, THE FOLLOWING SUMMARY OF CERTAIN U.S. FEDERAL INCOME TAX CONSEQUENCES IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING AND ADVICE BASED UPON THE PARTICULAR CIRCUMSTANCES PERTAINING TO A HOLDER OF A CLAIM. EACH HOLDER OF A CLAIM IS URGED TO CONSULT ITS OWN TAX ADVISORS FOR THE U.S. FEDERAL, STATE, LOCAL AND FOREIGN INCOME AND OTHER TAX CONSEQUENCES APPLICABLE TO IT UNDER THE PLAN.**

### 16.2 Consequences to U.S. Holders of Certain Claims

The U.S. federal income tax consequences of the Plan to U.S. Holders of Claims, including the character, amount and timing of income, gain or loss recognized as a consequence of the Plan and the distributions provided for by the Plan, generally will depend upon, among other things: (i) the manner in which a holder acquired a Claim; (ii) the length of time a Claim has been held; (iii) whether the Claim was acquired at a discount; (iv) whether the holder has taken a bad debt deduction in the current or prior years; (v) whether the holder has previously included accrued but unpaid interest with respect to a Claim; (vi) the holder's method of tax accounting; (vii) whether the holder will realize foreign currency exchange gain or loss with respect to a Claim; (viii) whether a Claim is an installment obligation for U.S. federal income tax purposes; and (ix) whether the transaction is treated as a "closed transaction." Therefore, U.S. Holders of Claims are urged to consult their tax advisors for information that may be relevant to their particular situation and circumstances and the particular tax consequences to such holders as a result thereof.

Pursuant to the Plan, the Secured Claim of Prepetition Secured Parties shall be deemed to have been Allowed in the aggregate amount of $145,871,156.63. All adequate protection and other payments made to or for the benefit of the First Lien Secured Parties and/or the Second Lien Secured Parties pursuant to the Cash Collateral Orders shall be retained by the relevant parties without any diminution of the treatment set forth above. Pursuant to the Sale Order, any and all Claims against the Debtors held by the First Lien Secured Parties and/or the Second Lien Secured Parties in excess of the Credit Bid, including but not limited to any deficiency claim or a claim of their Affiliates for the value of Warrant Interests, were waived as of the Closing Date.

Pursuant to the Plan, except to the extent that an Allowed General Unsecured Claim is settled or otherwise compromised, or has been assumed by the Purchasers under the Sale Order as part of the Settlement/Sale Transaction, each Holder of an Allowed General Unsecured Claim shall receive, in full satisfaction, release and discharge of and in exchange for all of its Allowed General Unsecured Claim, *first*, its Pro Rata share of amounts provided in the Wind-Down Budget, and *second*, to the extent funds in the Wind-Down Budget are insufficient to satisfy all General Unsecured Claims, its Pro Rata share of net proceeds of the ORRI, if any, as and when such net proceeds are received by the Liquidating Trust, following payment in full of all Allowed Administrative Tax Claims, Allowed Priority Tax Claims, Allowed Other Priority Claims, and Allowed Other Secured Claims, until such Holder's General Unsecured Claim is paid in full. For the avoidance of doubt, those Holders of Claims listed on **Exhibit B** to this Disclosure Statement, whose claims have been assumed by the Purchasers and have been or will be satisfied as part of the Settlement/Sale Transaction, shall not be deemed to be Holders of Class 5 Claims.

### 16.2.1 *Gain or Loss — Generally*.

In general, each U.S. Holder of the Allowed Secured Claim of Prepetition Secured Parties or an Allowed General Unsecured Claim will recognize gain or loss in an amount equal to the difference between (i) such Holder's "amount realized" in respect of its Claim (other than any amounts received in respect of any Claim for accrued but unpaid interest), which is the fair market value of any assets and the amount of Cash received, including its Pro Rata share of net proceeds of the ORRI, if any, as and when such net proceeds are received by the Liquidating Trust, and (ii) the holder's adjusted tax basis in its Claim (other than any tax basis attributable to accrued but unpaid interest). Where gain or loss is recognized by a holder, the character of such gain or loss as long-term or short-term capital gain or loss or as ordinary income or loss will be determined by a number of factors, including the tax status of the holder, whether the Claim constitutes a capital asset in the hands of the holder and how long it has been held, whether the Claim was acquired at a market discount, and whether and to what extent the holder previously had claimed a bad debt deduction. See the discussions of "accrued interest" and "market discount" below. Holders of the Allowed Secured Claim of Prepetition Secured Parties and Allowed General Unsecured Claims are urged to consult their tax advisors to determine the character of any gain or loss recognized in connection with the implementation of the Plan.

### 16.2.2 *Accrued Interest*.

A portion of the consideration received by the U.S. Holders of the Allowed Secured Claim of Prepetition Secured Parties or Allowed General Unsecured Claims may be attributable to accrued interest on such Allowed Claims. Such amount may be taxable to that holder as interest income if such accrued interest has not been previously included in such U.S. Holder's gross income for U.S. federal income tax purposes. Conversely, U.S. Holders of Allowed Claims may be able to recognize a deductible loss to the extent any accrued interest on the Allowed Claims was previously included in such U.S. Holder's gross income but was not paid in full.

If the fair market value of the consideration is not sufficient to fully satisfy all principal and interest on the Allowed Secured Claim of Prepetition Secured Parties or Allowed General Unsecured Claims, the extent to which such consideration will be attributable to accrued interest is unclear. The aggregate consideration to be distributed to holders of Allowed Claims will be

allocated first to the principal amount of such Allowed Claims, with any excess allocated to accrued but unpaid interest on such Claims, if any. Certain legislative history indicates that an allocation of consideration as between principal and interest provided in a chapter 11 plan is binding for U.S. federal income tax purposes; however, the applicable Treasury Regulations generally treat payments as allocated first to any accrued but unpaid interest and then as a payment of principal. The IRS could take the position that the consideration received by the U.S. Holder should be allocated other than as provided in the Plan. U.S. Holders of Allowed Claims should consult their own tax advisors regarding the proper allocation of the consideration received by them under the Plan.

### 16.2.3 *Market Discount*.

Under the "market discount" provisions of the IRC, some or all of any gain realized by a U.S. Holder of an Allowed Claim may be treated as ordinary income (instead of capital gain), to the extent of the amount of "market discount" constituting the Allowed Claim. In general, a debt instrument is considered to have been acquired by a U.S. Holder with "market discount" if it is acquired other than on original issue and if the U.S. Holder's adjusted tax basis in the debt instrument is less than (a) the sum of all remaining payments to be made on the debt instrument, excluding "qualified stated interest" or (b) in the case of a debt instrument issued with original issue discount, its adjusted issue price, in each case, by at least a *de minimis* amount (equal to 0.25% of the sum of all remaining payments to be made on the debt instrument, excluding qualified stated interest, multiplied by the number of remaining whole years to maturity).

### 16.3 Tax Treatment of Liquidating Trust and Its Beneficial Holders

#### 16.3.1 *Classification of the Liquidating Trust*

The Liquidating Trust is intended to qualify as a "liquidating trust" for U.S. federal income tax purposes. In general, a liquidating trust is not a separate taxable entity, but rather is treated for U.S. federal income tax purposes as a "grantor trust" (i.e., a pass-through type entity). However, merely establishing a trust as a liquidating trust does not ensure that it will be treated as a grantor trust for U.S. federal income tax purposes. The IRS has issued guidelines that set forth the general criteria for obtaining an IRS ruling as to the grantor trust status of a liquidating trust under a chapter 11 plan. The Liquidating Trust has been or will be structured with the intention of complying with such general criteria. Pursuant to the Plan, and in conformity with such IRS guidance, all parties (including, without limitation, the Debtors, the Liquidating Trustee, and the Trust Beneficiaries) are required to treat, for U.S. federal income tax purposes, the Liquidating Trust as a grantor trust of which the Trust Beneficiaries are the owners and grantors. The following discussion assumes that the Liquidating Trust will be so respected for U.S. federal income tax purposes. However, no ruling has been requested from the IRS and no opinion of counsel has been requested concerning the tax status of the Liquidating Trust as a grantor trust. Accordingly, there can be no assurance that the IRS would not take a contrary position. If the IRS were to successfully challenge the classification of the Liquidating Trust, the U.S. federal income tax consequences to the Liquidating Trust and its beneficiaries could vary from those discussed herein (including the potential for an entity-level tax on income of the Liquidating Trust).

### 16.3.2 *General Tax Reporting by the Liquidating Trust and Trust Beneficiaries*

For U.S. federal income tax purposes, all parties (including, without limitation, the Debtors, the Liquidating Trustee, and the Trust Beneficiaries) must treat the transfer of the Liquidating Trust Assets to the Liquidating Trust in accordance with the terms of the Plan. Pursuant to the Plan, the Liquidating Trust Assets are treated, for U.S. federal income tax purposes, as having been transferred, subject to any obligations relating to those assets, directly to the Holders of Allowed Interests (with each such Holder receiving an undivided interest in such assets in accordance with their Pro Rata share of Allowed Interests), followed by the transfer by the Holders of Allowed Interests to the Liquidating Trust of such assets in exchange for interests in the Liquidating Trust. Accordingly, all parties must treat the Liquidating Trust as a grantor trust of which the Trust Beneficiaries are the owners and grantors, and the direct owners of an undivided interest in the Liquidating Trust Assets, consistent with their economic interests therein, for all U.S. federal income tax purposes.

Pursuant to the Plan the Liquidating Trustee, will in good faith value the Liquidating Trust Assets. The Liquidating Trustee shall make the respective values available from time to time, to the extent relevant, and such values shall be used consistently by all parties to the Liquidating Trust (including, without limitation, the Debtors, the Liquidating Trustee, and the Trust Beneficiaries) for all U.S. federal income tax purposes.

Allocations of taxable income of the Liquidating Trust among the Trust Beneficiaries shall be determined by reference to the manner in which an amount of cash equal to such income would be distributed (were such Cash permitted to be distributed at such time) if, immediately prior to such deemed distribution, the Liquidating Trust had distributed all its assets (valued at their tax book value) to the Trust Beneficiaries, adjusted for prior income and loss and taking into account all prior and concurrent distributions from such Liquidating Trust. Similarly, taxable loss of the Liquidating Trust shall be allocated by reference to the manner in which an economic loss would be borne immediately after a liquidating distribution of the remaining assets of the Liquidating Trust. The tax book value of the assets of the Liquidating Trust for this purpose shall equal their fair market value on the Effective Date, adjusted in accordance with tax accounting principles prescribed by the IRC, the applicable Treasury Regulations, and other applicable administrative and judicial authorities and pronouncements. The effect of the above described allocation is to allocate taxable income or loss (i.e., the tax impact of receipts and expenditures) in a partnership-type fashion, to the Trust Beneficiaries.

Taxable income or loss allocated to each Trust Beneficiary will be treated as income or loss with respect to such Trust Beneficiary's undivided interest in the Liquidating Trust Assets. The character of any income and the character and ability to use any loss will depend on the particular situation of such Trust Beneficiary.

The Liquidating Trustee will file with the IRS returns for the Liquidating Trust as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a). The Liquidating Trustee will annually send to Trust Beneficiaries a separate statement regarding the receipts and expenditures of the Liquidating Trust as relevant for U.S. federal income tax purposes and will instruct all Trust Beneficiaries to use such information in preparing their U.S. federal income tax returns or

to forward the appropriate information to such Trust Beneficiary's underlying beneficial holders with instructions to utilize such information in preparing their U.S. federal income tax returns.

The Liquidating Trustee will comply with all applicable governmental withholding requirements. Thus, in the case of any Trust Beneficiary that *is not* a U.S. Holder, the Liquidating Trustee may be required to withhold up to 30% of the income or proceeds allocable to such persons. *As indicated above, the foregoing discussion of the U.S. federal income tax consequences of the Plan does not generally address the consequences to non-US. Holders,. accordingly, such holders should consult their tax advisors with respect to the U.S. federal income tax consequences of the Plan, including owning an interest in the Liquidating Trust.*

16.4    **Information Reporting and Withholding**

All payments under the Plan to Holders of Allowed Claims and income allocable to and distributions made to Holders of Allowed Interests are subject to any applicable tax withholding, including employment tax withholding. Under U.S. federal income tax law, interest, dividends, and other reportable payments may, under certain circumstances, be subject to "backup withholding" at the then applicable withholding rate (currently 28%). Backup withholding generally applies if the holder (a) fails to furnish its social security number or other taxpayer identification number, (b) furnishes an incorrect taxpayer identification number, (c) fails properly to report interest or dividends, or (d) under certain circumstances, fails to provide a certified statement, signed under penalty of perjury, that the tax identification number provided is its correct number and that it is not subject to backup withholding. Backup withholding is not an additional tax but merely an advance payment, which may be refunded to the extent it results in an overpayment of tax. Certain persons are exempt from backup withholding, including, in certain circumstances, corporations and financial institutions.

16.5    **Importance of Obtaining Professional Tax Assistance**

THE FOREGOING DISCUSSION IS INTENDED ONLY AS A SUMMARY OF CERTAIN INCOME TAX CONSEQUENCES OF THE PLAN AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING WITH A TAX PROFESSIONAL. THE ABOVE DISCUSSION IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT TAX ADVICE. THE TAX CONSEQUENCES ARE IN MANY CASES UNCERTAIN AND MAY VARY DEPENDING ON THE PARTICULAR CIRCUMSTANCES OF A HOLDER OF A CLAIM OR INTEREST. ACCORDINGLY, HOLDERS OF CLAIMS AND INTERESTS ARE URGED TO CONSULT THEIR OWN TAX ADVISORS ABOUT THE UNITED STATES FEDERAL, STATE, AND LOCAL, AND APPLICABLE FOREIGN INCOME AND OTHER TAX CONSEQUENCES OF THE PLAN.

**ARTICLE XVII**
**CONCLUSION AND RECOMMENDATION**

The Debtors believe that the Plan is in the best interests of all Holders of Claims and Interests, and urge those Holders of Claims and Interests entitled to vote to accept the Plan and to evidence such acceptance by returning their Ballots so they will be RECEIVED by the Voting Agent by no later than 5:00 p.m. prevailing Central time on May 29, 2019. If the Plan is not

confirmed, or if Holders in those Classes do not vote to accept the Plan, the Holders in those Classes may not receive a distribution.

*[Signature Page Follows]*

Dated: [_____], 2019

**All American Oil & Gas Incorporated; Manor Oil, Inc.; and Hilltop Power, Inc., DEBTORS**

By:     /s/ *David J. Katz, Esq.*
Name:  David J. Katz, Esq.
Title:   Secretary and General Counsel

**<u>Exhibit A</u>**

**Plan of Liquidation**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| ALL AMERICAN OIL & GAS INCORPORATED, *et al.*, | § | Case No. 18-52693-rbk |
| | § | |
| | § | Jointly Administered Under |
| Debtors. | § | Case No. 18-52693-rbk |
| | § | |

## JOINT CHAPTER 11 PLAN OF LIQUIDATION

## DATED [_____], 2019

**DYKEMA GOSSETT PLLC**

Deborah D. Williamson (TX 21617500)
dwilliamson@dykema.com
Patrick L. Huffstickler (TX 10199250)
phuffstickler@dykema.com
Danielle N. Rushing (TX 24086961)
drushing@dykema.com

112 East Pecan Street, Suite 1800
San Antonio, Texas 78205
Telephone: (210) 554-5500
Facsimile: (210) 226-8395

*- and -*

**HOGAN LOVELLS US LLP**

Richard L. Wynne (CA 120349)
*Pro hac vice* admission
richard.wynne@hoganlovells.com
Bennett L. Spiegel (CA 129558)
*Pro hac vice* admission
bennett.spiegel@hoganlovells.com
Erin N. Brady (CA 215038)
*Pro hac vice* admission
erin.brady@hoganlovells.com

1999 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 785-4600
Facsimile: (310) 785-4601

*Counsel for Debtors*

# TABLE OF CONTENTS

**ARTICLE I DEFINITIONS AND INTERPRETATION** ........................................................1

    1.1    Rules of Interpretation ..........................................................1
    1.2    Computation of Time .............................................................1
    1.3    Definitions...............................................................................2
    1.4    Defined Terms .........................................................................2

**ARTICLE II TREATMENT OF UNCLASSIFIED CLAIMS AGAINST THE DEBTOR**...........................................................................................................12

    2.1    Unclassified Claims ..............................................................12
    2.2    Treatment of Allowed Administrative Claims......................12
    2.3    Bar Dates for the Filing and Assertion of Administrative Claims and Professional Fee Claims............................................................13
    2.4    Treatment of Allowed Priority Tax Claims ..........................14

**ARTICLE III CLASSIFICATION OF CLAIMS AND INTERESTS** .........................14

    3.1    Creation of Classes ...............................................................14
    3.2    Claims May Be in More Than One Class ..............................15

**ARTICLE IV IDENTIFICATION OF CLASSES OF CLAIMS AND INTERESTS THAT ARE AND ARE NOT IMPAIRED UNDER THIS PLAN**...................15

    4.1    Classes of Claims Not Impaired ...........................................15
    4.2    Impaired Classes of Claims and Interests .............................15
    4.3    Impairment Controversies.....................................................15

**ARTICLE V TREATMENT OF CLASSES OF CLAIMS AND INTERESTS**....................15

    5.1    Class 1 – Other Priority Claims ...........................................15
    5.2    Class 2 – Allowed Secured DWT Claim ..............................16
    5.3    Class 3 – Secured Claim of Prepetition Secured Parties.......16
    5.4    Class 4 – Other Secured Claims............................................16
    5.5    Class 5 – General Unsecured Claims ....................................16
    5.6    Class 6 – Intercompany Claims ............................................17
    5.7    Class 7 – CFS Claim .............................................................17
    5.8    Class 8 – Interests .................................................................17

**ARTICLE VI ACCEPTANCE OR REJECTION OF THIS PLAN** ......................17

    6.1    Classes and Claims Entitled to Vote .....................................17
    6.2    Nonconsensual Confirmation................................................18

**ARTICLE VII MEANS FOR IMPLEMENTATION OF THIS PLAN AND POST EFFECTIVE DATE GOVERNANCE**................................................18

    7.1    The Liquidating Trust ...........................................................18
    7.2    Disbursing Agent ..................................................................20

7.3    Cancellation of Interests ............................................................................21
7.4    Termination of Status; Officers and Directors.........................................21
7.5    Distribution Procedures .............................................................................22
7.6    Effectuating Documents; Further Reorganization Transactions............22
7.7    Exemption from Certain Transfer Taxes ..................................................22
7.8    Closing of the Chapter 11 Cases ..............................................................22

**ARTICLE VIII PROVISIONS GOVERNING DISTRIBUTIONS GENERALLY**.............22

8.1    Timing and Delivery of Distributions.....................................................22
8.2    Method of Cash Distributions ..................................................................23
8.3    Failure to Negotiate Checks .....................................................................23
8.4    De Minimis Distributions .........................................................................23
8.5    Distribution Record Date ..........................................................................23

**ARTICLE IX EXECUTORY CONTRACTS, UNEXPIRED LEASES, AND OTHER AGREEMENTS**...............................................................................23

9.1    Assumption/Rejection...............................................................................23
9.2    Claims Based on Rejection of Executory Contracts and Unexpired Leases ........24
9.3    Reservation of Rights................................................................................24

**ARTICLE X PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT, AND UNLIQUIDATED CLAIMS** ...........................................................24

10.1   Objections to Claims.................................................................................24
10.2   Objection Deadline ...................................................................................25
10.3   Estimation of Claims.................................................................................25
10.4   No Distributions Pending Allowance .......................................................26
10.5   Distributions After Allowance ..................................................................26
10.6   Reduction of Claims .................................................................................26
10.7   Compliance with Tax Requirements/Allocations ....................................26

**ARTICLE XI CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THIS PLAN** .................................................................27

11.1   Conditions Precedent to Confirmation......................................................27
11.2   Conditions Precedent to Effective Date ....................................................27
11.3   Substantial Consummation .......................................................................28
11.4   Waiver of Conditions................................................................................28
11.5   Revocation, Withdrawal, or Non-Consummation ...................................28

**ARTICLE XII AMENDMENTS AND MODIFICATIONS**................................................28

**ARTICLE XIII RETENTION OF JURISDICTION**...............................................29

**ARTICLE XIV COMPROMISES AND SETTLEMENTS**.................................30

**ARTICLE XV RATIFICATION OF THE SALE ORDER, PURCHASE AGREEMENT AND THE SETTLEMENT/SALE TRANSACTION**..............................31

    15.1    Sale Order Controls..........................................................................31

**ARTICLE XVI MISCELLANEOUS PROVISIONS**................................................31

    16.1    Severability of Plan Provisions....................................................31
    16.2    Successors and Assigns...............................................................31
    16.3    Releases........................................................................................32
    16.4    Bankruptcy Rule 3016 Compliance.............................................33
    16.5    Exculpation..................................................................................33
    16.6    Permanent Injunction..................................................................33
    16.7    Term of Injunctions or Stay........................................................34
    16.8    Integral to Plan...........................................................................34
    16.9    Binding Effect.............................................................................34
    16.10   Notices.........................................................................................34
    16.11   Setoffs/Counterclaims.................................................................35
    16.12   Recoupment.................................................................................36
    16.13   Release of Liens..........................................................................36
    16.14   Request for Expedited Tax Review.............................................36
    16.15   No Admissions............................................................................36
    16.16   Entire Agreement........................................................................36
    16.17   Governing Law............................................................................36

**ARTICLE XVII CONFIRMATION REQUEST**.................................................37

**JOINT CHAPTER 11 PLAN OF LIQUIDATION**
**OF ALL AMERICAN OIL & GAS INCORPORATED**

All American Oil & Gas Incorporated ("AAOG"); Manor Oil, Inc., formerly known as Kern River Holdings Inc. ("Manor"); and Hilltop Power, Inc., formerly known as Western Power & Steam, Inc. ("Hilltop", and together with AAOG and Manor, the "Debtors"), the debtors and debtors-in-possession in the above-captioned cases, hereby propose the following Joint Chapter 11 Plan of Liquidation (this "Plan") pursuant to Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"). Although proposed jointly for administrative purposes, this Plan constitutes a separate Plan for each Debtor for the resolution of outstanding claims against and interests in each Debtor pursuant to the Bankruptcy Code. Each Debtor is a proponent of this Plan within the meaning of § 1129 of the Bankruptcy Code. The Plan contemplates no substantive consolidation of any of the Debtors. Reference is made to the Disclosure Statement for a discussion of the Debtors' history, business, properties and operations, projections, risk factors, a summary and analysis of this Plan and certain related matters.

**ARTICLE I**
**DEFINITIONS AND INTERPRETATION**

### 1.1 Rules of Interpretation

For purposes of this Plan: (a) all Section and Article references in this Plan are to the respective Section or Article of this Plan, as the same may be amended, waived or modified from time to time; (b) the headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof; (c) words denoting the singular number shall include the plural number and vice versa; (d) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (e) in computing any period of time prescribed or allowed by this Plan, Rule 9006(a) of the Federal Rules of Bankruptcy Procedure shall apply; (f) the words "herein," "hereof," "hereto," "hereunder" and other terms of similar import refer to this Plan as a whole and not to any particular Article, Section, subsection or clause contained in this Plan; (g) any reference herein to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (h) any reference herein to an existing document or exhibit filed, or to be filed, shall mean such document or exhibit, as it may have been or may be amended, modified or supplemented from time to time; and (i) the words "include," "includes," "including," and similar words or phrases shall be deemed to be followed by the phrase "without limitation."

### 1.2 Computation of Time

In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply. If any payment, distribution, act or deadline under this Plan is required to be made or performed or occurs on a day that is not a Business Day, then the making of such payment or distribution, the performance of such act or the occurrence of such deadline shall be deemed to be on the next succeeding Business Day, but shall be deemed to have been completed or to have occurred as of the required date.

1.3     Definitions

Terms and phrases, whether capitalized or not, that are used and not defined in this Plan, but that are defined in the Bankruptcy Code, have the meanings ascribed to them in the Bankruptcy Code.  Unless otherwise provided in this Plan, the terms defined in Section 1.4 of this Plan (which appear in this Plan as capitalized terms) have the respective meanings set forth in such section, and such meanings shall be equally applicable to the singular and plural forms of the terms defined, unless the context otherwise requires.

1.4     Defined Terms

1.4.1     "AAOG" means All American Oil & Gas Incorporated.

1.4.2     "Acquired Assets" means the Assets of the Debtors that were sold to the Purchasers pursuant to the Purchase Agreement and the Sale Order.

1.4.3     "Administrative Claim" means a Claim for costs and expenses of administration of the Bankruptcy Case entitled to priority under section 503(b) of the Bankruptcy Code including, but not limited to, (i) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Debtors' estates and operating the businesses of the Debtors (such as wages, salaries, reimbursement obligations or commissions for services and payments for goods and other services and leased premises); (ii) Professional Fees; and (iii) all fees and charges assessed against the Debtors' estates pursuant to 28 U.S.C. § 1930.

1.4.4     "Administrative Claims Bar Date" means thirty (30) days after the Effective Date.

1.4.5     "Affiliate" has the meaning set forth in section 101(2) of the Bankruptcy Code.

1.4.6     "Allowed" means:

(a)     with respect to Claims, a Claim (i) which has been scheduled as undisputed, non-contingent and liquidated in the Schedules (subject to the Debtors' right to amend such schedules) and as to which no objection or request for estimation has been filed on or before the Claims/Interests Objection Deadline or the expiration of such other period fixed by the Bankruptcy Court; (ii) as to which a Proof of Claim has been properly and timely filed and either (x) no objection thereto has been timely filed, or if an objection has been timely filed, such portion of which is not subject to such objection, or (y) such Claim has been allowed (but only to the extent allowed) by a Final Order; (iii) which is compromised, settled or otherwise resolved pursuant to the authority granted to the Liquidating Trustee under this Plan; or (iv) which has been expressly allowed under the provisions of this Plan; *provided, however*, that the Claims of the Prepetition Secured Parties in Class 3 are deemed Allowed; *provided further,* that the Claim of KCO, as Holder of the CFS Claim, in Class 7 is also deemed Allowed.

(b)    with respect to Interests, an Interest (i) as to which a Proof of Interest has been properly and timely filed and either (x) no objection thereto has been timely filed, or if an objection has been timely filed, such portion of which is not subject to such objection, or (y) such Interest has been allowed (but only to the extent allowed) by a Final Order; (ii) that is recorded in the Schedule of Interests as belonging to the Holder; or (iii) which has been expressly allowed under the provisions of this Plan;

(c)    with respect to any Administrative Claim (i) a Claim (other than a Professional Fee Claim) that represents an actual and necessary expense of preserving the Debtors' estates or operating the businesses of the Debtors, to the extent such Claim is determined by the Liquidating Trustee to constitute an Allowed Administrative Claim; (ii) a Claim that is Allowed in whole or in part by a Final Order, and only to the extent that such Allowed portion is determined pursuant to Final Order to constitute a cost or expense of administration under section 503(b) of the Bankruptcy Code; and (iii) a Claim that represents a Professional Fee Claim to the extent such Professional Fee Claim is Allowed by an order of the Bankruptcy Court; and

(d)    except as otherwise specified in this Plan or a Final Order of the Bankruptcy Court, the amount of an Allowed Claim shall not include interest on such Claim from and after the Petition Date.

1.4.7    "Allowed Secured DWT Claim" means the Secured Claim of Davis Wright Tremaine LLP in the amount of $3,847.50 on account of fees for professional services rendered, which amount is secured by a retainer in excess of such fees and shall be deemed Allowed pursuant to this Plan.

1.4.8    "Assets" means all property of the Debtors' estates as defined in the Bankruptcy Code.

1.4.9    "Ballot" means each of the ballot forms distributed with the Disclosure Statement to Holders of Impaired Claims and/or Interests entitled to vote under Article VI hereof in connection with the solicitation of acceptances of this Plan.

1.4.10    "Bar Date" means January 22, 2019.

1.4.11    "Bankruptcy Code" means title 11 of the United States Code, section 101, et seq., as now in effect or as hereafter amended.

1.4.12    "Bankruptcy Court" means the United States Bankruptcy Court for the Western District of Texas, San Antonio Division or, if such court ceases to exercise jurisdiction, the court or adjunct thereof that exercises jurisdiction over the Chapter 11 Cases.

1.4.13    "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as amended and promulgated under section 2075 of title 28 of the United States Code, together with the local bankruptcy rules for the Bankruptcy Court as now in effect or as the same may from time to time hereafter be modified or amended.

1.4.14     "Business Day" means any day that is not a Saturday, a Sunday or a "legal holiday" within the meaning of Bankruptcy Rule 9006(a).

1.4.15     "Cash" means lawful currency of the United States of America.

1.4.16     "Cash Collateral Orders" means, collectively, the orders of the Bankruptcy Court permitting the Debtors to use the cash collateral of the First Lien Secured Parties and Second Lien Secured Parties on an interim basis, entered on: (i) November 15, 2018, ECF No. 58 (the "First Interim Order"); (ii) December 19, 2018 [ECF No. 161] (the "Second Interim Order"); (iii) January 7, 2019 [ECF No. 223] (the "Third Interim Order"); (iv) January 22, 2019 [ECF No. 311] (the "Fourth Interim Order"); and (v) March 5, 2019 [ECF No. 477] (the "Fifth Interim Order").

1.4.17     "CFS Claim" means, collectively, (i) claim number 16 filed by Camden Financial Services against KRH in the amount of $4,162,000.00; and (ii) claim number 17 filed by Camden Financial Services against AAOG in the amount of $4,162,000.00.

1.4.18     "Chapter 11 Cases" means the bankruptcy cases initiated by the Debtors when they filed their voluntary petitions under Chapter 11 of the Bankruptcy Code on November 12, 2018, jointly administered as Case No. 18-52693.

1.4.19     "Claim" means a claim against the Debtors or any of them, or their property, as such term is defined in section 101(5) of the Bankruptcy Code.

1.4.20     "Claims/Interests Objection Deadline" means the first Business Day that is at least 60 days after the Effective Date, or such later date as may be established by the Bankruptcy Court in accordance with Section 10.2 of this Plan.

1.4.21     "Class" means a category of Claims or Interests, as classified in Article III of this Plan.

1.4.22     "Closing Date" means the date of the closing of the Sale, which occurred on March 1, 2019.

1.4.23     "Collateral" means any property or interest in property of any Debtor's estate subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable state laws.

1.4.24     "Collateral Agents" means, collectively, the First Lien Collateral Agent and Second Lien Collateral Agent.

1.4.25     "Confirmation" or "Confirmation of this Plan" means the approval of this Plan pursuant to section 1129 of the Bankruptcy Code by the Bankruptcy Court.

1.4.26     "Confirmation Date" means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on its docket.

1.4.27    "<u>Confirmation Hearing</u>" means the hearing to consider confirmation of this Plan under section 1128 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

1.4.28    "<u>Confirmation Order</u>" means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code, as such order may be amended, modified, or supplemented.

1.4.29    "<u>Credit Bid</u>" means the credit bid of the Collateral Agents (at the direction of KCO, as "Required Lenders" under each of the First Lien Credit Agreement and Second Lien Credit Agreement) in the amount of not less than $128,500,000.00 for the purchase of substantially all of the Debtors' assets, including, without limitation, all or substantially all of the Acquired Assets, in accordance with section 3.1 of the Purchase Agreement, consisting of (i) the First Lien Secured Claim, and (ii) the Second Lien Secured Claim.

1.4.30    "<u>Debtors</u>" means, collectively: AAOG, Manor and Hilltop.

1.4.31    "<u>Debtor Settlement Parties</u>" means each of the Debtors and their Affiliates, and each of their respective employees, directors and officers.

1.4.32    "<u>Disallowed</u>" means a Claim or Interest or any portion thereof that is not Allowed.

1.4.33    "<u>Disbursing Agent</u>" means KCO, solely in its capacity as Disbursing Agent under the Liquidating Trust Agreement.

1.4.34    "<u>Disclosure Statement</u>" means the Disclosure Statement in support of this Plan, attached to the Disclosure Statement Order as <u>Exhibit A</u>, including all exhibits, appendices, schedules, and annexes attached thereto, as submitted by the Debtors pursuant to section 1125 of the Bankruptcy Code and approved by the Bankruptcy Court, as such Disclosure Statement may be amended, supplemented, or modified from time to time.

1.4.35    "<u>Disclosure Statement Order</u>" means the order approving the Disclosure Statement.

1.4.36    "<u>Disputed Claim</u>" means any Claim or any portion thereof which has not become Allowed.  For purposes of this Plan, a Claim that has not been Allowed by a Final Order shall be considered a Disputed Claim, whether or not an objection has been or may be timely filed, if: (i) the amount of the Claim specified in the Proof of Claim exceeds the amount of any corresponding Claim scheduled in the Schedules; (ii) the classification of the Claim specified in the Proof of Claim differs from the classification of any corresponding Claim scheduled in the Schedules; (iii) any corresponding Claim has been scheduled in the Schedules as disputed, contingent or unliquidated; (iv) no corresponding Claim has been scheduled in the Schedules; (v) such Claim is reflected as unliquidated or contingent in the Proof of Claim filed in respect thereof; or (vi) the amount, validity, priority or other rights of the Claim are otherwise being contested.

1.4.37    "Disputed Interest" means any Interest or any portion thereof which has not become Allowed.

1.4.38    "Dykema" means Dykema Gossett, PLLC.

1.4.39    "Effective Date" means the date on which all of the conditions set forth in Section 11.2 have been satisfied.

1.4.40    "Entity" means any corporation, general or limited partnership, limited liability company or partnership, joint venture, association, trust, government agency, body or political subdivision thereof, or unincorporated association, group or body, or other entity, as defined in section 101(15) of the Bankruptcy Code.

1.4.41    "Final Order" means a judgment, order, ruling, or other decree issued and entered by the Bankruptcy Court or by any state or other federal court or other tribunal having jurisdiction over the subject matter thereof, which judgment, order, ruling, or other decree has not been reversed, stayed, modified, or amended and as to which: (i) the time to appeal or petition for review, rehearing or certiorari has expired and as to which no appeal or petition for review, rehearing or certiorari is pending; or (ii) any appeal or petition for review, rehearing or certiorari has been finally decided and no further appeal or petition for review, rehearing or certiorari can be taken or granted.

1.4.42    "First Lien Administrative Agent" means KCO, solely in its capacity as Administrative Agent under the First Lien Credit Agreement.

1.4.43    "First Lien Collateral Agent" means KCO, solely in its capacity as Collateral Agent under the First Lien Security Documents.

1.4.44    "First Lien Credit Agreement" means that certain Amended and Restated Credit Agreement dated as of September 30, 2016, by and among KRH, as Borrower; AAOG and WPS, as guarantors, pursuant to the First Lien Guaranty; the First Lien Lender; and the First Lien Administrative Agent, as amended, modified or supplemented and in effect from time to time.

1.4.45    "First Lien Guaranty" means that certain Amended and Restated Guaranty, dated as of September 30, 2016, in favor of the First Lien Collateral Agent.

1.4.46    "First Lien Lender" means KCO, solely in its capacity as Lender under the First Lien Credit Agreement.

1.4.47    "First Lien Secured Claim" means the Allowed Secured Claim of the First Lien Secured Parties, in the amount of not less than $83,472,346.15, secured by valid, perfected, enforceable and unavoidable first-priority liens on substantially all of the Debtors' assets, including all or substantially all of the Acquired Assets.

1.4.48    "First Lien Secured Parties" means, collectively, the First Lien Collateral Agent, the First Lien Administrative Agent, the First Lien Lender. and any

other creditor whose Claim was secured by the Liens held by or *pari passu* with KCO as First Lien Collateral Agent.

1.4.49    "First Lien Security Documents" means all of the security, pledge, control, and collateral agreements and documents executed in connection with the First Lien Credit Agreement evidencing the First Lien Secured Parties' valid, perfected, enforceable and unavoidable first-priority liens on substantially all of the Debtors' assets, including all or substantially all of the Acquired Assets.

1.4.50    "General Unsecured Claim" means any Claim that is not an Administrative Claim, an Other Priority Claim, a Priority Tax Claim, Secured Claim (including the Allowed Secured Claim of DWT, Secured Claim of Prepetition Secured Parties and Other Secured Claims), or an Interest.

1.4.51    "Hilltop" means Hilltop Power, Inc., formerly known as Western Power & Steam, Inc.

1.4.52    "Hogan Lovells" means Hogan Lovells US LLP.

1.4.53    "Holder" means the Person that is the owner of record of a Claim or Interest, as applicable.

1.4.54    "Impaired" means, when used in reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

1.4.55    "Intercompany Claim" means any Claim held by a Debtor against any other Debtor.

1.4.56    "Intercompany Compromise" means the waiver of all Intercompany Claims including without limitation any Intercompany Claims against AAOG as the net debtor under certain Intercompany Claims and the waiver of KRH's Intercompany Claim against WPS based on the payment of all other claims against KRH and WPS in full.

1.4.57    "Interest(s)" means all equity interests in AAOG, including any issued and outstanding common or preferred stock, any restricted equity units, calls, rights, puts, awards, commitments, repurchase rights, unvested or unexercised options, warrants, unvested common interests, unvested preferred interests or any other agreements of any character related to any equity interests in AAOG and/or any other instrument evidencing an ownership interest in AAOG.

1.4.58    "KCO" means Kern Cal Oil 7, LLC.

1.4.59    "KRH" means Kern River Holdings Inc., now known as Manor Oil, Inc.

1.4.60    "KRH II" means Kern River Holdings II LLC, a Delaware limited liability company.

1.4.61　　　"Lien" means valid and enforceable lien, mortgage, security interest, pledge, charge, encumbrance, or other legally cognizable security device of any kind, which is not subject to avoidance or subordination under the Bankruptcy Code or other applicable law.

1.4.62　　　"Liquidating Trust" means the trust established under Section 7.1 of this Plan.

1.4.63　　　"Liquidating Trust Agreement" means the agreement setting forth the terms and conditions governing the Liquidating Trust, which shall be filed in the Plan Supplement.

1.4.64　　　"Liquidating Trust Assets" means (i) Cash in an amount sufficient to fund the Wind-Down Budget; (ii) the ORRI; and (iii) and all Other Assets.

1.4.65　　　"Liquidating Trustee" means the party designated pursuant to this Plan or the Liquidating Trust Agreement to serve as Liquidating Trustee. The identity of the Liquidating Trustee shall be disclosed in the Plan Supplement.

1.4.66　　　"Manor" means Manor Oil, Inc., formerly known as Kern River Holdings Inc.

1.4.67　　　"Ordinary Course Professional" means the professionals retained in these Chapter 11 Cases pursuant to the *Order Authorizing the Debtors to Retain and Compensate Professionals in the Ordinary Course of Business* [ECF No. 309].

1.4.68　　　"ORRI" means the contingent production payment, structured as an overriding royalty interest, and to be perfected as such, of $550,000 per six-month period (up to a maximum of $5,500,000), payable to the Liquidating Trust semiannually through and including the date that is five and a half years after closing of the Settlement/Sale Transaction, solely to the extent the Purchasers entities' (or their successors' or assigns') realized average price for sales to non-affiliates (measured in a manner consistent with the existing prepetition third party production payments to the Debtors, but for the avoidance of doubt, not deducting the existing burdens of production or taking into account the impact of any hedging of production in making such calculation) exceeds $70.00 per barrel, subject to the other terms, conditions, and deductions set forth in that certain *Assignment of Overriding Royalty Interest* from Kern River Holdings II LLC to AAOG, dated as of 7:01 a.m. Pacific Time on March 1, 2019, which is attached to the Disclosure Statement as Exhibit C. In the event that post-closing Professional Fees incurred and allowed pursuant to either the agreement of KCO or an Order of the Bankruptcy Court exceed $250,000, then such amount above $250,000 and up to $500,000 shall be reimbursable to KCO from the initial proceeds, if any, payable to the Liquidating Trust pursuant to the ORRI.

1.4.69　　　"Other Assets" means all Assets other than the Acquired Assets.

1.4.70    "Other Priority Claim" means a Claim against any Debtor, other than an Administrative Claim or a Priority Tax Claim, entitled to priority in right of payment pursuant to section 507(a) of the Bankruptcy Code.

1.4.71    "Other Secured Claim" means either (i) a Claim, other than a First Lien Secured Claim or Second Lien Secured Claim, that is secured by a lien on property in which any Debtor has an interest, which lien is valid, perfected and enforceable under applicable law or pursuant to a Final Order, or that is subject to setoff under applicable non-bankruptcy law or Bankruptcy Code section 553, to the extent of the value of the creditor's interest in such property or to the extent of the amount subject to setoff, as applicable, all as determined pursuant to Bankruptcy Code section 506(a); or (ii) a Claim, other than a First Lien Secured Claim or Second Lien Secured Claim, which is Allowed under this Plan as a Secured Claim.

1.4.72    "Person" means any person, individual, Entity, or other entity or being of whatever kind, whether or not operating or existing for profit, including, but not limited to, any "person" as such term is defined in section 101(41) of the Bankruptcy Code.

1.4.73    "Petition Date" means November 12, 2018.

1.4.74    "Plan" means this Joint Chapter 11 Plan of Liquidation and any amendments, supplements or modifications thereto.

1.4.75    "Plan Supplement" means such other documents required to be filed pursuant to this Plan, which shall be filed on or before seven (7) days before the date of the hearing on Confirmation of this Plan.

1.4.76    "Prepetition Collateral" means the Collateral securing the First Lien Credit Agreement and Second Lien Credit Agreement.

1.4.77    "Prepetition Secured Parties" means, collectively, the First Lien Secured Parties, Second Lien Secured Parties, and any other creditor whose Claim was secured by the Liens held by or *pari passu* with KCO as First Lien Collateral Agent and Second Lien Collateral Agent.

1.4.78    "Priority Tax Claim" means any Claim of a governmental unit to the extent that such Claim is entitled to a priority in payment under section 507(a)(8) of the Bankruptcy Code.

1.4.79    "Pro Rata" means, at any time, the proportion that the dollar amount, in the case of an Allowed Claim, or shares of Common Stock, in the case of an Allowed Interest, in a particular Class bears to the aggregate dollar amount of all Allowed Claims or the total number of shares of outstanding Common Stock (with respect to Allowed Interests) in such Class.

1.4.80    "Professional" means those Persons retained in this Chapter 11 Cases pursuant to an order of the Bankruptcy Court in accordance with section §§ 327 or 328 of the Bankruptcy Code.

1.4.81    "Professional Fee Claim" means a Claim by a Professional for compensation and/or reimbursement of expenses pursuant to sections 328, 330, 331 or 503(b) of the Bankruptcy Code.

1.4.82    "Proof of Claim" means any proof of claim filed with the Bankruptcy Court with respect to the Debtors pursuant to Bankruptcy Rules 3001 or 3002.

1.4.83    "Purchase Agreement" means that certain Settlement and Asset Purchase Agreement between the Debtors and Purchasers, dated as of March 1, 2019, and as approved by the Bankruptcy Court pursuant to the Sale Order, including all exhibits and schedules thereto.

1.4.84    "Purchasers" means, collectively, KRH II, WPS II, and KCO, in its capacity as "Buyer" under the Purchase Agreement.

1.4.85    "Rejection Claim" means any Allowed Claim arising from the rejection of a contract or lease under Article IX of this Plan.

1.4.86    "Released Parties" means each of: (i) the Debtors; (ii) the First Lien Secured Parties and Second Lien Secured Parties; (iii) the Professionals; (iv) in each case of (i) through (iii), their predecessors, successors, and assigns, professionals, advisors, accountants, attorneys, investment bankers, and consultants; and (v) in each case of (i) through (iv), their current and former affiliates, subsidiaries, funds, portfolio companies, management companies, employees, agents, directors and officers, and other representatives (each solely in their capacity as such).

1.4.87    "Sale Order" means that certain *Order Granting Motion Pursuant to Sections 105, 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004 6006 and 9019 to Approve (A) Sale of Substantially all Assets Free and Clear of Liens, Claims and Encumbrances to Kern Cal Oil 7 LLC or its Designees(s); (B) Allow the Assumption and Assignment of Certain Leases or Contracts to the Buyer; (C) Approve Settlements and Releases Between the Debtors and Kern Cal Oil 7 LLC and Related Parties; and (D) Grant Related Relief,* dated March 1, 2019, including all exhibits thereto [Dkt. No. 468].

1.4.88    "Schedule of Interests" means the list of Holders of Interests filed separately with the Bankruptcy Court under seal identifying the number of shares and percentage of total outstanding shares comprising each Holder's Interests, which shall be controlling for all purposes, including, without limitation, voting to accept or reject this Plan and determining each such Holder's Pro Rata share of interests in the Liquidating Trust.

1.4.89    "Schedules" means the schedules of assets and liabilities and the statements of financial affairs filed by the Debtors on December 19 and 20, 2018 [ECF

Nos. 163, 165 and 166], as amended [ECF Nos. 186, 231], under section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as such schedules or statements have been or may be further modified, amended or supplemented in accordance with Bankruptcy Rule 1009 or orders of the Court through the Confirmation Date.

1.4.90    "Second Lien Administrative Agent" means KCO, solely in its capacity as Administrative Agent under the Second Lien Credit Agreement.

1.4.91    "Second Lien Collateral Agent" means KCO, solely in its capacity as Collateral Agent under the Second Lien Security Documents.

1.4.92    "Second Lien Credit Agreement" means that certain Second Lien Credit Agreement dated as of August 31, 2015, by and among KRH, as Borrower; AAOG and WPS, as guarantors, pursuant to the Second Lien Guaranty; the Second Lien Lenders; and the Second Lien Administrative Agent, as amended, modified or supplemented and in effect from time to time.

1.4.93    "Second Lien Guaranty" means that certain Amended and Restated Guaranty, dated as of September 30, 2016, in favor of the Second Lien Collateral Agent.

1.4.94    "Second Lien Lender" means KCO, solely in its capacity as Lender under the Second Lien Credit Agreement.

1.4.95    "Second Lien Secured Claim" means the Allowed Secured Claim of the Second Lien Secured Parties, in the amount of not less than $62,398,810.48, secured by valid, perfected, enforceable and unavoidable second-priority liens on substantially all of the Debtors' assets, including all or substantially all of the Acquired Assets.

1.4.96    "Second Lien Secured Parties" means, collectively, the Second Lien Collateral Agent, Second Lien Administrative Agent, and Second Lien Lender.

1.4.97    "Second Lien Security Documents" means all of the security, pledge, control, and collateral agreements and documents executed in connection with the Second Lien Credit Agreement evidencing valid, perfected, enforceable and unavoidable second-priority liens on substantially all of the Debtors' assets, including all or substantially all of the Acquired Assets.

1.4.98    "Secured Claim" means a Claim that is: (i) secured as provided by section 506(a) of the Bankruptcy Code, in whole or in part, by a Lien on any assets of the Debtors that is not subject to avoidance or subordination under the Bankruptcy Code or applicable non-bankruptcy law, but only to the extent of the value of the Collateral securing such Claim; or (ii) subject to setoff under section 553 of the Bankruptcy Code, but only to the extent of the amount subject to such setoff.

1.4.99    "Secured Claim of Prepetition Secured Parties" means, collectively, the First Lien Secured Claim and Second Lien Secured Claim.

1.4.100    "Settlement/Sale Transaction" means, collectively, (i) the transactions contemplated by the Purchase Agreement; and (ii) the terms of the settlement between the Debtors, Purchasers, and their respective affiliates contained in the Purchase Agreement and in the Sale Order.

1.4.101    "Trust Beneficiaries" means the Holders of Interests in the proportions indicated in the Schedule of Interests.

1.4.102    "Unliquidated" means when used in reference to a Claim, any Claim, the amount of liability for which has not been fixed, whether pursuant to an agreement, applicable law or otherwise, as of the date on which such Claim is sought to be estimated.

1.4.103    "Voting Agent" means BMC Group, Inc.

1.4.104    "Voting Deadline" means    5:00 p.m. prevailing Central time on May 29, 2019.

1.4.105    "Warrant Interest" means an Interest held under the warrants issued in connection with the Second Lien Credit Agreement, and held by KCO as of the Petition Date.

1.4.106    "Wind-Down Budget" means that certain Wind-Down Budget, as approved by the Court as part of the Sale Order and attached to the Disclosure Statement as Exhibit D. The Sale Order shall govern the administration of the Wind-Down Budget.

1.4.107    "WPS" means Western Power & Steam, Inc., now known as Hilltop Power, Inc.

1.4.108    "WPS II" means Western Power and Steam II LLC, a Delaware limited liability company.

## ARTICLE II
## TREATMENT OF UNCLASSIFIED CLAIMS AGAINST THE DEBTOR

2.1    Unclassified Claims

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified but shall be treated as set forth in this Article II.

2.2    Treatment of Allowed Administrative Claims

Except to the extent that any Holder of an Allowed Administrative Claim agrees to a less favorable treatment, each Holder of an Allowed Administrative Claim (excluding Professional Fee Claims) shall receive from the Liquidating Trustee, in full and final satisfaction of such Allowed Administrative Claim, the amount of such Allowed Administrative Claim, in Cash, on or as soon as practicable after the later of: (i) the Effective Date; (ii) the date that is fourteen (14) days after the date such Administrative Claim is Allowed; and (iii) such other date as may be agreed upon in writing by the holder of such Administrative Claim and the Liquidating Trustee;

*provided, however*, that Allowed Administrative Claims representing obligations incurred in the ordinary course of business of the Debtors, if any, shall be paid in full in accordance with the terms and conditions of the particular transactions and any applicable agreements or assumed and assigned to the Purchasers as part of the Settlement/Sale Transaction. To the extent funds in the Wind-Down Budget are insufficient to satisfy any Allowed Administrative Claim, and such Allowed Administrative Claim has not been paid in full pursuant to the Sale Order, Settlement/Sale Transaction, or other Final Order of the Bankruptcy Court, and has not been assumed by Purchasers pursuant to the Settlement/Sale Transaction, any remaining amounts owed will come from proceeds of the ORRI, if any, as and when such payments are received by the Liquidating Trust, before any distributions will be made to Holders of Allowed Priority Tax Claims, Other Priority Claims, Allowed General Unsecured Claims, or Allowed Interests.

Professional Fee Claims shall be paid from a segregated escrow account, funded by the Debtors with all budgeted amounts through the Closing Date for Professionals and Ordinary Course Professionals for which payment has been allocated in the Wind-Down Budget. In addition, KCO has previously funded up to $500,000 through the Wind-Down Budget for the professional fees of Dykema and Hogan Lovells post-closing in order to implement the Settlement/Sale Transaction, seek confirmation and approval of this Plan, and take any necessary steps to conclude the Chapter 11 Cases. In the event that such post-closing fees incurred and allowed pursuant to either the agreement of KCO or an Order of the Bankruptcy Court exceed $250,000, then such amount above $250,000 and up to $500,000 shall be reimbursable to KCO from the proceeds, if any, payable to the Liquidating Trust pursuant to the ORRI. The Debtors will establish a separate segregated escrow account to hold the $500,000 in the Wind-Down Budget for the professional fees of Dykema and Hogan Lovells incurred after March 1, 2019, which amounts will be disbursed by the Liquidating Trustee directly to Dykema and Hogan Lovells once their Professional Fee Claims are Allowed. The Sale Order (including the Wind-Down Budget) shall govern the Administration of the Professional Fee Claim reserves.

    2.3    <u>Bar Dates for the Filing and Assertion of Administrative Claims and Professional Fee Claims</u>

Except for Professional Fee Claims, all requests for payment or any other means of preserving and obtaining payment of Administrative Claims that have not been paid in the ordinary course, released or otherwise settled, must be filed with the Bankruptcy Court and served upon the Liquidating Trustee no later than the Administrative Claims Bar Date. Any request for payment of Administrative Claims that is not filed by the Administrative Claims Bar Date will be forever disallowed and barred, and holders of such Claims will not be able to assert such Claims in any manner against the Debtors, the Debtors' estates, the Liquidating Trustee, the Liquidating Trust or any of their respective Affiliates or representatives. Objections to such requests must be filed and served on the requesting party by the later of (a) sixty (60) days after the Effective Date and (b) sixty (60) days after the filing of the applicable request for payment of such Administrative Claims. Notwithstanding the foregoing, any governmental unit may assert an Administrative Claim or other post-petition claim for taxes pursuant to the statutory requirements applicable thereto without regard to the Administrative Claims Bar Date. Nothing in this section shall affect the Liquidating Trustee's right to seek expedited determination of post-petition tax liability pursuant to 11 U.S.C. § 505(b).

With respect to Professional Fee Claims, each Holder of a Professional Fee Claim seeking an award by the Bankruptcy Court of compensation for services rendered and/or reimbursement of expenses incurred from the Closing Date through and including the Effective Date must file and serve its respective final application for allowance of such Professional Fee Claim no later than the date that is thirty (30) days after the Effective Date or such other date as may be fixed by the Court. Objections to applications of such Professionals for compensation and/or reimbursement of expenses must be filed and served on the Liquidating Trustee and the requesting Professional no later than thirty (30) days after the date on which the applicable application for compensation or reimbursement was served. Payment of the Professional Fee Claims shall be governed by the terms of the Sale Order (including the Wind-Down Budget).

2.4     Treatment of Allowed Priority Tax Claims

Except to the extent that any Holder of an Allowed Priority Tax Claim agrees to less favorable treatment, each Holder of an Allowed Priority Tax Claim shall receive, in full and final satisfaction of such Allowed Priority Tax Claim, the amount of such Allowed Priority Tax Claim, in Cash, on or as soon as practicable after the latest of: (i) the Effective Date; (ii) the date that is fourteen (14) days after the date such Claim is Allowed; (iii) the date that is five (5) years after the Petition Date; and (iv) such other date as may be agreed upon in writing by the Holder of such Claim. To the extent funds in the Wind-Down Budget are insufficient to satisfy Allowed Priority Tax Claims, any remaining amounts owed will come from proceeds of the ORRI, if any, before any distributions will be made to Holders of Allowed Other Priority Claims, Allowed General Unsecured Claims or Allowed Interests.

**ARTICLE III**
**CLASSIFICATION OF CLAIMS AND INTERESTS**

3.1     Creation of Classes

Pursuant to section 1122 of the Bankruptcy Code, this Plan classifies Claims against and Interests in the Debtors in the classes set forth below for all purposes, including voting, confirmation and distribution.

**CLASSIFICATION OF CLAIMS AGAINST THE DEBTORS**

| | |
|---|---|
| Class 1 | Other Priority Claims |
| Class 2 | Allowed Secured DWT Claim |
| Class 3 | Secured Claim of Prepetition Secured Parties |
| Class 4 | Other Secured Claims |
| Class 5 | General Unsecured Claims |
| Class 6 | Intercompany Claims |
| Class 7 | CFS Claim |
| Class 8 | Interests |

3.2    Claims May Be in More Than One Class

A Claim shall be deemed classified in a particular Class only to the extent that the Claim qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim qualifies within the description of such different Class. A Claim is in a particular Class only to the extent that such Claim is Allowed in that Class and has not been paid or otherwise satisfied prior to the Effective Date.

## ARTICLE IV
## IDENTIFICATION OF CLASSES OF CLAIMS AND INTERESTS
## THAT ARE AND ARE NOT IMPAIRED UNDER THIS PLAN

4.1    Classes of Claims Not Impaired

Classes 1, 4, and 6 are not impaired under this Plan, are not entitled to vote and shall be conclusively presumed to accept this Plan under Section 1126(f) of the Bankruptcy Code.

4.2    Impaired Classes of Claims and Interests

Classes 2, 3, 5, 7 and 8 are impaired under this Plan.

4.3    Impairment Controversies

If a controversy arises as to whether any Class of Claims or Class of Interests is impaired under this Plan, such Class shall be treated as specified in this Plan unless prior to Confirmation of this Plan the Bankruptcy Court shall determine such controversy differently upon objection of the party challenging the characterization of a particular Class of Claims or Class of Interests under this Plan.

## ARTICLE V
## TREATMENT OF CLASSES OF CLAIMS AND INTERESTS

5.1    Class 1 – Other Priority Claims

Unless the Holder of an Allowed Other Priority Claim agrees to different treatment, each holder of an Allowed Other Priority Claim shall receive, in full and final satisfaction of such Allowed Other Priority Claim, the amount of such Allowed Other Priority Claim in Cash on or as soon as practicable after the latest of: (i) the Effective Date; (ii) the date that is fourteen (14) days after the date such Claim is Allowed; or (iii) such other date as may be agreed upon in writing by the holder of such Claim. To the extent funds in the Wind-Down Budget are insufficient to satisfy Allowed Other Priority Claims, any remaining amounts owed will come from proceeds of the ORRI, if any, as and when such payments are received by the Debtors or their successors, before any distributions will be made to Holders of Allowed General Unsecured Claims or Allowed Interests.

5.2     Class 2 – Allowed Secured DWT Claim

The Allowed Secured Claim DWT Claim is secured by a retainer held by DWT in excess of the fees that are the subject of its Claim, and such Claim shall be deemed Allowed pursuant to this Plan in the amount of $3,847.50. The Holder of the Allowed Secured DWT Claim shall receive, in full and final satisfaction of the Allowed Secured DWT Claim, on or as soon as reasonably practicable after the Effective Date, payment, in Cash, in the amount of $3,400.00.

5.3     Class 3 – Secured Claim of Prepetition Secured Parties

The Prepetition Secured Parties shall receive, in full and final satisfaction of the Secured Claim of Prepetition Secured Parties, the treatment provided to the Prepetition Secured Parties pursuant to the Settlement/Sale Transaction and the Sale Order. The Purchasers will perform all of their obligations pursuant to the Sale Order, including, without limitation, making payments for those Allowed Claims that the Purchasers agreed to assume pursuant to the Purchase Agreement. Pursuant to the Sale Order and except for those rights and claims under the Sale Order, Purchase Agreement and the Settlement/Sale Transaction, any and all prepetition Claims against the Debtors held by the Prepetition Secured Parties in excess of the Credit Bid as of the Closing Date have been waived, including, without limitation, any Claims held by KCO (or its Affiliates) on account of the Warrant Interests.

5.4     Class 4 – Other Secured Claims

Unless the Holder of an Allowed Other Secured Claim agrees to different treatment, each Holder of an Allowed Other Secured Claim shall receive, in full and final satisfaction of such Allowed Other Secured Claim, either: (i) the amount of such Allowed Other Secured Claim in Cash on or as soon as practicable after the latest of (a) the Effective Date, (b) the date that is fourteen (14) days after the date such Claim is Allowed, or (c) such other date as may be agreed upon in writing by the Holder of such Claim; (ii) setoff against the retainer securing such Other Secured Claim held by the Holder of such Claim on the Debtors' accounts; or (iii) the return of the applicable Collateral in satisfaction of the Allowed amount of such Other Secured Claim. Upon satisfaction of such Allowed Other Secured Claim as set forth herein, any Liens securing such Other Secured Claim shall be deemed released. Pursuant to the Wind-Down Budget incorporated into the Sale Order, any amounts owed by Ordinary Course Professionals after payment of all pre-petition and post-petition fees and expenses (other than Professionals as defined in the Sale Order) are to be paid to the Debtors. To the extent applicable, 11 U.S.C. § 362 is modified *nunc pro tunc* to March 1, 2019 to allow setoff of all amounts owed to Ordinary Course Professionals and delivery of the excess retainers to the Debtors.

5.5     Class 5 – General Unsecured Claims

Except to the extent such Allowed General Unsecured Claim is settled or otherwise compromised, or has been assumed by the Purchasers under the Sale Order as part of the Settlement/Sale Transaction, each Holder of an Allowed General Unsecured Claim shall receive, in full and final satisfaction of such Allowed General Unsecured Claim, its Pro Rata share of net proceeds of the ORRI, if any, as and when such net proceeds are received, following payment in full of all Allowed Administrative Tax Claims, Allowed Priority Tax Claims, Allowed Other

Priority Claims, and Allowed Other Secured Claims, until such Holder's General Unsecured Claim is paid in full. For the avoidance of doubt, pursuant to paragraph 4(i) of the Sale Order, those Holders of Claims listed on <u>Exhibit B</u> of the Disclosure Statement, whose claims have been assumed by the Purchasers and have been or will be satisfied as part of the Settlement/Sale Transaction, shall not be deemed to be Holders of Class 5 Claims.

5.6     Class 6 – Intercompany Claims

Pursuant to the Intercompany Compromise, on the Effective Date, all Intercompany Claims not previously transferred to the Purchasers pursuant to the Purchase Agreement, shall be voluntarily waived by the applicable Debtor and extinguished, and any documents that previously evidenced such Intercompany Claim shall be deemed cancelled (all without further action by any Person or the Bankruptcy Court) and shall be null and void and such documents shall evidence no Intercompany Claim against any Debtor. Holders of Intercompany Claims shall not receive or retain any property under this Plan on account of such Intercompany Claim.

5.7     Class 7 – CFS Claim

KCO, as the Holder of the CFS Claim, shall receive, in full and final satisfaction of the CFS Claim, the treatment provided to such Holder pursuant to the Settlement/Sale Transaction, the Purchase Agreement and the Sale Order. Pursuant to the Purchase Agreement and the Sale Order, the CFS Claim shall have been voluntarily released in full and shall be unenforceable against either Manor or AAOG, all without further action by any Person or the Bankruptcy Court.

5.8     Class 8 – Interests

On the Effective Date, except as provided in Section 7.3 of this Plan, all equity interests in Manor and Hilltop shall be cancelled and extinguished. All Holders of Allowed Interests in AAOG will be deemed Trust Beneficiaries as of the Effective Date, and will be deemed to have exchanged their Allowed Interests for their Pro Rata share of interests in the Liquidating Trust according to the Schedule of Interests. Such Holders will be entitled to periodic distributions from the Liquidating Trust of net proceeds from the ORRI, if any, as and when such payments are received by the Liquidating Trust, following payment in full of any unpaid but Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Other Priority Claims, Allowed Other Secured Claims, and Allowed General Unsecured Claims.

<div align="center">

**ARTICLE VI**
**ACCEPTANCE OR REJECTION OF THIS PLAN**

</div>

6.1     Classes and Claims Entitled to Vote

Each Holder of an Allowed Claim or Interest in an impaired Class shall be entitled to vote to accept or reject this Plan. Holders of Claims in Classes not impaired under this Plan shall not be entitled to vote to accept or reject this Plan and shall be presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code. Classes 1, 4, and 6 are not impaired and hence are conclusively presumed to have accepted this Plan. Classes 2, 3, 5, 7 and 8 are

impaired, and each Holder of a Claim in Class 2, Class 3, Class 5 or Class 7, or of an Interest in Class 8, is entitled to vote to accept or reject this Plan.

6.2     Nonconsensual Confirmation

If any of the impaired Classes do not vote to accept this Plan by the requisite statutory majorities, the Debtors reserve the right to amend this Plan. If the Holders of Claims in Class 3, Class 5, or Class 7, or Holders of Interests in Class 8, vote to reject this Plan, the Debtors shall request that the Bankruptcy Court confirm this Plan pursuant to Bankruptcy Code § 1129(b).

# ARTICLE VII
# MEANS FOR IMPLEMENTATION OF THIS PLAN
# AND POST EFFECTIVE DATE GOVERNANCE

7.1     The Liquidating Trust

This Section 7.1 is a general description of the Liquidating Trust and its provisions. The Liquidating Trust Agreement shall be included in the Plan Supplement. To the extent this Section 7.1 is inconsistent with the Liquidating Trust Agreement, the Liquidating Trust Agreement shall control for all purposes.

7.1.1     Creation of the Liquidating Trust

On or before the Effective Date, the Debtors shall take all necessary steps to establish the Liquidating Trust for the benefit of the Trust Beneficiaries by the execution and delivery of the Liquidating Trust Agreement.

7.1.2     Transfer of the Liquidating Trust Assets

On the Effective Date, the Liquidating Trust Assets, including, without limitation, the ORRI, shall be irrevocably transferred to and vest in the Liquidating Trust free and clear of all Liens, Claims, charges and encumbrances. For all U.S. federal income tax purposes, all Persons (including, without limitation, the Debtors and the Liquidating Trustee and the Trust Beneficiaries) shall treat the transfer and assignment of the Liquidating Trust Assets to the Liquidating Trust for the benefit of the Trust Beneficiaries as (a) a transfer directly to the Trust Beneficiaries of their Pro Rata share of the Liquidating Trust Assets in complete liquidation of the Debtors followed by (b) the transfer by the Trust Beneficiaries to the Liquidating Trust of the Liquidating Trust Assets. In accordance with Rev. Proc. 94-45 (Section 3.04), valuations of the Liquidating Trust Assets by the Liquidating Trustee and the Trust Beneficiaries shall be consistent and such valuations shall be used for all federal income tax purposes. The Liquidating Trust will be treated as a grantor trust for U.S. federal tax purposes and, to the extent permitted under applicable law, for state and local income tax purposes. The Trust Beneficiaries will be treated as the grantors and owners of their Pro Rata share of Liquidating Trust Assets for U.S. federal income tax purposes. In accordance with Treasury Regulation Section 1.671-4(a), the Liquidating Trustee will prepare and file an annual Form 1041 for the Liquidating Trust and provide each Trust Beneficiary with a copy thereof along with such Trust Beneficiary's Schedule K-1 or other applicable information, as provided in the Liquidating Trust Agreement. On and after the Effective Date, the Liquidating Trustee may use, acquire and dispose of property and

compromise or settle any Claims, without the supervision of or approval by the Bankruptcy Court, and free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than the restrictions expressly imposed by this Plan, the Confirmation Order, Liquidating Trust Agreement, the Sale Order (including the Wind-Down Budget), the Purchase Agreement and/or the Settlement/Sale Transaction.

### 7.1.3 Purpose of the Liquidating Trust

The Liquidating Trust, duly organized under the laws of Texas, shall be established for the purpose of liquidating and distributing the Liquidating Trust Assets in accordance with Treasury Regulation Section 301.7701-4(d) and any analogous provision of state or local law, including to the extent required by Rev. Proc. 94-45 (Section 3.10), and shall be governed by the Liquidating Trust Agreement.

### 7.1.4 Administration of the Liquidating Trust; Funding

The Liquidating Trust shall be administered by the Liquidating Trustee pursuant to the Liquidating Trust Agreement. Additionally, subject to the terms of the Liquidating Trust Agreement, the Liquidating Trust may borrow against, pledge, hypothecate, otherwise encumber, or convey Liquidating Trust Assets as needed to accomplish the goals of the Liquidating Trust.

The Liquidating Trust Agreement shall provide that the Liquidating Trust Assets shall be used, *first*, to pay the costs in the Wind-Down Budget and fund the administrative costs and expenses of the Liquidating Trust, including, without limitation, the reasonable fees and expenses of the Liquidating Trustee and the reasonable fees and expenses of any professionals employed by the Liquidating Trustee; and *second*, to make periodic distributions as set forth in this Plan and the Liquidating Trust Agreement.

### 7.1.5 The Liquidating Trustee

The identity of the Liquidating Trustee shall be disclosed in the Plan Supplement. The Liquidating Trustee shall retain and have all the rights, powers and duties necessary to carry out their responsibilities under this Plan and the Liquidating Trust Agreement, and as otherwise provided in the Confirmation Order. The Liquidating Trustee shall be the exclusive trustee of the Liquidating Trust Assets for the purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as a representative of the estate appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code. The Liquidating Trustee's liability may be limited by the Liquidating Trust Agreement to include limitations of liability for negligence and any actions except for willful misconduct or fraud. Disbursements from the Liquidating Trust shall be made through the Disbursing Agent.

### 7.1.6 Powers and Duties of the Liquidating Trustee

The Liquidating Trustee shall administer the Liquidating Trust Assets in accordance with this Plan, the Liquidating Trust Agreement, the Sale Order (including the Wind-Down Budget), the Purchase Agreement and the Settlement/Sale Transaction. The powers of the Liquidating Trustee shall include any and all powers and authority necessary to implement this Plan and the Liquidating Trust Agreement including: (i) serving as the sole officer, director and person in

control of the Debtors on and after the Effective Date; (ii) holding, managing and liquidating and/or abandoning any of the Liquidating Trust Assets; (iii) investing Cash; (iv) taking all steps to execute all instruments and documents necessary to effectuate distributions to Holders of Allowed Claims in accordance with this Plan including, without limitation, the establishment of any reserves that the Liquidating Trustee deems necessary and/or appropriate; (v) paying, through the Disbursing Agent, Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Other Priority Claims, Allowed Other Secured Claims and Allowed General Unsecured Claims in accordance with this Plan; (vi) paying Allowed Professional Fee Claims; (vii) employing, retaining, terminating or replacing professionals to represent it with respect to its responsibilities or otherwise effectuating this Plan and Liquidating Trust Agreement; (viii) paying any and all reasonable fees and expenses of the post-Effective Date Debtors (if any) and any professionals employed by the Liquidating Trustee **without approval of the Bankruptcy Court**; (ix) making periodic distributions of proceeds from the ORRI, if any, as and when such net proceeds are received, through the Disbursing Agent through the Disbursing Agent; (x) administering and paying taxes, including filing tax returns; (xi) requesting an expedited determination of any unpaid tax liability of the Debtors or post-Effective Date Debtors under Bankruptcy Code § 505; (xii) representing the interests of the Debtors or the Liquidating Trust before any taxing authority in all matters, including any action, suit, proceeding or audit; (xiii) taking all steps reasonably necessary and practicable to terminate the corporate existence of the Debtors in accordance with this Plan; (xiv) subject to section 10.1.2 of this Plan, authority to file objections to all Claims and/or Interests and to settle, compromise, or litigate to judgment any objections to Claims filed by the Liquidating Trustee and, subject to the terms of the Liquidating Trust Agreement, authority to settle or compromise any Disputed Claim without the approval of the Bankruptcy Court; (xv) having the authority to prosecute any cause of action that may accrue after the Effective Date in favor of the Liquidating Trustee, including, without limitation, any cause of action retained by the Debtors' estates pursuant to section 2.1(b)(xii) of the Purchase Agreement, and having the authority to compromise, settle, resolve, discontinue, abandon or dismiss all such actions **without approval of the Bankruptcy Court**; (xvi) having the authority to request estimation of any contingent or unliquidated Claim in accordance with and pursuant to the rights provided for in Section 10.3 of this Plan; (xvii) requesting that the Bankruptcy Court estimate any contingent or unliquidated Claim, regardless of whether the Liquidating Trustee, Debtors or Purchasers have previously objected to such Claim or whether the Bankruptcy Court has ruled on any objection; (xviii) undertaking all administrative functions of the Chapter 11 Cases, including the ultimate dissolution of the Debtors and the exclusive authority to seek the closing of the Chapter 11 Cases; (xix) in the Liquidating Trustee's discretion, to hold the stock in AAOG exchanged by the Trust Beneficiaries in order to consummate a transaction, as soon as reasonably possible, for the purchase and sale to, or merger of such stock into the equity interests of, an unrelated third party, and taking any and all actions necessary to pursue and consummate such a transaction; (xx) taking all steps to execute all instruments and documents necessary to effectuate a name change for AAOG; and (xxi) exercising such other powers as may be vested in it pursuant to order of the Bankruptcy Court, this Plan or the Liquidating Trust Agreement, or as it reasonably deems to be necessary and proper to carry out the provisions of this Plan.

7.2    <u>Disbursing Agent</u>

On the Effective Date, the Disbursing Agent shall be appointed pursuant to this Plan and the Liquidating Trust Agreement, for the purposes of (i) paying unpaid but Allowed

Administrative Claims (excluding Allowed Professional Fee Claims), Allowed Priority Tax Claims, Allowed Other Priority Claims, Allowed Other Secured Claims and Allowed General Unsecured Claims in accordance with this Plan; (ii) making periodic distributions to Holders of Interests from net proceeds of the ORRI and the net proceeds from any sale or merger of AAOG's stock. In the event of the dissolution, failure to perform resignation, incompetency, or removal of KCO as Disbursing Agent, the Liquidating Trustee shall promptly designate a successor Disbursing Agent. For the avoidance of doubt, the Disbursing Agent has no personal liability for the payment of, and has not assumed liability for, any of the foregoing Claims other than as expressly provided in the Sale Order, the Purchase Agreement, the Wind-Down Budget and the Settlement/Sale Transaction, and shall solely be responsible for transferring assets of the Liquidating Trust as provided herein to Holders of any of the foregoing Claims.

### 7.3    Cancellation of Interests

On the Effective Date, all equity interests in Manor and Hilltop shall be terminated and extinguished and any certificates or other documents that previously evidenced ownership of those equity interests shall be deemed cancelled (all without further action by any Person or the Bankruptcy Court) and shall be null and void and such certificates and documents shall evidence no rights or equity interests in Manor and/or Hilltop; provided, however, in the event that prior to the Effective Date KCO requests assignment of the equity interests in Manor and/or Hilltop, and such assignment will not have an adverse tax impact on the Debtors (as determined in the Debtors' reasonable discretion), such equity interests shall be conveyed to KCO or its designee(s) free and clear of any liens claims or interests to the greatest extent permissible under Bankruptcy Code Section 363 in furtherance of the Settlement/Sale Transaction. If KCO makes the foregoing election for it or its designee(s) to receive the equity interests of Manor and/or Hilltop, Manor and Hilltop shall retain all Permits (as defined in the Purchase Agreement) issued to them that have not otherwise been previously assigned to the Purchasers.

### 7.4    Termination of Status; Officers and Directors

On the Effective Date, except to the extent that the Liquidating Trustee determines otherwise or KCO exercises the election for it or its designee(s) to receive the equity interests in Manor and/or Hilltop as set forth in Section 7.3 of this Plan, Manor and Hilltop shall be deemed dissolved for all purposes without the necessity for any other or further actions to be taken by or on behalf of the Debtors or payments to be made in connection therewith. The Debtors may file with the Office of the Secretary of State for the state of their formation, a certificate of dissolution which may be executed by the Liquidating Trustee without the need for further approval or action from any officers, directors, Holders of Interests in the Debtors or any other party. From and after the Effective Date, the Debtors shall not be required to file any document, or take any other action, or obtain any approval from the Debtors' officers, directors or Holders of Interests, to withdraw their business operations from any states in which any of the Debtors previously conducted its business operations.

On the Effective Date: (i) the positions of the current officers and directors of the Debtors shall be eliminated, and each officer and director shall be terminated (without the necessity of further action); and (ii) to the fullest extent permitted by applicable law, the rights, powers, and duties of the officers and directors of the Debtors shall vest in the Liquidating Trustee.

### 7.5 Distribution Procedures

Any payments or distributions to be made by the Disbursing Agent to Holders of Interests or Holders of Claims as required by this Plan shall be made only to the Holders of Allowed Interests or Holders of Allowed Claims. Any payments or distributions to be made by the Disbursing Agent pursuant to this Plan shall be made on or about the Effective Date of such Plan, or as soon thereafter as practicable, except as otherwise provided for in this Plan. Any payment, delivery or distribution by the Disbursing Agent pursuant to this Plan, to the extent delivered by the United States mail, shall be deemed made when deposited by the Disbursing Agent into the United States mail. No payments or other distributions of property shall be made on account of any Claim, Interest or portion thereof unless and until such Claim, Interest or portion thereof is Allowed.

### 7.6 Effectuating Documents; Further Reorganization Transactions

The Liquidating Trustee, shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan. The Liquidating Trustee, shall be authorized to certify or attest to any of the foregoing actions.

### 7.7 Exemption from Certain Transfer Taxes

Pursuant to Bankruptcy Code section 1146(a), the issuance, transfer, or exchange of a security, or the making of delivery of an instrument of transfer, provided under this Plan, from the Debtors to the Liquidating Trustee or any other Person pursuant to this Plan may not be taxed under any law imposing a stamp tax or similar tax, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

### 7.8 Closing of the Chapter 11 Cases

The Liquidating Trustee shall have sole authority to seek to close the Chapter 11 Cases in accordance with the Bankruptcy Code and the Bankruptcy Rules.

## ARTICLE VIII
## PROVISIONS GOVERNING DISTRIBUTIONS GENERALLY

### 8.1 Timing and Delivery of Distributions

This Plan and Confirmation Order shall govern distributions and shall include and be consistent with the terms of the other sections of this ARTICLE VIII and other relevant provisions of this Plan, including, without limitation, ARTICLE III of this Plan.

8.2     Method of Cash Distributions

Any Cash payment to be made pursuant to this Plan may be made by Cash, draft, check, wire transfer, or as otherwise required or provided in any relevant agreement or applicable law at the option of and in the discretion of the Disbursing Agent, in consultation with the Liquidating Trustee.

8.3     Failure to Negotiate Checks

Checks issued in respect of distributions under this Plan shall be null and void if not negotiated within sixty (60) days after the date of issuance. The Liquidating Trustee shall hold any amounts returned in respect of such non-negotiated checks. The Holder of an Allowed Claim or Allowed Interest with respect to which such check originally was issued shall make requests for reissuance for any such check directly to the Liquidating Trustee. All amounts represented by any voided check will be held until the later of one (1) year after (x) the Effective Date or (y) the date that a particular Claim or Interest is Allowed, and all requests for reissuance by the Holder of the Allowed Claim in respect of a voided check are required to be made prior to such date. Thereafter, all such amounts shall be deemed to be "unclaimed property," and all Claims or Interests in respect of void checks and the underlying distributions shall be forever barred, estopped and enjoined from assertion in any manner against the Liquidating Trustee.

8.4     De Minimis Distributions

No Cash payment of less than one hundred ($100.00) dollars shall be made to the Holder of any Claim or Interest on account of its Allowed Claim or Interest.

8.5     Distribution Record Date

On the Effective Date (the "Distribution Record Date"), all transfer ledgers, transfer books, registers and any other records maintained by the designated transfer agents with respect to ownership of any Claims or Interests will be closed and, for purposes of this Plan, there shall be no further changes in the record Holders of such Claims or Interests (except to the extent that such changes result from the transfer of such Claim or Interest to any heir, executor, administrator, or successor of the Holder of record as of the Effective Date). Except as set forth in this Section 8.5, the Liquidating Trustee shall have no obligation to recognize the transfer of any Claims or Interests occurring after the Distribution Record Date, and will be entitled for all purposes to recognize and deal only with the Holder of any Claim or Interest as of the close of business on the Distribution Record Date, as reflected on such ledgers, books, registers or records.

## ARTICLE IX
## EXECUTORY CONTRACTS, UNEXPIRED LEASES, AND OTHER AGREEMENTS

9.1     Assumption/Rejection

On the Effective Date, all of the Debtors' executory contracts and unexpired leases not previously assumed by the Debtors or assigned to the Purchasers under the Sale Order, the Purchase Agreement and the Settlement/Sale Transaction, will be rejected. A list of previously

assumed contracts is attached for informational purposes only to the Disclosure Statement as Exhibit E.

### 9.2 Claims Based on Rejection of Executory Contracts and Unexpired Leases

Unless otherwise provided by a Bankruptcy Court order, any Rejection Claims must be filed no later than thirty (30) days after the later of the Effective Date or the effective date of rejection. Any Rejection Claims that are not timely filed shall be disallowed automatically, forever barred from assertion, and shall not be enforceable against the Liquidating Trust without the need for any objection by any Person or further notice to or action, order, or approval of the Bankruptcy Court, and any Rejection Claim shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules or a Proof of Claim to the contrary. All Rejection Claims shall be classified as General Unsecured Claims and shall be treated in accordance with the particular provisions of this Plan.

### 9.3 Reservation of Rights

Nothing contained in this Plan shall constitute an admission by the Debtors that any contract or lease is in fact an executory contract or unexpired lease or that the Debtors have any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Liquidating Trustee shall have thirty (30) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

## ARTICLE X
## PROCEDURES FOR RESOLVING DISPUTED,
## CONTINGENT, AND UNLIQUIDATED CLAIMS

### 10.1 Objections to Claims

10.1.1 Except as set forth in Section 10.1.2, after the Effective Date, the Liquidating Trustee shall have the exclusive authority to file objections to all Claims and Interests, and the exclusive authority to settle, compromise, or litigate to judgment any objections to Claims or Interests that he or she files. Subject to the terms of the Liquidating Trust Agreement, the Liquidating Trustee may settle or compromise any Disputed Claim or Disputed Interest without approval of the Bankruptcy Court.

10.1.2 Notwithstanding Section 10.1.1, pursuant to the Sale Order, the Purchaser has been granted standing to object to Claims or cure amounts in the Chapter 11 Cases that relate in any way to the Assumed Liabilities (as defined in the Purchase Agreement) or the Wind-Down Budget, including, without limitation, the contracts assigned to the Purchaser in connection with the Settlement/Sale Transaction, the Pre-Closing Budgeted Fees (as defined in the Sale Order), the Post-Closing Budgeted Fees (as defined in the Sale Order), and any other professional fees and expenses incurred in the Chapter 11 Cases, and the Liquidating Trustee shall assist in such objections as reasonably requested by the Purchaser. The Purchasers shall be responsible for the payment of (i) any fees incurred by the Liquidating Trustee (to the extent the Purchasers request that the Liquidating Trustee prosecute such objections or any related litigation) in

prosecuting such objections or any related litigation and (ii) any quarterly fees required to be paid to the Office of the United States Trustee pursuant to sections 1911 through 1930 of chapter 123 of title 28 of the United States Code that are incurred solely as a result of the Chapter 11 Cases remaining open to facilitate the Purchasers' prosecution of such objections or any related litigation.

10.2    Objection Deadline

As soon as practicable, but no later than the Claims/Interests Objection Deadline, the Liquidating Trustee may file objections to Claims and Interests with the Bankruptcy Court and serve such objections on the Holders of the Claims and Interests to which such objections are made. Nothing contained herein, however, shall limit the right of the Liquidating Trustee to object to Claims, if any, filed or amended after the Claims/Interests Objection Deadline. The Claims/Interests Objection Deadline may be extended by the Bankruptcy Court upon motion by the Debtors or Liquidating Trustee, without notice or hearing.

For the avoidance of doubt, no Claim or Interest is or shall be deemed Allowed until the later of the Claims/Interests Objection Deadline of the expiration of some other applicable period of limitation fixed by the Bankruptcy Code, Bankruptcy Rules, or Bankruptcy Court, unless otherwise ordered by a Final Order of the Bankruptcy Court or Allowed pursuant to this Plan.

Notwithstanding the foregoing, any Claims or other payment obligations assumed by KCO or the Purchasers under the Sale Order, the Purchase Agreement and the Settlement/Sale Transactions shall be administered as provided therein.  Without limiting the generality of the foregoing, payment with respect to any Claim or payment obligations assumed by the Purchasers shall be subject to the terms of any agreements related to the amounts thereof reached by KCO, the Purchasers and/or their Affiliates with the Holders of such Claims or obligations. Notwithstanding the passage of the Claims/Interests Objection Deadline, any Claims or payment obligations assumed by the Purchasers shall remain subject to any such agreement or any other right or defense available under applicable law or the Sale Order, Purchase Agreement or Settlement/Sale Transaction until such time as they have either been resolved by agreement of the parties or become the subject of a final order of a court of competent jurisdiction.  To the extent of any disagreement over the amount of any Claim or other obligation assumed by the Purchasers under the Purchase Agreement, the Bankruptcy Court reserves jurisdiction to hear such disputes.

10.3    Estimation of Claims

The Liquidating Trustee may at any time request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to Bankruptcy Code section 502(c), regardless of whether the Liquidating Trustee or the Debtors have previously objected to such Claim or whether the Bankruptcy Court has ruled on any objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal related to any such objection.  In the event the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation

on such Claim, the Liquidating Trustee may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim. All of the aforementioned objection, estimation and resolution procedures are cumulative and are not necessarily exclusive of one another.

10.4   No Distributions Pending Allowance

Notwithstanding any provision in this Plan to the contrary, no distributions, partial or otherwise, shall be made with respect to a Disputed Claim or Disputed Interest until such Claim or Interest becomes an Allowed Claim or Allowed Interest. Subject to the provisions of this Plan, after a Disputed Claim or Disputed Interest becomes an Allowed Claim or Allowed Interest, the Holder of such an Allowed Claim or Allowed Interest will receive all distributions to which such Holder is then entitled under this Plan on the next scheduled distribution date or as the Liquidating Trustee otherwise determines in its reasonable discretion. No post-Effective Date interest shall be paid on distributions hereunder. If the Holder of a Claim incorporates more than one Claim in a Proof of Claim then: (i) such Claim will be considered one Claim or for purposes of this Plan; and (ii) no such Claim will be bifurcated into an Allowed portion and a Disputed portion.

10.5   Distributions After Allowance

As soon as reasonably practicable after the date that an order or judgment of the Bankruptcy Court allowing all or part of any Claim or Interest that is a Disputed Claim or Disputed Interest becomes a Final Order, the Liquidating Trustee shall distribute to the Holder of such Claim or Interest the distribution (if any) that would have been made to such Holder had such Claim or Interest been Allowed when previous distributions were made. After a Disputed Claim or Disputed Interest becomes an Allowed Claim or Allowed Interest or is otherwise resolved, any excess Cash or other property that was reserved on account of such Disputed Claim or Disputed Interest, if any, shall become property of the Liquidating Trust for the benefit of the Trust Beneficiaries.

10.6   Reduction of Claims

Notwithstanding the contents of the Schedules, Claims listed therein as undisputed, liquidated and not contingent shall be reduced by the amount, if any, that was paid by the Debtors prior to the Effective Date, including pursuant to orders of the Bankruptcy Court. To the extent such payments are not reflected in the Schedules, such Schedules will be deemed amended and reduced to reflect that such payments were made. Nothing in this Plan shall preclude the Liquidating Trustee from paying Claims that the Debtors were authorized to pay pursuant to any Final Order entered by the Bankruptcy Court prior to the Effective Date.

10.7   Compliance with Tax Requirements/Allocations

In connection with this Plan, to the extent applicable, the Liquidating Trustee shall comply with all tax withholding and reporting requirements imposed on it by any governmental unit with respect to all payments to Holders of Allowed Claims and income allocable to and distributions made to Holders of Allowed Interests. Any amounts so withheld shall be deemed paid to the Holder of the Allowed Claim or Allowed Interest, as applicable, subject to withholding. The Liquidating Trustee may require that each Holder complete the appropriate

Internal Revenue Service Form W-8BEN, Internal Revenue Service Form W-8BEN-E, or Internal Revenue Service Form W-9, or successor form as applicable, to each Holder; *provided, however,* that the sole remedy in the event a Holder fails to comply with such a request within six months shall be to make a proper withholding of tax to the extent required by applicable law. Notwithstanding any provision in this Plan to the contrary, the Liquidating Trustee shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of a Liquidating Trust Assets to generate sufficient funds to pay applicable withholding taxes with respect to a Holder, withholding distributions pending receipt of information necessary to facilitate such distribution, or establishing any other mechanisms it believes are reasonable and appropriate. If the Liquidating Trustee fails to withhold with respect to any such Holder and is later liable for the amount of such withholding, the Holder shall reimburse the Liquidating Trustee. The Liquidating Trustee reserves the right to allocate all payments and distributions made under this Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, liens and encumbrances. Unless otherwise required by law or provided in this Plan, payments in respect of Allowed Claims shall be allocated first to the principal amount (as determined for U.S. federal income tax purposes) of such Allowed Claims, and then, to the extent the consideration exceeds the principal amount of such Allowed Claims, to any portion of such Allowed Claims for accrued but unpaid interest.

The Liquidating Trustee will in good faith value the Liquidating Trust Assets. The Liquidating Trustee shall make the respective values available from time to time, to the extent relevant, and such values shall be used consistently by all parties to the Liquidating Trust (including, without limitation, the Debtors, the Liquidating Trustee, and the Trust Beneficiaries) for all U.S. federal income tax purposes.

## ARTICLE XI
## CONDITIONS PRECEDENT TO CONFIRMATION
## AND CONSUMMATION OF THIS PLAN

11.1    Conditions Precedent to Confirmation

The following are conditions precedent to the occurrence of Confirmation:

11.1.1    The Bankruptcy Court shall have entered an order, in a form reasonably acceptable to the Debtors, approving the adequacy of the Disclosure Statement; and

11.1.2    The Confirmation Order approving and confirming this Plan, as such Plan may have been modified, amended or supplemented, shall have been entered in form and substance reasonably acceptable to the Debtors.

11.2    Conditions Precedent to Effective Date

The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or waived in accordance with Section 11.4 below:

11.2.1    The Confirmation Order shall have been entered in form and substance reasonably acceptable to the Debtors and such order shall have become a Final Order.

11.2.2    No stay of the Confirmation Order is in effect; and

11.2.3    All documents, instruments and agreements, in form and substance satisfactory to the Debtors, provided for or necessary to implement this Plan (including, without limitation, the Liquidating Trust Agreement) have been executed and delivered.

11.3    <u>Substantial Consummation</u>

On the Effective Date, this Plan shall be deemed to be substantially consummated under Bankruptcy Code section 1101(2).

11.4    <u>Waiver of Conditions</u>

Each of the conditions set forth in Section 11.2 hereof may be waived in whole or in part by the Debtors.  The failure to satisfy or waive any condition to the Effective Date may be asserted by the Debtors regardless of the circumstances giving rise to the failure of such condition to be satisfied.

11.5    <u>Revocation, Withdrawal, or Non-Consummation</u>

The Debtors reserve the right to revoke or withdraw this Plan at any time prior to the Confirmation Date and to file subsequent plans.  If the Debtors revoke or withdraw this Plan, or if Confirmation or substantial consummation of this Plan does not occur, then: (i) this Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in this Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests) unless otherwise agreed to by the Debtors and any counterparty to such settlement or compromise, and any document or agreement executed pursuant to this Plan shall be deemed null and void; and (iii) nothing contained in this Plan, and no acts taken in preparation for Consummation of this Plan, shall (a) constitute or be deemed to constitute a waiver or release of any Claims by or against, or any Interests in, the Debtors or any other Person, (b) prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors, or (c) constitute an admission of any sort by the Debtors or any other Person.

**ARTICLE XII**
**AMENDMENTS AND MODIFICATIONS**

The Debtors may alter, amend, or modify this Plan under Bankruptcy Code section 1127(a) at any time prior to the Confirmation Date.  After the Confirmation Date and prior to "substantial consummation" of this Plan, as defined in Bankruptcy Code section 1101(2), the Debtors may, under Bankruptcy Code section 1127(b), institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in this Plan, the Disclosure Statement or the Confirmation Order, and such matters as may be necessary to carry out the purposes and effects of this Plan, so long as such proceedings do not materially adversely affect the treatment of Holders of Claims or Interests under this Plan or impair the rights provided to KCO or the Purchasers under the Sale Order (including the Wind-Down Budget), the

Purchase Agreement or the Settlement/Sale Transaction; *provided, however*, that prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or order of the Bankruptcy Court.

**ARTICLE XIII**
**RETENTION OF JURISDICTION**

Under Bankruptcy Code sections 105(a) and 1142, and notwithstanding entry of the Confirmation Order and occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and this Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

(A)     Allow, disallow, determine, liquidate, classify, estimate or establish the priority or Secured or unsecured status of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any objections to the Secured or unsecured status, priority, amount or allowance of Claims or Interests;

(B)     Hear and determine all applications for compensation and reimbursement of expenses of Professionals under Bankruptcy Code sections 327, 328, 330, 331, 503(b), or 1129(a)(4);

(C)     Hear and determine all matters with respect to the assumption or rejection of any executory contract or unexpired lease to which the Debtors are a party or with respect to which the Debtors may be liable, including, if necessary, the nature or amount of any required cure or the liquidating of any claims arising therefrom;

(D)     Hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of, under, or related to, the Chapter 11 Cases;

(E)     Enter and enforce such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of this Plan and all contracts, instruments, releases, and other agreements or documents created in connection with this Plan, the Disclosure Statement or the Confirmation Order;

(F)     Hear and determine disputes arising in connection with the interpretation, implementation, Consummation, or enforcement of this Plan, including disputes arising under agreements, documents or instruments executed in connection with this Plan;

(G)     Consider any modifications of this Plan, cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(H)     Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person with implementation, Consummation, or enforcement of this Plan or the Confirmation Order;

(I)     Enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

(J)     Hear and determine any matters arising in connection with or relating to this Plan, the Disclosure Statement, the Confirmation Order, the Liquidating Trust Agreement or any other contract, instrument, release, or other agreement or document created in connection with any of the foregoing, including, without limitation, to compel performance by the Disbursing Agent and/or the Liquidating Trustee of his, her or its duties;

(K)     Enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Chapter 11 Cases or pursuant to this Plan, including the Sale Order, the Purchase Agreement and the Settlement/Sale Transaction;

(L)     Recover all assets of the Debtors and property of their estates, wherever located;

(M)     Hear and determine matters concerning state, local, and federal taxes in accordance with Bankruptcy Code sections 346, 505, and 1146;

(N)     Hear and determine all disputes involving any releases granted in this Plan;

(O)     Hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code;

(P)     Enter an order or final decree concluding or closing the Chapter 11 Cases;

and

(Q)     Enforce all orders previously entered by the Bankruptcy Court.

## ARTICLE XIV
## COMPROMISES AND SETTLEMENTS

Pursuant to Bankruptcy Code section 363 and Bankruptcy Rule 9019, and in consideration for the classification, distribution and other benefits provided under this Plan, the provisions of this Plan shall constitute a good faith compromise and settlement of all Claims, Interests and controversies resolved pursuant to this Plan, including, without limitation, all Claims or Interests arising prior to the Petition Date, whether known or unknown, foreseen or unforeseen, asserted or unasserted, arising out of, relating to or in connection with the business or affairs of, or transactions with, the Debtors. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements, and all other compromises and settlements provided for in this Plan, including, without limitation, the Intercompany Compromise, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtors,

the estate, Holders of Claims and Interests and other parties in interest, and are fair, equitable and within the range of reasonableness.

## ARTICLE XV
## RATIFICATION OF THE SALE ORDER, PURCHASE AGREEMENT AND THE SETTLEMENT/SALE TRANSACTION

### 15.1    Sale Order Controls

The Sale Order (including the Wind-Down Budget) is hereby ratified in all respects, including the approval of the Purchase Agreement and the Settlement/Sale Transaction approved thereby. Nothing herein or in the Confirmation Order is intended or shall be deemed to modify the Sale Order, the Purchase Agreement or the Settlement/Sale Transaction. All rights of KCO and the Purchasers under the Sale Order, the Purchase Agreement and the Settlement/Sale Transaction are hereby confirmed.  To the extent of any inconsistency between the (i) Plan and the Confirmation Order, on the one hand, and (ii) the Sale Order, the Purchase Agreement and the Settlement/Sale Transaction, on the other hand, concerning the rights, benefits and/or powers granted to KCO and the Purchasers or any of their Affiliates and related persons and parties, the Sale Order, the Purchase Agreement and the Settlement/Sale Transaction shall control.  Nothing in this Plan or the Confirmation Order shall impose any liability on KCO or the Purchasers that is not otherwise provided in the Sale Order, the Purchase Agreement, Settlement/Sale Transaction (including the Wind-Down Budget).

## ARTICLE XVI
## MISCELLANEOUS PROVISIONS

### 16.1    Severability of Plan Provisions

If, prior to Confirmation, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### 16.2    Successors and Assigns

Except as set forth in the Liquidating Trust Agreement, the rights, benefits and obligations of any Person named or referred to in this Plan, including any holder of a Claim or Interest, shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, or successor of such entity.

16.3    <u>Releases</u>

16.3.1    Releases by Holders of Claims and Interests

**Except as otherwise expressly provided in this Plan, the Confirmation Order, the Sale Order (including the Wind-Down Budget), the Purchase Agreement and the Settlement/Sale Transaction on the Effective Date, for good and valuable consideration, a Holder of a Claim against and/or Interest in the Debtors who: (i) votes to accept this Plan, and does not opt out of the Releases contained in this Plan; (ii) abstains from voting on this Plan; or (iii) votes to reject this Plan and does not opt out of the Releases contained in this Plan, shall be deemed to completely and forever release, waive, void, extinguish and discharge unconditionally, each and all of the Released Parties of and from any and all claims, obligations, suits, judgments, damages, debts, rights, remedies and liabilities of any nature whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are or may be based in whole or part on any act, omission, transaction, event or other circumstance taking place or existing on or prior to the Effective Date (including prior to the Petition Date) in connection with or related to the Debtors, their assets, property and estates, the Chapter 11 Cases, this Plan or the Disclosure Statement. For the avoidance of doubt, the foregoing releases described in this Plan shall not waive, affect, limit, restrict or otherwise modify the rights of the Debtors and the Liquidating Trustee to object to any Claim or Interest not expressly Allowed under this Plan.**

**Notwithstanding the foregoing and for the avoidance of doubt, the releases provided under the Sale Order, the Purchase Agreement and the Settlement/Sale Transaction shall govern any releases as among KCO, the Purchasers, the Debtors, the Buyer Settlement Parties (as defined in the Purchase Agreement) and the Debtor Settlement Parties (as defined in the Purchase Agreement) and other parties referenced therein, none of which shall be affected by the terms of this Plan.**

16.3.2    Releases Approved by Confirmation Order

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval pursuant to Bankruptcy Rule 9019, of the releases set forth in Section 16.3.1, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that such release is: (i) in exchange for the good and valuable consideration provided by the Released Parties; (ii) a good faith settlement and compromise of the claims released by Section 16.3.1; (iii) in the best interests of the Debtors, their estates and all Holders of Claims and Interests; (iv) fair, equitable and reasonable; (v) given and made after due notice and opportunity for a hearing; and (vi) a bar to any Person asserting any claim released by Section 16.3.1. Notwithstanding the foregoing, nothing in Section 16.3.1 shall release any Released Party or other Entity or Person from its respective rights and obligations under this Plan or the Confirmation Order.**

16.3.3    No Waiver

Notwithstanding anything to the contrary contained in this Article XVI, the releases set forth in Section 16.3.1 shall not, and shall not be deemed to, limit, abridge or otherwise affect the rights of the Liquidating Trustee to enforce, sue on, settle or compromise the rights, claims and other matters vested in and retained by the Liquidating Trust pursuant to this Plan or the Confirmation Order.

16.4    Bankruptcy Rule 3016 Compliance

The Debtors' compliance with the formal requirements of Bankruptcy Rule 3016(c) shall not constitute an admission that this Plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code.

16.5    Exculpation

**The Debtors and the Debtors' Professionals SHALL NOT BE LIABLE FOR ANY cause of action arising out of or related to any act or omission in connection with or relating to: (a) the formulation, preparation, solicitation, dissemination, negotiation, or filing of this Plan, the Plan Supplement, the Disclosure Statement, or any contract, instrument, release, or other agreement or document created or entered into in connection with any of the foregoing; (b) the Chapter 11 Cases; (c) the pursuit of Confirmation of this Plan; (d) the administration and implementation of this Plan; (e) the distribution of property under this Plan; and/or (f) any other prepetition or postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring and/or liquidation of the Debtors. All holders of Claims and Interests are enjoined from asserting or prosecuting any Claim or cause of action against the Debtors or the Debtors' Professionals as to any Claim or cause of action as to which the Debtors and the Debtors' Professionals have been exculpated pursuant to this Plan.**

16.6    Permanent Injunction

**Except as otherwise expressly provided in this Plan, the Confirmation Order, the Sale Order (including the Wind-Down Budget), the Purchase Agreement and the Settlement/Sale Transaction, all Persons who have held, hold or may hold Claims against, or Interests in, the Debtors are permanently enjoined, on and after the Effective Date, to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, from: (i) commencing or continuing in any manner any action or other proceeding of any kind against the Debtors, the Liquidating Trust, or their assets with respect to any such Claim or Interest in any venue other than the United States Bankruptcy Court for the Western District of Texas; (ii) the enforcement, attachment, collection, or recovery by any manner or means of judgment, award, decree or order against the Debtors, the Liquidating Trust, or their assets on account of any such Claim or Interest in any venue other than the United States Bankruptcy Court for the Western District of Texas; (iii) creating, perfecting, or enforcing any encumbrance of any kind against the Debtors, the Liquidating Trust, or their assets on account of any such Claim or**

**Interest in any venue other than the United States Bankruptcy Court for the Western District of Texas; and (iv) asserting any right of setoff, recoupment or subrogation of any kind against any obligation due from the Debtors, the Liquidating Trust, or their assets on account of any such Claim or Interest in any venue other than the United States Bankruptcy Court for the Western District of Texas.**

16.7    Term of Injunctions or Stay

Unless otherwise provided in this Plan, the Confirmation Order or the Sale Order, all injunctions or stays provided for in the Chapter 11 Cases under Bankruptcy Code sections 105 or 362 or otherwise, and in existence on the Confirmation Date (excluding any injunctions or stays contained in this Plan or Confirmation Order), shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in this Plan, the Confirmation Order and/or the Sale Order shall remain in full force and effect in accordance with their terms.

16.8    Integral to Plan

Each of the injunctions provided in this Plan is an integral part of this Plan and is essential to its implementation.  Each of the other Persons protected by the injunctions set forth in this Plan shall have the right to independently seek the enforcement of such injunctions.

16.9    Binding Effect

This Plan shall be binding upon and inure to the benefit of the Debtors, all present and former Holders of Claims against and Interests in the Debtors, their successors and assigns, including, but not limited to, the Debtors, and all other parties-in-interest in the Chapter 11 Cases.

16.10   Notices

Any notice, request, or demand required or permitted to be made or provided under this Plan to or upon the Debtors or the Liquidating Trustee shall be: (i) in writing; (ii) served by (a) certified mail, return receipt requested, (b) hand delivery, (c) overnight delivery service or (d) facsimile transmission; and (iii) deemed to have been duly given or made when actually delivered or, in the case of facsimile transmission, when received and telephonically confirmed, addressed as follows:

If to the Liquidating Trustee:

AAOG Liquidating Trust
c/o [_____], Liquidating Trustee
[_____]

With a copy, which shall not constitute notice, to:

DYKEMA GOSSETT PLLC
Deborah D. Williamson
dwilliamson@dykema.com

Patrick L. Huffstickler
phuffstickler@dykema.com
Danielle N. Rushing
drushing@dykema.com
112 East Pecan Street, Suite 1800
San Antonio, Texas 78205
Telephone: (210) 554-5500
Facsimile: (210) 226-8395

– and –

HOGAN LOVELLS US LLP
Richard L. Wynne
richard.wynne@hoganlovells.com
Bennett L. Spiegel
bennett.spiegel@hoganlovells.com
Erin N. Brady
erin.brady@hoganlovells.com
1999 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 785-4600
Facsimile: (310) 785-4601

16.11   Setoffs/Counterclaims

The Debtors may, but shall not be required to, setoff or counterclaim against any Claim and the payments or other distributions to be made pursuant to this Plan in respect of the Claim, claims of any nature whatsoever the estate may have against the Holder of the Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors of any claim that the estates may have against the Holder.  Setoffs or counterclaims arising from events after the Petition Date shall reduce the payouts under any Allowed Claim dollar for dollar.  Setoffs or counterclaims arising from pre-petition events shall reduce the amount of the Allowed Claim and, therefore, shall reduce the payout amount proportionally with the reduction in the Allowed Claim.  If any counterclaim or setoff asserted by the Debtors exceeds the amount of any Claim, the Holder of such Claim shall not be entitled to any distribution under this Plan, and the Debtors will reserve the right to recover any such excess counterclaim or set-off from the Holder of the applicable Claim.  After the Effective Date, the rights afforded to the Debtors under this paragraph shall apply to the Liquidating Trustee. **Except as provided in the Sale Order (including the Wind-Down Budget), the Purchase Agreement (including the ORRI) and the Settlement/Sale Transaction, in no event shall any Holder of Claims or Interests be entitled to setoff any Claim or Interest against any claim, right, or cause of action of the Debtors or the Liquidating Trustee, as applicable, unless such Holder has filed a motion with the Bankruptcy Court requesting the authority to perform such setoff on or before the Confirmation Date, and notwithstanding any indication in any Proof of Claim or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to Bankruptcy Code section 553 or otherwise.**

16.12   Recoupment

Except as provided in the Sale Order (including the Wind-Down Budget), the Purchase Agreement (including the ORRI) and the Settlement/Sale Transaction, any Holder of a Claim or Interest shall not be entitled to recoup any Claim or Interest against any claim or right of the Debtors or the Liquidating Trustee, as applicable, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtors on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

16.13   Release of Liens

Except as otherwise provided in this Plan or in any contract, instrument, release, or other agreement or document created pursuant to this Plan or the Sale Order, Purchase Agreement and the Sale/Settlement Transaction, on the Effective Date and concurrently with the applicable distributions made pursuant to this Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Debtors' estates, stock in AAOG or interest in the ORRI shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the owner of the underlying assets and their successors and assigns.

16.14   Request for Expedited Tax Review

The Liquidating Trustee shall have the right to request an expedited determination under Bankruptcy Code section 505(b) with respect to tax returns filed, or to be filed, for any and all taxable periods ending after the Petition Date through the Effective Date.

16.15   No Admissions

Notwithstanding anything herein to the contrary, nothing in this Plan shall be deemed as an admission by the Debtors with respect to any matter set forth herein, including liability on any Claim.

16.16   Entire Agreement

This Plan, the Plan Supplement, the Confirmation Order, the Sale Order (including the Wind-Down Budget), the Purchase Agreement and the Settlement/Sale Transaction supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into this Plan.

16.17   Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of Texas, without giving effect to the principles of conflicts of law thereof, shall govern the construction and implementation of this

Plan and any agreements, documents, and instruments executed in connection with this Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control) as well as corporate governance matters with respect to the Debtors.

## ARTICLE XVII
## CONFIRMATION REQUEST

The Debtors request Confirmation of this Plan under Bankruptcy Code section 1129. If the Holders of Claims in Class 3, Class 5, or Class 7, or Holders of Interests in Class 8, vote to reject this Plan, the Debtors request Confirmation pursuant to Bankruptcy Code section 1129(b), and reserve the right to amend this Plan to the extent (if any) that Confirmation of this Plan under Bankruptcy Code section 1129(b) requires modification. If Holders of Claims in Class 2 vote to reject this Plan, the Debtors reserve the right to modify the treatment of Class 2 Claims to render such Claims unimpaired.

*[Signature Page Follows]*

Dated: [_____], 2019

**All American Oil & Gas Incorporated; Manor Oil, Inc.; and Hilltop Power, Inc., DEBTORS**

By:      /s/ *David J. Katz, Esq.*
Name:      David J. Katz, Esq.
Title:      Secretary and General Counsel

## **Exhibit B**

Creditors Whose Claims Have Been Assumed By the
Purchasers Under the Sale Order and Deemed Satisfied By The
Debtors

| Debtor | Creditor Name and Address |
|--------|---------------------------|
| AAOG | Air Quality Consultants Inc.<br>15541 Commerce Lane<br>Huntington Beach, CA 92649-1601 |
| AAOG | BizDoc Inc.<br>840 W. Rhapsody<br>San Antonio, TX 78216 |
| AAOG | Continental Stock Transfer & Trust Co.<br>c/o Kevin Jennings<br>One State Street Plaza, 30th Floor<br>New York, NY 10004-1571 |
| AAOG | P2ES Holdings LLC<br>P2 Energy Solutions<br>P.O. Box 912692<br>Denver, CO 80291-2692 |
| AAOG | PIT Crew Technologies, LLC<br>8700 Crownhill Blvd, Ste. 502<br>San Antonio, TX 78209-1130 |
| AAOG | Time Warner Cable<br>P.O. Box 223085<br>Pittsburgh, PA 15251-2085 |
| KRH | 5 C Holdings Inc<br>9530 Hageman Road, Suite B-368<br>Bakersfield, CA 93312-3959 |
| KRH | Amber Chemical Inc.<br>5201 Boylan Street<br>Bakersfield, CA 93308 |
| KRH | Ameresco Inc.<br>P.O. Box 419135<br>Boston, MA 02241-9135 |
| KRH | American Refractory Service, Inc.<br>540 Butte Street<br>Bakersfield, CA 93305-5820 |
| KRH | American Safety Services Inc.<br>3215 Fruitvale Ave.<br>Bakersfield, CA 93380-1731 |
| KRH | American Truck & Crane LLC<br>P.O. Box 81731<br>Bakersfield, CA 93380-1731 |
| KRH | APT General Engineering Inc.<br>P.O. Box 2124<br>Bakersfield, CA 93303-2124 |
| KRH | Ash Electric Inc.<br>1400 El Tejon Ave.<br>Bakersfield, CA 93308-3004 |
| KRH | Axens NA |

| | |
|---|---|
| | 1800 St. James Place, Suite 500<br>Houston, TX 77056-4199 |
| KRH | B & L Equipment Rentals Inc.<br>P.O. Box 22260<br>Bakersfield, CA 93390-2260 |
| KRH | Baker Hughes<br>P.O. Box 301057<br>Dallas, TX 75303-1057 |
| KRH | BakerCorp<br>3020 Old Ranch Parkway, Suite 220<br>Seal Beach, CA 90222 |
| KRH | Bakersfield Pipe and Supply<br>P.O. Box 60006<br>Los Angeles, CA 90060-0006 |
| KRH | Black Rock Transportation Services LLC<br>1800 S. Osage Springs Dr., Ste. 220<br>Rogers, AR 72758-8325 |
| KRH | B-Line Sales Inc.<br>2008 Norris Road<br>Bakersfield, CA 93308-2238 |
| KRH | Bolles Well Services Inc.<br>4008 Shawn Street<br>Bakersfield, CA 93312-3056 |
| KRH | Brighton Beach Enterprise Inc.<br>P.O. Box 20519<br>Bakersfield, CA 93390-0519 |
| KRH | Cal Coast Acidizing Service Inc<br>P.O. Box 2050<br>Orcutt, CA 93457-2050 |
| KRH | California Safety Training<br>P.O. Box 11508<br>Bakersfield, CA 93389-1508 |
| KRH | Century Calibrating Company<br>1101 E. 25th Street<br>Signal Hill, CA 90755-3405 |
| KRH | CL Knox Inc d/b/a Advanced Industrial Services<br>34933 Imperial Street<br>Bakersfield, CA 93308 |
| KRH | Core Laboratories LP<br>P.O. Box 841787<br>Dallas, TX 75284-1787 |
| KRH | D & S Oilfield Services<br>11401 Mondego Drive<br>Bakersfield, CA 93311-9632 |
| KRH | Darrell Thompson Tank & Construction Inc.<br>P.O. Box 5788<br>Bakersfield, CA 93388-5788 |
| KRH | Dave Bilyeu Inc. |

| | |
|---|---|
| | 13007 Brimhall Road<br>Bakersfield, CA 93314-3603 |
| KRH | Downhole Stabilization Inc.<br>P.O. Box 2467<br>Bakersfield, CA 93303-2467 |
| KRH | Drill Cool Systems Inc.<br>627 Williams Street<br>Bakersfield, CA 93305 |
| KRH | Dutch Corners Welding<br>25341 Avenue 102<br>Terra Bella, CA 93270-9699 |
| KRH | Eco-Tec 1145 Squires Beach Road<br>Pickering, ON<br>L1W 3T9 Canada |
| KRH | Energy Project Solutions LLC<br>P.O. Box 20846<br>Bakersfield, CA 93390-0846 |
| KRH | Enterprise Drilling Fluids<br>P.O. Box 20519<br>Bakersfield, CA 93390-0519 |
| KRH | EnviroTech Consultants Inc.<br>5400 Rosedale Highway<br>Bakersfield, CA 93308-6035 |
| KRH | General Production Service<br>P.O. Box 344<br>Taft, CA 93268-0344 |
| KRH | GeoGuidance Drilling Services<br>P.O. Box 42647<br>Bakersfield, CA 93384-2647 |
| KRH | Hach Company<br>2207 Collection Center Drive<br>Chicago, IL 60693-0022 |
| KRH | John M. Phillips<br>2755 Dawson Avenue<br>Signal Hill, CA 90755-2021 |
| KRH | John Richard Bowersox<br>4219 Reserve Road #102<br>Lexington, KY 40514-4080 |
| KRH | Kaman Industrial Technologies<br>File 25356<br>Los Angeles, CA 90074-5356 |
| KRH | Kern Electric Distributors<br>415 30th Street<br>Bakersfield, CA 93301-2513 |
| KRH | Key Energy Services<br>P.O. Box 4649<br>Houston, TX 77210-4649 |
| KRH | Kings Oil Tools Inc. |

| | |
|---|---|
| | 2235 Spring Street<br>Paso Robles, CA 93446-1404 |
| KRH | Knight's Pumping & Portable<br>1550 James Road<br>Bakersfield, CA 93308-9749 |
| KRH | La Frenz Mechanical Inc.<br>P.O. Box 9264<br>Bakersfield, CA 93389-9264 |
| KRH | LCS Electrical and Industrial Services Inc.<br>d/b/a Quantum Industries<br>7000 De Meo St.<br>Bakersfield, CA 93308-4453 |
| KRH | Lufkin Industries LLC<br>P.O. Box 301199<br>Dallas, TX 75303-1199 |
| KRH | Mark J. Del Papa<br>15330 N. Pinewood Way<br>Hayden, ID 83835-7316 |
| KRH | Mark Sheffield Construction Inc.<br>Steve Sheffield<br>9105 Langley Rd.<br>Bakersfield, CA 93312 |
| KRH | Metro Ready Mix Co.<br>P.O. Box 80487<br>Bakersfield, CA 93380-0487 |
| KRH | Midas Pump & Supply Inc.<br>P.O. Box 81677<br>Bakersfield, CA 93380-1677 |
| KRH | MMI Services Inc.<br>4042 Patton Way<br>Bakersfield, CA 93308-5030 |
| KRH | National Oilwell Varco LP<br>P.O. Box 202631<br>Dallas, TX 75320-2631 |
| KRH | Oilfield Safety Anchor Service<br>13061 Rosedale Highway, Box 115<br>Bakersfield, CA 93314 |
| KRH | Oxbow Field Services<br>37624 Stockdale Highway<br>Buttonwillow, CA 93206 |
| KRH | Pacific Perforating Inc.<br>25090 Highway 33<br>Fellows, CA 93224-9777 |
| KRH | Pence Petroleum Co.<br>P.O. Box 1048<br>Fresno, CA 93714-1048 |
| KRH | Pensinger Trailer Rental Inc.<br>1770 Golden State Avenue |

| | |
|---|---|
| | Bakersfield, CA 93301-1010 |
| KRH | Petrol Production Supply<br>11000 Brimhall Road, Ste. E-52<br>Bakersfield, CA 93389 |
| KRH | Petrotech Resources Company<br>4520 California Avenue, Suite 310<br>Bakersfield, CA 93309-1190 |
| KRH | Premier Equipment Rentals Inc.<br>P.O. Box 21748<br>Bakersfield, CA 93390-1748 |
| KRH | Pro Tool Services Inc.<br>1704 Sunnyside Court<br>Bakersfield, CA 93308-6859 |
| KRH | Ralph Winget Consulting<br>P.O. Box 2417<br>Tehachapi, CA 93581-2417 |
| KRH | Ramsgate Engineering Inc.<br>P.O. Box 20068<br>Bakersfield, CA 93390-0068 |
| KRH | SageRider West, LLC<br>12960 S. Kirkwood, Ste. 160<br>Stafford, TX 77477-3863 |
| KRH | San Joaquin Bit Service<br>P.O. Box 40186<br>Bakersfield, CA 93384-0186 |
| KRH | Schlumberger Technology Corp.<br>P.O. Box 732149<br>Dallas, TX 75373-2149 |
| KRH | SCS Engineers<br>3900 Kilroy Airport Way, Ste. 100<br>Long Beach, CA 90806-6816 |
| KRH | Searles Valley Minerals<br>Attn: AR<br>9401 Indian Creek Parkway, Suite 1000<br>Overland Park, KS 66210-2091 |
| KRH | Select Oil Tools LLC<br>P.O. Box 630950<br>Highlands Ranch, CO 80163-0950 |
| KRH | Smithco Development Inc.<br>d/b/a Smithco Surveying Engineering<br>P.O. Box 81626<br>Bakersfield, CA 93380-1626 |
| KRH | Sunshine Metal Clad Inc.<br>7201 Edison Highway<br>Bakersfield, CA 93307 |
| KRH | Sweet Oil Tool Rental Inc.<br>3511 Getty Street<br>Bakersfield, CA 93308-5206 |

| | |
|---|---|
| KRH | Telluric Petroleum Transport, Inc.<br>P.O. Box 6307<br>Oxnard, CA 93031-6307 |
| KRH | TRB Oilfield Services, Inc.<br>P.O. Box 82276<br>Bakersfield, CA 93380-2276 |
| KRH | Trinity Consultants Inc.<br>12700 Park Central Drive, Suite 2100<br>Dallas, TX 75251-1546 |
| KRH | unWired Broadband Inc.<br>215 W. Fallbrook Ave., Suite 203<br>Fresno, CA 93711 |
| KRH | Varner Brothers Inc.<br>P.O. Box 80427<br>Bakersfield, CA 93380 |
| KRH | Verizon Wireless<br>P.O. Box 660108<br>Dallas, TX 75266-0108 |
| KRH | Wattenbarger Do It Center<br>1616 N. Chester Avenue<br>Bakersfield, CA 93308-2561 |
| KRH | Well Analysis Corporation<br>P.O. Box 20008<br>Bakersfield, CA 93390-0008 |
| KRH | West Coast Casing LLC<br>5412 Standard Street<br>Bakersfield, CA 93308-4579 |
| KRH | WestAir Gases & Equipment 2<br>506 Market Street San Diego, CA 92102 |
| KRH | Westbrook Mechanical Pump & Compressor<br>Service Inc.<br>P.O. Box 21046<br>Bakersfield, CA 93390-1046 |
| KRH | Williams Scotsman Inc.<br>P.O. Box 91975<br>Chicago, IL 60693-1975 |
| KRH | Zalco Laboratories Inc.<br>4309 Armour Avenue<br>Bakersfield, CA 93308-4573 |
| WPS | Aeros Environmental Inc.<br>18828 Highway 85<br>Bakersfield, CA 93308-9525 |
| WPS | Airgas Specialty Products<br>P.O. Box 934434<br>Atlanta, GA 31193-4434 |
| WPS | Airgas USA LLC<br>P.O. Box 7423<br>Pasadena, CA 91109-7423 |

| | |
|---|---|
| WPS | American Safety Services Inc.<br>3215 Fruitvale Ave.<br>Bakersfield, CA 93308-5915 |
| WPS | Aramark Uniform & Career Apparel Group Inc.<br>115 North First Street<br>Burbank, CA 91502-1856 |
| WPS | Argo Chemical<br>30933 Imperial St.<br>Bakersfield, CA 93263-9722 |
| WPS | AT&T<br>P.O. Box 5025<br>Carol Stream, IL 60197-5025 |
| WPS | ATT Infrared Services<br>3540 W. Sahara Avenue, Suite 121<br>Las Vegas, NV 89102-5816 |
| WPS | Banks Pest Control Inc.<br>P.O. Box 113<br>Bakersfield, CA 93302-0113 |
| WPS | Basin Valve Company<br>1500 E. Burnett Street<br>Signal Hill, CA 90755 |
| WPS | Blue Sky Blue Sea Inc.<br>13500 S. Figueroa Street<br>Los Angeles, CA 90061 |
| WPS | Canon Financial Services Inc.<br>14904 Collections Center Drive<br>Chicago, IL 60693-0149 |
| WPS | Dell Business Credit<br>Payment Processing Center<br>P.O. Box 5275<br>Carol Stream, IL 60197-5275 |
| WPS | Dresser-Rand Group<br>P.O. Box 7247-6149<br>Philadelphia, PA 19170-6149 |
| WPS | Dry Creek Enterprises Inc.<br>4842 Burr Street, Suite B<br>Bakersfield, CA 93308-0001 |
| WPS | Frontier<br>P.O. Box 740407<br>Cincinatti, OH 45274-0407 |
| WPS | GE Packaged Power LLC<br>P.O. Box 100371<br>Atlanta, GA 30384-0371 |
| WPS | H & E Equipment Exchange LLC<br>P.O. Box 849850<br>Dallas, TX 75284 |
| WPS | Hach Company<br>2207 Collection Center Drive |

| | |
|---|---|
| | Chicago, IL 60693 |
| WPS | J Harris Industrial Water Treatment, Inc.<br>d/b/a Puretec Industrial Water<br>3151 Sturgis Road<br>Oxnard, CA 93030-8931 |
| WPS | Jorgensen Company<br>P.O. Box 398655<br>San Francisco, CA 94139-8655 |
| WPS | Maximum Turbine Support, Inc.<br>705 S. Lugo Ave.<br>San Bernardino, CA 92408-2235 |
| WPS | Nalco Company<br>Ref: 66117319<br>P.O. Box 8329<br>Stockton, CA 95208-8329 |
| WPS | Pacific Mechanical Supply<br>13705 Milroy Place<br>Santa Fe Springs, CA 90670-5130 |
| WPS | Pence Petroleum Co.<br>P.O. Box 1048<br>Fresno, CA 93714-1048 |
| WPS | PROS Incorporated<br>P.O. Box 20996<br>Bakersfield, CA 93390-0996 |
| WPS | Rap Services Inc.<br>12148 Pony Express Lane<br>Bakersfield, CA 93306-9768 |
| WPS | ReadyRefresh by Nestle<br>Division of Nestle Waters Inc.<br>P.O. Box 856158<br>Louisville, KY 40285-6158 |
| WPS | RK Power Engineering Inc.<br>4725 Panama Lane, Suite D3 #149<br>Bakersfield, CA 93313 |
| WPS | Safety-Kleen Systems Inc.<br>P.O. Box 7170<br>Pasadena, CA 91109-7170 |
| WPS | Second Star Technologies LLC<br>P.O. Box 82062<br>Bakersfield, CA 93380-2062 |
| WPS | Stinson's Stationers<br>P.O. Box 3399<br>Bakersfield, CA 93385-3399 |
| WPS | T&T Truck & Crane Service<br>P.O. Box 1748<br>Ventura, CA 93002-1748 |
| WPS | The Industrial Medical Group<br>Bakersfield 2501 G Street |

| | |
|---|---|
| | Bakersfield, CA 93301-2811 |
| WPS | Total-Western Inc.<br>8049 Somerset Blvd.<br>Paramount, CA 90723-4396 |
| WPS | Trane Building Services<br>c/o Trane U.S. Inc.<br>d/b/a Trane<br>5599 N. Golden State Blvd.<br>Fresno, CA 93722 |
| WPS | Zee Medical Service #34<br>107 Bryant Street<br>Ojai, CA 93023-3309 |

## **Exhibit C**

Assignment of Overriding Royalty Interest

**RECORDING REQUESTED BY**
Kern River Holdings II LLC
1223 Wilshire Blvd. Ste. 1050
Santa Monica, CA 90403

MAIL TAX STATEMENTS TO
~~WHEN RECORDED RETURN TO~~
Kern River Holdings II LLC
1223 Wilshire Blvd. Ste. 1050
Santa Monica, CA 90403

WHEN RECORDED RETURN TO
~~MAIL TAX STATEMENTS TO~~
Hogan Lovells US LLP
1999 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Attn: Rick Wynne                                    Space above this line for Recorder's use

---

The undersigned Assignor declares:

Documentary transfer tax is $6,050.00
( x ) computed on value of property conveyed, or
(   ) computed on full value less value of liens and encumbrances remaining at time of sale.
( x ) Unincorporated area: ( x ) County of Kern

By: _____
Name:  _Cary russu_
Title:  _CCo_

## ASSIGNMENT OF OVERRIDING ROYALTY INTEREST

This **ASSIGNMENT OF OVERRIDING ROYALTY INTEREST** (this "Assignment") dated effective as of 7:01 a.m. Pacific Time on March 1, 2019 (the "Effective Time"), is from KERN RIVER HOLDINGS II LLC, a Delaware limited liability company, having its principal executive office and place of business at 1223 Wilshire Blvd., Suite #1050, Santa Monica, California, 90403 ("Assignor"), to All AMERICAN OIL AND GAS INCORPORATED, a Delaware corporation ("Assignee"). Assignor and Assignee are each referred to herein, individually, as a "Party" and, collectively, as the "Parties".

WITNESSETH:

FOR AND IN CONSIDERATION OF THE SUM OF TEN DOLLARS ($10.00) and other good and valuable consideration, the receipt, adequacy and sufficiency of which are hereby acknowledged, Assignor by these presents does hereby GRANT, CONVEY, ASSIGN and TRANSFER, without warranties or representations of any kind, express, implied, at common law, statutory or otherwise, to Assignee, a term overriding royalty interest in the form of the Term Overriding Royalty Payment (defined below) in and to the Subject Interests (defined below) and Subject Hydrocarbons (defined below), during the term hereof.

Overriding Royalty Payment (defined below) in and to the Subject Interests (defined below) and Subject Hydrocarbons (defined below), during the term hereof.

TO HAVE AND TO HOLD the term overriding royalty interest, together with all and singular the other rights, titles, interests, estates, remedies, powers, privileges and appurtenances thereto, unto Assignee, its successors and assigns, subject to the terms and provisions of this Assignment.

The term overriding royalty interest is not a contingent interest but is a fully and presently vested real property interest.

## ARTICLE I
## CERTAIN DEFINITIONS

Section 1.1 <u>Specific Definitions</u>. The following terms, when used in this Assignment, have the meanings indicated below (such meanings to be fully applicable to both the singular and plural forms of the terms defined):

"<u>Affiliates</u>" means for any Person (as hereinafter defined), any other Person who directly or indirectly controls, is under common control with, or is controlled by such Person. As used in this definition, "<u>control</u>" (including, with its correlative meanings, "<u>controlled by</u>" and "<u>under common control with</u>") shall mean possession, directly or indirectly, of power to direct or cause the direction of management or policies (whether through ownership of securities or partnership or other ownership interests, by contract or otherwise), provided that, in any event (i) any Person who owns directly or indirectly fifty percent (50%) or more of the securities having ordinary voting power for the election of directors or other governing body of a corporation or fifty percent (50%) or more of the partnership or other ownership interests of any other Person (other than as a limited partner of such other Person) will be deemed to control such corporation or other Person, and (ii) any subsidiary or partner of Assignor shall be deemed to be an Affiliate of Assignor.

"<u>Assignee</u>" shall have the meaning set forth in the introductory paragraph of this Assignment, and shall include its successors and assigns.

"<u>Assignment</u>" means this Assignment of Overriding Royalty Interest, as the same may be amended, modified or restated from time to time.

"<u>Assignor</u>" shall have the meaning set forth in the introductory paragraph of this Assignment and shall include its successors and assigns.

"<u>Base Rate</u>" means that per annum interest rate announced from time to time by Citibank, N.A. as its prime lending rate (or if unavailable, the then prevailing comparable rate announced by JP Morgan Chase Bank, N.A.), <u>plus</u> four percent (4%) per annum.

"<u>Business Day</u>" means any day other than a day on which commercial banks are authorized or required to close in Los Angeles, California.

"<u>Code</u>" shall have the meaning assigned to such term in <u>Section 10.4</u>.

2

"Cogeneration Facility" means the 20 megawatt gas turbine cogenerating plant owned by Western Power & Steam and located in Kern County, California.

"Commencement Date" means 12:01 a.m. Pacific Time on April 1, 2019.

"Crude Oil" means all crude oil, condensate and other liquid hydrocarbons recovered by field equipment or facilities, excluding Gas Liquids.

"Direct Taxes" means all ad valorem, property, gathering, transportation, pipeline regulating, gross receipts, severance, production, excise, heating content, carbon, value, value added, environmental, occupation, franchise, sales, use, fuel, and other taxes and governmental charges and assessments imposed on or as a result of all or any part of the Subject Interests, the Hydrocarbons produced from Subject Interests or the proceeds thereof, the Term Overriding Royalty Payment, regardless of the point at which or the manner in which such taxes, charges or assessments are charged, collected, levied or otherwise imposed. The only taxes which are not Direct Taxes are federal income taxes, state or local income taxes, and franchise taxes levied against any Assignee or any beneficiary and any other taxes levied against the overall net income of any Assignee or any beneficiary (including interest, penalties and withholding obligations owing to governmental authorities with respect to such income or franchise taxes). Interest, penalties and withholding obligations owing to governmental authorities by Assignor with respect to any Direct Taxes shall constitute "Direct Taxes".

"Effective Time" shall have the meaning set forth in the introductory paragraph of this Assignment.

"Gas Liquids" shall mean those natural gas liquids and other liquid hydrocarbons, including ethane, propane, butane and natural gasoline, and mixtures thereof, that are removed from a Gas stream by the liquids extraction process of any field facility or gas processing plant and delivered by the facility or plant as natural gas liquids.

"Governmental Authority" means the government of the United States of America, any other nation, or any political subdivision thereof, whether state, local or tribal, and any agency, authority, instrumentality, regulatory body, court, central bank or other entity exercising executive, legislative, judicial, taxing, regulatory or administrative powers, jurisdiction or functions of or pertaining to government over Assignor or Assignee.

"Hedge Agreement" means any agreement entered into by or on behalf of Assignor with respect to any futures contract, forward contract, commodity swap agreement, commodity option agreement, or other similar agreement or arrangement in respect of Subject Hydrocarbons produced, processed or sold by or on behalf of Assignor and designed to protect Assignor against fluctuations in Hydrocarbon prices. For purposes herein, "forward contract" includes any contract to sell Subject Hydrocarbons more than ninety (900) days in advance of their production at a price that is not based primarily on an indexed price for the month of delivery; it being agreed that inclusion in the price calculation of a monetary adjustment, either as an addition or substraction to an index price, shall not cause such a contract to be a Hedge Agreement for purposes of this Assignment.

3

"Hydrocarbons" means all Crude Oil, Natural Gas and Gas Liquids.

"Hydrocarbon Proceeds" means, on a cash accounting basis, from and after the Commencement Date, the aggregate amount actually received by Assignor, without duplication, from or attributable to the Sale of Subject Hydrocarbons produced from all Subject Interests, subject to the following:

      (a)    Hydrocarbon Proceeds shall include all consideration received, directly or indirectly, from Sales of Subject Hydrocarbons, including without limitation advance payments, payments under take-or-pay (recoupable or non-recoupable), production payments or similar provisions of Sales Contracts.

      (b)    If any proceeds are withheld from Assignor for any reason (other than at the request of Assignor) such proceeds shall not be considered to be Hydrocarbon Proceeds until such proceeds are actually received by Assignor; provided, however, Hydrocarbon Proceeds shall not include any interest, penalty or other amount attributable thereto that is not derived from the Sale of Subject Hydrocarbons.

      (c)    If any controversy or uncertainty exists as to the correct or lawful sales price of any Subject Hydrocarbons or as to whether any amounts received from the sale thereof should be refunded to the purchaser of such Subject Hydrocarbons, then amounts received by Assignor and promptly deposited by it with a bank or financial institution serving as escrow agent, to be placed in escrow accounts under usual and customary terms until such controversy is resolved, shall not be considered to have been received by Assignor and shall not be included in Hydrocarbon Proceeds until disbursed by such escrow agent to or for the account of Assignor; provided, however, Hydrocarbon Proceeds shall not include any interest or other amount attributable thereto that is not derived from the Sale of Subject Hydrocarbons.

"Index Price" means for any Payment Period, the average of Chevron, ExxonMobil, Union 76 and Shell Trading US crude oil posting's posted price for Midway Sunset for equal daily quantities for the delivery month, including weekends and holidays. Price adjusted for actual gravity per the average gravity adjustment of the above four postings.

"Lease Use Hydrocarbons" means any Hydrocarbons which are unavoidably lost in the production thereof or used by Assignor or the operator on the Subject Interests for drilling and production (including, without limitation, use for secondary recovery) operations conducted prudently and in good faith for the purpose of producing Hydrocarbons from the Subject Interests, but only for so long as and to the extent such Hydrocarbons are so used; provided that the foregoing shall not include any Hydrocarbons used for the Cogeneration Facility.

"Leases" means oil, gas and/or mineral leases or portions thereof listed and described on Exhibit A attached hereto and made a part hereof by reference, and the lands covered thereby and subject to the depth and acreage limitations and reservations, if any, set forth in Exhibit A.

"Maximum Rate" means the maximum non-usurious interest rate, if any, that at any time or from time to time may be contracted for, taken, reserved, charged or received by a creditor under applicable law.

"Month" means any calendar month, and "Monthly" has the correlative meaning.

"Natural Gas" means natural gas, casinghead gas and other hydrocarbon substances in gaseous form, including helium, but excluding any Gas Liquids.

"Non-Consent Hydrocarbons" means those Hydrocarbons produced from a Subject Interest during the applicable period of recoupment or reimbursement pursuant to a Non-Consent Provision covering that Subject Interest, which Hydrocarbons have been relinquished to the consenting party or participating party under the terms of such Non-Consent Provision as the result of an election by Assignor not to participate in the particular operation, provided that such election by Assignor has been made in compliance with the terms of this Assignment.

"Non-Consent Provision" means a contractual provision contained in an operating agreement unit agreement, contract for development or other similar instrument that covers so-called non-consent operations or sole benefit operations and provides for relinquishment of production by non-consenting or non-participating parties during a period of recoupment or reimbursement of a multiple of the costs and expenses of the consenting or participating parties.

"ORRI Proceeds Statement" has the meaning assigned to such term in Section 8.3.

"Pacific Time" means Pacific Standard Time or Pacific Daylight Savings Time in effect in Los Angeles, California on the date in question.

"Party" or "Parties" shall have the meaning set forth in the introductory paragraph of this Assignment.

"Payment Period" means each consecutive six (6) Month period, (a) with the initial Payment Period commencing on the Commencement Date and ending on the last day of the sixth (6th) Month following and including the Month of the Commencement Date, and (b) with subsequent Payment Periods each being the six (6) Month period following the end of the prior Payment Period; provided that the last Payment Period shall end on the Termination Date.

"Person" means an individual, corporation, partnership, limited liability company, joint venture, trust or unincorporated organization, joint stock company or other organization, government or any political subdivision thereof, a court, or any other legal entity, whether acting in an individual, fiduciary or other capacity.

"Post-Closing Allowed Fees" means fees and out-of-pocket expenses of each professional retained by one or more Assignee by order of the United States Bankrupty Court for the Western District of Texas in the cases jointly administered under Case No. 18-52693-rbk, pursuant to sections 327, 328, or 363 of the United States Bankruptcy Code, incurred on and after March 1, 2019.

"Qualifying Payment Period" means any Payment Period where the average Sales price realized under arm's length Sales Contracts with non-Affiliated Persons by Assignor for Subject Hydrocarbons constituting Crude Oil produced and Sold during such Payment Period exceeds $70.00 per barrel; provided that (a) for any Payment Period the price for any Hydrocarbons used for the Cogeneration Facility shall be deemed to be the average Sales price received by Assignor from Sales of Subject Hydrocarbons to non-Affiliates of Assignor during such Payment Period, (b) such average Sales price shall (i) not include in its calculation the price paid under any fixed price product sales contracts that are Hedge Agreements and (ii) not be calculated to include the effect, whether positive or negative, of any Hedge Agreement, and (c) if ninety percent (90%) or more of the Subject Hydrocarbons sold in a Payment Period are sold pursuant to fixed price product sales contracts that are Hedge Agreements, then such average Sales price for such Payment Period shall be the Index Price for such Payment Period. Nothing in this Assignment shall be deemed to prohibit Assignor from entering into Sales Contracts that cover periods longer than six months.

"Remaining Hydrocarbon Proceeds" means, with respect to each Qualifying Payment Period, an amount equal to (A) the Hydrocarbon Proceeds attributable to Subject Hydrocarbons produced and Sold from the Subject Interests minus (B) $550,000; provided, that if the foregoing calculation yields a negative value, the Remaining Hydrocarbon Proceeds shall be deemed to equal $0.

"Remaining Potential Payment Amount" means at any time during the Term, the then present value (applying a discount rate of 5% per annum) of an amount equal to $550,000 multiplied by the number of Payment Periods then remaining in the Term.

"Reporting Date" shall mean the twentieth (20th) day following the close of each Payment Period.

"Sale" or "Sold" means any sale, exchange, or other disposition for value.

"Sales Contract" means any contracts or agreements for the Sale of Subject Hydrocarbons from the Subject Interests.

"Special Damages" shall have the meaning assigned to such term in Section 10.10.

"Subject Hydrocarbons" means that portion of the Hydrocarbons that may be produced from the Subject Interests and which are attributable to the Subject Interests from and after the Commencement Date until the Termination Date, but excluding (i) any Non-Consent Hydrocarbons, (ii) any Lease Use Hydrocarbons and (iii) any Hydrocarbons taken in-kind by a lessor or other burden holder pursuant to the terms and conditions of the applicable Lease or instrument creating such burden.

"Subject Interests" means (a) all rights, title, claim or interest which Assignor has on the Effective Time in each Lease, each Unit, and all leasehold, mineral and other interests described in Exhibit A, including any such interests that are subsequently conveyed to Assignor by Assignee or one of Assignee's Affiliates, and any and all extensions, renewals or replacements thereof in which Assignor now owns or hereafter acquires an interest and the rights appurtenant to any of the foregoing, if any, in and under any operating, unitization and pooling agreements and the Units

created thereby, and (b) all rights, title, claim or interest which Assignor has on the Effective Time to share, pursuant to any Unit agreement or otherwise, in the production of the Subject Hydrocarbons allocable or attributable to the Leases, each Unit and all leasehold, mineral and other interests described in Exhibit A, including any such interests that are subsequently conveyed to Assignor by Assignee or one of Assignee's Affiliates, regardless of whether such right, title, claim or interest be under or by virtue of a Lease, a sublease, an assignment, a unitization or pooling agreement, a unitization or pooling order, a mineral deed, a royalty deed, a mineral servitude deed, a joint operating agreement, a division order, a transfer order or any other type of contract (including a farmout agreement or development agreement), conveyance or instrument or under or by virtue of any other type of claim of title, legal or equitable, recorded or unrecorded, even though Assignor's interests be incorrectly or incompletely described in, or a description thereof be omitted from, Exhibit A. Except as set forth hereinabove, Subject Interests (i) shall be enlarged by the discharge of any payments out of production or by the removal of any charges or encumbrances to which any of the same are subject, or any modification of any operating agreement or Unit agreement, (ii) shall include any and all renewals and extensions of any of the same, and all additional interests acquired by Assignor in any Lease, Unit, minerals, notwithstanding the descriptions contained in Exhibit A, including any such interests that are subsequently conveyed to Assignor by Assignee or one of Assignee's Affiliates, (iii) shall reflect the economic benefit realized by Assignor in connection with any "non-consent" penalties and (iv) shall reflect the economic detriment suffered by Assignor in connection with any "non-consent" penalties imposed on Assignor or its interest.

"Term Overriding Royalty Payment" means, from and after the Commencement Date, an overriding royalty payment which is (i) payable only with respect to a Qualifying Payment Period and (ii) equal to $550,000 in each Qualifying Payment Period less the amount by which the Post-Closing Allowed Fees exceed $250,000, to the extent not deducted from a Term Overriding Royalty Payment in a prior Qualifying Payment Period. For purposes of clarity, the total of all Term Overriding Royalty Payments arising prior to the Termination Time, if any, shall not exceed Five Million Five Hundred Thousand Dollars ($5,500,000) in the aggregate.

"Termination Date" means the earlier to occur of (i) the fifth (5th) anniversary of the Commencement Date, and (ii) the date the Remaining Potential Payment Amount is delivered to Assignee.

"Unit" means a pooled unit or proration unit as designated by an effective designation of unit, proration unit plan, or other instrument of similar impact properly filed with the appropriate Governmental Authority or of public record.

"Working Interest" shall mean the cost-bearing property interest (record title or operating rights) which entitles the owner thereof to explore and develop certain land for Hydrocarbon production purposes, whether under a Hydrocarbon lease or unit, a compulsory pooling order or otherwise.

Section 1.2    Construction.    The headings in this Assignment are for the convenience of reference only and shall not affect the interpretation of this Assignment. Whenever the context requires, the gender of all words used herein shall include the masculine, feminine and neuter, and the number of all words shall include

7

the singular and plural. The words "include," "includes" and "including" are deemed to be following by "without limitation." The words "hereby," "herein," "hereunder," "hereinbefore," "hereinafter" and other equivalent words refer to this Assignment in its entirety and not solely the particular portion of the Assignment in which such word is used. Unless otherwise specified, references in this Assignment to "Sections," "Subsections" or "Articles" refer to the sections, subsections or articles in this Assignment.

<h1 style="text-align:center">ARTICLE II<br>PAYMENT OF TERM OVERRIDING ROYALTY PAYMENT</h1>

Section 2.1    Payment. For any Qualifying Payment Period, on or before the tenth (10th) day (or, if such day is not a Business Day, the next Business Day) following the Reporting Date for such Qualifying Payment Period, Assignor shall pay to Assignee the Term Overriding Royalty Payment with respect to such Qualifying Payment Period, as follows: pursuant to wire instructions provided by Assignee to Assignor.

The directions for payments can be modified by written notice to Assignor pursuant to Section 10.1.

Section 2.2    Overpayment. If at any time Assignor inadvertently pays Assignee more than the amount due, Assignee shall be obligated to return any such overpayment on or before the tenth (10th) day (or, if such day is not a Business Day, the next Business Day) following Assignor's written request therefor. To the extent that Assignor has not been reimbursed for such overpayment, Assignor shall be entitled to reduce the amounts payable to Assignee hereunder for any subsequent period or periods by the amount of such overpayment, with any interest component being imputed on such overpayment.

Section 2.3    Interest on Past Due Payments. Any amount not paid by one Party to the other Party within ten (10) days after the date when due, shall bear, and such Party shall pay, interest in an amount equal to the Base Rate in effect on such due date and such interest shall accrue from the expiration of the ten day grace period until such amount is paid; provided, however, such interest shall not be in excess of the Maximum Rate.

Section 2.4    Remaining Hydrocarbon Proceeds. For any Qualifying Payment Period, Assignor shall be entitled to retain the amount of any Remaining Hydrocarbon Proceeds. Under no circumstances shall the Hydrocarbon Proceeds paid to Assignee in respect of the Term Overriding Royalty Payment for any Qualifying Payment Period exceed $550,000.

Section 2.5    Non-Qualifying Payment Periods. For any Payment Period that is not a Qualifying Payment Period, Assignor shall be entitled to retain one hundred

percent (100%) of the Hydrocarbon Proceeds with respect to such Payment Period and Assignee shall receive no payment with respect to the Term Overriding Royalty Payment for such Payment Period.

Section 2.6    Pre-Commencement Date Proceeds.  Notwithstanding anything herein to the contrary, and for the avoidance of doubt, Assignor shall be entitled to one hundred percent (100%) of all proceeds attributable to Hydrocarbons produced from the Subject Interests prior to the Commencement Date, including, proceeds attributable thereto received after the Commencement Date.

Section 2.7    Early Payment.  Assignor may, in its sole discretion, at any time during the Term pay Assignee the Remaining Potential Payment Amount, in which event this Assignment will terminate.

## ARTICLE III
## MARKETING OF HYDROCARBONS

Section 3.1    Marketing.  Assignor shall market or cause to be marketed the Subject Hydrocarbons on behalf of Assignee at the same prices and on the same terms Assignor obtains for its share of such Subject Hydrocarbons. Assignor shall sell the Subject Hydrocarbons in good faith under arm's length Sales Contracts with Persons not Affiliated with Assignor.  Assignee shall have no right hereunder to take in-kind any Subject Hydrocarbons or any other assets of Assignor with respect to the Term Overriding Royalty Interest.

## ARTICLE IV
## OPERATION OF THE SUBJECT INTERESTS

Section 4.1    No Obligation to Develop.  Nothing contained herein shall be construed as any agreement or obligation on the part of Assignor, its successors and assigns, to maintain any of the Subject Interests in force and effect by the payment of rentals, the drilling of wells, the production of Hydrocarbons, or otherwise. Assignor shall have the right at any time, from time to time, at Assignor's sole discretion to surrender or abandon the Subject Interests in whole or in part without liability of any kind whatsoever to Assignee and in case of such surrender or abandonment for any Leases, Assignor may release such Leases directly to the lessor thereof.

Section 4.2    Pooling and Unitization.  Without approval from Assignee, Assignor shall have the right to pool or unitize all or any of the Subject Interests as to any one or more of the formations or horizons thereunder, and as to any of the Subject Hydrocarbons, in Assignor's sole discretion. For purposes of computing the Hydrocarbon Proceeds, there shall be allocated to the Subject Interests included in such unit a pro rata portion of the Hydrocarbons produced from the pooled unit on the same basis that production from the pool or unit is allocated to other working interests in such pool or unit. The interest in any such unit attributable to the Subject Interests (or any part thereof) included therein shall become a part of the Subject Interests and shall be subject to the terms of this Assignment..

Section 4.3    Non-Consent. Without approval from Assignee, Assignor may elect to be a non-participating party (whether pursuant to an operating agreement or other agreement or arrangement, including without limitation, non-consent rights and obligations imposed by statute or regulatory agency) with respect to any operation on any Subject Interest or elect to be an abandoning party with respect to a well located on any Subject Interest, the consequence of which election is that Assignor's interest in such Subject Interest or part thereof is temporarily (i.e., during a recoupment period) or permanently forfeited to the parties participating in such operations.

Section 4.4    Lease Amendment. Assignor shall have the unrestricted right to renew, extend, modify, amend, or supplement the Leases with respect to any of the lands covered thereby (or decline to do any of the foregoing) without the consent of Assignee; provided, that the Term Overriding Royalty Payment shall apply to all renewals, extensions, modifications, amendment, supplements and other similar arrangements (and/or interests therein) of the Leases, whether or not such renewals, extensions modifications, amendment, supplements or arrangements have heretofore been obtained, or are hereafter obtained, by Assignor.

## ARTICLE V
## OWNERSHIP OF PROPERTY; NON-COST BEARING INTEREST; NO RIGHT OF OPERATIONS BY ASSIGNEE

Section 5.1    Ownership of Property.    The Term Overriding Royalty Payment does not include any right, title, or interest in and to any personal property, fixtures, or equipment and is exclusively an interest in and to the Subject Interests and the Subject Hydrocarbons in and under and produced and saved from the Subject Interests.

Section 5.2    Non-Cost Bearing Interest; Taxes.    Except as expressly provided in the definition of Term Overriding Royalty Payment, the Term Overriding Royalty Payment shall be free and clear of all costs, expenses, fees, burdens and taxes related or attributable to the Subject Interests, including all Direct Taxes, all exploration, development, operation and post-production costs and expenses (including, without limitation, any and all separation, gathering, compression, dehydration, treating, stabilization, transportation, processing and marketing fees, costs and expenses), all royalties, overriding royalties, production payments and other burdens, and all other costs and expenses of any kind, provided that Assignee shall be responsible for all federal, state or local income tax or franchise tax arising from or attributable to payments under this Assignment and any other taxes imposed on receipt of oil and gas royalty payments under this Assignment or the creation of an oil and gas royalty interest.  Nothing in this Assignment shall be deemed to limit or prohibit Assignor from withholding from payment to Assignee any sums it is required to withhold under applicable federal or state law or court order and from forwarding such sums to the persons or entities legally required.

Section 5.3    Non-Operating Interest. NOTWITHSTANDING ANYTHING HEREIN TO THE CONTRARY, ASSIGNEE WILL HAVE NO RIGHT TO DIRECT

OPERATIONS ON THE SUBJECT INTERESTS. IT IS THE EXPRESS INTENT OF ASSIGNOR AND ASSIGNEE THAT THE TERM OVERRIDING ROYALTY PAYMENT SHALL CONSTITUTE (AND THIS CONVEYANCE SHALL CONCLUSIVELY BE CONSTRUED FOR ALL PURPOSES AS CREATING) A SINGLE, SEPARATE NON-OPERATING OVERRIDING ROYALTY INTEREST IN AND TO THE SUBJECT HYDROCARBONS IN AND UNDER AND PRODUCED AND SAVED FROM THE SUBJECT INTERESTS DURING THE TERM HEREOF FOR ALL PURPOSES AND A FULLY VESTED AND FULLY CONVEYED INTEREST IN REAL PROPERTY. WITHOUT LIMITATION OF THE GENERALITY OF THE IMMEDIATELY PRECEDING SENTENCE, ASSIGNOR AND ASSIGNEE ACKNOWLEDGE THAT ASSIGNEE HAS NO RIGHT OR POWER TO PARTICIPATE IN THE SELECTION OF CONTRACTORS, TO PROPOSE THE DRILLING OF A WELL, TO DETERMINE THE TIMING OR SEQUENCE OF DRILLING OPERATIONS, TO COMMENCE OR SHUT DOWN PRODUCTION, TO TAKE OVER OPERATIONS, OR TO SHARE IN ANY OPERATING DECISION WHATSOEVER OR IN ANY DECISION PERTAINING TO THE MARKETING AND SALE OF PRODUCTION WHATSOEVER.

Section 5.4    NO LIABILITY OF ASSIGNEE. ASSIGNEE SHALL NEVER BE RESPONSIBLE UNDER THE TERMS OF THIS ASSIGNMENT FOR ANY PART OF THE COSTS, EXPENSES OR LIABILITIES INCURRED IN CONNECTION WITH THE EXPLORING, DEVELOPING, OPERATING, OWNING, MAINTAINING, REWORKING OR RECOMPLETING OF THE SUBJECT INTERESTS OR SUBJECT LANDS, THE PHYSICAL CONDITION OF THE SUBJECT INTERESTS OR THE SUBJECT LANDS, OR THE PRODUCING, HANDLING, TREATING OR TRANSPORTING OF HYDROCARBONS PRODUCED FROM THE SUBJECT LANDS (INCLUDING ANY COSTS, EXPENSES, LOSSES OR LIABILITIES RELATED TO VIOLATION OF AN ENVIRONMENTAL LAW OR OTHERWISE RELATED TO DAMAGE TO OR REMEDIATION OF THE ENVIRONMENT, WHETHER THE SAME ARISE OUT OF ASSIGNEE'S OWNERSHIP OF AN INTEREST IN PROPERTY OR OUT OF THE ACTIONS OF ASSIGNOR OR ASSIGNEE OR OF THIRD PARTIES OR ARISE OTHERWISE). AS USED IN THIS ARTICLE IV, "ASSIGNEE " REFERS TO THE PERSONS NAMED AS ASSIGNEE AT THE BEGINNING OF THIS ASSIGNMENT, AND. SUBJECT TO COMPLIANCE WITH THE TERMS OF SECTION 7.1 BELOW, TO THE RESPECTIVE SUCCESSORS AND ASSIGNS AND AFFILIATES OF EACH OF THE FOREGOING, TOGETHER WITH ALL OF THE RESPECTIVE OFFICERS, DIRECTORS, AGENTS, BENEFICIARIES, TRUSTEES, ATTORNEYS AND EMPLOYEES OF THE FOREGOING OR OF THEIR SUCCESSORS, ASSIGNS AND AFFILIATES. FOR PURPOSES OF CLARITY, THE PROVISIONS OF THIS SECTION 5.4 APPLY ONLY TO THIS ASSIGNMENT AND DO NOT SUPERSEDE OR LIMIT THE TERMS OF ANY OTHER AGREEMENT OF ANY KIND BETWEEN ASSIGNOR AND ASSIGNEE OR ANY OF THEIR RESPECTIVE AFFILIATES.

## ARTICLE VI
## GOVERNMENT REGULATION

Section 6.1    <u>Government Regulations</u>.    All obligations of Assignor hereunder shall be subject to all applicable laws of the federal government and any other state or local government having jurisdiction, as well as to the applicable rules, regulations and orders of any other Governmental Authority having jurisdiction.

## ARTICLE VII
## ASSIGNMENTS, CHANGE OF OWNERSHIP

Section 7.1    <u>Assignment</u>.    Assignor shall have the right to assign, sell, transfer, convey, mortgage or pledge the Subject Interests, or any part thereof, in conjunction with a sale of all or a portion of the Subject Interests or mortgage, lien, pledge or encumbrance of all or a portion of the Subject Interests, in any such case subject to the Term Overriding Royalty Payment and the terms and provisions of this Assignment, without Assignee's prior approval.  All other assignments by Assignor shall require Assignee's prior written consent.  Assignee shall have the right to assign, sell or, convey  the Term Overriding Royalty Payment, or any part thereof, subject to the terms and provisions of this Assignment, without Assignor's prior approval; provided, however, that (i) any such assignment or transfer shall not cause the Assignor to make multiple payments of the Term Overriding Royalty Payment to more than one Person, and (y) if there are multiple assignees, such assignees must designate one administrative agent to whom payments are made, notices are given and from whom approvals are sought.  Notwithstanding the foregoing, Assignee may mortgage, lien, pledge or encumber in any manner this Assignment or the Term Overriding Royalty Payment or any portion thereof.

Section 7.2    <u>Change of Ownership</u>.    No change of ownership or right to receive payment of the Term Overriding Royalty Payment, or of any part thereof, however accomplished, shall be binding upon Assignor until notice thereof shall have been furnished by the Person claiming the benefit thereof, and then only with respect to payments thereafter made. Notice of sale or assignment shall consist of a copy of the recorded instrument accomplishing the same; notice of change of ownership or right to receive payment accomplished in any other manner (for example by reason of incapacity, death or dissolution) shall consist of copies of recorded documents and complete proceedings legally binding and conclusive of the rights of all parties. Until such notice shall have been furnished to Assignor as provided above, the payment or tender of all sums payable on the Term Overriding Royalty Payment may be made in the manner provided herein precisely as if no such change in interest or ownership or right to receive payment had occurred.  Upon request by Assignee, Assignor shall, at the expense of Assignee, execute and deliver revised conveyances to Assignee and to any Person to whom Assignee has assigned all or any portion of this Term Overriding Royalty Payment to reflect such assignment by Assignee.  All of the covenants and agreements of Assignor contained in this Assignment shall be deemed to be covenants running with the land and the Subject Interests to the fullest extent permitted by applicable law and shall be binding upon all successors in interest to, and all assigns

of, Assignor and shall inure to the benefit of all successors in interest to, and all assigns of, Assignee. Likewise, all of the covenants and agreements of Assignee contained in this Assignment shall be deemed to be covenants running with the land and the Subject Interests to the fullest extent permitted by applicable law and shall be binding upon all successors in interest to and all assigns of, Assignee and shall inure to the benefit of all successors in interest to, and all assigns of, Assignor. All references herein to either Assignor or Assignee shall include their respective successors and assigns. This Assignment, or an extract or memorandum thereof, may be filed in the records of any county or parish in which the Subject Interests are located. An extract, memorandum or notice of this Assignment may be filed in the records of any county or parish adjacent to where the Subject Interests are located and with any Governmental Authority deemed necessary by Assignor or Assignee.

## ARTICLE VIII
## RECORDS AND REPORTS

Section 8.1    <u>Books and Records</u>.  Assignor shall at all times maintain true and correct books and records sufficient to determine the amounts payable to Assignee hereunder including, but not limited to, a Term Overriding Royalty Payment account which will record all Hydrocarbon Proceeds attributable to the Term Overriding Royalty Payment is calculated.

Section 8.2    <u>ORRI Proceeds Statement</u>.  On or before each Reporting Date, Assignor shall deliver to Assignee a statement ("<u>ORRI Proceeds Statement</u>"), which ORRI Proceeds Statement, with respect to the Payment Period ending immediately prior to the Reporting Date, shall show the Term Overriding Royalty Payment due Assignee under <u>Section 2.1</u> of this Assignment. Each ORRI Proceeds Statement, with respect to the Payment Period ending immediately prior to the applicable Reporting Date, shall include (a) a production and operations report regarding the quantities of Hydrocarbons and Subject Hydrocarbons produced in such Payment Period broken down for each month in such Payment Period, (b) a statement detailing the average Sales price for Crude Oil broken down for each month in such Payment Period, excluding the effect of any Hedge Agreement, if applicable,  and a summary calculation and determination of whether such Payment Period is a Qualifying Payment Period, , and (c) to the extent that the Index Price was used for such Payment Period pursuant to clause (c) of the definition of Qualifying Payment Period, a detailed statement of the Index Price for such Payment Period.

Section 8.3    <u>Audit</u>.  During the term of this Assignment and for one (1) year following the Termination Date, Assignee or its respective authorized representatives, shall be afforded reasonable access during normal business hours in order to conduct audits of Assignor's books of account and supporting documents,  as is necessary to substantiate the correctness of all statements and calculations relating to payments, if any, due under this Assignment. All costs and expenses of any such audit shall be the sole responsibility of Assignee. Assignor may condition such access on execution of a commercially reasonable confidentiality agreement by Assignee's authorized representatives.

Section 8.4    Confidentiality.    All information furnished to Assignee pursuant to this Assignment shall be confidential and for the sole benefit of Assignee and its Affiliates, lenders and assigns and shall not be disclosed by Assignee to other Persons except its Affiliates, consultants, lenders, partners and prospective purchasers of interests in the Term Overriding Royalty Payment and representatives and consultants retained to advise Assignee who agree to hold such information as confidential, and except Governmental Authorities governing Assignee to whom Assignee is obligated to disclose such information.

## ARTICLE IX
## REPRESENTATIONS AND WARRANTIES

Section 9.1    ASSIGNOR MAKES NO REPRESENTATIONS OR WARRANTIES WHATSOEVER AND DISCLAIMS ALL LIABILITY AND RESPONSIBILITY FOR ANY REPRESENTATION, WARRANTY, STATEMENT OR INFORMATION MADE OR COMMUNICATED (ORALLY OR IN WRITING) TO ASSIGNEE (INCLUDING ANY OPINION, INFORMATION, OR ADVICE THAT MAY HAVE BEEN PROVIDED TO ASSIGNEE BY ANY AFFILIATE OR REPRESENTATIVE OF ASSIGNOR OR BY ANY INVESTMENT BANK OR INVESTMENT BANKING FIRM, ANY PETROLEUM ENGINEER OR ENGINEERING FIRM, ASSIGNOR'S COUNSEL, OR ANY OTHER AGENT, CONSULTANT, OR REPRESENTATIVE OF ASSIGNOR).    WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, ASSIGNOR EXPRESSLY DISCLAIMS AND NEGATES ANY REPRESENTATION OR WARRANTY, EXPRESS, IMPLIED, AT COMMON LAW, BY STATUTE, OR OTHERWISE, RELATING TO (A) THE TITLE TO ANY OF THE SUBJECT INTERESTS, (B) THE CONDITION OF THE SUBJECT INTERESTS (INCLUDING ANY IMPLIED OR EXPRESS WARRANTY OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, OR CONFORMITY TO MODELS OR SAMPLES OF MATERIALS), IT BEING DISTINCTLY UNDERSTOOD THAT THE SUBJECT INTERESTS ARE BEING CONVEYED "AS IS," "WHERE IS," AND "WITH ALL FAULTS AS TO ALL MATTERS," (C) ANY INFRINGEMENT BY ASSIGNOR OF ANY PATENT OR PROPRIETARY RIGHT OF ANY THIRD PARTY, (D) ANY INFORMATION, DATA, OR OTHER MATERIALS (WHETHER WRITTEN OR ORAL) FURNISHED TO ASSIGNEE BY OR ON BEHALF OF ASSIGNOR (INCLUDING, IN RESPECT OF ANY SEISMIC DATA, THE EXISTENCE OR EXTENT OF HYDROCARBONS OR THE MINERAL RESERVES, THE RECOVERABILITY OF SUCH RESERVES, ANY PRODUCT PRICING ASSUMPTIONS, AND THE ABILITY TO SELL HYDROCARBON PRODUCTION AFTER THE CLOSING), AND (E) THE ENVIRONMENTAL CONDITION AND OTHER CONDITION OF THE SUBJECT INTERESTS AND ANY POTENTIAL LIABILITY ARISING FROM OR RELATED TO THE SUBJECT INTERESTS.

## ARTICLE X
## MISCELLANEOUS

Section 10.1   <u>Notices</u>. Any notice, demand or document which either Party is required or may desire to give hereunder shall be in writing and given by messenger, nationally recognized courier, facsimile or other electronic transmission, or United States registered or certified mail, postage prepaid, return receipt requested, addressed to such Party at its address and facsimile number shown below, or at such other address as either Party shall have furnished to the other by notice given in accordance with this provision.

If to Assignee:

    All American Oil and Gas Incorporated
    9601 McAllister Freeway, Suite 221 San Antonio, Texas 78216
    Attention: David J. Katz

    with a copy (which shall not constitute notice) to:
    Hogan Lovells US LLP
    1999 Avenue of the Stars, Suite 1400
    Los Angeles, CA  90067
    Attention: Richard Wynne
    Email: richard.wynne@hoganlovells.com

If to Assignor:

    Kern River Holdings II LLC
    1223 Wilshire Blvd. #1050
    Santa Monica, CA 90403
    Attention: Cary Meadow
    Email: cary@grade6oil.com

    with a copy (which shall not constitute notice) to:
    O'Melveny & Myers LLP
    400 South Hope Street, 18th Floor
    Los Angeles, CA 90071
    Attention: Steve Warren
    Email: swarren@omm.com

Any notice delivered or made by messenger, facsimile, or United States mail shall be deemed to be given on the earliest date of actual delivery as shown by messenger receipt, the addressor's facsimile machine confirmation or other verifiable electronic receipt, or the registry or certification receipt. Assignee need not delay action on notice transmitted orally by an authorized officer of Assignor to Assignee until receipt of written confirmation of such notice.

Section 10.2   <u>Term</u>.  Except as otherwise provided herein, this Assignment shall remain in force from the Effective Time until the Termination Date.  Upon termination of this Assignment and upon Assignor's request, Assignee shall promptly file of record in each county where the Subject Interests are located, a duly executed

reconveyance, release or termination statement declaring that the Assignment has terminated or been reconveyed and is no longer in force and effect. If such a termination statement previously has been provided to Assignor (either directly or to an escrow holder), then upon termination of this assignment Assignor is hereby authorized to cause such Termination Statement to be recorded in each county where the Subject Interests are located.

Section 10.3    Intention of the Parties.  Nothing herein contained shall be construed to constitute either Party hereto (under state law or for tax purposes) the agent of, or in partnership with, the other Party. Neither Assignor nor Assignee has made, or makes, any representations, warranties, promises or commitments to each other or to any third party regarding the interpretation or treatment of this Assignment or any Term Overriding Royalty Payment hereunder for federal, state or local tax purposes; it being understood that each of Assignor and Assignee will look solely to their respective tax advisors for information and advice on such matters.

Section 10.4    Binding Effect.    The covenants, provisions and conditions contained in this Assignment shall be binding upon and inure to the benefit of Assignor and Assignee and their respective successors and permitted assigns.

Section 10.5    Unenforceable or Inapplicable Provisions.    If any provision hereof is invalid or unenforceable in any jurisdiction, the other provisions hereof shall remain in full force and effect in such jurisdiction, and the remaining provisions hereof shall be liberally construed in favor of Assignee in order to effectuate the provisions hereof, and the invalidity of any provision hereof in any jurisdiction shall not affect the validity or enforceability of any such provision in any other jurisdiction.  Any reference herein contained to a law of a state in which no part of the Subject Interests is situated shall be deemed inapplicable to, and not used in, the interpretation hereof.

Section 10.6    Rule Against Perpetuities Savings Clause.  It is not the intent of the Parties that any provision herein violate any applicable law regarding the rule against perpetuities, the suspension of the absolute power of alienation or other rules regarding the vesting or duration of estates, and this Assignment shall be construed as not violating such rule to the extent the same can be so construed consistent with the intent of the Parties.  If, however, any provision hereof is determined to violate such rule, then such provision shall nevertheless be effective for the maximum period (but not longer than the maximum period) permitted by such rule that will result in no violation. Any future interests created or contemplated by this Assignment which are determined to be subject to the Rule Against Perpetuities shall, if they have not theretofore vested, be extinguished whenever twenty-one years less one day shall have elapsed after the death of the last survivor of Queen Elizabeth II of the House of Windsor, England, and Philip Mountbatten, Prince Philip, Duke of Edinburgh, and their children and grandchildren who are living at the date of the execution of this Assignment.

Section 10.7    Counterpart Execution.  This Assignment may be executed in several original counterparts. Each counterpart shall be deemed to be an original for

all purposes, and all counterparts shall together constitute but one and the same instrument; provided, however, in making proof of this Assignment, it shall only be necessary to produce one counterpart hereof, executed by the Parties hereto, and it shall not be necessary to produce nor to account for any other counterpart. To the extent permitted under the laws of any jurisdiction where this Assignment is to be filed, there may be attached to the counterpart of this Assignment to be filed in such jurisdiction an Exhibit A which shall contain only the legal description of the Subject Interests encumbered by this Assignment in such jurisdiction.

Section 10.8 GOVERNING LAW. THIS CONVEYANCE SHALL BE GOVERNED BY AND CONSTRUED UNDER THE LAWS OF THE STATE OF CALIFORNIA.

Section 10.9 WAIVER OF JURY TRIAL AND CERTAIN DAMAGES. EACH OF THE PARTIES HEREBY KNOWINGLY, VOLUNTARILY, INTENTIONALLY AND IRREVOCABLY (a) WAIVES, TO THE MAXIMUM EXTENT NOT PROHIBITED BY LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY A JURY IN RESPECT OF ANY LITIGATION BASED HEREON, OR DIRECTLY OR INDIRECTLY AT ANY TIME ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS ASSIGNMENT OR ANY TRANSACTION CONTEMPLATED HEREBY OR ASSOCIATED HEREWITH, (b) WAIVES, TO THE MAXIMUM EXTENT NOT PROHIBITED BY LAW, ANY RIGHT IT MAY HAVE TO CLAIM OR RECOVER IN ANY SUCH LITIGATION OR ARBITRATION ANY "SPECIAL DAMAGES," AS DEFINED BELOW, AND (c) ACKNOWLEDGES THAT IT HAS BEEN INDUCED TO ENTER INTO THIS ASSIGNMENT AND THE TRANSACTIONS CONTEMPLATED HEREBY BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS CONTAINED IN THIS SECTION, IN EACH CASE IT BEING THE EXPRESS INTENT, UNDERSTANDING, AND AGREEMENT OF THE PARTIES THAT SUCH WAIVERS ARE TO BE GIVEN THE FULLEST EFFECT, NOTWITHSTANDING THE NEGLIGENCE (WHETHER SOLE, JOINT OR CONCURRENT), STRICT LIABILITY OR OTHER LEGAL FAULT OF ANY PARTY. AS USED IN THIS SECTION, "SPECIAL DAMAGES" MEANS ALL SPECIAL, EXEMPLARY, PUNITIVE, CONSEQUENTIAL, INDIRECT, REMOTE AND SPECULATIVE DAMAGES (REGARDLESS OF HOW NAMED, AND INCLUDING LOSS OF PROFIT, LOSS OF REVENUE, LOSS OF PRODUCTION OR RESERVES OR ANY OTHER SPECIAL OR INCIDENTAL DAMAGES), BUT DOES NOT INCLUDE ANY PAYMENTS OR FUNDS WHICH ANY PARTY HERETO HAS EXPRESSLY PROMISED TO PAY OR DELIVER TO ANY OTHER PARTY HERETO.

[Signatures appear on the following pages.]

IN WITNESS WHEREOF, each of Assignor and Assignee has caused this Assignment to be executed in its name and behalf by its proper signatory officers thereunto duly authorized, in multiple originals, effective as of the date first set forth in this Assignment.

**ASSIGNOR:**

Kern River Holdings II LLC,
a Delaware limited liability company

By: _____
Name: _____ _C̶A̶r̶y̶ meadow_____
Title: _____ _Ceo_____

<div style="border:1px solid">

# ACKNOWLEDGMENT

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of _Los Angeles_ )

On _February 27, 2019_ before me,
_Cathy Greenfield, Notary Public_
(insert name and title of the officer)

personally appeared _Carey Meadow_   _C.J._
, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _Cathy Greenfield_ .

CATHY GREENFIELD
Notary Public – California
Los Angeles County
Commission # 2220744
My Comm. Expires Nov 5, 2021

(Seal)

</div>

IN WITNESS WHEREOF, each of Assignor and Assignee has caused this Assignment to be executed in its name and behalf by its proper signatory officers thereunto duly authorized, in multiple originals, effective as of the date first set forth in this Assignment.

**ASSIGNEE:**

American Oil and Gas Incorporated,
a Delaware corporation

By: _____
Name: David T. Katz
Title: Secretary & General Counsel

---

## ACKNOWLEDGMENT

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of ~~California~~ New Jersey

County of Essex _____ )

On February 26 2019 before me,
Michael Corbitt Jr. Notary Public
(insert name and title of the officer)

personally appeared David T. Katz _____

, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of ~~California~~ New Jersey that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

Michael G. Corbitt Jr.
Notary Public
New Jersey
My Commission Expires 02-19-2020
No. 50010500

**<u>Exhibit D</u>**

Wind-Down Budget

| | Transition & Wind-Down Budget | | | | | | |
|---|---|---|---|---|---|---|---|
| | Month Ended (Assumes Sale Closes on 3/1/2019) | | | | | KCO Proposal | |
| | *Month 1* | *Month 2* | *Month 3* | *Month 4* | *Month 1-4* | *Cash* | *Assumed (1)* |
| | Mar-19 | Apr-19 | May-19 | Jun-19 | | *Funding* | |
| **Receipts:** | | | | | | | |
| Cash on Hand (KRH, WPS, AAOG) | $3,638,682 | - | - | - | **$3,638,682** | $3,638,682 | - |
| Certificates of Deposit Pledged to State of California | - | 400,000 | - | - | **400,000** | 400,000 | - |
| Bank Penalty Release Certificates of Deposits | - | (20,000) | - | - | **(20,000)** | (20,000) | |
|    Total Receipts | **$3,638,682** | **$380,000** | **-** | **-** | **$4,018,682** | **$4,018,682** | **-** |
| | | | | | | | |
| **Payroll:** | | | | | | | |
| Payroll | ($220,550) | ($83,267) | ($39,592) | - | **($343,409)** | - | ($343,409) |
| Payroll Taxes | (33,715) | (12,490) | (5,939) | - | **(52,144)** | - | (52,144) |
| Payroll burden & benefits (all employees) | (42,033) | (14,596) | (6,576) | - | **(63,205)** | - | (63,205) |
|    Total: Payroll | **($296,298)** | **($110,353)** | **($52,106)** | **-** | **($458,757)** | **-** | **($458,757)** |
| | | | | | | | |
| **Non-Payroll G&A:** | | | | | | | |
| Rent Expense | ($6,250) | ($6,250) | - | - | **($12,500)** | | ($12,500) |
| Utilities | (1,458) | (1,458) | - | - | **(2,917)** | | (2,917) |
| Internet | (1,200) | (1,200) | - | - | **(2,400)** | | (2,400) |
| Other G&A | (15,000) | (15,000) | - | - | **(30,000)** | | (30,000) |
|    Total: Non-Payroll G&A | **($23,908)** | **($23,908)** | **-** | **-** | **($47,817)** | **-** | **($47,817)** |
| | | | | | | | |
| **Other Employee Related Items:** | | | | | | | |
| AAOG - Paid Time Off (PTO) Payments (Severed) | - | - | ($85,134) | - | **($85,134)** | | ($85,134) |
| WPS / KRH - Paid Time Off (PTO) Payments (Severed) | (19,979) | - | - | - | **(19,979)** | | (19,979) |
| Stay Bonuses AAOG Employees | - | - | (81,209) | - | **(81,209)** | | (81,209) |
|    Total: Payroll | **($19,979)** | **-** | **($166,343)** | **-** | **($186,323)** | **-** | **($186,323)** |
| *Memo: WPS / KRH - Paid Time Off (PTO) Payments (Transferrerd)* | - | - | - | - | - | | *(191,695)* |

| Transition & Wind-Down Budget | | | | | | | |
|---|---|---|---|---|---|---|---|
| | Month Ended (Assumes Sale Closes on 3/1/2019) | | | | | KCO Proposal | |
| | *Month 1* | *Month 2* | *Month 3* | *Month 4* | *Month 1-4* | *Cash* | *Assumed (1)* |
| | Mar-19 | Apr-19 | May-19 | Jun-19 | | *Funding* | |
| **Bankruptcy Claims:** | | | | | | | |
| Funding of ORRI Liquidating Trust | - | - | - | ($25,000) | **($25,000)** | - | ($25,000) |
| Trade Claims (KCO may assume lower number; still TBD) | (101,476) | - | - | - | **(101,476)** | - | (101,476) |
| Tax Claims | (4,722) | - | - | - | **(4,722)** | - | (4,722) |
| OCP | (2,420) | - | - | - | **(2,420)** | - | (2,420) |
| AP Claims not Transferred in Sale (due post Closing) (number may increase) | (338,000) | - | - | - | **(338,000)** | - | (338,000) |
| Other Taxes (non-Asset & Transfer Taxes) | - | - | - | (275,000) | **(275,000)** | - | (275,000) |
| **Total: Bankruptcy Claims** | **($446,619)** | **-** | **-** | **($300,000)** | **($746,619)** | **-** | **($746,619)** |
| | | | | | | | |
| **Bankruptcy and Transition Related Fees (Net of Retainers):** | | | | | | | |
| Houlihan Lokey | ($1,299,611) | - | - | - | **($1,299,611)** | ($1,299,611) | - |
| Hogan Lovells | (999,617) | - | - | - | **(999,617)** | (999,617) | - |
| Dykema | (500,000) | - | - | - | **(500,000)** | (500,000) | - |
| Post Sale Legal Fees (Hogan & Dykema) | (500,000) | - | - | - | **(500,000)** | (500,000) | - |
| Day Carter Murphy | (30,662) | - | - | - | **(30,662)** | (30,662) | - |
| Goodwin Procter | (72,517) | - | - | - | **(72,517)** | (72,517) | - |
| Foley & Lardner | (54,942) | - | - | - | **(54,942)** | (54,942) | - |
| Jones Day | (27,371) | - | - | - | **(27,371)** | (27,371) | - |
| Friedman + Taitelman (Return of Retainer) | 73,192 | - | - | - | **73,192** | 73,192 | - |
| Brinkman (Committee) | (335,098) | - | - | - | **(335,098)** | (335,098) | - |
| BMC | (180,000) | (28,333) | (28,333) | (28,333) | **(265,000)** | (265,000) | - |
| Dundon (Committee) | (40,000) | - | - | - | **(40,000)** | (40,000) | - |
| Ropes & Gray (Return of Retainer) | 100,000 | - | - | - | **100,000** | 100,000 | - |
| Schlam Stone & Dolan (Return of Retainer) | 44,539 | - | - | - | **44,539** | 44,539 | - |
| Davis Wright Tremain (Return of Retainer) | 1,600 | - | - | - | **1,600** | 1,600 | - |
| US Trustee | (96,410) | (567) | (1,567) | (567) | **(99,110)** | (99,110) | - |
| **Total: Bankruptcy / Transition Fees** | **($3,916,895)** | **($28,900)** | **($29,900)** | **($28,900)** | **($4,004,595)** | **($4,004,595)** | **-** |
| | | | | | | | |
| **Wind-Down Related Fees:** | | | | | | | |
| Tax Consultant (2018 Audit & 2019 Tax Return) | ($20,000) | ($20,000) | - | ($35,000) | **($75,000)** | - | **($75,000)** |
| **Total: Wind-Down Fees** | **($20,000)** | **($20,000)** | **-** | **($35,000)** | **($75,000)** | **-** | **($75,000)** |
| | | | | | | | |
| **Total: Contingency (Usage Subject to KCO7's Consent)** | **-** | **-** | **($50,000)** | **-** | **($50,000)** | **-** | **($50,000)** |
| | | | | | | | |
| **Total Disbursements** | **($4,723,700)** | **($183,161)** | **($298,349)** | **($363,900)** | **($5,569,110)** | **($4,004,595)** | **($1,564,515)** |
| | | | | | | | |
| **Cash Balance** | **($1,085,018)** | **($888,179)** | **($1,186,528)** | **($1,550,428)** | **($1,550,428)** | **$14,087** | **($1,564,515)** |

*Note: Pursuant to the APA, the Debtors may propose an amended Wind-Down Budget, which amended Wind-Down Budget shall be acceptable to the Buyers in their sole discretion.*

*(1) Maximum amounts payable by KCO. KCO is not assuming the underlying obligations if and to the extent they are greater.*

**<u>Exhibit E</u>**

Schedule of Contracts Assumed and Assigned to the Purchasers
Under the Sale Order

| Debtor | Creditor Name and Address | Description |
|---|---|---|
| AAOG | Central Violations Bureau<br>P.O. Box 780549<br>San Antonio, TX 78278-0549 | Alleged Violation of Migratory Bird Treaty Act (16 U.S.C. § 703) |
| AAOG | Chubb<br>P.O. Box 382001<br>Pittsburgh, PA 15250-8001 | Insurance |
| AAOG | Travelers CL<br>Attn: Remittance Center<br>P.O. Box 660317<br>Dallas, TX 75266-0317 | Insurance |
| AAOG | Vitol Inc.<br>2925 Richmond Ave,<br>11th Fl.<br>Houston, TX 77098 | Agreement for the Purchase and Sale of California Carbon Allowances and California Carbon Offsets<br>Contract Nos. 3492617-CCA and 3492618-CCO<br>Effective Date: 6/22/2018 |
| KRH | Ahmet Kazanc<br>3300 Manor<br>Bakersfield, CA 93308 | Lease Agreement<br>Nukern Oil & Gas Lease<br>Effective Dates: 4/1/1924 and 5/3/1948 |
| KRH | All American Oil & Gas Incorporated<br>9601 McAllister Freeway, Suite 221<br>San Antonio, Texas 78216-4681 | Lease Agreement<br>Nukern Oil & Gas Lease<br>Effective Dates: 4/1/1924 and 5/3/1948 |
| KRH | B J Inc California Corporation<br>4101 Union Avenue<br>Bakersfield, CA 93305-2457 | Lease Agreement<br>Ferne/Orloff Oil & Gas Lease<br>Effective Dates: 7/7/1947; 5/2/1982; 7/7/1982<br>and<br>Lease Agreement<br>Jerry Lee/Orloff Oil & Gas Lease<br>Effective Dates: 7/7/1947; 5/2/1982; 7/7/1982 |
| KRH | Blue Sky Blue Sea, Inc.<br>d/b/a American Export Lines<br>d/b/a International Shipping Company<br>13500 S. Figueroa Street<br>Los Angeles, CA 90061 | Import Tax on Equipment Owed Pursuant to Court Order |
| KRH | BP Energy Company<br>Attn: Contract Services | Base Contract<br>Effective Date: 6/15/2012 |

| Debtor | Creditor Name and Address | Description |
|---|---|---|
|  | 201 Helios Way Houston, TX 77079 |  |
| KRH | Brenda Belle Lowy<br>4150 Fulton Ave.<br>Sherman Oaks, CA 91423-4340 | Lease Agreement<br>Ferne/Orloff Oil & Gas Lease<br>Effective Dates: 7/7/1947;<br>5/1/1982; 7/6/1982 |
| KRH | Brenda Belle Lowy<br>4150 Fulton Ave.<br>Sherman Oaks, CA 91423-4340 | Lease Agreement<br>Jerry Lee/Orloff Oil & Gas Lease<br>Effective Dates: 7/7/1947;<br>5/2/1982; 7/7/1982 |
| KRH | California Energy Commission<br>c/o Ralph Lee, Senior Attorney<br>Office of the Chief Counsel<br>1516 Ninth Street, MS-14<br>Sacramento, CA 95814 | Lien on CDs |
| KRH | Chevron Cogeneration<br>CO-CPHI Branch<br>P.O. Box 80598 Bakersfield, CA 93380-0598 | Agreement for Fuel Management at Cogneration Facility in Kern County, CA (formerly with Texaco Natural Gas) |
| KRH | Chevron Products Company<br>1500 Louisiana St., 5th Floor<br>Houston, TX 77002 | Agreement Oil Purchase Agreement<br>Chevron Contract #KERNC18TP0001; Expires 3/31/2019 |
| KRH | Chevron USA Inc<br>P.O. Box 730436<br>Dallas, TX 75373-0436 | Lease Agreement<br>Ferne/Orloff Oil & Gas Lease<br>Effective Dates: 7/7/1947;<br>5/1/1982; 7/6/1982 |
| KRH | Chevron USA Inc<br>P.O. Box 730436<br>Dallas, TX 75373-0436 | Lease Agreement<br>Jerry Lee/Orloff Oil & Gas Lease<br>Effective Dates: 7/7/1947;<br>5/2/1982; 7/7/1982 |
| KRH | Craig S. Avellar<br>425 South St., #2103<br>Honolulu, HI 96813-5062 | Lease Agreement<br>Ferne/Orloff Oil & Gas Lease<br>Effective Dates: 7/7/1947;<br>5/1/1982; 7/6/1982 |
| KRH | Craig S. Avellar<br>425 South St., #2103<br>Honolulu, HI 96813-5062 | Lease Agreement<br>Jerry Lee/Orloff Oil & Gas Lease<br>Effective Dates: 7/7/1947;<br>5/2/1982; 7/7/1982 |
| KRH | David Bennett & Karen Bennett<br>4636 Birchman Ave.<br>Ft. Worth, TX 76107-5418 | Lease Agreement<br>Nukern Oil & Gas lease<br>Effective Dates: 4/1/1924 and 5/3/1948 |
| KRH | Dawn Calderwood | Lease Agreement |

| Debtor | Creditor Name and Address | Description |
|---|---|---|
| | P.O. Box 80221<br>Bakersfield, CA 93380-0221 | Lucky Five & Mitchell Oil & Gas Lease Effective Dates: 1/28/1947; 11/5/1947 |
| KRH | Dawn Calderwood<br>P.O. Box 80221<br>Bakersfield, CA 93380-0221 | Agreement for services upon request |
| KRH | Diane B. Shaevitz<br>4150 Fulton Ave.<br>Sherman Oaks, CA 91423-4340 | Lease Agreement<br>Ferne/Orloff Oil & Gas Lease Effective Dates: 7/7/1947; 5/1/1982; 7/6/1982 |
| KRH | Dominic Bianco<br>Address is unavailable for filing | Lease Agreement<br>Jerry Lee/Orloff Oil & Gas Lease Effective Dates: 7/7/1947; 5/2/1982; 7/7/1982<br>and<br>Lease Agreement<br>Ferne/Orloff Oil & Gas Lease Effective Dates: 7/7/1947; 5/1/1982; 7/6/1982 |
| KRH | Donald R. Horton<br>1501 Alta Dr.<br>Fort Worth, TX 76107-1569 | Lease Agreement<br>Nukern Oil & Gas Lease Effective Dates: 4/1/1924 and 5/3/1948 |
| KRH | Dwight W. Whiting III<br>1450 S. La Luna Ave.<br>Ojai, CA 93023 | Lease Agreement<br>Ferne/Orloff Oil & Gas Lease Effective Dates: 7/7/1947; 5/1/1982; 7/6/1982 |
| KRH | Dwight W. Whiting III<br>1450 S. La Luna Ave.<br>Ojai, CA 93023 | Lease Agreement<br>Jerry Lee/Orloff Oil & Gas Lease Effective Dates: 7/7/1947; 5/2/1982; 7/7/1982 |
| KRH | Dwight Whiting Jr.<br>1049 Loma Dr.<br>Ojai, CA 93023-3581 | Lease Agreement<br>Nukern Oil & Gas Lease Effective Dates: 4/1/1924 and 5/3/1948 |
| KRH | Eleanor Orloff<br>c/o Lance D. Orloff<br>2030 Main St., 16th Floor<br>Irvine, CA 92614-7219 | Lease Agreement<br>Ferne/Orloff Oil & Gas Lease Effective Dates: 7/7/1947; 5/1/1982; 7/6/1982 |
| KRH | Eleanor Orloff<br>c/o Lance D. Orloff<br>2030 Main St., 16th Floor<br>Irvine, CA 92614-7219 | Lease Agreement<br>Jerry Lee/Orloff Oil & Gas Lease Effective Dates: 7/7/1947; 5/2/1982; 7/7/1982 |
| KRH | Equity Trust Co.<br>Custodian FBO Randyl Robert | Lease Agreement<br>Nukern Oil & Gas Lease |

| Debtor | Creditor Name and Address | Description |
|---|---|---|
| | Taber IRA<br>IRA ACCT 158679<br>One Equity Way<br>Westlake, OH 44145-1050 | Effective Dates: 4/1/1924 and 5/3/1948 |
| KRH | Gage Investment Company<br>1351 North 100 E<br>Nephi, UT 84648-1007 | Lease Agreement<br>Ferne/Orloff Oil & Gas Lease<br>Effective Dates: 7/7/1947;<br>5/1/1982; 7/6/1982 |
| KRH | Gage Investment Company<br>1351 North 100 E<br>Nephi, UT 84648-1007 | Lease Agreement<br>Jerry Lee/Orloff Oil & Gas Lease<br>Effective Dates: 7/7/1947;<br>5/2/1982; 7/7/1982 |
| KRH | General Electric Capital<br>Corporation<br>Attn: Portfolio Manager<br>800 Long Ridge Rd.<br>Stamford, CT 06927 | Agreement by and among BP<br>Energy Company, Shell Trading<br>Risk Management, LLC, Kern<br>River Holdings Inc., and General<br>Electric Capital Corporation |
| KRH | Gloria Jean Cohen<br>16 Golden Spar Place<br>Rolling Hills Estates, CA 90274-2458 | Lease Agreement<br>Jerry Lee/Orloff Oil & Gas Lease<br>Effective Dates: 7/7/1947;<br>5/2/1982; 7/7/1982 |
| KRH | Gloria Jean Cohen<br>16 Golden Spar Place<br>Rolling Hills Estates, CA 90274-2458 | Lease Agreement<br>Nukern Oil & Gas Lease<br>Effective Dates: 4/1/1924 and<br>5/3/1948 |
| KRH | Gloria Jean Cohen<br>16 Golden Spar Place<br>Rolling Hills Estates, CA 90274-2458 | Lease Agreement<br>Ferne/Orloff Oil & Gas Lease<br>Effective Dates: 7/7/1947;<br>5/1/1982; 7/6/1982 |
| KRH | Gregory Hale Orloff<br>225 23rd St.<br>Santa Monica, CA 90402-2511 | Lease Agreement<br>Ferne/Orloff Oil & Gas Lease<br>Effective Dates: 7/7/1947;<br>5/1/1982; 7/6/1982 |
| KRH | Gregory Hale Orloff<br>225 23rd St.<br>Santa Monica, CA 90402-2511 | Lease Agreement<br>Jerry Lee/Orloff Oil & Gas Lease<br>Effective Dates: 7/7/1947;<br>5/2/1982; 7/7/1982 |
| KRH | Gregory Hale Orloff<br>225 23rd St.<br>Santa Monica, CA 90402-2511 | Lease Agreement<br>Nukern Oil & Gas Lease<br>Effective Dates: 4/1/1924 and<br>5/3/1948 |
| KRH | Harold Rouse Trust<br>c/o Joseph C. Brooks<br>14011 Ventura Blvd., Apt. 502<br>Sherman Oaks, CA 91423-5200 | Lease Agreement<br>Jerry Lee/Orloff Oil & Gas Lease<br>Effective Dates: 7/7/1947;<br>5/2/1982; 7/7/1982 |

| Debtor | Creditor Name and Address | Description |
|---|---|---|
| KRH | Harold Rouse Trust<br>c/o Joseph C. Brooks<br>14011 Ventura Blvd., Apt. 502<br>Sherman Oaks, CA 91423-5200 | Lease Agreement<br>Ferne/Orloff Oil & Gas Lease<br>Effective Dates: 7/7/1947;<br>5/1/1982; 7/6/1982 |
| KRH | Harvey L. Stone<br>4175 S. Decatur Blvd. #222<br>Las Vegas, NV 89103-6812 | Lease Agreement<br>Nukern Oil & Gas Lease<br>Effective Dates: 4/1/1924 and<br>5/3/1948 |
| KRH | James Morris<br>81 Edgemont Rd.<br>Watchung, NJ 07069<br>*pledged to* Royalty Lending II<br>LTD<br>P.O. Box 2657<br>Frisco, CO 80443 | Lease Agreement<br>Nukern Oil & Gas Lease<br>Effective Date 4/1/1924 and<br>5/3/1948 |
| KRH | James Shannon<br>P.O. Box 333<br>Ilwaco, WA 98624-0333 | Lease Agreement<br>Ferne/Orloff Oil & Gas Lease<br>Effective Dates: 7/7/1947;<br>5/1/1982; 7/6/1982 |
| KRH | JPPILT LLC<br>615 Sandy Port St.<br>Houston, TX 77009 | Lease Agreement<br>Nukern Oil & Gas Lease<br>Effective Dates: 4/1/1924 and<br>5/3/1948 |
| KRH | Karin M. Gutman<br>21 Old Glen Road<br>Morris Township, NJ 07960-6147 | Lease Agreement<br>Jerry Lee/Orloff Oil & Gas Lease<br>Effective Dates: 7/7/1947;<br>5/2/1982; 7/7/1982 |
| KRH | Karin M. Gutman<br>21 Old Glen Road<br>Morris Township, NJ 07960-6147 | Lease Agreement<br>Nukern Oil & Gas Lease<br>Effective Dates: 4/1/1924 and<br>5/3/1948 |
| KRH | Karin M. Gutman<br>21 Old Glen Road<br>Morris Township, NJ 07960-6147 | Lease Agreement<br>Ferne/Orloff Oil & Gas Lease<br>Effective Dates: 7/7/1947;<br>5/1/1982; 7/6/1982 |
| KRH | Kathy C. Wucik<br>3018 North Rd.<br>Vernon Center, NY 13477-4011 | Lease Agreement<br>Nukern Oil & Gas Lease<br>Effective Date 4/1/1924 and<br>5/3/1948 |
| KRH | Kathy C. Wucik<br>3018 North Rd.<br>Vernon Center, NY 13477-4011 | Lease Agreement<br>Jerry Lee/Orloff Oil & Gas Lease<br>Effective Dates: 7/7/1947;<br>5/2/1982; 7/7/1982 |
| KRH | Kathy C. Wucik<br>3018 North Rd. | Lease Agreement<br>Ferne/Orloff Oil & Gas Lease |

| Debtor | Creditor Name and Address | Description |
|--------|---------------------------|-------------|
| | Vernon Center, NY 13477-4011 | Effective Date 7/7/1947; 5/1/1982; 7/6/1982 |
| KRH | Kern County Treasurer - Tax Collector<br>P.O. Box 541004<br>Los Angeles, CA 90054-1004 | Statutory Tax Lien |
| KRH | Kern County<br>2700 M Street, Suite 300<br>Bakersfield, CA 93301 | Lease Agreement<br>Ferne/Orloff Oil & Gas Lease<br>Effective Dates: 7/7/1947; 5/1/1982; 7/6/1982 |
| KRH | Kern USA Inc.<br>Norfolk House<br>31 St. James's Square<br>London, EN SW1Y4JR United Kingdom | Assignment of Overriding Royalty Interest Effective Date: 7/21/2004 |
| KRH | Kristine Joy Langston<br>3838 California St. #815<br>San Francisco, CA 94118-1510 | Lease Agreement<br>Ferne/Orloff Oil & Gas Lease<br>Effective Dates: 7/7/1947; 5/1/1982; 7/6/1982 |
| KRH | Kristine Joy Langston<br>3838 California St. #815<br>San Francisco, CA 94118-1510 | Lease Agreement<br>Nukern Oil & Gas Lease<br>Effective Dates: 4/1/1924 and 5/3/1948 |
| KRH | Kristine Joy Langston<br>3838 California St. #815<br>San Francisco, CA 94118-1510 | Lease Agreement<br>Jerry Lee/Orloff Oil & Gas Lease<br>Effective Dates: 7/7/1947; 5/2/1982; 7/7/1982 |
| KRH | Loren Collins Hillman<br>820 NW 12th Ave., Apartment 212<br>Portland, OR 97209-3045 | Lease Agreement<br>Ferne/Orloff Oil & Gas Lease<br>Effective Dates: 7/7/1947; 5/1/1982; 7/6/1982 |
| KRH | Loren Collins Hillman<br>820 NW 12th Ave., Apartment 212<br>Portland, OR 97209-3045 | Lease Agreement<br>Nukern Oil & Gas Lease<br>Effective Dates: 4/1/1924 and 5/3/1948 |
| KRH | Loren Collins Hillman<br>820 NW 12th Ave., Apartment 212<br>Portland, OR 97209-3045 | Lease Agreement<br>Jerry Lee/Orloff Oil & Gas Lease<br>Effective Dates: 7/7/1947; 5/2/1982; 7/7/1982 |
| KRH | Los Angeles Museum of Art<br>5905 Wilshire Blvd.<br>Los Angeles, CA 90036-4597 | Lease Agreement<br>Ferne/Orloff Oil & Gas Lease<br>Effective Dates: 7/7/1947; 5/1/1982; 7/6/1982 |
| KRH | Marcia M. Ferris<br>3340 Walton Lane | Lease Agreement<br>Ferne/Orloff Oil & Gas Lease |

| Debtor | Creditor Name and Address | Description |
|--------|---------------------------|-------------|
| | Eugene, OR 97408-4632 | Effective Dates: 7/7/1947; 5/1/1982; 7/6/1982 |
| KRH | Marcia M. Ferris<br>3340 Walton Lane<br>Eugene, OR 97408-4632 | Lease Agreement<br>Jerry Lee/Orloff Oil & Gas Lease<br>Effective Dates: 7/7/1947; 5/2/1982; 7/7/1982 |
| KRH | Marguerite J. Lyons<br>9514 Los Palos Rd.<br>Atascadero, CA 93422-6106 | Lease Agreement<br>Ferne/Orloff Oil & Gas Lease<br>Effective Dates: 7/7/1947; 5/1/1982; 7/6/1982 |
| KRH | Mariann M. Isomura<br>1010 Flamingo St.<br>Glendora, CA 91741-2228 | Lease Agreement<br>Ferne/Orloff Oil & Gas Lease<br>Effective Dates: 7/7/1947; 5/1/1982; 7/6/1982 |
| KRH | Marlene Orloff Cueto<br>P.O. Box 1025<br>Genoa, NV 89411-1025 | Lease Agreement<br>Nukern Oil & Gas Lease<br>Effective Dates: 4/1/1924 and 5/3/1948 |
| KRH | Marlene Orloff Cueto<br>P.O. Box 1025<br>Genoa, NV 89411-1025 | Lease Agreement<br>Ferne/Orloff Oil & Gas Lease<br>Effective Date 7/7/1947; 5/1/1982; 7/6/1982 |
| KRH | Marlene Orloff Cueto<br>P.O. Box 1025<br>Genoa, NV 89411-1025 | Lease Agreement<br>Jerry Lee/Orloff Oil & Gas Lease<br>Effective Dates: 7/7/1947; 5/2/1982; 7/7/1982 |
| KRH | Marshall Neil Meyer Revocable Trust<br>10109 Villa Ridge Dr.<br>Las Vegas, NV 89134 | Lease Agreement<br>Nukern Oil & Gas Lease<br>Effective Dates: 4/1/1924 and 5/3/1948 |
| KRH | Marshall Neil Meyer Revocable Trust<br>10109 Villa Ridge Dr.<br>Las Vegas, NV 89134 | Lease Agreement<br>Jerry Lee/Orloff Oil & Gas Lease<br>Effective Dates: 7/7/1947; 5/2/1982; 7/7/1982 |
| KRH | Marshall Neil Meyer Revocable Trust<br>10109 Villa Ridge Dr.<br>Las Vegas, NV 89134 | Lease Agreement<br>Ferne/Orloff Oil & Gas Lease<br>Effective Dates: 7/7/1947; 5/1/1982; 7/6/1982 |
| KRH | McMullin Family Partnership 2<br>4501 Merrie Lane<br>Bellaire, TX 77401-3725 | Lease Agreement<br>Nukern Oil & Gas Lease<br>Effective Dates: 4/1/1924 and 5/3/1948 |
| KRH | Michael Amundsen, Trustee<br>2990 Dogwood Circle St.<br>George, UT 84790 | Lease Agreement<br>Ferne/Orloff Oil & Gas Lease<br>Effective Dates: 7/7/1947; |

| Debtor | Creditor Name and Address | Description |
|--------|---------------------------|-------------|
| | | 5/1/1982; 7/6/1982 and Lease Agreement Jerry Lee/Orloff Oil & Gas Lease Effective Dates: 7/7/1947; 5/1/1982; 7/7/1982 |
| KRH | Michael T. Fearnow 147 Oak Estates Dr. Conroe, TX 77384-2112 | Lease Agreement Nukern Oil & Gas Lease Effective Dates: 4/1/1924 and 5/3/1948 |
| KRH | Orval Terry Gaiser & Jana Dae Gaiser P.O. Box 81722 Bakersfield, CA 93380-1722 | Lease Agreement Ferne/Orloff Oil & Gas Lease Effective Dates: 7/7/1947; 5/1/1982; 7/6/1982 |
| KRH | Richard H. Whiting Trustee 3655 Valley Meadow Rd. Sherman Oaks, CA 94103 | Lease Agreement Nukern Oil & Gas Lease Effective Dates: 4/1/1924 and 5/3/1948 |
| KRH | Robert E. King 7401 Hilton Head Way Unit #29 Bakersfield, CA 93309-4223 | Lease Agreement Ferne/Orloff Oil & Gas Lease Effective Dates: 7/7/1947; 5/1/1982; 7/6/1982 |
| KRH | Robert E. King 7401 Hilton Head Way, Unit #29 Bakersfield, CA 93309-4223 | Lease Agreement Jerry Lee/Orloff Oil & Gas Lease Effective Dates: 7/7/1947; 5/2/1982; 7/7/1982 |
| KRH | Ronald J. Pecarovich 575 Alienta Dr. St. George, UT 84770-6969 | Lease Agreement Lucky Five & Mitchell Oil & Gas Lease Effective Dates: 1/28/1947; 11/5/1947 |
| KRH | Ronald J. Pecarovich 575 Alienta Dr. St. George, UT 84770-6969 | Agreement for services upon request |
| KRH | San Pablo Bay Pipeline Company LLC c/o Shell Pipeline Company LP B.D. Mgr. - Vincent Castro 910 Louisiana Street, OSP Houston, TX 77002 | Connection Agreement Effective Date: 1/6/2016 |
| KRH | San Pablo Bay Pipeline Company LLC c/o Shell Pipeline Company LP B.D. Mgr. - Vincent Castro 910 Louisiana Street, OSP Houston, TX 77002 | Dedication and Transportation Agreement Effective Date: 1/6/2016 |

| Debtor | Creditor Name and Address | Description |
|--------|---------------------------|-------------|
| KRH | Orval Terry Gaiser Jana Dae Gaiser<br>P.O. Box 81722 Bakersfield, CA 93380-1722 | Lease Agreement<br>Jerry Lee/Orloff Oil & Gas Lease<br>Effective Date 7/7/1947; 5/2/1982; 7/7/1982 |
| KRH | Paychex, Inc.<br>8605 Freeport Pkwy., Suite 100<br>Irving, TX 75063-2588 | Paychex Professional Services Agreement Effective Date: 12/4/2013 |
| KRH | Sara M. Klopfer<br>4409 Vassar St.<br>Ventura, CA 93003-1943 | Lease Agreement<br>Ferne/Orloff Oil & Gas Lease<br>Effective Dates: 7/7/1947; 5/1/1982; 7/6/1982 |
| KRH | Sicelia M. Warkentine Trustee UTD<br>3908 Abbot Drive<br>Bakersfield, CA 93312-3906 | Lease Agreement<br>Jerry Lee/Orloff Oil & Gas Lease<br>Effective Dates: 7/7/1947; 5/2/1982; 7/7/1982 |
| KRH | Sicelia M. Warkentine Trustee UTD<br>3908 Abbot Drive<br>Bakersfield, CA 93312-3906 | Lease Agreement<br>Ferne/Orloff Oil & Gas Lease<br>Effective Dates: 7/7/1947; 5/1/1982; 7/6/1982 |
| KRH | Sicelia M. Warkentine Trustee UTD<br>3908 Abbot Drive<br>Bakersfield, CA 93312-3906 | Lease Agreement<br>Nukern Oil & Gas Lease<br>Effective Dates: 4/1/1924 and 5/3/1948 |
| KRH | Steve D. Eyherabide<br>3100 Summer Creek Ct.<br>Bakersfield, CA 93311-2507 | Lease Agreement<br>Ferne/Orloff Oil & Gas Lease<br>Effective Dates: 7/7/1947; 5/1/1982; 7/6/1982 |
| KRH | Steve D. Eyherabide<br>3100 Summer Creek Ct.<br>Bakersfield, CA 93311-2507 | Lease Agreement<br>Jerry Lee/Orloff Oil & Gas Lease<br>Effective Dates: 7/7/1947; 5/2/1982; 7/7/1982 |
| KRH | Steven Levin<br>115 Chalon Apusento, Box 316<br>Chalon Pago, GU 96910 | Lease Agreement<br>Nukern Oil & Gas Lease<br>Effective Dates: 4/1/1924 and 5/3/1948 |
| KRH | Steven Levin<br>115 Chalon Apusento, Box 316<br>Chalon Pago, GU 96910 | Lease Agreement<br>Ferne/Orloff Oil & Gas Lease<br>Effective Dates: 7/7/1947; 5/1/1982; 7/6/1982 |
| KRH | Steven Levin<br>115 Chalon Apusento, Box 316<br>Chalon Pago, GU 96910 | Lease Agreement<br>Jerry Lee/Orloff Oil & Gas Lease<br>Effective Dates: 7/7/1947; 5/2/1982; 7/7/1982 |
| KRH | Virginia Shannon<br>1770 The Oaks Blvd. | Lease Agreement<br>Ferne/Orloff Oil & Gas Lease |

| Debtor | Creditor Name and Address | Description |
|---|---|---|
| | Kissimmee, FL 34746 | Effective Dates: 7/7/1947; 5/1/1982; 7/6/1982 |
| WPS | BP Energy Company<br>Attn: Contract Services<br>201 Helios Way Houston, TX 77079 | Base Contract |
| WPS | Calderwood, Dawn<br>c/o MP Vacuum Truck Services Inc.<br>3400 Manor St.<br>Bakersfield, CA 93308 | Agreement for services upon request |
| WPS | Pecarovich, Nadine M.<br>c/o MP Vacuum Truck Service Inc.<br>3400 N. Manor St.<br>Bakersfield, CA 93308 | Non-residential Real Property Lease<br>Ground Lease for Cogeneration Facility in Bakersfield, CA<br>Expires: 8/29/2048 |
| WPS | Pecarovich, Ronald<br>c/o MP Vacuum Truck Service Inc.<br>3400 N. Manor St. Bakersfield, CA 93308 | Agreement for services upon request |
| WPS | TPX Communications<br>f/k/a Telepacific Communications<br>P.O. Box 509013<br>San Diego, CA 92150-9013 | Service Agreement<br>Effective Date: 1/15/2015 |

**EXHIBIT B**

**Ballots**

**EXHIBIT B-1**

**(CLASS 2 – ALLOWED SECURED CLAIM OF DWT BALLOT)**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| ALL AMERICAN OIL & GAS | § | Case No. 18-52693-rbk |
| INCORPORATED, *et al.*, | § | |
| | § | Jointly Administered Under |
| Debtors. | § | Case No. 18-52693-rbk |
| | § | |

---

### BALLOT FOR CLAIMS IN
### CLASS 2 (ALLOWED SECURED CLAIM OF DWT)
### FOR ACCEPTING OR REJECTING DEBTORS'
### JOINT CHAPTER 11 PLAN OF LIQUIDATION

**FOR YOUR VOTE TO BE COUNTED, YOUR BALLOT MUST BE RETURNED TO THE VOTING AGENT SO THAT IT IS**
**ACTUALLY RECEIVED BY [     ] (THE "VOTING DEADLINE").**

---

This ballot (the "Ballot") is submitted to you to solicit your vote to accept or reject the chapter 11 plan (as the same may be amended, modified, and/or supplemented, the "Plan") submitted by All American Oil & Gas Incorporated; Manor Oil, Inc., and Hilltop Power, Inc. (collectively, the "Debtors"), and described in the related disclosure statement (the "Disclosure Statement") approved by an order of the United States Bankruptcy Court for the Western District of Texas, San Antonio Division (the "Court") upon the Debtors' *Motion for Entry of an Order (I) Approving the Adequacy of Disclosure Statement, (II) Approving the Solicitation, Ballot Tabulation and Notice Procedures With Respect to Confirmation of the Debtors' Proposed Joint Chapter 11 Plan of Liquidation, (III) Approving the Forms of Ballots and Notices in Connection Therewith, (IV) Scheduling Certain Dates With Respect Thereto, and (V) Granting Related Relief* (the "Motion"). The Disclosure Statement provides information to assist you in deciding how to vote your Ballot. If you do not have a Disclosure Statement or Plan, you may obtain a copy by contacting BMC Group, Inc., (the "Voting Agent") by email at AAOG@BMCGROUP.COM, or by phone at 1-888-909-0100. Copies of the Disclosure Statement and the Plan are also available for inspection during regular business hours at the Office of the Clerk of the United States Bankruptcy Court for the Western District of Texas, San Antonio Division, Hipolito F. Garcia Federal Judicial Bldg., 615 East Huron Street, Room 597, San Antonio, TX 78205. In addition, copies of the Disclosure Statement and the Plan may be obtained free of charge from the Debtor's case site, https://www.bmcgroup.com/restructuring/geninfo.aspx?ClientID=434, and may be obtained for a fee from the Court's website at https://ecf.txsb.uscourts.gov/. You should

review the Disclosure Statement and the Plan before you vote. You may wish to seek legal advice concerning the Plan and your classification and treatment under the Plan.[1]

The Plan can be confirmed by the Court and thereby made binding on you if it is accepted by the holders of at least two-thirds in amount and more than one-half in number of the Claims in each Class that votes on the Plan, and the Plan otherwise satisfies the applicable requirements of section 1129(a) of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"). If you vote to reject the Plan, the Debtors reserve the right to modify the treatment of Class 2 under the Plan so as to render Class 2 unimpaired.

## VOTING INFORMATION AND INSTRUCTIONS FOR COMPLETING BALLOT

1. In Item 1 below, please indicate the total unpaid amount of your Claim as of the Voting Record Date, which was [_____]. In the boxes provided in Item 2 of the Ballot below, please indicate either acceptance or rejection of the Plan. Complete the Ballot by providing all of the information requested. Ballots must be returned to the Voting Agent, so that such Ballot is **RECEIVED by the Voting Agent on or before the Voting Deadline**. If a Ballot is received after the applicable deadline, it will not be counted. An envelope addressed to the Voting Agent is enclosed for your convenience. If neither the "accept" nor "reject" box is checked in Item 2 below, or if both the "accept" and "reject" boxes are checked, for an otherwise properly completed, executed, and timely returned Ballot, the Ballot will not be counted. Any Ballot that is illegible or does not provide sufficient information to identify the claim holder will not be counted. Original and facsimile signatures are acceptable.

2. If you are completing this Ballot on behalf of an entity, indicate your relationship with such entity and the capacity in which you are signing. In addition, please provide your name and mailing address if different from that set forth in the attached mailing label or if no such mailing label is attached to the Ballot. At the Debtors' discretion, you may be requested to provide proof of your authority to complete the Ballot on behalf of the claim holder.

3. **This Ballot is for voting only your Claims in CLASS 2 (Allowed Secured Claim of DWT). Please complete and return each ballot you receive in accordance with the instructions therein. The attached Ballot is designated only for voting Claims in CLASS 2.**

4. You must vote all of your Claims in CLASS 2 under the Plan either to accept or reject the Plan and may not split your vote. An otherwise properly completed, executed, and timely returned Ballot that attempts to partially accept and partially reject the Plan, or that attempts to both accept and reject the Plan will <u>not</u> be counted. Your vote to accept or reject the Plan must be unequivocal and not conditional or qualified in any way.

5. The Ballot does not constitute, and will not be deemed, a proof of claim, an assertion of a Claim, an allowance of a Claim, or an admission by the Debtors of the validity of a Claim.

---

[1] All capitalized terms used in this Ballot but not otherwise defined herein shall have the meanings given to such terms in the Plan or Motion, as applicable.

6.  If you cast more than one Ballot voting the same Claim in CLASS 2 prior to the Voting Deadline, the latest dated, valid Ballot received before the Voting Deadline will be deemed to reflect your intent and supersede any prior Ballots. If you cast Ballots received by the Voting Agent on the same day, but which are voted inconsistently, such Ballots will not be counted.

7.  If you wish to have your Claim allowed for purposes of voting on the Plan in a manner that is inconsistent with the Ballot you received or if you did not receive a Ballot and wish to have your Claim temporarily allowed for voting purposes only, you must serve on: (i) the Debtors' counsel: Hogan Lovells US LLP, 1999 Avenue of the Stars, Los Angeles, CA, 90067, Attn: Richard L. Wynne, Bennett Spiegel and Erin Brady (Telephone: (310) 785-4600, email: richard.wynne@hoganlovells.com, bennett.spiegel@hoganlovells.com and/or erin.brady@hoganlovells.com) and Dykema Gossett PLC, 112 E. Pecan Street, Suite 1800 San Antonio, Texas 78205, Attn: Deborah D. Williamson and Danielle N. Rushing (Telephone: (210) 554-5528, email DWilliamson@dykema.com and/or DRushing@dykema.com), and (ii) the Voting Agent, on or before [____], a motion for an order pursuant to Bankruptcy Rule 3018(a) temporarily allowing such Claim for purposes of voting (the "Rule 3018 Motion"). A Rule 3018 Motion must set forth with particularity the amount and classification of which you believe your Claims should be allowed for voting purposes and the evidence in support of your belief. Any party filing and serving a Rule 3018 Motion by the Rule 3018 Motion Deadline will be provided a Ballot and be permitted to cast a provisional vote to accept or reject the Plan.  If and to the extent that the Debtors and such party are unable to resolve the issues raised by the Rule 3018 Motion prior to the Voting Deadline, then at the Confirmation, the Debtors will request that the Court determine whether the provisional Ballot should be counted as a vote on the Plan.

8.  NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT, THE DISCLOSURE STATEMENT, PLAN OR OTHER MATERIALS AUTHORIZED BY THE COURT.

9.  **PLEASE RETURN YOUR BALLOT PROMPTLY TO THE VOTING AGENT.**

**IF BY MAIL:**

**BMC GROUP, INC.**
**ATTN: AAOG BALLOT PROCESSING**
**PO BOX 90100**
**LOS ANGELES, CA 90009**

**IF BY HAND-DELIVERY OR OVERNIGHT COURIER:**

**BMC GROUP, INC.**
**ATTN: AAOG BALLOT PROCESSING**
**3732 W 120TH STREET**
**HAWTHORNE, CA 90250**

**IF ELECTRONICALLY BY EMAIL:**

**AAOG@BMCGROUP.COM**

10. IF YOU HAVE RECEIVED A DAMAGED BALLOT, HAVE LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CALL THE VOTING AGENT AT (1-888-909-0100).

11. PLEASE NOTE THAT THE VOTING AGENT IS NOT PERMITTED TO GIVE LEGAL ADVICE. ANY PARTY RECEIVING THIS BALLOT SHOULD CONSULT AN ATTORNEY REGARDING ANY QUESTIONS IT MAY HAVE RELATING TO THIS BALLOT AND THE OTHER DOCUMENTS REFERENCED HEREIN.

[*Remainder of page left blank*]

**PLEASE READ THE ATTACHED VOTING INFORMATION AND
INSTRUCTIONS BEFORE COMPLETING THIS BALLOT**

PLEASE COMPLETE ALL ITEMS BELOW. IF THIS BALLOT
IS NOT SIGNED ON THE APPROPRIATE LINES, THIS BALLOT
WILL NOT BE VALID OR COUNTED AS HAVING BEEN CAST.

**Item 1**. **Amount of Claim.**

The undersigned hereby certifies that as of the Voting Record Date, the undersigned was the Holder of a Class 2 Claim in the following aggregate unpaid amount (insert amount in box below):

Amount of Claim:[2] $_____

**Item 2. Class Vote.** The undersigned, the holder of the Allowed Secured Claim of DWT, hereby votes the full amount of its Allowed Claim pursuant to the Plan to (check one box):

☐ **Accept** the Plan.          ☐ **Reject** the Plan.

*[Remainder of page left blank]*

---

[2] For voting purposes only, subject to tabulation rules.

**Item 3**. Releases.

*If the Plan becomes effective, the exculpation, releases and injunctions contained in Article XVI of the Plan, including without limitation the releases of any Claims you may have against the Released Parties, each to the extent provided therein, will become effective and binding on all Creditors of the Debtor.[3] You are urged to carefully review Article XVI of the Plan.*

**IMPORTANT INFORMATION REGARDING CERTAIN RELEASES BY HOLDERS OF CLAIMS:**

IF YOU VOTE TO ACCEPT OR REJECT THE PLAN AND SUBMIT YOUR BALLOT WITHOUT CHECKING THE BOX BELOW, YOU WILL BE DEEMED TO CONSENT TO THE RELEASES PROVIDED IN SECTION 16.3.1 OF THE PLAN. IF YOU FAIL TO VOTE, YOU WILL BE DEEMED TO HAVE CONSENTED TO THE RELEASES PROVIDED IN SECTION 16.3.1.

YOU MAY OPT OUT OF THE RELEASES PROVIDED IN SECTION 16.3.1 OF THE PLAN (AS SET FORTH BELOW) BY CHECKING THE BOX BELOW AND YOU WILL NOT BE BOUND BY SUCH RELEASES. CHECK THE BOX BELOW IF YOU ELECT NOT TO GRANT THE RELEASES PROVIDED IN SECTION 16.3.1 OF THE PLAN. THE ELECTION TO WITHHOLD CONSENT TO GRANT SUCH RELEASES IS AT YOUR OPTION.

The Holder of Class 2 Claims set forth in Item 1 elects to:

[_____] Opt out of the releases provided in Section 16.3.1 of the Plan

16.3   Releases

16.3.1   Releases by Holders of Claims and Interests

**Except as otherwise expressly provided in the Plan, the Confirmation Order, the Sale Order (Including the Wind-Down Budget), the Purchase Agreement and the Settlement/Sale Transaction, on the Effective Date, for good and valuable consideration, a Holder of a Claim against and/or Interest in the Debtors who: (I) votes to accept the Plan, and does not opt out of the Releases contained in the Plan; (II) abstains from voting on the Plan; or (III) votes to reject the Plan and does not opt out of the Releases contained in the Plan, shall be deemed to completely and forever release, waive, void, extinguish and discharge unconditionally, each and all of the Released Parties of and from any and all claims, obligations, suits, judgments, damages, debts, rights, remedies and liabilities of any**

---

[3] The Plan defines "Released Parties" as each of: (i) the Debtors; (ii) the First Lien Secured Parties and Second Lien Secured Parties; (iii) the Professionals; (iv) in each case of (i) through (iii), their predecessors, successors, and assigns, professionals, advisors, accountants, attorneys, investment bankers, and consultants; and (v) in each case of (i) through (iv), their current and former affiliates, subsidiaries, funds, portfolio companies, management companies, employees, agents, directors and officers, and other representatives (each solely in their capacity as such).

nature whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are or may be based in whole or part on any act, omission, transaction, event or other circumstance taking place or existing on or prior to the Effective Date (including prior to the Petition Date) in connection with or related to the Debtors, their assets, property and estates, the Chapter 11 Cases, the Plan or the Disclosure Statement. For the avoidance of doubt, the foregoing releases described in the Plan shall not waive, affect, limit, restrict or otherwise modify the rights of the Debtors and the Liquidating Trustee to object to any Claim or Interest not expressly Allowed under the Plan.

Notwithstanding the foregoing and for the avoidance of doubt, the releases provided under the Sale Order, the Purchase Agreement and the Settlement/Sale Transaction shall govern any releases as among KCO, the Purchasers, the Debtors, the Buyer Settlement Parties (as defined in the Purchase Agreement) and the Debtor Settlement Parties (as defined in the Purchase Agreement) and other parties referenced therein, none of which shall be affected by the terms of the Plan.

### 16.3.2 Releases Approved by Confirmation Order

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval pursuant to Bankruptcy Rule 9019, of the releases set forth in Section 16.3.1, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that such release is: (i) in exchange for the good and valuable consideration provided by the Released Parties; (ii) a good faith settlement and compromise of the claims released by Section 16.3.1; (iii) in the best interests of the Debtors, their estates and all Holders of Claims and Interests; (iv) fair, equitable and reasonable; (v) given and made after due notice and opportunity for a hearing; and (vi) a bar to any Person asserting any claim released by Section 16.3.1. Notwithstanding the foregoing, nothing in Section 16.3.1 shall release any Released Party or other Entity or Person from its respective rights and obligations under the Plan or the Confirmation Order.

### 16.5 Exculpation

The Debtors and the Debtors' Professionals SHALL NOT BE LIABLE FOR ANY cause of action arising out of or related to any act or omission in connection with or relating to: (a) the formulation, preparation, solicitation, dissemination, negotiation, or filing of the Plan, the Plan Supplement, the Disclosure Statement, or any contract, instrument, release, or other agreement or document created or entered into in connection with any of the foregoing; (b) the Chapter 11 Cases; (c) the pursuit of Confirmation of the Plan; (d) the administration and implementation of the Plan; (e) the distribution of property under the Plan; and/or (f) any other prepetition or postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring and/or liquidation of the Debtors. All holders of Claims and Interests are enjoined from asserting or prosecuting any Claim or cause of action against the Debtors or the Debtors'

Professionals as to any Claim or cause of action as to which the Debtors and the Debtors' Professionals have been exculpated pursuant to the Plan.

16.6 Permanent Injunction

Except as otherwise expressly provided in the Plan, the Confirmation Order, the Sale Order (Including the Wind-Down Budget), the Purchase Agreement and the Settlement/Sale Transaction, all Persons who have held, hold or may hold Claims against, or Interests in, the Debtors are permanently enjoined, on and after the Effective Date, to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, from: (i) commencing or continuing in any manner any action or other proceeding of any kind against the Debtors, the Liquidating Trust, or their assets with respect to any such Claim or Interest in any venue other than the United States Bankruptcy Court for the Western District of Texas; (ii) the enforcement, attachment, collection, or recovery by any manner or means of judgment, award, decree or order against the Debtors, the Liquidating Trust, or their assets on account of any such Claim or Interest in any venue other than the United States Bankruptcy Court for the Western District of Texas; (iii) creating, perfecting, or enforcing any encumbrance of any kind against the Debtors, the Liquidating Trust, or their assets on account of any such Claim or Interest in any venue other than the United States Bankruptcy Court for the Western District of Texas; and (iv) asserting any right of setoff, recoupment or subrogation of any kind against any obligation due from the Debtors, the Liquidating Trust, or their assets on account of any such Claim or Interest in any venue other than the United States Bankruptcy Court for the Western District of Texas.

*[Remainder of Page Left Blank]*

**Item 4. Acknowledgement.** By signing this Ballot, the undersigned acknowledges that it has reviewed the Disclosure Statement, Plan and the other applicable solicitation materials and certifies that the undersigned is the claimant or has the power and authority to vote to accept or reject the Plan on behalf of the claimant. The undersigned understands that an otherwise properly completed, executed, and timely returned Ballot that does not indicate either acceptance or rejection of the Plan, or indicates both acceptance and rejection of the Plan, will not be counted. Original and facsimile signatures are acceptable.

_____
Name of Creditor

_____
Signature

_____
If by Authorized Agent, Name and Title

_____
Name of Institution

_____
Street Address
City, State, Zip Code

_____
Telephone Number

_____
Email

_____
Date Completed

☐    Please check here if the above address is a Change of Address that you would like reflected in the Master Service List for these Chapter 11 Cases.

**PLEASE MAKE SURE YOU HAVE PROVIDED ALL INFORMATION REQUESTED ON THIS BALLOT.** PLEASE READ AND FOLLOW THE INSTRUCTIONS SET FORTH HEREIN CAREFULLY. PLEASE COMPLETE, SIGN, AND DATE THIS BALLOT AND PROMPTLY RETURN IT BY MAIL, HAND DELIVERY, OVERNIGHT COURIER OR ELECTRONICALLY BY EMAIL SO THAT IT IS ACTUALLY RECEIVED BY THE VOTING AGENT BY THE VOTING DEADLINE.

**EXHIBIT B-2**

**(CLASS 3 – SECURED CLAIM OF PREPETITION SECURED PARTIES BALLOT)**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| ALL AMERICAN OIL & GAS | § | Case No. 18-52693-rbk |
| INCORPORATED, *et al.*, | § | |
| | § | Jointly Administered Under |
| Debtors. | § | Case No. 18-52693-rbk |
| | § | |

---

**BALLOT FOR CLAIMS IN
CLASS 3 (SECURED CLAIM OF PREPETITION SECURED PARTIES)
FOR ACCEPTING OR REJECTING DEBTORS'
JOINT CHAPTER 11 PLAN OF LIQUIDATION**

**FOR YOUR VOTE TO BE COUNTED, YOUR BALLOT MUST BE RETURNED TO
THE VOTING AGENT SO THAT IT IS
<u>ACTUALLY RECEIVED BY [       ] (THE "VOTING DEADLINE").</u>**

---

This ballot (the "<u>Ballot</u>") is submitted to you to solicit your vote to accept or reject the chapter 11 plan (as the same may be amended, modified, and/or supplemented, the "<u>Plan</u>") submitted by All American Oil & Gas Incorporated; Manor Oil, Inc., and Hilltop Power, Inc. (collectively, the "<u>Debtors</u>"), and described in the related disclosure statement (the "<u>Disclosure Statement</u>") approved by an order of the United States Bankruptcy Court for the Western District of Texas, San Antonio Division (the "<u>Court</u>") upon the Debtors' *Motion for Entry of an Order (I) Approving the Adequacy of Disclosure Statement, (II) Approving the Solicitation, Ballot Tabulation and Notice Procedures With Respect to Confirmation of the Debtors' Proposed Joint Chapter 11 Plan of Liquidation, (III) Approving the Forms of Ballots and Notices in Connection Therewith, (IV) Scheduling Certain Dates With Respect Thereto, and (V) Granting Related Relief* (the "<u>Motion</u>"). The Disclosure Statement provides information to assist you in deciding how to vote your Ballot. If you do not have a Disclosure Statement or Plan, you may obtain a copy by contacting BMC Group, Inc., (the "<u>Voting Agent</u>") by email at AAOG@BMCGROUP.COM, or by phone at 1-888-909-0100. Copies of the Disclosure Statement and the Plan are also available for inspection during regular business hours at the Office of the Clerk of the United States Bankruptcy Court for the Western District of Texas, San Antonio Division, Hipolito F. Garcia Federal Judicial Bldg., 615 East Huron Street, Room 597, San Antonio, TX 78205. In addition, copies of the Disclosure Statement and the Plan may be obtained free of charge from the Debtor's case site, https://www.bmcgroup.com/restructuring/geninfo.aspx?ClientID=434, and may be obtained for a fee from the Court's website at https://ecf.txsb.uscourts.gov/. You should

review the Disclosure Statement and the Plan before you vote. You may wish to seek legal advice concerning the Plan and your classification and treatment under the Plan.[1]

The Plan can be confirmed by the Court and thereby made binding on you if it is accepted by the holders of at least two-thirds in amount and more than one-half in number of the Claims in each Class that votes on the Plan, and the Plan otherwise satisfies the applicable requirements of section 1129(a) of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"). The votes of those Claims actually voted in your Class will bind those who do not vote. If holders of Claims in Class 3 vote to reject the Plan, the Court may nonetheless confirm the Plan if it finds that the Plan does not discriminate unfairly, and is fair and equitable, with respect to holders of Claims in Class 3, and satisfies all of the other requirements contained in section 1129(a) of the Bankruptcy Code.

## VOTING INFORMATION AND INSTRUCTIONS FOR COMPLETING BALLOT

1. In Item 1 below, please indicate the total unpaid amount of your Claim as of the Voting Record Date, which was [_____]. In the boxes provided in Item 2 of the Ballot below, please indicate either acceptance or rejection of the Plan. Complete the Ballot by providing all of the information requested. Ballots must be returned to the Voting Agent, so that such Ballot is RECEIVED by the Voting Agent on or before the Voting Deadline. If a Ballot is received after the applicable deadline, it will not be counted. An envelope addressed to the Voting Agent is enclosed for your convenience. If neither the "accept" nor "reject" box is checked in Item 2 below, or if both the "accept" and "reject" boxes are checked, for an otherwise properly completed, executed, and timely returned Ballot, the Ballot will not be counted. Any Ballot that is illegible or does not provide sufficient information to identify the claim holder will not be counted. Original and facsimile signatures are acceptable.

2. If you are completing this Ballot on behalf of an entity, indicate your relationship with such entity and the capacity in which you are signing. In addition, please provide your name and mailing address if different from that set forth in the attached mailing label or if no such mailing label is attached to the Ballot. At the Debtors' discretion, you may be requested to provide proof of your authority to complete the Ballot on behalf of the claim holder.

3. **This Ballot is for voting only your Claims in CLASS 3 (Secured Claim of Prepetition Secured Parties). Please complete and return each ballot you receive in accordance with the instructions therein. The attached Ballot is designated only for voting Claims in CLASS 3.**

4. You must vote all of your Claims in CLASS 3 under the Plan either to accept or reject the Plan and may not split your vote. An otherwise properly completed, executed, and timely returned Ballot that attempts to partially accept and partially reject the Plan, or that attempts to both accept and reject the Plan will <u>not</u> be counted. Your vote to accept or reject the Plan must be unequivocal and not conditional or qualified in any way.

---

[1] All capitalized terms used in this Ballot but not otherwise defined herein shall have the meanings given to such terms in the Plan or Motion, as applicable.

5.    The Ballot does not constitute, and will not be deemed, a proof of claim, an assertion of a Claim, an allowance of a Claim, or an admission by the Debtors of the validity of a Claim.

6.    If you cast more than one Ballot voting the same Claims in CLASS 3 prior to the Voting Deadline, the latest dated, valid Ballot received before the Voting Deadline will be deemed to reflect your intent and supersede any prior Ballots. If you cast Ballots received by the Voting Agent on the same day, but which are voted inconsistently, such Ballots will not be counted.

7.    If you wish to have your Claim allowed for purposes of voting on the Plan in a manner that is inconsistent with the Ballot you received or if you did not receive a Ballot and wish to have your Claim temporarily allowed for voting purposes only, you must serve on: (i) the Debtors' counsel: Hogan Lovells US LLP, 1999 Avenue of the Stars, Los Angeles, CA, 90067, Attn: Richard L. Wynne, Bennett Spiegel and Erin Brady (Telephone: (310) 785-4600, email: richard.wynne@hoganlovells.com, bennett.spiegel@hoganlovells.com and/or erin.brady@hoganlovells.com) and Dykema Gossett PLC, 112 E. Pecan Street, Suite 1800 San Antonio, Texas 78205, Attn: Deborah D. Williamson and Danielle N. Rushing (Telephone: (210) 554-5528, email DWilliamson@dykema.com and/or DRushing@dykema.com), and (ii) the Voting Agent, on or before [_____], a motion for an order pursuant to Bankruptcy Rule 3018(a) temporarily allowing such Claim for purposes of voting (the "Rule 3018 Motion"). A Rule 3018 Motion must set forth with particularity the amount and classification of which you believe your Claims should be allowed for voting purposes and the evidence in support of your belief. Any party filing and serving a Rule 3018 Motion by the Rule 3018 Motion Deadline will be provided a Ballot and be permitted to cast a provisional vote to accept or reject the Plan.  If and to the extent that the Debtors and such party are unable to resolve the issues raised by the Rule 3018 Motion prior to the Voting Deadline, then at the Confirmation, the Debtors will request that the Court determine whether the provisional Ballot should be counted as a vote on the Plan.

8.    NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT, THE DISCLOSURE STATEMENT, PLAN OR OTHER MATERIALS AUTHORIZED BY THE COURT.

9.    PLEASE RETURN YOUR BALLOT PROMPTLY TO THE VOTING AGENT.

**IF BY MAIL:**

**BMC GROUP, INC.**
**ATTN: AAOG BALLOT PROCESSING**
**PO BOX 90100**
**LOS ANGELES, CA 90009**

**IF BY HAND-DELIVERY OR OVERNIGHT COURIER:**

**BMC GROUP, INC.**
**ATTN: AAOG BALLOT PROCESSING**

**3732 W 120TH STREET**
**HAWTHORNE, CA 90250**

**IF ELECTRONICALLY BY EMAIL:**

**AAOG@BMCGROUP.COM**

10. IF YOU HAVE RECEIVED A DAMAGED BALLOT, HAVE LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CALL THE VOTING AGENT AT 1-888-909-0100.

11. PLEASE NOTE THAT THE VOTING AGENT IS NOT PERMITTED TO GIVE LEGAL ADVICE. ANY PARTY RECEIVING THIS BALLOT SHOULD CONSULT AN ATTORNEY REGARDING ANY QUESTIONS IT MAY HAVE RELATING TO THIS BALLOT AND THE OTHER DOCUMENTS REFERENCED HEREIN.

**PLEASE READ THE ATTACHED VOTING INFORMATION AND
INSTRUCTIONS BEFORE COMPLETING THIS BALLOT**

---

**PLEASE COMPLETE ALL ITEMS BELOW. IF THIS BALLOT
IS NOT SIGNED ON THE APPROPRIATE LINES, THIS BALLOT
WILL NOT BE VALID OR COUNTED AS HAVING BEEN CAST.**

---

**Item 1. Amount of Claim.**

  The undersigned hereby certifies that as of the Voting Record Date, the undersigned was the Holder of Class 3 Claims in the following aggregate unpaid amount (insert amount in box below):

> Amount of Claim:[2] $_____

**Item 2. Class Vote.** The undersigned, a holder of **a Claim in CLASS 3** in the amount of its respective portion of the aggregate amount of the Secured Claims of Prepetition Secured Parties Allowed pursuant to the Plan, votes to (check one box):

   ☐ **Accept** the Plan.    ☐ **Reject** the Plan.

*[Remainder of page left blank]*

---

[2] For voting purposes only, subject to tabulation rules.

**Item 3**. Releases.

*If the Plan becomes effective, the exculpation, releases and injunctions contained in Article XVI of the Plan, including without limitation the releases of any Claims you may have against the Released Parties, each to the extent provided therein, will become effective and binding on all Creditors of the Debtor.[3] You are urged to carefully review Article XVI of the Plan.*

**IMPORTANT INFORMATION REGARDING CERTAIN RELEASES BY HOLDERS OF CLAIMS:**

IF YOU VOTE TO ACCEPT OR REJECT THE PLAN AND SUBMIT YOUR BALLOT WITHOUT CHECKING THE BOX BELOW, YOU WILL BE DEEMED TO CONSENT TO THE RELEASES PROVIDED IN SECTION 16.3.1 OF THE PLAN. IF YOU FAIL TO VOTE, YOU WILL BE DEEMED TO HAVE CONSENTED TO THE RELEASES PROVIDED IN SECTION 16.3.1.

YOU MAY OPT OUT OF THE RELEASES PROVIDED IN SECTION 16.3.1 OF THE PLAN (AS SET FORTH BELOW) BY CHECKING THE BOX BELOW AND YOU WILL NOT BE BOUND BY SUCH RELEASES. CHECK THE BOX BELOW IF YOU ELECT NOT TO GRANT THE RELEASES PROVIDED IN SECTION 16.3.1 OF THE PLAN. THE ELECTION TO WITHHOLD CONSENT TO GRANT SUCH RELEASES IS AT YOUR OPTION.

The Holder of Class 3 Claims set forth in Item 1 elects to:

[_____] Opt out of the releases provided in Section 16.3.1 of the Plan

16.3 Releases

16.3.1 Releases by Holders of Claims and Interests

**Except as otherwise expressly provided in the Plan, the Confirmation Order, the Sale Order (Including the Wind-Down Budget), the Purchase Agreement and the Settlement/Sale Transaction, on the Effective Date, for good and valuable consideration, a Holder of a Claim against and/or Interest in the Debtors who: (I) votes to accept the Plan, and does not opt out of the Releases contained in the Plan; (II) abstains from voting on the Plan; or (III) votes to reject the Plan and does not opt out of the Releases contained in the Plan, shall be deemed to completely and forever release, waive, void, extinguish and discharge unconditionally, each and all of the Released Parties of and from any and all claims, obligations, suits, judgments, damages, debts, rights, remedies and liabilities of any**

---

[3] The Plan defines "Released Parties" as each of: (i) the Debtors; (ii) the First Lien Secured Parties and Second Lien Secured Parties; (iii) the Professionals; (iv) in each case of (i) through (iii), their predecessors, successors, and assigns, professionals, advisors, accountants, attorneys, investment bankers, and consultants; and (v) in each case of (i) through (iv), their current and former affiliates, subsidiaries, funds, portfolio companies, management companies, employees, agents, directors and officers, and other representatives (each solely in their capacity as such).

nature whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are or may be based in whole or part on any act, omission, transaction, event or other circumstance taking place or existing on or prior to the Effective Date (including prior to the Petition Date) in connection with or related to the Debtors, their assets, property and estates, the Chapter 11 Cases, the Plan or the Disclosure Statement. For the avoidance of doubt, the foregoing releases described in the Plan shall not waive, affect, limit, restrict or otherwise modify the rights of the Debtors and the Liquidating Trustee to object to any Claim or Interest not expressly Allowed under the Plan.

Notwithstanding the foregoing and for the avoidance of doubt, the releases provided under the Sale Order, the Purchase Agreement and the Settlement/Sale Transaction shall govern any releases as among KCO, the Purchasers, the Debtors, the Buyer Settlement Parties (as defined in the Purchase Agreement) and the Debtor Settlement Parties (as defined in the Purchase Agreement) and other parties referenced therein, none of which shall be affected by the terms of the Plan.

16.3.2   Releases Approved by Confirmation Order

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval pursuant to Bankruptcy Rule 9019, of the releases set forth in Section 16.3.1, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that such release is: (i) in exchange for the good and valuable consideration provided by the Released Parties; (ii) a good faith settlement and compromise of the claims released by Section 16.3.1; (iii) in the best interests of the Debtors, their estates and all Holders of Claims and Interests; (iv) fair, equitable and reasonable; (v) given and made after due notice and opportunity for a hearing; and (vi) a bar to any Person asserting any claim released by Section 16.3.1. Notwithstanding the foregoing, nothing in Section 16.3.1 shall release any Released Party or other Entity or Person from its respective rights and obligations under the Plan or the Confirmation Order.

16.5   Exculpation

The Debtors and the Debtors' Professionals SHALL NOT BE LIABLE FOR ANY cause of action arising out of or related to any act or omission in connection with or relating to: (a) the formulation, preparation, solicitation, dissemination, negotiation, or filing of the Plan, the Plan Supplement, the Disclosure Statement, or any contract, instrument, release, or other agreement or document created or entered into in connection with any of the foregoing; (b) the Chapter 11 Cases; (c) the pursuit of Confirmation of the Plan; (d) the administration and implementation of the Plan; (e) the distribution of property under the Plan; and/or (f) any other prepetition or postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring and/or liquidation of the Debtors. All holders of Claims and Interests are enjoined from asserting or prosecuting any Claim or cause of action against the Debtors or the Debtors'

Professionals as to any Claim or cause of action as to which the Debtors and the Debtors' Professionals have been exculpated pursuant to the Plan.

16.6    Permanent Injunction

Except as otherwise expressly provided in the Plan, the Confirmation Order, the Sale Order (Including the Wind-Down Budget), the Purchase Agreement and the Settlement/Sale Transaction, all Persons who have held, hold or may hold Claims against, or Interests in, the Debtors are permanently enjoined, on and after the Effective Date, to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, from: (i) commencing or continuing in any manner any action or other proceeding of any kind against the Debtors, the Liquidating Trust, or their assets with respect to any such Claim or Interest in any venue other than the United States Bankruptcy Court for the Western District of Texas; (ii) the enforcement, attachment, collection, or recovery by any manner or means of judgment, award, decree or order against the Debtors, the Liquidating Trust, or their assets on account of any such Claim or Interest in any venue other than the United States Bankruptcy Court for the Western District of Texas; (iii) creating, perfecting, or enforcing any encumbrance of any kind against the Debtors, the Liquidating Trust, or their assets on account of any such Claim or Interest in any venue other than the United States Bankruptcy Court for the Western District of Texas; and (iv) asserting any right of setoff, recoupment or subrogation of any kind against any obligation due from the Debtors, the Liquidating Trust, or their assets on account of any such Claim or Interest in any venue other than the United States Bankruptcy Court for the Western District of Texas.

*[Remainder of Page Left Blank]*

**Item 4. Acknowledgement.** By signing this Ballot, the undersigned acknowledges that it has reviewed the Disclosure Statement, Plan and the other applicable solicitation materials and certifies that the undersigned is the claimant or has the power and authority to vote to accept or reject the Plan on behalf of the claimant. The undersigned understands that an otherwise properly completed, executed, and timely returned Ballot that does not indicate either acceptance or rejection of the Plan, or indicates both acceptance and rejection of the Plan, will not be counted. Original and facsimile signatures are acceptable.

_____
Name of Creditor

_____
Signature

_____
If by Authorized Agent, Name and Title

_____
Name of Institution

_____
Street Address
City, State, Zip Code

_____
Telephone Number

_____
Email

_____
Date Completed

□    Please check here if the above address is a Change of Address that you would like reflected in the Master Service List for these Chapter 11 Cases.

**PLEASE MAKE SURE YOU HAVE PROVIDED ALL INFORMATION REQUESTED ON THIS BALLOT.** PLEASE READ AND FOLLOW THE INSTRUCTIONS SET FORTH HEREIN CAREFULLY. PLEASE COMPLETE, SIGN, AND DATE THIS BALLOT AND PROMPTLY RETURN IT BY MAIL, HAND DELIVERY, OVERNIGHT COURIER OR ELECTRONICALLY BY EMAIL SO THAT IT IS ACTUALLY RECEIVED BY THE VOTING AGENT BY THE VOTING DEADLINE.

**EXHIBIT B-4**

**(CLASS 5 – GENERAL UNSECURED CLAIMS BALLOT)**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| ALL AMERICAN OIL & GAS | § | Case No. 18-52693-rbk |
| INCORPORATED, *et al.*, | § | |
| | § | Jointly Administered Under |
| Debtors. | § | Case No. 18-52693-rbk |
| | § | |

---

**BALLOT FOR CLAIMS IN
CLASS 5 (GENERAL UNSECURED CLAIMS)
FOR ACCEPTING OR REJECTING DEBTORS'
JOINT CHAPTER 11 PLAN OF LIQUIDATION**

**FOR YOUR VOTE TO BE COUNTED, YOUR BALLOT MUST BE RETURNED TO
THE VOTING AGENT SO THAT IT IS
ACTUALLY RECEIVED BY [       ] (THE "VOTING DEADLINE").**

---

This ballot (the "Ballot") is submitted to you to solicit your vote to accept or reject the chapter 11 plan (as the same may be amended, modified, and/or supplemented, the "Plan") submitted by All American Oil & Gas Incorporated; Manor Oil, Inc., and Hilltop Power, Inc. (collectively, the "Debtors"), and described in the related disclosure statement (the "Disclosure Statement") approved by an order of the United States Bankruptcy Court for the Western District of Texas, San Antonio Division (the "Court") upon the Debtors' *Motion for Entry of an Order (I) Approving the Adequacy of Disclosure Statement, (II) Approving the Solicitation, Ballot Tabulation and Notice Procedures With Respect to Confirmation of the Debtors' Proposed Joint Chapter 11 Plan of Liquidation, (III) Approving the Forms of Ballots and Notices in Connection Therewith, (IV) Scheduling Certain Dates With Respect Thereto, and (V) Granting Related Relief* (the "Motion"). The Disclosure Statement provides information to assist you in deciding how to vote your Ballot. If you do not have a Disclosure Statement or Plan, you may obtain a copy by contacting BMC Group, Inc., (the "Voting Agent") by email at AAOG@BMCGROUP.com, or by phone at 1-888-909-0100. Copies of the Disclosure Statement and the Plan are also available for inspection during regular business hours at the Office of the Clerk of the United States Bankruptcy Court for the Western District of Texas, San Antonio Division, Hipolito F. Garcia Federal Judicial Bldg., 615 East Huron Street, Room 597, San Antonio, TX 78205. In addition, copies of the Disclosure Statement and the Plan may be obtained free of charge from the Debtor's case site, https://www.bmcgroup.com/restructuring/geninfo.aspx?ClientID=434, and may be obtained for a fee from the Court's website at https://ecf.txsb.uscourts.gov/. You should

review the Disclosure Statement and the Plan before you vote. You may wish to seek legal advice concerning the Plan and your classification and treatment under the Plan.[1]

The Plan can be confirmed by the Court and thereby made binding on you if it is accepted by the holders of at least two-thirds in amount and more than one-half in number of the Claims in each Class that votes on the Plan, and the Plan otherwise satisfies the applicable requirements of section 1129(a) of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"). The votes of those Claims actually voted in your Class will bind those who do not vote. If holders of Claims in Class 5 vote to reject the Plan, the Court may nonetheless confirm the Plan if it finds that the Plan does not discriminate unfairly, and is fair and equitable, with respect to holders in Class 5, and satisfies all of the other requirements contained in section 1129(a) of the Bankruptcy Code.

## VOTING INFORMATION AND INSTRUCTIONS FOR COMPLETING BALLOT

1. In Item 1 below, please indicate the total unpaid amount of your Claim as of the Voting Record Date, which was [_____]. In the boxes provided in Item 2 of the Ballot below, please indicate either acceptance or rejection of the Plan. Complete the Ballot by providing all of the information requested. Ballots must be returned to the Voting Agent, so that such Ballot is **RECEIVED by the Voting Agent on or before the Voting Deadline**. If a Ballot is received after the applicable deadline, it will not be counted. An envelope addressed to the Voting Agent is enclosed for your convenience. If neither the "accept" nor "reject" box is checked in Item 2 below, or if both the "accept" and "reject" boxes are checked, for an otherwise properly completed, executed, and timely returned Ballot, the Ballot will not be counted. Any Ballot that is illegible or does not provide sufficient information to identify the claim holder will not be counted. Original and facsimile signatures are acceptable.

2. If you are completing this Ballot on behalf of an entity, indicate your relationship with such entity and the capacity in which you are signing. In addition, please provide your name and mailing address if different from that set forth in the attached mailing label or if no such mailing label is attached to the Ballot. At the Debtors' discretion, you may be requested to provide proof of your authority to complete the Ballot on behalf of the claim holder.

3. **This Ballot is for voting only your Claims in CLASS 5 (General Unsecured Claims). Please complete and return each ballot you receive in accordance with the instructions therein. The attached Ballot is designated only for voting Claims in CLASS 5.**

4. You must vote all of your Claims in CLASS 5 under the Plan either to accept or reject the Plan and may not split your vote. An otherwise properly completed, executed, and timely returned Ballot that attempts to partially accept and partially reject the Plan, or that attempts to both accept and reject the Plan will <u>not</u> be counted. Your vote to accept or reject the Plan must be unequivocal and not conditional or qualified in any way.

---

[1] All capitalized terms used in this Ballot but not otherwise defined herein shall have the meanings given to such terms in the Plan or Motion, as applicable.

5. The Ballot does not constitute, and will not be deemed, a proof of claim, an assertion of a Claim, an allowance of a Claim, or an admission by the Debtors of the validity of a Claim.

6. If you cast more than one Ballot voting the same Claims in CLASS 5 prior to the Voting Deadline, the latest dated, valid Ballot received before the Voting Deadline will be deemed to reflect your intent and supersede any prior Ballots. If you cast Ballots received by the Voting Agent on the same day, but which are voted inconsistently, such Ballots will not be counted.

7. If you wish to have your Claim allowed for purposes of voting on the Plan in a manner that is inconsistent with the Ballot you received or if you did not receive a Ballot and wish to have your Claim temporarily allowed for voting purposes only, you must serve on: (i) the Debtors' counsel: Hogan Lovells US LLP, 1999 Avenue of the Stars, Los Angeles, CA, 90067, Attn: Richard L. Wynne, Bennett Spiegel and Erin Brady (Telephone: (310) 785-4600, email: richard.wynne@hoganlovells.com, bennett.spiegel@hoganlovells.com and/or erin.brady@hoganlovells.com) and Dykema Gossett PLC, 112 E. Pecan Street, Suite 1800 San Antonio, Texas 78205, Attn: Deborah D. Williamson and Danielle N. Rushing (Telephone: (210) 554-5528, email DWilliamson@dykema.com and/or DRushing@dykema.com), and (ii) the Voting Agent, on or before [_____], a motion for an order pursuant to Bankruptcy Rule 3018(a) temporarily allowing such Claim for purposes of voting (the "Rule 3018 Motion"). A Rule 3018 Motion must set forth with particularity the amount and classification of which you believe your Claims should be allowed for voting purposes and the evidence in support of your belief. Any party filing and serving a Rule 3018 Motion by the Rule 3018 Motion Deadline will be provided a Ballot and be permitted to cast a provisional vote to accept or reject the Plan. If and to the extent that the Debtors and such party are unable to resolve the issues raised by the Rule 3018 Motion prior to the Voting Deadline, then at the Confirmation, the Debtors will request that the Court determine whether the provisional Ballot should be counted as a vote on the Plan.

8. NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT, THE DISCLOSURE STATEMENT, PLAN OR OTHER MATERIALS AUTHORIZED BY THE COURT.

9. PLEASE RETURN YOUR BALLOT PROMPTLY TO THE VOTING AGENT.

**IF BY MAIL:**

**BMC GROUP, INC.**
**ATTN: AAOG BALLOT PROCESSING**
**PO BOX 90100**
**LOS ANGELES, CA 90009**

**IF BY HAND-DELIVERY OR OVERNIGHT COURIER:**

**BMC GROUP, INC.**
**ATTN: AAOG BALLOT PROCESSING**

**3732 W 120TH STREET**
**HAWTHORNE, CA 90250**

**IF ELECTRONICALLY BY EMAIL:**

**AAOG@BMCGROUP.COM**

10. IF YOU HAVE RECEIVED A DAMAGED BALLOT, HAVE LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CALL THE VOTING AGENT AT 1-888-909-0100.

11. PLEASE NOTE THAT THE VOTING AGENT IS NOT PERMITTED TO GIVE LEGAL ADVICE. ANY PARTY RECEIVING THIS BALLOT SHOULD CONSULT AN ATTORNEY REGARDING ANY QUESTIONS IT MAY HAVE RELATING TO THIS BALLOT AND THE OTHER DOCUMENTS REFERENCED HEREIN.

*[Remainder of page left blank]*

**PLEASE READ THE ATTACHED VOTING INFORMATION AND
INSTRUCTIONS BEFORE COMPLETING THIS BALLOT**

---

PLEASE COMPLETE ALL ITEMS BELOW. IF THIS BALLOT
IS NOT SIGNED ON THE APPROPRIATE LINES, THIS BALLOT
WILL NOT BE VALID OR COUNTED AS HAVING BEEN CAST.

---

**Item 1**. **Amount of Claim.**

      The undersigned hereby certifies that as of the Voting Record Date, the undersigned was the Holder of Class 5 Claims in the following aggregate unpaid amount (insert amount in box below):

> Amount of Claim:[2] $_____

**Item 2**. **Class Vote.** The undersigned, a holder of **a Claim in CLASS 5** in the amount of its respective portion of the aggregate amount of the General Unsecured Claims as Allowed pursuant to the Plan, votes to (check one box):

    ☐   **Accept** the Plan.        ☐   **Reject** the Plan.

*[Remainder of page left blank]*

---

[2] For voting purposes only, subject to tabulation rules.

**Item 3**. Releases.

*If the Plan becomes effective, the exculpation, releases and injunctions contained in Article XVI of the Plan, including without limitation the releases of any Claims you may have against the Released Parties, each to the extent provided therein, will become effective and binding on all Creditors of the Debtor.[3] You are urged to carefully review Article XVI of the Plan.*

**IMPORTANT INFORMATION REGARDING CERTAIN RELEASES BY HOLDERS OF CLAIMS:**

IF YOU VOTE TO ACCEPT OR REJECT THE PLAN AND SUBMIT YOUR BALLOT WITHOUT CHECKING THE BOX BELOW, YOU WILL BE DEEMED TO CONSENT TO THE RELEASES PROVIDED IN SECTION 16.3.1 OF THE PLAN. IF YOU FAIL TO VOTE, YOU WILL BE DEEMED TO HAVE CONSENTED TO THE RELEASES PROVIDED IN SECTION 16.3.1.

YOU MAY OPT OUT OF THE RELEASES PROVIDED IN SECTION 16.3.1 OF THE PLAN (AS SET FORTH BELOW) BY CHECKING THE BOX BELOW AND YOU WILL NOT BE BOUND BY SUCH RELEASES. CHECK THE BOX BELOW IF YOU ELECT NOT TO GRANT THE RELEASES PROVIDED IN SECTION 16.3.1 OF THE PLAN. THE ELECTION TO WITHHOLD CONSENT TO GRANT SUCH RELEASES IS AT YOUR OPTION.

The Holder of Class 5 Claims set forth in Item 1 elects to:

[_____] Opt out of the releases provided in Section 16.3.1 of the Plan

16.3   Releases

16.3.1   Releases by Holders of Claims and Interests

**Except as otherwise expressly provided in the Plan, the Confirmation Order, the Sale Order (Including the Wind-Down Budget), the Purchase Agreement and the Settlement/Sale Transaction, on the Effective Date, for good and valuable consideration, a Holder of a Claim against and/or Interest in the Debtors who: (I) votes to accept the Plan, and does not opt out of the Releases contained in the Plan; (II) abstains from voting on the Plan; or (III) votes to reject the Plan and does not opt out of the Releases contained in the Plan, shall be deemed to completely and forever release, waive, void, extinguish and discharge unconditionally, each and all of the Released Parties of and from any and all claims, obligations, suits, judgments, damages, debts, rights, remedies and liabilities of any**

---

[3] The Plan defines "Released Parties" as each of: (i) the Debtors; (ii) the First Lien Secured Parties and Second Lien Secured Parties; (iii) the Professionals; (iv) in each case of (i) through (iii), their predecessors, successors, and assigns, professionals, advisors, accountants, attorneys, investment bankers, and consultants; and (v) in each case of (i) through (iv), their current and former affiliates, subsidiaries, funds, portfolio companies, management companies, employees, agents, directors and officers, and other representatives (each solely in their capacity as such).

nature whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are or may be based in whole or part on any act, omission, transaction, event or other circumstance taking place or existing on or prior to the Effective Date (including prior to the Petition Date) in connection with or related to the Debtors, their assets, property and estates, the Chapter 11 Cases, the Plan or the Disclosure Statement. For the avoidance of doubt, the foregoing releases described in the Plan shall not waive, affect, limit, restrict or otherwise modify the rights of the Debtors and the Liquidating Trustee to object to any Claim or Interest not expressly Allowed under the Plan.

Notwithstanding the foregoing and for the avoidance of doubt, the releases provided under the Sale Order, the Purchase Agreement and the Settlement/Sale Transaction shall govern any releases as among KCO, the Purchasers, the Debtors, the Buyer Settlement Parties (as defined in the Purchase Agreement) and the Debtor Settlement Parties (as defined in the Purchase Agreement) and other parties referenced therein, none of which shall be affected by the terms of the Plan.

16.3.2   Releases Approved by Confirmation Order

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval pursuant to Bankruptcy Rule 9019, of the releases set forth in Section 16.3.1, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that such release is: (i) in exchange for the good and valuable consideration provided by the Released Parties; (ii) a good faith settlement and compromise of the claims released by Section 16.3.1; (iii) in the best interests of the Debtors, their estates and all Holders of Claims and Interests; (iv) fair, equitable and reasonable; (v) given and made after due notice and opportunity for a hearing; and (vi) a bar to any Person asserting any claim released by Section 16.3.1. Notwithstanding the foregoing, nothing in Section 16.3.1 shall release any Released Party or other Entity or Person from its respective rights and obligations under the Plan or the Confirmation Order.

16.5   Exculpation

The Debtors and the Debtors' Professionals SHALL NOT BE LIABLE FOR ANY cause of action arising out of or related to any act or omission in connection with or relating to: (a) the formulation, preparation, solicitation, dissemination, negotiation, or filing of the Plan, the Plan Supplement, the Disclosure Statement, or any contract, instrument, release, or other agreement or document created or entered into in connection with any of the foregoing; (b) the Chapter 11 Cases; (c) the pursuit of Confirmation of the Plan; (d) the administration and implementation of the Plan; (e) the distribution of property under the Plan; and/or (f) any other prepetition or postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring and/or liquidation of the Debtors. All holders of Claims and Interests are enjoined from asserting or prosecuting any Claim or cause of action against the Debtors or the Debtors'

Professionals as to any Claim or cause of action as to which the Debtors and the Debtors' Professionals have been exculpated pursuant to the Plan.

16.6 <u>Permanent Injunction</u>

**Except as otherwise expressly provided in the Plan, the Confirmation Order, the Sale Order (Including the Wind-Down Budget), the Purchase Agreement and the Settlement/Sale Transaction, all Persons who have held, hold or may hold Claims against, or Interests in, the Debtors are permanently enjoined, on and after the Effective Date, to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, from: (i) commencing or continuing in any manner any action or other proceeding of any kind against the Debtors, the Liquidating Trust, or their assets with respect to any such Claim or Interest in any venue other than the United States Bankruptcy Court for the Western District of Texas; (ii) the enforcement, attachment, collection, or recovery by any manner or means of judgment, award, decree or order against the Debtors, the Liquidating Trust, or their assets on account of any such Claim or Interest in any venue other than the United States Bankruptcy Court for the Western District of Texas; (iii) creating, perfecting, or enforcing any encumbrance of any kind against the Debtors, the Liquidating Trust, or their assets on account of any such Claim or Interest in any venue other than the United States Bankruptcy Court for the Western District of Texas; and (iv) asserting any right of setoff, recoupment or subrogation of any kind against any obligation due from the Debtors, the Liquidating Trust, or their assets on account of any such Claim or Interest in any venue other than the United States Bankruptcy Court for the Western District of Texas.**

*[Remainder of Page Left Blank]*

**Item 4. Acknowledgement.** By signing this Ballot, the undersigned acknowledges that it has reviewed the Disclosure Statement, Plan and the other applicable solicitation materials and certifies that the undersigned is the claimant or has the power and authority to vote to accept or reject the Plan on behalf of the claimant. The undersigned understands that an otherwise properly completed, executed, and timely returned Ballot that does not indicate either acceptance or rejection of the Plan, or indicates both acceptance and rejection of the Plan, will not be counted. Original and facsimile signatures are acceptable.

<div align="right">

_____
Name of Creditor

_____
Signature

_____
If by Authorized Agent, Name and Title

_____
Name of Institution

_____
Street Address
City, State, Zip Code

_____
Telephone Number

_____
Email

_____
Date Completed

</div>

☐    Please check here if the above address is a Change of Address that you would like reflected in the Master Service List for these Chapter 11 Cases.

**PLEASE MAKE SURE YOU HAVE PROVIDED ALL INFORMATION REQUESTED ON THIS BALLOT.** PLEASE READ AND FOLLOW THE INSTRUCTIONS SET FORTH HEREIN CAREFULLY. PLEASE COMPLETE, SIGN, AND DATE THIS BALLOT AND PROMPTLY RETURN IT BY MAIL, HAND DELIVERY, OVERNIGHT COURIER OR ELECTRONICALLY BY EMAIL SO THAT IT IS ACTUALLY RECEIVED BY THE VOTING AGENT BY THE VOTING DEADLINE.

# EXHIBIT B-5

# (CLASS 7 – CFS CLAIM BALLOT)

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| ALL AMERICAN OIL & GAS | § | Case No. 18-52693-rbk |
| INCORPORATED, *et al.*, | § | |
| | § | Jointly Administered Under |
| Debtors. | § | Case No. 18-52693-rbk |
| | § | |

---

**BALLOT FOR CLAIMS IN
CLASS 7 (CFS CLAIM)
FOR ACCEPTING OR REJECTING DEBTORS'
JOINT CHAPTER 11 PLAN OF LIQUIDATION**

**FOR YOUR VOTE TO BE COUNTED, YOUR BALLOT MUST BE RETURNED TO
THE VOTING AGENT SO THAT IT IS
ACTUALLY RECEIVED BY [         ] (THE "VOTING DEADLINE").**

---

This ballot (the "Ballot") is submitted to you to solicit your vote to accept or reject the chapter 11 plan (as the same may be amended, modified, and/or supplemented, the "Plan") submitted by All American Oil & Gas Incorporated; Manor Oil, Inc., and Hilltop Power, Inc. (collectively, the "Debtors"), and described in the related disclosure statement (the "Disclosure Statement") approved by an order of the United States Bankruptcy Court for the Western District of Texas, San Antonio Division (the "Court") upon the Debtors' *Motion for Entry of an Order (I) Approving the Adequacy of Disclosure Statement, (II) Approving the Solicitation, Ballot Tabulation and Notice Procedures With Respect to Confirmation of the Debtors' Proposed Joint Chapter 11 Plan of Liquidation, (III) Approving the Forms of Ballots and Notices in Connection Therewith, (IV) Scheduling Certain Dates With Respect Thereto, and (V) Granting Related Relief* (the "Motion"). The Disclosure Statement provides information to assist you in deciding how to vote your Ballot. If you do not have a Disclosure Statement or Plan, you may obtain a copy by contacting BMC Group, Inc., (the "Voting Agent") by email at AAOG@BMCGROUP.com, or by phone at 1-888-909-0100. Copies of the Disclosure Statement and the Plan are also available for inspection during regular business hours at the Office of the Clerk of the United States Bankruptcy Court for the Western District of Texas, San Antonio Division, Hipolito F. Garcia Federal Judicial Bldg., 615 East Huron Street, Room 597, San Antonio, TX 78205. In addition, copies of the Disclosure Statement and the Plan may be obtained free of charge from the Debtor's case site, https://www.bmcgroup.com/restructuring/geninfo.aspx?ClientID=434, and may be obtained for a fee from the Court's website at https://ecf.txsb.uscourts.gov/. You should

review the Disclosure Statement and the Plan before you vote. You may wish to seek legal advice concerning the Plan and your classification and treatment under the Plan.[1]

The Plan can be confirmed by the Court and thereby made binding on you if it is accepted by the holders of at least two-thirds in amount and more than one-half in number of the Claims in each Class that votes on the Plan, and the Plan otherwise satisfies the applicable requirements of section 1129(a) of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"). If you vote your Class 7 Claim to reject the Plan, the Court may nonetheless confirm the Plan if it finds that the Plan does not discriminate unfairly, and is fair and equitable, with respect to Class 7, and satisfies all of the other requirements contained in section 1129(a) of the Bankruptcy Code.

## VOTING INFORMATION AND INSTRUCTIONS FOR COMPLETING BALLOT

1. Item 1 below, please indicate the total unpaid amount of your Claim as of the Voting Record Date, which was [_____]. In the boxes provided in Item 2 of the Ballot below, please indicate either acceptance or rejection of the Plan. Complete the Ballot by providing all of the information requested. Ballots must be returned to the Voting Agent, so that such Ballot is **RECEIVED by the Voting Agent on or before the Voting Deadline**. If a Ballot is received after the applicable deadline, it will not be counted. An envelope addressed to the Voting Agent is enclosed for your convenience. If neither the "accept" nor "reject" box is checked in Item 2 below, or if both the "accept" and "reject" boxes are checked, for an otherwise properly completed, executed, and timely returned Ballot, the Ballot will not be counted. Any Ballot that is illegible or does not provide sufficient information to identify the claim holder will not be counted. Original and facsimile signatures are acceptable.

2. If you are completing this Ballot on behalf of an entity, indicate your relationship with such entity and the capacity in which you are signing. In addition, please provide your name and mailing address if different from that set forth in the attached mailing label or if no such mailing label is attached to the Ballot. At the Debtors' discretion, you may be requested to provide proof of your authority to complete the Ballot on behalf of the claim holder.

3. **This Ballot is for voting only your Claims in CLASS 7 (CFS Claim). Please complete and return each ballot you receive in accordance with the instructions therein. The attached Ballot is designated only for voting Claims in CLASS 7.**

4. You must vote all of your Claims in CLASS 7 under the Plan either to accept or reject the Plan and may not split your vote. An otherwise properly completed, executed, and timely returned Ballot that attempts to partially accept and partially reject the Plan, or that attempts to both accept and reject the Plan will <u>not</u> be counted. Your vote to accept or reject the Plan must be unequivocal and not conditional or qualified in any way.

5. The Ballot does not constitute, and will not be deemed, a proof of claim, an assertion of a Claim, an allowance of a Claim, or an admission by the Debtors of the validity of a Claim.

---

[1] All capitalized terms used in this Ballot but not otherwise defined herein shall have the meanings given to such terms in the Plan or Motion, as applicable.

6. If you cast more than one Ballot voting the same Claims in CLASS 7 prior to the Voting Deadline, the latest dated, valid Ballot received before the Voting Deadline will be deemed to reflect your intent and supersede any prior Ballots. If you cast Ballots received by the Voting Agent on the same day, but which are voted inconsistently, such Ballots will not be counted.

7. If you wish to have your Claim allowed for purposes of voting on the Plan in a manner that is inconsistent with the Ballot you received or if you did not receive a Ballot and wish to have your Claim temporarily allowed for voting purposes only, you must serve on (i) the Debtors' counsel: Hogan Lovells US LLP, 1999 Avenue of the Stars, Los Angeles, CA, 90067, Attn: Richard L. Wynne, Bennett Spiegel and Erin Brady (Telephone: (310) 785-4600, email: richard.wynne@hoganlovells.com, bennett.spiegel@hoganlovells.com and/or erin.brady@hoganlovells.com) and Dykema Gossett PLC, 112 E. Pecan Street, Suite 1800 San Antonio, Texas 78205, Attn: Deborah D. Williamson and Danielle N. Rushing (Telephone: (210) 554-5528, email DWilliamson@dykema.com and/or DRushing@dykema.com), and (ii) the Voting Agent, on or before [_____], a motion for an order pursuant to Bankruptcy Rule 3018(a) temporarily allowing such Claim for purposes of voting (the "Rule 3018 Motion"). A Rule 3018 Motion must set forth with particularity the amount and classification of which you believe your Claims should be allowed for voting purposes and the evidence in support of your belief. Any party filing and serving a Rule 3018 Motion by the Rule 3018 Motion Deadline will be provided a Ballot and be permitted to cast a provisional vote to accept or reject the Plan. If and to the extent that the Debtors and such party are unable to resolve the issues raised by the Rule 3018 Motion prior to the Voting Deadline, then at the Confirmation, the Debtors will request that the Court determine whether the provisional Ballot should be counted as a vote on the Plan.

8. NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT, THE DISCLOSURE STATEMENT, PLAN OR OTHER MATERIALS AUTHORIZED BY THE COURT.

9. PLEASE RETURN YOUR BALLOT PROMPTLY TO THE VOTING AGENT.

**IF BY MAIL:**

**BMC GROUP, INC.**
**ATTN: AAOG BALLOT PROCESSING**
**PO BOX 90100**
**LOS ANGELES, CA 90009**

**IF BY HAND-DELIVERY OR OVERNIGHT COURIER:**

**BMC GROUP, INC.**
**ATTN: AAOG BALLOT PROCESSING**
**3732 W 120TH STREET**
**HAWTHORNE, CA 90250**

**IF ELECTRONICALLY BY EMAIL:**

**AAOG@BMCGROUP.COM**

10. IF YOU HAVE RECEIVED A DAMAGED BALLOT, HAVE LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CALL THE VOTING AGENT AT 1-888-909-0100.

11. PLEASE NOTE THAT THE VOTING AGENT IS NOT PERMITTED TO GIVE LEGAL ADVICE. ANY PARTY RECEIVING THIS BALLOT SHOULD CONSULT AN ATTORNEY REGARDING ANY QUESTIONS IT MAY HAVE RELATING TO THIS BALLOT AND THE OTHER DOCUMENTS REFERENCED HEREIN.

*[Remainder of page left blank]*

**PLEASE READ THE ATTACHED VOTING INFORMATION AND
INSTRUCTIONS BEFORE COMPLETING THIS BALLOT**

---

PLEASE COMPLETE ALL ITEMS BELOW. IF THIS BALLOT
IS NOT SIGNED ON THE APPROPRIATE LINES, THIS BALLOT
WILL NOT BE VALID OR COUNTED AS HAVING BEEN CAST.

---

**Item 1. Amount of Claim.**

The undersigned hereby certifies that as of the Voting Record Date, the undersigned was the Holder of Class 7 Claims in the following aggregate unpaid amount (insert amount in box below):

> Amount of Claim:[2] $_____

**Item 2. Class Vote.** The undersigned, the holder of the CFS Claim, hereby votes the full amount of its Allowed Claim pursuant to the Plan to (check one box):

☐ **Accept** the Plan.　　　　☐ **Reject** the Plan.

*[Remainder of page left blank]*

---

[2] For voting purposes only, subject to tabulation rules.

**<u>Item 3</u>. Releases.**

*If the Plan becomes effective, the exculpation, releases and injunctions contained in Article XVI of the Plan, including without limitation the releases of any Claims you may have against the Released Parties, each to the extent provided therein, will become effective and binding on all Creditors of the Debtor.[3]  You are urged to carefully review Article XVI of the Plan.*

**<u>IMPORTANT INFORMATION REGARDING CERTAIN RELEASES BY HOLDERS OF CLAIMS</u>:**

IF YOU VOTE TO ACCEPT OR REJECT THE PLAN AND SUBMIT YOUR BALLOT WITHOUT CHECKING THE BOX BELOW, YOU WILL BE DEEMED TO CONSENT TO THE RELEASES PROVIDED IN SECTION 16.3.1 OF THE PLAN. IF YOU FAIL TO VOTE, YOU WILL BE DEEMED TO HAVE CONSENTED TO THE RELEASES PROVIDED IN SECTION 16.3.1.

YOU MAY OPT OUT OF THE RELEASES PROVIDED IN SECTION 16.3.1 OF THE PLAN (AS SET FORTH BELOW) BY CHECKING THE BOX BELOW AND YOU WILL NOT BE BOUND BY SUCH RELEASES. CHECK THE BOX BELOW IF YOU ELECT NOT TO GRANT THE RELEASES PROVIDED IN SECTION 16.3.1 OF THE PLAN. THE ELECTION TO WITHHOLD CONSENT TO GRANT SUCH RELEASES IS AT YOUR OPTION.

The Holder of Class 7 Claims set forth in Item 1 elects to:

[_____] Opt out of the releases provided in Section 16.3.1 of the Plan

16.3   <u>Releases</u>

16.3.1   Releases by Holders of Claims and Interests

**Except as otherwise expressly provided in the Plan, the Confirmation Order, the Sale Order (Including the Wind-Down Budget), the Purchase Agreement and the Settlement/Sale Transaction, on the Effective Date, for good and valuable consideration, a Holder of a Claim against and/or Interest in the Debtors who: (I) votes to accept the Plan and does not opt out of the Releases contained in the Plan; (II) abstains from voting on the Plan; or (III) votes to reject the Plan and does not opt out of the Releases contained in the Plan, shall be deemed to completely and forever release, waive, void, extinguish and discharge unconditionally, each and all of the Released Parties of and from any and all claims, obligations, suits, judgments, damages, debts, rights, remedies and liabilities of any**

---

[3] The Plan defines "Released Parties" as each of: (i) the Debtors; (ii) the First Lien Secured Parties and Second Lien Secured Parties; (iii) the Professionals; (iv) in each case of (i) through (iii), their predecessors, successors, and assigns, professionals, advisors, accountants, attorneys, investment bankers, and consultants; and (v) in each case of (i) through (iv), their current and former affiliates, subsidiaries, funds, portfolio companies, management companies, employees, agents, directors and officers, and other representatives (each solely in their capacity as such).

nature whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are or may be based in whole or part on any act, omission, transaction, event or other circumstance taking place or existing on or prior to the **Effective Date (including prior to the Petition Date) in connection with or related to the Debtors, their assets, property and estates, the Chapter 11 Cases, the Plan or the Disclosure Statement.** For the avoidance of doubt, the foregoing releases described in the Plan shall not waive, affect, limit, restrict or otherwise modify the rights of the Debtors and the Liquidating Trustee to object to any Claim or Interest not expressly Allowed under the Plan.

Notwithstanding the foregoing and for the avoidance of doubt, the releases provided under the Sale Order, the Purchase Agreement and the Settlement/Sale Transaction shall govern any releases as among KCO, the Purchasers, the Debtors, the Buyer Settlement Parties (as defined in the Purchase Agreement) and the Debtor Settlement Parties (as defined in the Purchase Agreement) and other parties referenced therein, none of which shall be affected by the terms of the Plan.

16.3.2   Releases Approved by Confirmation Order

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval pursuant to Bankruptcy Rule 9019, of the releases set forth in Section 16.3.1, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that such release is: (i) in exchange for the good and valuable consideration provided by the Released Parties; (ii) a good faith settlement and compromise of the claims released by Section 16.3.1; (iii) in the best interests of the Debtors, their estates and all Holders of Claims and Interests; (iv) fair, equitable and reasonable; (v) given and made after due notice and opportunity for a hearing; and (vi) a bar to any Person asserting any claim released by Section 16.3.1. Notwithstanding the foregoing, nothing in Section 16.3.1 shall release any Released Party or other Entity or Person from its respective rights and obligations under the Plan or the Confirmation Order.

16.5   Exculpation

The Debtors and the Debtors' Professionals SHALL NOT BE LIABLE FOR ANY cause of action arising out of or related to any act or omission in connection with or relating to: (a) the formulation, preparation, solicitation, dissemination, negotiation, or filing of the Plan, the Plan Supplement, the Disclosure Statement, or any contract, instrument, release, or other agreement or document created or entered into in connection with any of the foregoing; (b) the Chapter 11 Cases; (c) the pursuit of Confirmation of the Plan; (d) the administration and implementation of the Plan; (e) the distribution of property under the Plan; and/or (f) any other prepetition or postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring and/or liquidation of the Debtors. All holders of Claims and Interests are enjoined from asserting or prosecuting any Claim or cause of action against the Debtors or the Debtors'

Professionals as to any Claim or cause of action as to which the Debtors and the Debtors' Professionals have been exculpated pursuant to the Plan.

16.6    Permanent Injunction

Except as otherwise expressly provided in the Plan, the Confirmation Order, the Sale Order (Including the Wind-Down Budget), the Purchase Agreement and the Settlement/Sale Transaction, all Persons who have held, hold or may hold Claims against, or Interests in, the Debtors are permanently enjoined, on and after the Effective Date, to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, from: (i) commencing or continuing in any manner any action or other proceeding of any kind against the Debtors, the Liquidating Trust, or their assets with respect to any such Claim or Interest in any venue other than the United States Bankruptcy Court for the Western District of Texas; (ii) the enforcement, attachment, collection, or recovery by any manner or means of judgment, award, decree or order against the Debtors, the Liquidating Trust, or their assets on account of any such Claim or Interest in any venue other than the United States Bankruptcy Court for the Western District of Texas; (iii) creating, perfecting, or enforcing any encumbrance of any kind against the Debtors, the Liquidating Trust, or their assets on account of any such Claim or Interest in any venue other than the United States Bankruptcy Court for the Western District of Texas; and (iv) asserting any right of setoff, recoupment or subrogation of any kind against any obligation due from the Debtors, the Liquidating Trust, or their assets on account of any such Claim or Interest in any venue other than the United States Bankruptcy Court for the Western District of Texas.

*[Remainder of Page Left Blank]*

**Item 4. Acknowledgement.** By signing this Ballot, the undersigned acknowledges that it has reviewed the Disclosure Statement, Plan and the other applicable solicitation materials and certifies that the undersigned is the claimant or has the power and authority to vote to accept or reject the Plan on behalf of the claimant. The undersigned understands that an otherwise properly completed, executed, and timely returned Ballot that does not indicate either acceptance or rejection of the Plan, or indicates both acceptance and rejection of the Plan, will not be counted. Original and facsimile signatures are acceptable.

_____
Name of Creditor

_____
Signature

_____
If by Authorized Agent, Name and Title

_____
Name of Institution

_____
Street Address
City, State, Zip Code

_____
Telephone Number

_____
Email

_____
Date Completed

☐     Please check here if the above address is a Change of Address that you would like reflected in the Master Service List for these Chapter 11 Cases.

**PLEASE MAKE SURE YOU HAVE PROVIDED ALL INFORMATION REQUESTED ON THIS BALLOT.** PLEASE READ AND FOLLOW THE INSTRUCTIONS SET FORTH HEREIN CAREFULLY. PLEASE COMPLETE, SIGN, AND DATE THIS BALLOT AND PROMPTLY RETURN IT BY MAIL, HAND DELIVERY, OVERNIGHT COURIER OR ELECTRONICALLY BY EMAIL SO THAT IT IS ACTUALLY RECEIVED BY THE VOTING AGENT BY THE VOTING DEADLINE.

**EXHIBIT B-6**

**(CLASS 8 – INTERESTS BALLOT)**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| ALL AMERICAN OIL & GAS | § | Case No. 18-52693-rbk |
| INCORPORATED, *et al.*, | § | |
| | § | Jointly Administered Under |
| Debtors. | § | Case No. 18-52693-rbk |
| | § | |

---

**BALLOT FOR INTERESTS IN**
**CLASS 8 (INTERESTS) FOR ACCEPTING OR REJECTING DEBTORS'**
**JOINT CHAPTER 11 PLAN OF LIQUIDATION**

**FOR YOUR VOTE TO BE COUNTED, YOUR BALLOT MUST BE RETURNED TO**
**THE VOTING AGENT SO THAT IT IS**
**ACTUALLY RECEIVED BY [          ] (THE "VOTING DEADLINE").**

---

This ballot (the "<u>Ballot</u>") is submitted to you to solicit your vote to accept or reject the chapter 11 plan (as the same may be amended, modified, and/or supplemented, the "<u>Plan</u>") submitted by All American Oil & Gas Incorporated; Manor Oil, Inc., and Hilltop Power, Inc. (collectively, the "<u>Debtors</u>"), and described in the related disclosure statement (the "<u>Disclosure Statement</u>") approved by an order of the United States Bankruptcy Court for the Western District of Texas, San Antonio Division (the "<u>Court</u>") upon the Debtors' *Motion for Entry of an Order (I) Approving the Adequacy of Disclosure Statement, (II) Approving the Solicitation, Ballot Tabulation and Notice Procedures With Respect to Confirmation of the Debtors' Proposed Joint Chapter 11 Plan of Liquidation, (III) Approving the Forms of Ballots and Notices in Connection Therewith, (IV) Scheduling Certain Dates With Respect Thereto, and (V) Granting Related Relief* (the "<u>Motion</u>"). The Disclosure Statement provides information to assist you in deciding how to vote your Ballot. If you do not have a Disclosure Statement or Plan, you may obtain a copy by contacting BMC Group, Inc., (the "<u>Voting Agent</u>") by email at AAOG@BMCGroup.com, or by phone at 1-888-909-0100. Copies of the Disclosure Statement and the Plan are also available for inspection during regular business hours at the Office of the Clerk of the United States Bankruptcy Court for the Western District of Texas, San Antonio Division, Hipolito F. Garcia Federal Judicial Bldg., 615 East Huron Street, Room 597, San Antonio, TX 78205. In addition, copies of the Disclosure Statement and the Plan may be obtained free of charge from the Debtor's case site, https://www.bmcgroup.com/restructuring/geninfo.aspx?ClientID=434, and may be obtained for a fee from the Court's website at https://ecf.txsb.uscourts.gov/. You should

review the Disclosure Statement and the Plan before you vote. You may wish to seek legal advice concerning the Plan and your classification and treatment under the Plan.[1]

The Plan can be confirmed by the Court and thereby made binding on you if it is accepted by the holders of at least two-thirds in amount and more than one-half in number of the Claims or Interests in each Class that votes on the Plan, and the Plan otherwise satisfies the applicable requirements of section 1129(a) of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "<u>Bankruptcy Code</u>"). The votes of those Interests actually voted in your Class will bind those who do not vote. If holders of Interests in Class 8 vote to reject the Plan, the Court may nonetheless confirm the Plan if it finds that the Plan does not discriminate unfairly, and is fair and equitable, with respect to holders in Class 8, and satisfies all of the other requirements contained in section 1129(a) of the Bankruptcy Code.

## <u>VOTING INFORMATION AND INSTRUCTIONS FOR COMPLETING BALLOT</u>

1.  Item 1 below contains your number of shares and percentage of total outstanding shares as of the Voting Record Date, which was [_____]. In the boxes provided in Item 2 of the Ballot below, please indicate either acceptance or rejection of the Plan. Complete the Ballot by providing all of the information requested. Ballots must be returned to the Voting Agent, so that such Ballot is **RECEIVED** **by the Voting Agent on or before the Voting Deadline**. If a Ballot is received after the applicable deadline, it will not be counted. An envelope addressed to the Voting Agent is enclosed for your convenience. If neither the "accept" nor "reject" box is checked in Item 2 below, or if both the "accept" and "reject" boxes are checked, for an otherwise properly completed, executed, and timely returned Ballot, the Ballot will not be counted. Any Ballot that is illegible or does not provide sufficient information to identify the Interest holder will not be counted. Original and facsimile signatures are acceptable.

2.  If you are completing this Ballot on behalf of an entity, indicate your relationship with such entity and the capacity in which you are signing. In addition, please provide your name and mailing address if different from that set forth in the attached mailing label or if no such mailing label is attached to the Ballot. At the Debtors' discretion, you may be requested to provide proof of your authority to complete the Ballot on behalf of the claim holder.

3.  **This Ballot is for voting only your Interests in CLASS 8. Please complete and return each ballot you receive in accordance with the instructions therein. The attached Ballot is designated only for voting Interests in CLASS 8.**

4.  You must vote all of your Interests in CLASS 8 under the Plan either to accept or reject the Plan and may not split your vote. An otherwise properly completed, executed, and timely returned Ballot that attempts to partially accept and partially reject the Plan, or that attempts to both accept and reject the Plan will <u>not</u> be counted. Your vote to accept or reject the Plan must be unequivocal and not conditional or qualified in any way.

---

[1] All capitalized terms used in this Ballot but not otherwise defined herein shall have the meanings given to such terms in the Plan or Motion, as applicable.

5.   The Ballot does not constitute, and will not be deemed, a proof of claim, an assertion of an Interest, an allowance of an Interest, or an admission by the Debtors of the validity of an Interest.

6.   If you cast more than one Ballot voting the same Interests in CLASS 8 prior to the Voting Deadline, the latest dated, valid Ballot received before the Voting Deadline will be deemed to reflect your intent and supersede any prior Ballots. If you cast Ballots received by the Voting Agent on the same day, but which are voted inconsistently, such Ballots will not be counted.

7.   If you wish to have your Interests allowed for purposes of voting on the Plan in a manner that is inconsistent with the Ballot you received, or if you did not receive a Ballot and wish to have your Interest temporarily allowed for voting purposes, you must serve on: (i) the Debtors' counsel: Hogan Lovells US LLP, 1999 Avenue of the Stars, Los Angeles, CA, 90067, Attn: Richard L. Wynne, Bennett Spiegel and Erin Brady (Telephone: (310) 785-4600, email: richard.wynne@hoganlovells.com, bennett.spiegel@hoganlovells.com and/or erin.brady@hoganlovells.com) and Dykema Gossett PLC, 112 E. Pecan Street, Suite 1800 San Antonio, Texas 78205, Attn: Deborah D. Williamson and Danielle N. Rushing (Telephone: (210) 554-5528, email DWilliamson@dykema.com and/or DRushing@dykema.com), and (ii) the Voting Agent, on or before [_____], a motion for an order pursuant to Bankruptcy Rule 3018(a) temporarily allowing such Interest for purposes of voting (the "Rule 3018 Motion"). A Rule 3018 Motion must set forth with particularity the amount and classification of which you believe your Interests should be allowed for voting purposes and the evidence in support of your belief. Any party filing and serving a Rule 3018 Motion by the Rule 3018 Motion Deadline will be provided a Ballot and be permitted to cast a provisional vote to accept or reject the Plan. If you do not file a 3018 Motion by the 3018 Motion Deadline, you will be deemed to consent to the information provided in your Ballot for all purposes, including, without limitation, voting and distribution. If and to the extent that you and the Debtors are unable to resolve the issues raised by the Rule 3018 Motion prior to the Voting Deadline, the Court shall determine the number and pro rata share of your Interests for all purposes, including, without limitation, voting and distribution under the Plan.

8.   NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT, THE DISCLOSURE STATEMENT, PLAN OR OTHER MATERIALS AUTHORIZED BY THE COURT.

9.   PLEASE RETURN YOUR BALLOT PROMPTLY TO THE VOTING AGENT.

**IF BY MAIL:**

**BMC GROUP, INC.**
**ATTN: AAOG BALLOT PROCESSING**
**PO BOX 90100**
**LOS ANGELES, CA 90009**

**IF BY HAND-DELIVERY OR OVERNIGHT COURIER:**

**BMC GROUP, INC.**
**ATTN: AAOG BALLOT PROCESSING**
**3732 W 120TH STREET**
**HAWTHORNE, CA 90250**

**IF ELECTRONICALLY BY EMAIL:**

**AAOG@BMCGROUP.COM**

10. IF YOU HAVE RECEIVED A DAMAGED BALLOT, HAVE LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CALL THE VOTING AGENT AT 1-888-909-0100.

11. PLEASE NOTE THAT THE VOTING AGENT IS NOT PERMITTED TO GIVE LEGAL ADVICE. ANY PARTY RECEIVING THIS BALLOT SHOULD CONSULT AN ATTORNEY REGARDING ANY QUESTIONS IT MAY HAVE RELATING TO THIS BALLOT AND THE OTHER DOCUMENTS REFERENCED HEREIN.

[*Remainder of Page Left Blank*]

**PLEASE READ THE ATTACHED VOTING INFORMATION AND
INSTRUCTIONS BEFORE COMPLETING THIS BALLOT**

> **PLEASE COMPLETE ALL ITEMS BELOW. IF THIS BALLOT
> IS NOT SIGNED ON THE APPROPRIATE LINES, THIS BALLOT
> WILL NOT BE VALID OR COUNTED AS HAVING BEEN CAST.**

**Item 1.** **Amount of Interest.**

The undersigned hereby certifies that as of the Voting Record Date, the undersigned was the holder of Class 8 Interests in the following aggregate amount (insert amount in box below):

> Number of Shares:[2] _____
>
> Percentage of Total Outstanding Shares: _____
>
> [NOTE: This Information To Be Completed by
> Voting Agent Prior to Solicitation]

**Item 2.** **Class Vote.** The undersigned, a holder of **an Interest in Class 8** in the amount of its respective portion of the aggregate amount of Interests as Allowed pursuant to the Plan, votes to (check one box):

☐    **Accept** the Plan.          ☐    **Reject** the Plan.

*[Remainder of page left blank]*

---

[2] For voting purposes only, subject to tabulation rules.

**Item 3.** Releases.

*If the Plan becomes effective, the exculpation, releases and injunctions contained in Article XVI of the Plan, including without limitation the releases of Claims against or Interests in the Released Parties, each to the extent provided therein, will become effective and binding on all Creditors of the Debtor.[3] You are urged to carefully review Article XVI of the Plan.*

**IMPORTANT INFORMATION REGARDING CERTAIN RELEASES BY HOLDERS OF CLAIMS AND INTERESTS:**

IF YOU VOTE TO ACCEPT OR REJECT THE PLAN AND SUBMIT YOUR BALLOT WITHOUT CHECKING THE BOX BELOW, YOU WILL BE DEEMED TO CONSENT TO THE RELEASES PROVIDED IN SECTION 16.3.1 OF THE PLAN. IF YOU FAIL TO VOTE, YOU WILL BE DEEMED TO HAVE CONSENTED TO THE RELEASES PROVIDED IN SECTION 16.3.1.

YOU MAY OPT OUT OF THE RELEASES PROVIDED IN SECTION 16.3.1 OF THE PLAN (AS SET FORTH BELOW) BY CHECKING THE BOX BELOW AND YOU WILL NOT BE BOUND BY SUCH RELEASES. CHECK THE BOX BELOW IF YOU ELECT NOT TO GRANT THE RELEASES PROVIDED IN SECTION 16.3.1 OF THE PLAN. THE ELECTION TO WITHHOLD CONSENT TO GRANT SUCH RELEASES IS AT YOUR OPTION.

The Holder of Class 8 Interests set forth in Item 1 elects to:

[_____] Opt out of the releases provided in Section 16.3.1 of the Plan

16.3   Releases

    16.3.1   Releases by Holders of Claims and Interests

**Except as otherwise expressly provided in the Plan, the Confirmation Order, the Sale Order (Including the Wind-Down Budget), the Purchase Agreement and the Settlement/Sale Transaction, on the Effective Date, for good and valuable consideration, a Holder of a Claim against and/or Interest in the Debtors who: (I) votes to accept the Plan, and does not opt out of the Releases contained in the Plan; (II) abstains from voting on the Plan; or (III) votes to reject the Plan, and does not opt out of the Releases contained in the Plan, shall be deemed to completely and forever release, waive, void, extinguish and discharge unconditionally, each and all of the Released Parties of and from any and all claims, obligations, suits, judgments, damages, debts, rights, remedies and liabilities of any**

---

[3] The defines "Released Parties as each of: (i) the Debtors; (ii) the First Lien Secured Parties and Second Lien Secured Parties; (iii) the Professionals; (iv) in each case of (i) through (iii), their predecessors, successors, and assigns, professionals, advisors, accountants, attorneys, investment bankers, and consultants; and (v) in each case of (i) through (iv), their current and former affiliates, subsidiaries, funds, portfolio companies, management companies, employees, agents, directors and officers, and other representatives (each solely in their capacity as such).

nature whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are or may be based in whole or part on any act, omission, transaction, event or other circumstance taking place or existing on or prior to the Effective Date (including prior to the Petition Date) in connection with or related to the Debtors, their assets, property and estates, the Chapter 11 Cases, the Plan or the Disclosure Statement. For the avoidance of doubt, the foregoing releases described in the Plan shall not waive, affect, limit, restrict or otherwise modify the rights of the Debtors and the Liquidating Trustee to object to any Claim or Interest not expressly Allowed under the Plan.

Notwithstanding the foregoing and for the avoidance of doubt, the releases provided under the Sale Order, the Purchase Agreement and the Settlement/Sale Transaction shall govern any releases as among KCO, the Purchasers, the Debtors, the Buyer Settlement Parties (as defined in the Purchase Agreement) and the Debtor Settlement Parties (as defined in the Purchase Agreement) and other parties referenced therein, none of which shall be affected by the terms of the Plan.

16.3.2   Releases Approved by Confirmation Order

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval pursuant to Bankruptcy Rule 9019, of the releases set forth in Section 16.3.1, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that such release is: (i) in exchange for the good and valuable consideration provided by the Released Parties; (ii) a good faith settlement and compromise of the claims released by Section 16.3.1; (iii) in the best interests of the Debtors, their estates and all Holders of Claims and Interests; (iv) fair, equitable and reasonable; (v) given and made after due notice and opportunity for a hearing; and (vi) a bar to any Person asserting any claim released by Section 16.3.1. Notwithstanding the foregoing, nothing in Section 16.3.1 shall release any Released Party or other Entity or Person from its respective rights and obligations under the Plan or the Confirmation Order.

16.5   Exculpation

The Debtors and the Debtors' Professionals SHALL NOT BE LIABLE FOR ANY cause of action arising out of or related to any act or omission in connection with or relating to: (a) the formulation, preparation, solicitation, dissemination, negotiation, or filing of the Plan, the Plan Supplement, the Disclosure Statement, or any contract, instrument, release, or other agreement or document created or entered into in connection with any of the foregoing; (b) the Chapter 11 Cases; (c) the pursuit of Confirmation of the Plan; (d) the administration and implementation of the Plan; (e) the distribution of property under the Plan; and/or (f) any other prepetition or postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring and/or liquidation of the Debtors. All holders of Claims and Interests are enjoined from asserting or prosecuting any Claim or cause of action against the Debtors or the Debtors'

Professionals as to any Claim or cause of action as to which the Debtors and the Debtors' Professionals have been exculpated pursuant to the Plan.

      16.6   Permanent Injunction

**Except as otherwise expressly provided in the Plan, the Confirmation Order, the Sale Order (Including the Wind-Down Budget), the Purchase Agreement and the Settlement/Sale Transaction, all Persons who have held, hold or may hold Claims against, or Interests in, the Debtors are permanently enjoined, on and after the Effective Date, to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, from: (i) commencing or continuing in any manner any action or other proceeding of any kind against the Debtors, the Liquidating Trust, or their assets with respect to any such Claim or Interest in any venue other than the United States Bankruptcy Court for the Western District of Texas; (ii) the enforcement, attachment, collection, or recovery by any manner or means of judgment, award, decree or order against the Debtors, the Liquidating Trust, or their assets on account of any such Claim or Interest in any venue other than the United States Bankruptcy Court for the Western District of Texas; (iii) creating, perfecting, or enforcing any encumbrance of any kind against the Debtors, the Liquidating Trust, or their assets on account of any such Claim or Interest in any venue other than the United States Bankruptcy Court for the Western District of Texas; and (iv) asserting any right of setoff, recoupment or subrogation of any kind against any obligation due from the Debtors, the Liquidating Trust, or their assets on account of any such Claim or Interest in any venue other than the United States Bankruptcy Court for the Western District of Texas.**

*[Remainder of Page Left Blank]*

**Item 4. Acknowledgement.** By signing this Ballot, the undersigned acknowledges that it has reviewed the Disclosure Statement, Plan and the other applicable solicitation materials and certifies that the undersigned is the claimant or has the power and authority to vote to accept or reject the Plan on behalf of the claimant. The undersigned understands that an otherwise properly completed, executed, and timely returned Ballot that does not indicate either acceptance or rejection of the Plan, or indicates both acceptance and rejection of the Plan, will not be counted. Original and facsimile signatures are acceptable.

_____
Name of Equity Security Holder

_____
Signature

_____
If by Authorized Agent, Name and Title

_____
Name of Institution

_____
Street Address
City, State, Zip Code

_____
Telephone Number

_____
Email

_____
Date Completed

☐    Please check here if the above address is a Change of Address that you would like reflected in the Master Service List for these Chapter 11 Cases.

**PLEASE MAKE SURE YOU HAVE PROVIDED ALL INFORMATION REQUESTED ON THIS BALLOT.** PLEASE READ AND FOLLOW THE INSTRUCTIONS SET FORTH HEREIN CAREFULLY. PLEASE COMPLETE, SIGN, AND DATE THIS BALLOT AND PROMPTLY RETURN IT BY MAIL, HAND DELIVERY, OVERNIGHT COURIER OR ELECTRONICALLY BY EMAIL SO THAT IT IS ACTUALLY RECEIVED BY THE VOTING AGENT BY THE VOTING DEADLINE.

## EXHIBIT C

## Notice of Disputed Holder Status

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| | § | |
| In re: | § | Chapter 11 |
| | § | |
| ALL AMERICAN OIL & GAS | § | Case No. 18-52693-rbk |
| INCORPORATED, *et al.*, | § | |
| | § | Jointly Administered Under |
| Debtors. | § | Case No. 18-52693-rbk |
| | § | |

**NOTICE OF NON-VOTING STATUS AND TEMPORARY ALLOWANCE
PROCEDURES WITH RESPECT TO DISPUTED CLAIMS OR INTERESTS**

**TO:  HOLDERS OF DISPUTED CLAIMS OR DISPUTED INTERESTS:**

1.      On [_____], the United States Bankruptcy Court for the Western District of Texas (the "Bankruptcy Court") entered an order (the "Disclosure Statement Order") approving, among other things, the Debtors' disclosure statement (as may be amended, supplemented or otherwise modified from time to time and including all exhibits or supplements thereto, the "Disclosure Statement") related to the Debtors' joint plan of liquidation (as may be amended, supplemented or otherwise modified from time to time and including all exhibits or supplements thereto, the "Plan").

2.      Pursuant to the Disclosure Statement Order, the Bankruptcy Court also (a) approved the solicitation, ballot tabulation and notice procedures with respect to confirmation of the Plan, (b) the forms of ballots and notices attached as exhibits to the Motion related to soliciting votes to accept or reject the Plan, (c) approved the Plan confirmation schedule, and (d) scheduled the hearing to consider confirmation of the Plan.

3.      **YOUR CLAIM OR INTEREST, IF ANY, IS (a) ASSERTED IN A PROOF OF CLAIM AS CONTINGENT, WHOLLY UNLIQUIDATED, OR FOR $0.00, (b) ASSERTED IN AN UNTIMELY PROOF OF CLAIM, (c) AS TO WHICH AN OBJECTION TO THE CLAIM OR INTEREST IS PENDING, (d) ASSERTED IN AN AMOUNT THAT DIFFERS FROM THE NUMBER AND PRO RATA SHARE OF SUCH INTEREST IN THE SCHEDULE OF INTERESTS, OR (e) IS OTHERWISE A "DISPUTED CLAIM" OR "DISPUTED INTEREST" PURSUANT TO THE PLAN.**

4.      Accordingly, you are not entitled to vote, and the enclosed documents are provided for informational purposes only. To seek temporary allowance of your claim or interest for purposes of voting on the Plan, you must: (a) file a motion pursuant to Federal Rule of Bankruptcy Procedure 3018 (a "Rule 3018 Motion") with the Bankruptcy Court seeking such temporary allowance; (b) if a Rule 3018 Motion is timely filed, request a ballot from the Voting Agent at the address, email address or phone number listed below; (c) on or before [_____],

complete and return the ballot according to the instructions contained on the ballot. The procedures for filing a Rule 3018 Motion, including the deadline established by the Bankruptcy Court for filing such motions, which is [_____], are set forth in the Disclosure Statement Order.

5.      A hearing to consider whether confirmation of the Plan is appropriate will be held on [_____] (**prevailing Central Time**), before the Honorable Ronald B. King, United States Bankruptcy Judge, United States Bankruptcy Court for the Western District of Texas, San Antonio Division, Courtroom #1, Hipolito F. Garcia Federal Judicial Bldg., 615 East Huron Street, Room 597, San Antonio, TX 78205. The hearing may be adjourned from time to time without further notice to creditors or other parties in interest, other than by announcement of such adjournment in open court.

6.      The deadline for filing objections to confirmation of the Plan shall be [_____] (the "Plan Objection Deadline"). All objections to confirmation of the Plan must be (a) filed with the Office of the Clerk, United States Bankruptcy Court for the Western District of Texas, San Antonio Division, 615 E. Houston St., Courtroom 1, San Antonio, Texas 78205; (b) served on the following parties so as to be received no later than 3:00 p.m. (prevailing Central Time) on [_____]: (i) the Debtors: All American Oil & Gas Incorporated; Manor Oil, Inc., and Hilltop Power, Inc., 9601 McAllister Freeway, Suite 221, San Antonio, Texas 78216; (ii) Debtors' counsel: Hogan Lovells US LLP, 1999 Avenue of the Stars, Los Angeles, CA, 90067, Attn: Richard L. Wynne, Bennett Spiegel and Erin Brady (Telephone: (310) 785-4600, email: richard.wynne@hoganlovells.com, bennett.spiegel@hoganlovells.com and/or erin.brady@hoganlovells.com) and Dykema Gossett PLC, 112 E. Pecan Street, Suite 1800 San Antonio, Texas 78205, Attn: Deborah D. Williamson and Danielle N. Rushing (Telephone: (210) 554-5528, email DWilliamson@dykema.com and/or DRushing@dykema.com); (iii) counsel to the Committee: Brinkman Portillo Ronk, APC, 9500 Ray White Road, Second Floor, Ft. Worth, Texas 76244, Attn: Daren R. Brinkman (Telephone: (682) 226-7437, email firm@brinkmanlaw.com) and 4333 Park Terrace Drive, Suite 205, Westlake Village, CA 91361, Attn: Daren R. Brinkman (Telephone: (818) 597-2992, email: firm@brinkmanlaw.com); and (iv) United States Department of Justice, Office of the United States Trustee for the Western District of Texas, San Antonio Division, 615 E. Houston St., Room 533, San Antonio, Texas 78205 (Attn: Kevin M. Epstein, email: Kevin.M.Epstein@usdoj.gov.

7.      The Plan may be further modified, if necessary, pursuant to Bankruptcy Code section 1127, prior to, during, or as a result of the confirmation hearing, without further notice to parties in interest.

8.      Copies of the Disclosure Statement Order, the Disclosure Statement, and the Plan may be obtained from the Voting Agent by contacting the Voting Agent (i) by email: AAOG@BMCGroup.com; (ii) telephonically at 1-888-909-0100; or (iii) by regular mail: BMC Group, Inc., PO Box 90100, Los Angeles, CA 90009. Copies of the Disclosure Statement Order, the Disclosure Statement, and the Plan may also be accessed free of charge at the Debtor's case site, https://www.bmcgroup.com/restructuring/geninfo.aspx?ClientID=434.

*[Remainder of page left blank]*

Dated: [_____], 2019

Respectfully submitted,

By: */s/ Draft* _____

**DYKEMA GOSSETT PLLC**
Deborah D. Williamson
dwilliamson@dykema.com
Patrick L. Huffstickler
phuffstickler@dykema.com
Danielle N. Rushing
drushing@dykema.com
112 East Pecan Street, Suite 1800
San Antonio, Texas 78205
Telephone: (210) 554-5500
Facsimile: (210) 226-8395

– and –

**HOGAN LOVELLS US LLP**
Richard L. Wynne
Pro hac vice admission
richard.wynne@hoganlovells.com
Bennett L. Spiegel
Pro hac vice admission
bennett.spiegel@hoganlovells.com
Erin N. Brady
Pro hac vice admission
erin.brady@hoganlovells.com
1999 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 785-4600
Facsimile: (310) 785-4601

– and –

Christopher R. Bryant (NY 3934973)
Pro hac vice admission
chris.bryant@hoganlovells.com
John D. Beck (TX 24073898)
Pro hac vice admission
john.beck@hoganlovells.com
Sean A. Feener (NY 5605654)
Pro hac vice admission
sean.feener@hoganlovells.com
875 Third Avenue
New York, New York 10022
Telephone: (212) 918-3000
Facsimile: (212) 918-3100

**COUNSEL FOR THE DEBTORS**

**<u>EXHIBIT D</u>**

**Notice of Non-Voting Status**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| ALL AMERICAN OIL & GAS | § | Case No. 18-52693-rbk |
| INCORPORATED, *et al.*, | § | |
| | § | Jointly Administered Under |
| Debtors. | § | Case No. 18-52693-rbk |
| | § | |

**NOTICE OF NON-VOTING STATUS UNDER DEBTORS'**
**JOINT CHAPTER 11 PLAN OF LIQUIDATION**

**TO:    HOLDERS OF ADMINISTRATIVE CLAIMS**
**HOLDERS OF PRIORITY TAX CLAIMS**
**HOLDERS OF CLAIMS IN CLASSES 1, 4 AND 6**

**PLEASE TAKE NOTICE THAT:**

1.      On [_____], the United States Bankruptcy Court for the Western District of Texas (the "Bankruptcy Court") entered an order (the "Disclosure Statement Order") approving, among other things, the Debtors' disclosure statement (as may be amended, supplemented or otherwise modified from time to time and including all exhibits or supplements thereto, the "Disclosure Statement") related to the Debtors' joint plan of liquidation (as may be amended, supplemented or otherwise modified from time to time and including all exhibits or supplements thereto, the "Plan").

2.      Pursuant to the Disclosure Statement Order, the Bankruptcy Court also (a) approved the solicitation, ballot tabulation and notice procedures with respect to confirmation of the Plan, (b) the forms of ballots and notices attached as exhibits to the Motion related to soliciting votes to accept or reject the Plan, (c) approved the Plan confirmation schedule, and (d) scheduled the hearing to consider confirmation of the Plan.

3.      You are receiving this Notice because you may be the holder of an Administrative Claim, Priority Tax Claim, or a claim which has been classified in Classes 1, 4 or 6, which are unimpaired. Class 1 is comprised of Other Priority Claims, Class 4 is comprised of Other Secured Claims and Class 6 is comprised of Intercompany Claims.

4.      Administrative Claims and Priority Tax Claims are not classified under the Plan and are not entitled to vote. Under the Plan, claims in Classes 1, 4 and 6 are unimpaired. Thus, holders of such claims are conclusively presumed to accept the Plan pursuant to Bankruptcy Code section 1126(f), and, as such, are not entitled to vote on the Plan. Nevertheless, you are a party-in-interest in the Debtors' chapter 11 cases. You are entitled to participate in the Debtors' chapter 11 cases, including by filing objections to confirmation of the Plan.

5.     THIS NOTICE DOES NOT CONSTITUTE AND SHALL NOT BE DEEMED TO CONSTITUTE AN ADMISSION BY THE DEBTORS OF THE NATURE, VALIDITY OR AMOUNT OF YOUR CLAIM. IF YOUR CLAIM HAS NOT BEEN ALLOWED, THE DEBTORS RESERVE THE RIGHT TO FILE AN OBJECTION TO THE NATURE, VALIDITY OR AMOUNT OF YOUR CLAIM.

6.     A hearing to consider whether confirmation of the Plan is appropriate will be held on [____] (prevailing Central Time), before the Honorable Ronald B. King, United States Bankruptcy Judge, United States Bankruptcy Court for the Western District of Texas, San Antonio Division, Courtroom #1, Hipolito F. Garcia Federal Judicial Bldg., 615 East Huron Street, Room 597, San Antonio, TX 78205. The hearing may be adjourned from time to time without further notice to creditors or other parties in interest, other than by announcement of such adjournment in open court.

7.     The deadline for filing objections to confirmation of the Plan shall be [X] (the "Plan Objection Deadline"). All objections to confirmation of the Plan must be (a) filed with the Office of the Clerk, United States Bankruptcy Court for the Western District of Texas, San Antonio Division, 615 E. Houston St., Courtroom 1, San Antonio, Texas 78205; (b) served on the following parties so as to be received no later than 3:00 p.m. (prevailing Central Time) on [_____]: (i) the Debtors: All American Oil & Gas Incorporated; Manor Oil, Inc., and Hilltop Power, Inc., 9601 McAllister Freeway, Suite 221, San Antonio, Texas 78216; (ii) Debtors' counsel: Hogan Lovells US LLP, 1999 Avenue of the Stars, Los Angeles, CA, 90067, Attn: Richard L. Wynne, Bennett Spiegel and Erin Brady (Telephone: (310) 785-4600, email: richard.wynne@hoganlovells.com, bennett.spiegel@hoganlovells.com and/or erin.brady@hoganlovells.com) and Dykema Gossett PLC, 112 E. Pecan Street, Suite 1800 San Antonio, Texas 78205, Attn: Deborah D. Williamson and Danielle N. Rushing (Telephone: (210) 554-5528, email DWilliamson@dykema.com and/or DRushing@dykema.com); (iii) counsel to the Committee: Brinkman Portillo Ronk, APC, 9500 Ray White Road, Second Floor, Ft. Worth, Texas 76244, Attn: Daren R. Brinkman (Telephone: (682) 226-7437, email firm@brinkmanlaw.com) and 4333 Park Terrace Drive, Suite 205, Westlake Village, CA 91361, Attn: Daren R. Brinkman (Telephone: (818) 597-2992, email: firm@brinkmanlaw.com); and (iv) United States Department of Justice, Office of the United States Trustee for the Western District of Texas, San Antonio Division, 615 E. Houston St., Room 533, San Antonio, Texas 78205 (Attn: Kevin M. Epstein, email: Kevin.M.Epstein@usdoj.gov.

8.     The Plan may be further modified, if necessary, pursuant to Bankruptcy Code section 1127, prior to, during, or as a result of the Confirmation Hearing, without further notice to parties in interest.

9.     YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY, INCLUDING THE RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER. ARTICLE XVI CONTAINS THE FOLLOWING THE RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS:

16.3 <u>Releases</u>

16.3.1 Releases by Holders of Claims and Interests

**Except as otherwise expressly provided in the Plan, the Confirmation Order, the Sale Order (Including the Wind-Down Budget), the Purchase Agreement and the Settlement/Sale Transaction, on the Effective Date, for good and valuable consideration, a Holder of a Claim against and/or Interest in the Debtors who: (I) votes to accept the Plan, and does not opt out of the Releases contained in the Plan; (II) abstains from voting on the Plan; or (III) votes to reject the Plan and does not opt out of the Releases contained in the Plan, shall be deemed to completely and forever release, waive, void, extinguish and discharge unconditionally, each and all of the Released Parties of and from any and all claims, obligations, suits, judgments, damages, debts, rights, remedies and liabilities of any nature whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are or may be based in whole or part on any act, omission, transaction, event or other circumstance taking place or existing on or prior to the Effective Date (including prior to the Petition Date) in connection with or related to the Debtors, their assets, property and estates, the Chapter 11 Cases, the Plan or the Disclosure Statement. For the avoidance of doubt, the foregoing releases described in the Plan shall not waive, affect, limit, restrict or otherwise modify the rights of the Debtors and the Liquidating Trustee to object to any Claim or Interest not expressly Allowed under the Plan.**

**Notwithstanding the foregoing and for the avoidance of doubt, the releases provided under the Sale Order, the Purchase Agreement and the Settlement/Sale Transaction shall govern any releases as among KCO, the Purchasers, the Debtors, the Buyer Settlement Parties (as defined in the Purchase Agreement) and the Debtor Settlement Parties (as defined in the Purchase Agreement) and other parties referenced therein, none of which shall be affected by the terms of the Plan.**

16.3.2 Releases Approved by Confirmation Order

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval pursuant to Bankruptcy Rule 9019, of the releases set forth in Section 16.3.1, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that such release is: (i) in exchange for the good and valuable consideration provided by the Released Parties; (ii) a good faith settlement and compromise of the claims released by Section 16.3.1; (iii) in the best interests of the Debtors, their estates and all Holders of Claims and Interests; (iv) fair, equitable and reasonable; (v) given and made after due notice and opportunity for a hearing; and (vi) a bar to any Person asserting any claim released by Section 16.3.1. Notwithstanding the foregoing, nothing in Section 16.3.1 shall release any Released Party or other Entity or Person from its respective rights and obligations under the Plan or the Confirmation Order.**

16.5    Exculpation

The Debtors and the Debtors' Professionals SHALL NOT BE LIABLE FOR ANY cause of action arising out of or related to any act or omission in connection with or relating to: (a) the formulation, preparation, solicitation, dissemination, negotiation, or filing of the Plan, the Plan Supplement, the Disclosure Statement, or any contract, instrument, release, or other agreement or document created or entered into in connection with any of the foregoing; (b) the Chapter 11 Cases; (c) the pursuit of Confirmation of the Plan; (d) the administration and implementation of the Plan; (e) the distribution of property under the Plan; and/or (f) any other prepetition or postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring and/or liquidation of the Debtors. All holders of Claims and Interests are enjoined from asserting or prosecuting any Claim or cause of action against the Debtors or the Debtors' Professionals as to any Claim or cause of action as to which the Debtors and the Debtors' Professionals have been exculpated pursuant to the Plan.

16.6    Permanent Injunction

Except as otherwise expressly provided in the Plan, the Confirmation Order, the Sale Order (Including the Wind-Down Budget), the Purchase Agreement and the Settlement/Sale Transaction, all Persons who have held, hold or may hold Claims against, or Interests in, the Debtors are permanently enjoined, on and after the Effective Date, to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, from: (i) commencing or continuing in any manner any action or other proceeding of any kind against the Debtors, the Liquidating Trust, or their assets with respect to any such Claim or Interest in any venue other than the United States Bankruptcy Court for the Western District of Texas; (ii) the enforcement, attachment, collection, or recovery by any manner or means of judgment, award, decree or order against the Debtors, the Liquidating Trust, or their assets on account of any such Claim or Interest in any venue other than the United States Bankruptcy Court for the Western District of Texas; (iii) creating, perfecting, or enforcing any encumbrance of any kind against the Debtors, the Liquidating Trust, or their assets on account of any such Claim or Interest in any venue other than the United States Bankruptcy Court for the Western District of Texas; and (iv) asserting any right of setoff, recoupment or subrogation of any kind against any obligation due from the Debtors, the Liquidating Trust, or their assets on account of any such Claim or Interest in any venue other than the United States Bankruptcy Court for the Western District of Texas.

*[Remainder of Page Left Blank]*

Dated: [_____], 2019

Respectfully submitted,

By: */s/ Draft* _____

**DYKEMA GOSSETT PLLC**
Deborah D. Williamson
dwilliamson@dykema.com
Patrick L. Huffstickler
phuffstickler@dykema.com
Danielle N. Rushing
drushing@dykema.com
112 East Pecan Street, Suite 1800
San Antonio, Texas 78205
Telephone: (210) 554-5500
Facsimile: (210) 226-8395

– and –

**HOGAN LOVELLS US LLP**
Richard L. Wynne
Pro hac vice admission
richard.wynne@hoganlovells.com
Bennett L. Spiegel
Pro hac vice admission
bennett.spiegel@hoganlovells.com
Erin N. Brady
Pro hac vice admission
erin.brady@hoganlovells.com
1999 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 785-4600
Facsimile: (310) 785-4601

– and –

Christopher R. Bryant (NY 3934973)
Pro hac vice admission
chris.bryant@hoganlovells.com
John D. Beck (TX 24073898)
Pro hac vice admission
john.beck@hoganlovells.com
Sean A. Feener (NY 5605654)
Pro hac vice admission
sean.feener@hoganlovells.com
875 Third Avenue
New York, New York 10022
Telephone: (212) 918-3000
Facsimile: (212) 918-3100

**COUNSEL FOR THE DEBTORS**

## EXHIBIT E

## Ballot Tabulation Procedures

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| ALL AMERICAN OIL & GAS | § | Case No. 18-52693-rbk |
| INCORPORATED, *et al.*, | § | |
| | § | Jointly Administered Under |
| Debtors. | § | Case No. 18-52693-rbk |
| | § | |

## PROCEDURES FOR TABULATION OF BALLOTS

1.      Subject to paragraph 3 below, any Ballot that is timely received, that contains sufficient information to permit the identification of the claimant and that is cast as an acceptance or rejection of the Plan will be counted and will be deemed to be cast as an acceptance or rejection, as the case may be, of the Plan.  The Debtors request that this Court authorize the Voting Agent to accept timely submitted electronic Ballots.

2.      Ballots must be submitted to the Voting Agent by the following methods:

**IF BY MAIL:**

**BMC GROUP, INC.**
**ATTN: AAOG BALLOT PROCESSING**
**PO BOX 90100**
**LOS ANGELES, CA 90009**

**IF BY HAND-DELIVERY OR OVERNIGHT COURIER:**

**BMC GROUP, INC.**
**ATTN: AAOG BALLOT PROCESSING**
**3732 W 120TH STREET**
**HAWTHORNE, CA 90250**

**IF ELECTRONICALLY BY EMAIL:**

**AAOG@BMCGROUP.COM**

3.      The following Ballots will not be counted or considered for any purpose in determining whether the Plan has been accepted or rejected:

(a)     any Ballot received after the Voting Deadline unless the Debtors have granted an extension of the Voting Deadline with respect to such Ballot;

(b)     any Ballot that is illegible or contains insufficient information to permit the identification of the claimant;

(c)     any Ballot cast by any person or entity that does not hold a Claim or Interest in a Class that is entitled to vote to accept or reject the Plan;

(d)     any Ballot cast for a filed Proof of Claim or Proof of Interest designated as contingent, unliquidated, or disputed, or as zero or unknown in amount, and for which no Rule 3018 Motion has been filed by the Rule 3018 Motion Deadline;

(e)     any Ballot in respect of a Proof of Claim or Proof of Interest that is subject to an objection pending before the Court for reduction (only to the extent of such objection);

(f)     any Ballot cast by a Holder of Interests in an amount that differs from the amount provided on the Ballot and in the Schedule of Interests and as to which no Rule 3018 Motion was filed;

(g)     any Ballot timely received that is cast in a manner that indicates neither an acceptance nor rejection or the Plan or that indicates both an acceptance and rejection of the Plan; or

(h)     any unsigned Ballot.

4.     Notwithstanding Bankruptcy Rule 3018(a), whenever two or more Ballots that comply with these procedures are cast voting the same Claim or Interest prior to the Voting Deadline, the last dated valid Ballot received prior to the Voting Deadline will be deemed to reflect the voter's intent and thus to supersede any prior Ballots, without prejudice to the Debtors' right to object to the validity of the second Ballot on any basis permitted by law, including under Bankruptcy Rule 3018(a), and, if the objection is sustained, to count the first dated valid Ballot for all purposes. Ballots   received by the Voting Agent on the same day, but which are voted inconsistently, will not be counted.

5.     Claim splitting is not permitted. Creditors and equity security holders who vote must vote all of their Claims or Interests within a particular Class to either accept or reject the Plan.

6.     Any claimant who has delivered a valid Ballot for the acceptance or rejection of the Plan may withdraw such acceptance or rejection by delivering a written notice of withdrawal to the Voting Agent at any time prior to the  Voting Deadline.  A notice of withdrawal, to be valid, should (a) contain the description of the Claim or Interest to which   it relates   and   the aggregate principal amount represented by such Claim or   Interest,   (b)   be   signed   by   the

withdrawing party in the same manner as the Ballot being withdrawn, (c) contain a certification that the withdrawing party owns the  Claim or Interest and possesses the right to withdraw the vote sought to be withdrawn and (d) be timely received by the Voting Agent.

**EXHIBIT F**

**Notice of Plan Supplement**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| ALL AMERICAN OIL & GAS | § | Case No. 18-52693-rbk |
| INCORPORATED, *et al.*, | § | |
| | § | Jointly Administered Under |
| Debtors. | § | Case No. 18-52693-rbk |
| | § | |

**NOTICE OF FILING OF PLAN SUPPLEMENT PURSUANT TO
DEBTORS' JOINT CHAPTER 11 PLAN OF LIQUIDATION**

1.      On [_____], the United States Bankruptcy Court for the Western District of Texas (the "Bankruptcy Court") entered an order (the "Disclosure Statement Order") approving, among other things, the Debtors' disclosure statement (as may be amended, supplemented or otherwise modified from time to time and including all exhibits or supplements thereto, the "Disclosure Statement") related to the Debtors' joint plan of liquidation (as may be amended, supplemented or otherwise modified from time to time and including all exhibits or supplements thereto, the "Plan")..

2.      As contemplated by the Plan and the Disclosure Statement Order, the Debtors filed the Plan Supplement with the Court on [_____], 2019.  The Plan Supplement contains the following documents: (a) the Liquidating Trust Agreement and (b) any and all other documentation that is contemplated by the Plan.  Notwithstanding the foregoing, the Debtors have the right to amend the documents contained in, and exhibits to, the Plan Supplement through the Effective Date.

3.      A hearing to consider whether confirmation of the Plan is appropriate will be held on [_____] **(prevailing Central Time),** before the Honorable Ronald B. King, United States Bankruptcy Judge, United States Bankruptcy Court for the Western District of Texas, San Antonio Division, Courtroom #1, Hipolito F. Garcia Federal Judicial Bldg., 615 East Huron Street, Room 597, San Antonio, TX 78205. The hearing may be adjourned from time to time without further notice to creditors or other parties in interest, other than by announcement of such adjournment in open court.

4.   The deadline for filing objections to confirmation of the Plan shall be [_____] (the "Plan Objection Deadline"). All objections to confirmation of the Plan must be (a) filed with the Office of the Clerk, United States Bankruptcy Court for the Western District of Texas, San Antonio Division, 615 E. Houston St., Courtroom 1, San Antonio, Texas 78205; (b) served on the following parties so as to be received no later than 3:00 p.m. (prevailing Central Time) on [_____]: (i) the Debtors: All American Oil & Gas Incorporated; Manor Oil, Inc., and Hilltop Power, Inc., 9601 McAllister Freeway, Suite 221, San Antonio, Texas 78216; (ii) Debtors'

counsel: Hogan Lovells US LLP, 1999 Avenue of the Stars, Los Angeles, CA, 90067, Attn: Richard L. Wynne, Bennett Spiegel and Erin Brady (Telephone: (310) 785-4600, email: richard.wynne@hoganlovells.com, bennett.spiegel@hoganlovells.com and/or erin.brady@hoganlovells.com) and Dykema Gossett PLC, 112 E. Pecan Street, Suite 1800 San Antonio, Texas 78205, Attn: Deborah D. Williamson and Danielle N. Rushing (Telephone: (210) 554-5528, email DWilliamson@dykema.com and/or DRushing@dykema.com); (iii) counsel to the Committee: Brinkman Portillo Ronk, APC, 9500 Ray White Road, Second Floor, Ft. Worth, Texas 76244, Attn: Daren R. Brinkman (Telephone: (682) 226-7437, email firm@brinkmanlaw.com) and 4333 Park Terrace Drive, Suite 205, Westlake Village, CA 91361, Attn: Daren R. Brinkman (Telephone: (818) 597-2992, email: firm@brinkmanlaw.com); and (iv) United States Department of Justice, Office of the United States Trustee for the Western District of Texas, San Antonio Division, 615 E. Houston St., Room 533, San Antonio, Texas 78205 (Attn: Kevin M. Epstein, email: Kevin.M.Epstein@usdoj.gov

If you would like to obtain a copy of the Disclosure Statement, the Plan, the Plan Supplement, or related documents, you should contact BMC Group, Inc., the notice and claims agent retained by the Debtors in these Chapter 11 Cases (the "Notice and Claims Agent"), by: (a) visiting the Debtors' case site at: https://www.bmcgroup.com/restructuring/geninfo.aspx?ClientID=434; (b) writing to BMC Group, Inc., at PO Box 90100, Los Angeles, CA 90009.

5.   YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY, INCLUDING THE RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER. ARTICLE XVI CONTAINS THE FOLLOWING THE RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS:

     16.3   Releases

       16.3.1   Releases by Holders of Claims and Interests

**Except as otherwise expressly provided in the Plan, the Confirmation Order, the Sale Order (Including the Wind-Down Budget), the Purchase Agreement and the Settlement/Sale Transaction, on the Effective Date, for good and valuable consideration, a Holder of a Claim against and/or Interest in the Debtors who: (I) votes to accept the Plan, and does not opt out of the Releases contained in the Plan; (II) abstains from voting on the Plan; or (III) votes to reject the Plan and does not opt out of the Releases contained in the Plan, shall be deemed to completely and forever release, waive, void, extinguish and discharge unconditionally, each and all of the Released Parties of and from any and all claims, obligations, suits, judgments, damages, debts, rights, remedies and liabilities of any nature whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are or may be based in whole or part on any act, omission, transaction, event or other circumstance taking place or existing on or prior to the Effective Date (including prior to the Petition Date) in connection with or related to the Debtors, their assets, property and estates, the Chapter 11 Cases, the Plan or the Disclosure Statement. For the avoidance of doubt, the foregoing releases described in the Plan shall not waive, affect, limit, restrict or otherwise modify the rights of the Debtors and the**

Liquidating Trustee to object to any Claim or Interest not expressly Allowed under the Plan.

Notwithstanding the foregoing and for the avoidance of doubt, the releases provided under the Sale Order, the Purchase Agreement and the Settlement/Sale Transaction shall govern any releases as among KCO, the Purchasers, the Debtors, the Buyer Settlement Parties (as defined in the Purchase Agreement) and the Debtor Settlement Parties (as defined in the Purchase Agreement) and other parties referenced therein, none of which shall be affected by the terms of the Plan.

16.3.2   Releases Approved by Confirmation Order

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval pursuant to Bankruptcy Rule 9019, of the releases set forth in Section 16.3.1, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that such release is: (i) in exchange for the good and valuable consideration provided by the Released Parties; (ii) a good faith settlement and compromise of the claims released by Section 16.3.1; (iii) in the best interests of the Debtors, their estates and all Holders of Claims and Interests; (iv) fair, equitable and reasonable; (v) given and made after due notice and opportunity for a hearing; and (vi) a bar to any Person asserting any claim released by Section 16.3.1. Notwithstanding the foregoing, nothing in Section 16.3.1 shall release any Released Party or other Entity or Person from its respective rights and obligations under the Plan or the Confirmation Order.

16.5   Exculpation

The Debtors and the Debtors' Professionals SHALL NOT BE LIABLE FOR ANY cause of action arising out of or related to any act or omission in connection with or relating to: (a) the formulation, preparation, solicitation, dissemination, negotiation, or filing of the Plan, the Plan Supplement, the Disclosure Statement, or any contract, instrument, release, or other agreement or document created or entered into in connection with any of the foregoing; (b) the Chapter 11 Cases; (c) the pursuit of Confirmation of the Plan; (d) the administration and implementation of the Plan; (e) the distribution of property under the Plan; and/or (f) any other prepetition or postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring and/or liquidation of the Debtors.  All holders of Claims and Interests are enjoined from asserting or prosecuting any Claim or cause of action against the Debtors or the Debtors' Professionals as to any Claim or cause of action as to which the Debtors and the Debtors' Professionals have been exculpated pursuant to the Plan.

16.6   Permanent Injunction

Except as otherwise expressly provided in the Plan, the Confirmation Order, the Sale Order (Including the Wind-Down Budget), the Purchase Agreement and the Settlement/Sale Transaction, all Persons who have held, hold or may hold Claims against,

or Interests in, the Debtors are permanently enjoined, on and after the Effective Date, to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, from: (i) commencing or continuing in any manner any action or other proceeding of any kind against the Debtors, the Liquidating Trust, or their assets with respect to any such Claim or Interest in any venue other than the United States Bankruptcy Court for the Western District of Texas; (ii) the enforcement, attachment, collection, or recovery by any manner or means of judgment, award, decree or order against the Debtors, the Liquidating Trust, or their assets on account of any such Claim or Interest in any venue other than the United States Bankruptcy Court for the Western District of Texas; (iii) creating, perfecting, or enforcing any encumbrance of any kind against the Debtors, the Liquidating Trust, or their assets on account of any such Claim or Interest in any venue other than the United States Bankruptcy Court for the Western District of Texas; and (iv) asserting any right of setoff, recoupment or subrogation of any kind against any obligation due from the Debtors, the Liquidating Trust, or their assets on account of any such Claim or Interest in any venue other than the United States Bankruptcy Court for the Western District of Texas.

*[Remainder of Page Left Blank]*

Dated: [_____], 2019

Respectfully submitted,

By: */s/ Draft* _____

**DYKEMA GOSSETT PLLC**
Deborah D. Williamson
dwilliamson@dykema.com
Patrick L. Huffstickler
phuffstickler@dykema.com
Danielle N. Rushing
drushing@dykema.com
112 East Pecan Street, Suite 1800
San Antonio, Texas 78205
Telephone: (210) 554-5500
Facsimile: (210) 226-8395

– and –

**HOGAN LOVELLS US LLP**
Richard L. Wynne
Pro hac vice admission
richard.wynne@hoganlovells.com
Bennett L. Spiegel
Pro hac vice admission
bennett.spiegel@hoganlovells.com
Erin N. Brady
Pro hac vice admission
erin.brady@hoganlovells.com
1999 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 785-4600
Facsimile: (310) 785-4601

– and –

Christopher R. Bryant (NY 3934973)
Pro hac vice admission
chris.bryant@hoganlovells.com
John D. Beck (TX 24073898)
Pro hac vice admission
john.beck@hoganlovells.com
Sean A. Feener (NY 5605654)
Pro hac vice admission
sean.feener@hoganlovells.com
875 Third Avenue
New York, New York 10022
Telephone: (212) 918-3000
Facsimile: (212) 918-3100

**COUNSEL FOR THE DEBTORS**

**EXHIBIT G**

**Confirmation Hearing Notice**



IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| ALL AMERICAN OIL & GAS | § | Case No. 18-52693-rbk |
| INCORPORATED, *et al.*, | § | |
| | § | Jointly Administered Under |
| Debtors. | § | Case No. 18-52693-rbk |
| | § | |

**NOTICE OF HEARING TO CONSIDER CONFIRMATION
OF DEBTORS' JOINT CHAPTER 11 PLAN OF LIQUIDATION
AND RELATED MATTERS**

1.     On [_____], the United States Bankruptcy Court for the Western District of Texas (the "Bankruptcy Court") entered an order (the "Disclosure Statement Order") approving, among other things, the Debtors' disclosure statement (as may be amended, supplemented or otherwise modified from time to time and including all exhibits or supplements thereto, the "Disclosure Statement") related to the Debtors' joint plan of liquidation (as may be amended, supplemented or otherwise modified from time to time and including all exhibits or supplements thereto, the "Plan"), which was filed with the Court on [_____].

2.     Pursuant to the Disclosure Statement Order, the Bankruptcy Court also (a) approved the solicitation, ballot tabulation and notice procedures with respect to confirmation of the Plan, (b) the forms of ballots and notices attached as exhibits to the Motion related to soliciting votes to accept or reject the Plan, (c) approved the Plan confirmation schedule, and (d) scheduled the hearing to consider confirmation of the Plan.

3.     The hearing to consider whether confirmation of the Plan is appropriate will be held on [_____] (**prevailing Central Time**), before the Honorable Ronald B. King, United States Bankruptcy Judge, United States Bankruptcy Court for the Western District of Texas, Austin Division, Courtroom #1, Hipolito F. Garcia Federal Judicial Bldg., 615 East Huron Street, Room 597, San Antonio, TX 78205. The hearing may be adjourned from time to time without further notice to creditors or other parties in interest, other than by announcement of such adjournment in open court.

4.     The deadline for filing objections to confirmation of the Plan shall be [_____] (the "Plan Objection Deadline"). All objections to confirmation of the Plan must be (a) filed with the Office of the Clerk, United States Bankruptcy Court for the Western District of Texas, San Antonio Division, 615 E. Houston St., Courtroom 1, San Antonio, Texas 78205; (b) served on the following parties so as to be received no later than 3:00 p.m. (prevailing Central Time) on [_____]: (i) the Debtors: All American Oil & Gas Incorporated; the Debtors: All American Oil & Gas Incorporated; Manor Oil, Inc., and Hilltop Power, Inc., 9601 McAllister Freeway, Suite 221, San Antonio, Texas 78216; (ii) Debtors' counsel: Hogan Lovells US LLP, 1999 Avenue of the

Stars, Los Angeles, CA, 90067, Attn: Richard L. Wynne, Bennett Spiegel and Erin Brady (Telephone: (310) 785-4600, email: richard.wynne@hoganlovells.com, bennett.spiegel@hoganlovells.com and/or erin.brady@hoganlovells.com) and Dykema Gossett PLC, 112 E. Pecan Street, Suite 1800 San Antonio, Texas 78205, Attn: Deborah D. Williamson and Danielle N. Rushing (Telephone: (210) 554-5528, email DWilliamson@dykema.com and/or DRushing@dykema.com); (iii) counsel to the Committee: Brinkman Portillo Ronk, APC, 9500 Ray White Road, Second Floor, Ft. Worth, Texas 76244, Attn: Daren R. Brinkman (Telephone: (682) 226-7437, email firm@brinkmanlaw.com) and 4333 Park Terrace Drive, Suite 205, Westlake Village, CA 91361, Attn: Daren R. Brinkman (Telephone: (818) 597-2992, email: firm@brinkmanlaw.com); and (iv) United States Department of Justice, Office of the United States Trustee for the Western District of Texas, San Antonio Division, 615 E. Houston St., Room 533, San Antonio, Texas 78205 (Attn: Kevin M. Epstein, email: Kevin.M.Epstein@usdoj.gov

5.      The Plan may be further modified, if necessary, pursuant to Bankruptcy Code section 1127, prior to, during, or as a result of the Confirmation Hearing, without further notice to parties in interest.

6.      The Court has authorized the Debtors to retain BMC Group, Inc. to serve as the Debtors' solicitation and noticing agent (the "Voting Agent") to assist the Debtors in soliciting votes on and providing notice of the Plan, including mailing solicitation packages and notices, receiving and tabulating ballots cast on the Plan, and certifying to the Court the results of the balloting.

7.      Copies of the Disclosure Statement Order, the Disclosure Statement, and the Plan may be obtained from the Voting Agent (i) by email: aaog@bmcgroup.com; (ii) telephonically at 1-888-909-0100; or (iii) by regular mail: BMC Group, Inc., PO Box 90100, Los Angeles, CA 90009. In addition, copies of the Disclosure Statement and the Plan may be obtained free of charge from the Debtor's case site, https://www.bmcgroup.com/restructuring/geninfo.aspx?ClientID=434, and may be obtained for a fee from the Court's website at https://ecf.txsb.uscourts.gov/.

8.      By [_____], all ballots indicating acceptance or rejection of the Plan must be received by the Voting Agent (the "Voting Deadline"). The period during which Ballots with respect to the Plan will be accepted by the Debtors will terminate on the Voting Deadline. The Debtors may, in their sole discretion, extend the Voting Deadline as facts and circumstances may require without further order from the Court. Except as provided in the Disclosure Statement Order, ballots that are received after the Voting Deadline shall not be counted.

9.      YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY, INCLUDING THE RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER. ARTICLE XVI CONTAINS THE FOLLOWING THE RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS:

16.3   Releases

16.3.1   Releases by Holders of Claims and Interests

**Except as otherwise expressly provided in the Plan, the Confirmation Order, the Sale Order (Including the Wind-Down Budget), the Purchase Agreement and the Settlement/Sale Transaction, on the Effective Date, for good and valuable consideration, a Holder of a Claim against and/or Interest in the Debtors who: (I) votes to accept the Plan, and does not opt out of the Releases contained in the Plan; (II) abstains from voting on the Plan; or (III) votes to reject the Plan and does not opt out of the Releases contained in the Plan, shall be deemed to completely and forever release, waive, void, extinguish and discharge unconditionally, each and all of the Released Parties of and from any and all claims, obligations, suits, judgments, damages, debts, rights, remedies and liabilities of any nature whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are or may be based in whole or part on any act, omission, transaction, event or other circumstance taking place or existing on or prior to the Effective Date (including prior to the Petition Date) in connection with or related to the Debtors, their assets, property and estates, the Chapter 11 Cases, the Plan or the Disclosure Statement.  For the avoidance of doubt, the foregoing releases described in the Plan shall not waive, affect, limit, restrict or otherwise modify the rights of the Debtors and the Liquidating Trustee to object to any Claim or Interest not expressly Allowed under the Plan.**

**Notwithstanding the foregoing and for the avoidance of doubt, the releases provided under the Sale Order, the Purchase Agreement and the Settlement/Sale Transaction shall govern any releases as among KCO, the Purchasers, the Debtors, the Buyer Settlement Parties (as defined in the Purchase Agreement) and the Debtor Settlement Parties (as defined in the Purchase Agreement) and other parties referenced therein, none of which shall be affected by the terms of the Plan.**

16.3.2   Releases Approved by Confirmation Order

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval pursuant to Bankruptcy Rule 9019, of the releases set forth in Section 16.3.1, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that such release is: (i) in exchange for the good and valuable consideration provided by the Released Parties; (ii) a good faith settlement and compromise of the claims released by Section 16.3.1; (iii) in the best interests of the Debtors, their estates and all Holders of Claims and Interests; (iv) fair, equitable and reasonable; (v) given and made after due notice and opportunity for a hearing; and (vi) a bar to any Person asserting any claim released by Section 16.3.1. Notwithstanding the foregoing, nothing in Section 16.3.1 shall release any Released Party or other Entity or Person from its respective rights and obligations under the Plan or the Confirmation Order.**

16.5 <u>Exculpation</u>

The Debtors and the Debtors' Professionals **SHALL NOT BE LIABLE FOR ANY** cause of action arising out of or related to any act or omission in connection with or relating to: (a) the formulation, preparation, solicitation, dissemination, negotiation, or filing of the Plan, the Plan Supplement, the Disclosure Statement, or any contract, instrument, release, or other agreement or document created or entered into in connection with any of the foregoing; (b) the Chapter 11 Cases; (c) the pursuit of Confirmation of the Plan; (d) the administration and implementation of the Plan; (e) the distribution of property under the Plan; and/or (f) any other prepetition or postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring and/or liquidation of the Debtors. All holders of Claims and Interests are enjoined from asserting or prosecuting any Claim or cause of action against the Debtors or the Debtors' Professionals as to any Claim or cause of action as to which the Debtors and the Debtors' Professionals have been exculpated pursuant to the Plan.

16.6 <u>Permanent Injunction</u>

Except as otherwise expressly provided in the Plan, the Confirmation Order, the Sale Order (Including the Wind-Down Budget), the Purchase Agreement and the Settlement/Sale Transaction, all Persons who have held, hold or may hold Claims against, or Interests in, the Debtors are permanently enjoined, on and after the Effective Date, to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, from: (i) commencing or continuing in any manner any action or other proceeding of any kind against the Debtors, the Liquidating Trust, or their assets with respect to any such Claim or Interest in any venue other than the United States Bankruptcy Court for the Western District of Texas; (ii) the enforcement, attachment, collection, or recovery by any manner or means of judgment, award, decree or order against the Debtors, the Liquidating Trust, or their assets on account of any such Claim or Interest in any venue other than the United States Bankruptcy Court for the Western District of Texas; (iii) creating, perfecting, or enforcing any encumbrance of any kind against the Debtors, the Liquidating Trust, or their assets on account of any such Claim or Interest in any venue other than the United States Bankruptcy Court for the Western District of Texas; and (iv) asserting any right of setoff, recoupment or subrogation of any kind against any obligation due from the Debtors, the Liquidating Trust, or their assets on account of any such Claim or Interest in any venue other than the United States Bankruptcy Court for the Western District of Texas.

[*Remainder of page left blank*]

Dated: [_____], 2019

Respectfully submitted,

By: */s/ Draft*_____

**DYKEMA GOSSETT PLLC**
Deborah D. Williamson
dwilliamson@dykema.com
Patrick L. Huffstickler
phuffstickler@dykema.com
Danielle N. Rushing
drushing@dykema.com
112 East Pecan Street, Suite 1800
San Antonio, Texas 78205
Telephone: (210) 554-5500
Facsimile: (210) 226-8395

– and –

**HOGAN LOVELLS US LLP**
Richard L. Wynne
Pro hac vice admission
richard.wynne@hoganlovells.com
Bennett L. Spiegel
Pro hac vice admission
bennett.spiegel@hoganlovells.com
Erin N. Brady
Pro hac vice admission
erin.brady@hoganlovells.com
1999 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 785-4600
Facsimile: (310) 785-4601

– and –

Christopher R. Bryant
Pro hac vice admission
chris.bryant@hoganlovells.com
John D. Beck
Pro hac vice admission
john.beck@hoganlovells.com
Sean A. Feener
Pro hac vice admission
sean.feener@hoganlovells.com
875 Third Avenue
New York, New York 10022
Telephone: (212) 918-3000
Facsimile: (212) 918-3100

**COUNSEL FOR THE DEBTORS**