## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| In Re: | § § § | Case No. 18-52693-rbk |
| ALL AMERICAN OIL & GAS INCORPORATED, et al.,[1] | § § § § | Chapter 11 |
| Debtor. | § § | Jointly Administered Under Case No. 18-52693-rbk |

## MOTION TO COMPEL COMPLIANCE WITH THE SALE ORDER AND MOTION UNDER 60(b) TO MODIFY EXHIBIT M TO THE SALE ORDER [DOCKET NO. 468]

The Committee of Unsecured Creditors ("Committee") and Brinkman Portillo Ronk, APC ("BPR")(the Committee and BPR shall hereinafter, collectively be referred to as "Movants"), jointly file this motion seeking to: (1) compel Kern Cal Oil 7, LLC ("KCO7") to comply with the Court's *Order Granting Motion Pursuant to Sections 105, 363 And 365 Of The Bankruptcy Code And Bankruptcy Rules 2002, 6004, 6006 And 9019 To Approve (A) Sale Of Substantially All Assets Free And Clear Of Liens, Claims And Encumbrances To Kern Cal Oil 7 LLC Or Its Designee(s); (B) Allow The Assumption and Assignment of Certain Leases Or Contracts To The Buyer; (C) Approve Settlements And Releases Between The Debtors And Kern Cal Oil 7 LLC And Related Parties; And (D) Grant Related Relief,* [Docket No. 468] (the "Sale Order"); and (2) modify Exhibit M to the Sale Order under Federal Rule of Civil Procedure ("FRCP") 60(b), made applicable to this case by Federal Rule of Bankruptcy Procedure ("FRBP") 9024.

Specifically, Movants ask the Court enter an order, substantially in the form attached hereto as Exhibit A, granting the following relief:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: All American Oil & Gas Incorporated (5894); Kern River Holdings Inc. (0508); and Western Power & Steam, Inc. (2088). The location of the Debtors' service address is:9601 McAllister Freeway, Suite 221, San Antonio, Texas 78216.

1) Compelling KCO7's compliance with the Sale Order by ordering KCO7 to promptly pay all of the pre-petition unsecured in full that it assumed; and

2) Amending Exhibit M to the Sale Order based on mistake or fraud by KCO7.

## I.   INTRODUCTION

1.      In the Sale Order, the Court approved the Asset Purchase Agreement between the parties. The Court ordered that, as provided in the Asset Purchase Agreement, KCO7 would be liable for the "Assumed Liabilities," including all allowed pre-petition claims of the Debtors as listed on Schedule 2.3 attached to the Agreement. The Agreement provided for the payment "when due" of the Assumed Liabilities by KCO7. Yet, despite the Asset Purchase Agreement and this Court's binding Sale Order, KCO7 has yet to pay all pre-petition claims in full, which were by their terms past due upon the closing of the sale. The Committee now requests that KCO7 be compelled to comply with its own agreement and this Court's Sale Order by paying pre-petition claimants in full.

2.      Movants are now seeking relief from the Sale Order through an amendment to the Wind-Down Budget because KCO7 is refusing to honor its agreement to pay the Committee's administrative post-closing fees and costs. KCO7 secured the Committee's agreement to not object to the Sale Motion, in part, by agreeing to pay all Court-approved administrative costs in the case. Further, KCO7 agreed to treat Committee counsel as other estate professionals under the Wind-Down Budget. Even though Committee's counsel submitted a post-closing budget, KCO7 did not include the Committee's post-closing fees in its Wind-Down Budget as agreed upon and as it did for other estate professionals. KCO7 now refuses to pay the Committee's reasonable post-closing fees, notwithstanding that the Committee was forced to incur post-closing fees by KCO7's failure and refusal to follow the terms of the Sale Order and pay

unsecured claimants in full. Movants request that the Court modify the Wind-Down Budget to provide: (1) that BPR may use the fees budgeted for payment to it for both pre-closing fees and post-closing fees; and (2) that KCO7 be required to provide additional funding for payment of BPR's post-closing fees (including the amount budgeted by BPR prior to closing) to be $25,000 per month until the effective date of the plan of reorganization.

3.      BPR's continued involvement in the case and its accrual of post-closing fees is a direct result of KCO7's non compliance with the Sale Order.

## II.      PROCEDURAL HISTORY AND RELEVANT FACTS

3.      On November 12, 2018, the Debtors filed voluntary petitions for bankruptcy under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"), commencing this case (the "AAOG Bankruptcy").

4.      On December 4, 2018, the Committee was formed. *See* Docket No. 111. On December 6, 2018, BPR was hired as Counsel for the Committee. *See* Docket No. 148.

5.      An agreement was negotiated between the parties whereby the buyer, KCO7, would purchase substantially all of Debtors' assets. A motion was filed by the Debtors requesting that the Court approve the proposed sale on January 22, 2019. *See* Docket No. 298 (the "Sale Motion"). A proposed Asset Purchase Agreement ("APA") was filed on February 5, 2019. *See* Docket No. 357.

6.      The APA provided that KCO7 would assume and pay certain liabilities of the Debtors, including "[a]ll Allowed Claims of trade creditors and holders of Mineral Interests arising prior to the Petition Date and identified on **Schedule 2.3(a)**."APA § 2.3(a). Among other things, the pre-petition unsecured claims were the "Assumed Liabilities" under the APA. *Id.*

7.     Although the APA contained the basic terms of the deal and discussed a budget to be funded by KCO7 to pay certain things both pre-closing and post-closing, it did not attach a proposed Wind-Down Budget.

8.     The Committee planned to object to the Debtors' Sale Motion on the basis that it was a *sub rosa* plan, among other things.

9.     On February 15, 2019, Daren Brinkman spoke on the phone with Stephen Warren, counsel for KCO7. After discussion, the parties reached an oral agreement that the Committee would not object to the Debtors' Sale Motion or the APA and KCO7 would pay the Committee's constituents and administrative claims. *See Declaration of Daren Brinkman in Support of Official Committee of Unsecured Creditors' Motion Under 60(b) for Relief from the Order Granting Sale Motion* (the "Brinkman Declaration") attached hereto.

10.     Later that day, Mr. Brinkman sent an email to Mr. Warren confirming the parties' oral agreement that the Committee would not oppose the sale because KCO7 had agreed, among other things, to fund a wind-down budget to pay allowed administrative claims. *See* Email from Daren Brinkman to Steve Warren dated February 15, 2019 at 7:45 pm, attached to the Brinkman Declaration as Exhibit A.

11.     On February 16, 2019, Mr. Warren responded, thanking Mr. Brinkman for confirming their oral agreement and noting that "UCC fees will be treated as are estate professional fees under the Budget." *See* Email from Stephen Warren to Daren Brinkman dated February 16, 2019 at 12:31 pm, attached to the Brinkman Declaration as Exhibit B.

12.     The Committee also agreed not to object to the sale because KCO7 had agreed to provide payment in full to unsecured claimants promptly after the sale closed, as memorialized in the APA. *See* APA at § 2.3 ("[O]n the Closing Date, Buyer shall assume and agree to

discharge, when due (in accordance with their respective terms and subject to the respective conditions thereof and any available defenses or counterclaims), [the Assumed Liabilities]").

13.     Due to their nature as allowed pre-petition claims, the trade creditor and mineral interest claims were due upon closing of the sale.

14.     On February 21, 2019, the Court held a hearing on the Sale Motion. The Committee did not object, and the Court granted the Motion. The Court ordered the Debtors to provide a form of order to the Court by March 7, 2019. *See* Brinkman Declaration.

15.     On February 26, 2019, BPR provided Debtors' counsel, Erin Brady, an estimate of the fees that BPR would incur for the period through March 1, 2019 and for the post-closing period. *See id.* at Exhibit E. BPR estimated that it would incur $25,000 per month in fees post-closing, with an expectation that there would be at least four months between the closing and confirmation of a plan. *Id.* Debtors' counsel never responded to BPR's proposed budget.

16.     On February 27, 2019 at 8:50 pm, Debtors' counsel, Rick Wynne, sent an email to Mr. Brinkman with a draft version of the Sale Order attached. The draft version of the Sale Order did not include the Wind-Down Budget, which Mr. Wynne informed Mr. Brinkman was "close to final." *See id.* at Exhibit C.

17.     Mr. Brinkman provided preliminary comments on the draft order on February 28, 2019 at 3:46 pm. *See id.*

18.     On March 1, 2019, Committee counsel Kevin Ronk provided more detailed comments on the draft sale order, including some proposed language changes, to Debtors' counsel. *See id.* at Exhibit D.

19.     Also on March 1, 2019, the Sale Order was entered. The sale closed on March 1, 2019. *See* APA at § 4.1.

20.    Debtors' counsel lodged the Sale Order with the Court without taking any of the Committee's comments into consideration. *See* Brinkman Declaration.

21.    Committee counsel never received a draft Wind-Down Budget. Committee counsel did not see any version of the Wind-Down Budget until the Sale Order was entered on the docket on March 1st. *Id.*; *see also id.* at Exhibit E ("We certainly did not see a draft budget to approve for that order.")

22.    The Wind-Down Budget provides limits on how much KCO7 will provide to the Debtors to pay administrative claims in the case. *See* Sale Order at Exhibit M.

23.    The Wind-Down Budget provides a line item for post-closing legal fees for Debtors' counsel, but does not provide a similar line item for post-closing legal fees for Committee counsel. *Id.* at p. 2 of 2.

24.    After accounting for the fees approved by the Court for the pre-closing period, there is $66,492.81 left in BPR's budget as provided in the Wind-Down Budget.

25.    On March 22, 2019, Counsel for the Committee submitted its Pre-Closing Final Fee Application [Docket No. 509], to which KCO7 objected [Docket No. 523].

26.    After an evidentiary hearing, on May 1, 2019, the Court issued an *Order Granting, As Modified Herein, Pre-Closing Final Fee Application Of Brinkman Portillo Ronk, APC, As Counsel For The Official Committee Of Unsecured Creditors, For Approval And Allowance Of Compensation And Reimbursement Of Expenses From December 6, 2018 Through February 28, 2019* [Docket No. 551] (the "BPR Fee Order"). The BPR Fee Order granted BPR's Pre-Closing Final Fee Application in full subject to a $24,000 voluntary reduction by BPR.

27.    Committee counsel has engaged in an ongoing dialogue with the Debtors and KCO7 regarding the deficiencies in the Wind-Down Budget.

28.    After securing the Committee's agreement not to object to its sale motion, KCO7 has broken its promise to the Committee to fund all allowed administrative claims. KCO7 also broke its promise to treat Committee fees in the same manner as estate fees by failing to include a line item in the Wind-Down Budget for post-closing Committee fees.

29.    BPR, on behalf of the Committee, has engaged in substantial communication with counsel for the Debtors and counsel for KCO7 since the closing of the sale. Much of this communication has related to KCO7's failure to pay, when due, the Committee's constituents, despite KCO7's promises of prompt payment in the APA and in discussions securing the Committee's agreement not to object to the Sale Motion.

30.    As of May 10, 2019, the last update received from KCO7 on the matter, at least five pre-petition claimants that were assumed by KCO7 in the sale have still not been paid in full in an amount not less than $1,181,266.48. *See* Brinkman Declaration at Exhibit F.

## III.    ARGUMENT

### A. The Sale Order is a Final Order of this Court and KCO7 Must Be Compelled to Obey All of Its Provisions

31.    Orders confirming asset sales under 11 U.S.C. § 363 are final orders that dispose of all of the matters they encompass on the merits. *See, e.g., Matrix IV, Inc. v. American Nat. Bank and Trust Co. of Chicago*, 649 F.3d 539, 549 (7th Cir. 2011). All parties are bound by final sale orders. In fact, the Bankruptcy Code even provides extra provisions making it difficult for parties to attack sale orders. *See* 11 U.S.C. § 363(m); *see also In re District 65, United Auto. Aerospace and Agr. Implement Workers of America, UAW*, 184 B.R. 196, 200 (S.D.N.Y. 1995) ("Under § 363(m), only where the sale was done in bad faith can it be reviewed or modified absent a stay."). This policy was implemented by the legislature to "protect[] good faith purchasers, the innocent third parties who rely on the finality of the bankruptcy judgments in

making their offers and their bids." *In re Stadium Management Corp.*, 895 F.2d 845, 847 (1st Cir. 1990) [internal citations omitted].

32.     In this case, the Committee's constituents are the "innocent third parties" who relied on the Sale Order, the APA, and representations of counsel regarding the payment of the Assumed Liabilities promptly in withholding their objection to the Sale Motion. *Id.* The prompt payment provision "which [was] included in the [APA] and approved by the Bankruptcy Court as part of the [APA] cannot . . . be separated from the sale of the [Debtors' assets]." *Official Committee of Sr. Unsecured Creditors of First RepublicBank Corp. v. First RepublicBank Corp.*, 106 B.R. 938, 943 (N.D. Tex. 1989). The Sale Order provided that "the Closing constitutes a legal, valid, and effective delegation of those Assumed Liabilities expressly assumed by the Buyer pursuant to the Sale Documents and divests the Debtors of all liability with respect to any of such liabilities." *Sale Order* at ¶ 4; p. 15 of 33. KCO7 cannot withhold the payments it agreed to make; that it has done so to this point evidences the need for this Court to compel payment.

33.     KCO7 promised in the APA to "discharge, when due" the pre-petition claims which, by their nature, were incurred prior to the Petition Date and were due upon closing of the sale. By its own admission on May 10, 2019, KCO7 has failed to pay the claims owned by TRC Master Fund LLC, Vendor Recovery Fund IV, CRG Financial, Chevron, and GE Packaged Power LLC[2]. *See* Brinkman Declaration at Exhibit F. The Committee requests that the Court compel KCO7 to pay these creditors in full immediately.

---

[2] The Committee is aware KCO7 and GE Packaged Power LLC are in ongoing negotiations involving a plan for KC07 to make payments to pay GE Packaged Power in full over time and that KCO7 has paid made a partial payment. However, KCO7 is unwilling or unable to provide a letter of credit to GE Packaged Power and no agreement between the parties has been reached.

## B. The Court Can Modify Exhibit M to the Sale Order Because it was Made by Mistake or by Fraud

34. The Court has the authority to modify the Sale Order as requested under Federal Rule of Civil Procedure ("FRCP") 60(b), which provides: "On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; . . . (3) fraud, misrepresentation, or misconduct by an opposing party; . . . . or (6) any other reason that justifies relief." FRCP 60 is made applicable to bankruptcy cases by Federal Rule of Bankruptcy Procedure ("FRBP") 9024, as this rule "compliments the discretionary power that bankruptcy courts have as courts of equity 'to reconsider, modify or vacate their previous orders so long as no intervening rights have become vested in reliance on the orders.'" In re Thomas, 223 F. App'x 310, 314 (5th Cir. 2007), (*quoting* Meyer v. Lenox (In re Lenox), 902 F.2d 737, 740 (9th Cir.1990)).

35. The decision of whether to grant relief under FRCP 60(b)(1) ultimately comes down to the sound discretion of the judge. In re Reserve Prod., Inc., 190 B.R. 287, 289 (E.D. Tex. 1995) (citing In re Jones, 970 F.2d 36, 37 (5th Cir.1992)). "In other words, pursuant to Bankruptcy Rule 9024, the presence of the grounds set forth in Rule 60(b) "constitute sufficient 'cause' or 'equities' to render it appropriate for a bankruptcy court to reconsider a decision . . . ." In re Rankin, 141 B.R. 315, 319 (Bankr. W.D. Tex. 1992) (*citing* United States v. Motor Freight Express (In re Motor Freight Express), 91 B.R. 705, 710 (Bankr.E.D.Pa.1988) *citations in original; accord,* In re International Yacht & Tennis, Inc., 922 F.2d 659, 662–663 (11th Cir.1991)). Such grounds include mistake, inadvertence, fraud and misrepresentation. Fed.R.Civ.P. 60(b).

36.     When exercising its discretion, the court should balance the policy of serving the ends of justice against the interests of litigants, courts, and the public in finality of judgments. Id. Other than policy considerations, there are four factors a court should consider in deciding whether to grant relief under FRCP 60(b). Namely, the court should determine whether: (1) the "motion is timely;" (2) "exceptional circumstances exist;" (3) "if the judgment is set aside, [the party challenging the judgment] has the right stuff to mount a potentially meritorious claim or defense;" and (4) "unfair prejudice will accrue to the opposing parties should the motion be granted." Karak v. Bursaw Oil Corp., 288 F.3d 15, 19 (1st Cir. 2002); see also TCI Group, 244 F.3d at 696.

### C. The Committee and BPR Meet the Factors for Modifying the Sale Order

37.     Movant's request for the Court to modify Exhibit M to the Sale Order should be granted because the Committee meets the factors for 60(b) relief as set out in Karak - the motion is timely, exceptional circumstances exist, Movants have a meritorious claim, and no unfair prejudice would accrue against KCO7.

#### 1. The Motion is Timely

38.     The first factor courts consider in motions under FRCP 60 is whether the motion was timely filed. A motion under FRCP 60(b) "must be made within a reasonable time – and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c)(1). This Motion is made within 90 days from the date of entry of the Sale Order, which is well within the one year timeline set forth in FRCP 60.

### 2. No Unfair Prejudice Will Result to Any Party if KCO7 is Required to Pay Reasonable Post-Closing Administrative Fees and Costs

39.     Courts look to whether any party will suffer unfair prejudice if the FRCP 60 motion is granted. In this case, KCO7 will still receive the benefit of its bargain. The sale of the Debtors' assets will not be forced to occur through a plan, with all the delays and challenges that would be associated with the confirmation process. Modifying the Sale Order under FRCP 60(b) simply results in KCO7 having to pay what it has already agreed to pay in order to obtain that benefit. Further, it forces KCO7 to pay fees that it directly caused the Committee to accrue by failing to fulfill its bargain to pay unsecured creditors in full upon closing. In short, no party would be negatively affected in ways that were not previously agreed, so no party could claim that it was unfairly prejudiced.

40.     The only unfair prejudice that would accrue from this 60(b) Motion would be to the Committee and BPR if the post-confirmation administrative fees were not paid, as agreed by the parties, after counsel was forced to incur fees by KCO7's failure to pay creditors when due.

### 3. Movants have a Meritorious Claim that the Sale Order Should be Modified

41.     As discussed, there was an oral agreement between the parties, which was confirmed in writing, that the Committee would withhold its planned objection to the Sale Motion in exchange for KCO7's agreement to pay unsecured claims, priority claims, and administrative claims as approved by the Court in this case. KCO7 has no legal right to obtain the Committee's consent to the sale only to turn around and fail to live up to its end of the agreement.

42. Not only has KCO7 capped the administrative claims in the Wind-Down Budget, in contravention of its agreement to pay all administrative claims as approved by the Court, but KCO7 has not even made an effort to treat the Committee's (and its counsel's) fees in kind with the estate fees as it promised. Further, KCO7 has unquestionably caused the Committee counsel's fees to increase by their unwarranted failure to timely pay unsecured creditors in full.

43. Disregarding the Sale Order, Movants would surely prevail against KCO7 in any disagreement regarding payment of administrative fees given the parties' broken agreements. Therefore, Movant's claim is meritorious and the Wind-Down Budget attached to the Sale Order at Exhibit M should be modified.

### 4. Exceptional Circumstances Exist

44. Exceptional circumstances exist which merit the Court granting this Motion. During the negotiation process, Debtors and KCO7 were in a hurry to conclude the sale and resume business operations. In furtherance of this goal, they sought to proceed with the APA through a motion, which would skip the usual delays and procedures associated with confirming a bankruptcy plan. In exchange for the Committee's support for this procedure, the Debtors and KCO7 agreed, among other things, that the unsecured creditors would promptly be paid in full, that all priority and administrative fees and costs would be paid, and that KCO7 would set aside the funds to accomplish such payments.

45. In furtherance of this agreement, counsel for the Committee submitted a proposed budget to the Debtors, estimating its fees and costs incurred to March 1, 2019 and those that would occur post-closing. *See* Email from Daren Brinkman to Erin Brady dated February 26, 2019 at 7:42 pm, attached to the Brinkman Declaration at Exhibit E. However, KCO7 failed to include the Committee counsel's post-closing fees in the Wind-Down Budget. *See* Sale Order at

Exhibit M. KCO7 did include post-closing fees to Debtors' general and local counsel in the Wind-Down Budget, however. *Id.*

46.     Movants are unaware whether KCO7's omission of a post-closing budget for Committee fees after it promised both to fund all administrative claims and to treat the Committee in kind with the Debtors was due to mistake, inadvertence, neglect, or intentional misconduct.

47.     KCO7 agreed to pay all Court-approved administrative claims in this case in order to secure the Committee's acquiescence to the procedurally unusual sale process that occurred in this case. KCO7 does not get to now pick and choose which administrative claims are worthy. Instead, the Court should make those determinations and KCO7 should pay all Court-approved administrative fees irrespective of the arbitrary caps that it inserted into the Wind-Down Budget.[3]

48.     The conduct by KCO7 in refusing to uphold its end of the deal is precisely what FRCP 60(b) was intended to correct. This Court has the power to "relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; . . . (3) fraud, misrepresentation, or misconduct by an opposing party . . . ." Fed.R.Civ.P. 60(b).

49.     Whether KCO7's failure to include a post-closing budget to pay the Committee's fees as agreed was a "mistake" or was due to "fraud, misrepresentation, or misconduct" is not presently known to the Committee. However, it is clear KCO7 has now received the benefit of the bargain, as the Committee has given up its right to force a plan confirmation proceeding. In

---

[3] It is also notable that many of the Committee's post-closing fees are attributable directly to BPR's defense of its pre-closing final fee application, which would not have been necessary had KCO7 not objected to the fee application. *See* Exhibit H to the Bankruptcy Local Rules at § I.F ("Reasonable fees for preparation of a fee application and responding to objections thereto may be requested."). Further, KCO7's objection yielded no benefit, as the Court approved all of BPR's requested fees subject to a voluntary $24,000 reduction. *See* BPR Fee Order at Docket No. 558.

equity, the Committee has a right to receive the benefit of its bargain because it relied on KCO7's promises and has placed itself in a worse position in furtherance of the agreement. Further, Committee counsel has a right to be compensated for time it spent attempting to get KCO7 to comply with the Sale Order and pay general unsecured creditors in full when due; KCO7 cannot argue that it should not be responsible for fees that would not have been incurred absent its own failure to obey a Court order.

50. Through FRCP 60(b), the Court has the power to remedy this injustice. The Court has the power to and should amend the Sale Order to include terms requiring KCO7 to pay all Court-approved administrative fees and costs in this case, including the Committee's post-closing fees and costs.

### D. Relief Requested

51. Movants ask that the Court order KCO7 to immediately pay the claims currently owned by TRC Master Fund LLC, Vendor Recovery Fund IV, CRG Financial, Chevron, and GE Packaged Power LLC in full in accordance with the APA and Sale Order.

52. Movants further ask that the Court order KCO7 to provide an updated, accurate accounting of unsecured claims that have and have not been paid.

53. Movants further ask that the Court modify the Wind-Down Budget attached as Exhibit M to the Sale Order as follows:

   a. On the line that says Brinkman (Committee), add a notation stating that BPR may charge both pre-closing and post-closing fees against the amount budgeted; and

   b. Add a line item for Brinkman (Committee) (Post-Closing) in the amount of $25,000 per month until the plan effective date to supplement the amount

budgeted for BPR in such a way as to make the budgeted amount equal to the estimated budget BPR gave to the Debtors on February 26, 2019.

## IV.  CONCLUSION

54.     For the foregoing reasons, Movants respectfully request that the Court: (i) grant this Motion; (ii) compel KCO7 to comply with the Sale Order by paying general unsecured creditors in full; (iii) order the Sale Order be amended to require KCO7 to pay all Court-approved administrative claims in this case; and (iv) order any such other and further relief as it may deem just and proper.

Dated:  May 29, 2019                    **BRINKMAN PORTILLO RONK, APC**

                                        _/s/_ Daren Brinkman
                                        Daren R. Brinkman (TX Bar No. 3004490)

                                        9500 Ray White Road, 2nd Floor
                                        Ft. Worth, TX 76244
                                        Telephone: (682) 226-7437
                                        Facsimile: (800) 381-2192

                                        4333 Park Terrace Drive, Suite 205
                                        Westlake Village, CA 91361
                                        Telephone: (818) 597-2992
                                        Facsimile: (818) 597-2998

                                        *Counsel for the Official Committee of Unsecured
                                        Creditors of All American Oil & Gas, Inc., et al.*

## CERTIFICATE OF SERVICE

I hereby certify that pursuant to L. Rule 9013(d), a true and correct copy of the foregoing document has been served on the parties shown on the attached Service List, either by electronically mailing to the parties that are registered or otherwise entitled to receive electronic notices in this case pursuant to the Electronic Filing Procedures in this District, or via first class mail, postage prepaid, on this 29th day of May, 2019.


_____/s/ Angelica Weiss_____
Angelica Weiss

Notified via ECF mail:

- Raymond W. Battaglia    rbattaglialaw@outlook.com
- Daren R. Brinkman    daren@brinkmanlaw.com,
firm@brinkmanlaw.com;brinkmanlaw@ecf.inforuptcy.com
- Bradford E. Dempsey    brad.dempsey@faegrebd.com,
kyle.hosmer@faegrebd.com;susan.haag@faegrebd.com;candee.smith@faegrebd.com;dorothy.ca
mpbell@faegrebd.com
- Eric M. English    eenglish@porterhedges.com,
emoreland@porterhedges.com;ksteverson@porterhedges.com
- Matthew T. Ferris    matt.ferris@haynesboone.com,
kim.morzak@haynesboone.com;kristy.martinez@haynesboone.com
- John F. Higgins    jhiggins@porterhedges.com,
ksteverson@porterhedges.com;emoreland@porterhedges.com;eliana-garfias-
8561@ecf.pacerpro.com
- Patrick L. Huffstickler    phuffstickler@dykema.com,
mlongoria@dykema.com;docketsat@dykema.com
- Kay S. Kress    kressk@pepperlaw.com, alexsym@pepperlaw.com
- James H Myers    jmyers@bmcgroup.com,
ecfservice@bmcgroup.com;sordaz@bmcgroup.com;aaog@bmcgroup.com
- Michael D. Rubenstein    mdrubenstein@liskow.com, fhernandez@liskow.com
- Danielle Nicole Rushing    drushing@dykema.com,
lvasquez@dykema.com;docketsat@dykema.com
- William Ross Spence    ross@snowspencelaw.com,
donnasutton@snowspencelaw.com;janissherrill@snowspencelaw.com;brittanyDecoteau@snows
pencelaw.com;rhondarackley@snowspencelaw.com
- Donald P. Stecker    don.stecker@lgbs.com
- United States Trustee - SA12    USTPRegion07.SN.ECF@usdoj.gov
- Jennifer Francine Wertz    jwertz@jw.com, kgradney@jw.com
- Deborah D. Williamson    dwilliamson@dykema.com,
mlongoria@dykema.com;docketsat@dykema.com

Notified via First Class Mail:

John D. Beck
Hogan Lovells US LLP
875 Third Avenue
New York, NY 10022

Erin N. Brady
Hogan Lovells US LLP
1999 Avenue of the Stars
Ste. 1400
Los Angeles, CA 90067
Harrison, NY 10582

Sean A. Feener
Hogan Lovells US LLP
875 Third Avenue
New York, NY 10022

Victoria C. Hargis
O'Melveny & Myers, LLP
Two Embarcadero Center
28th Floor
San Francisco, CA 94111

Michael C Hefter
Hogan Lovells US LLP
875 Third Avenue
New York, NY 10022

Edward T Humphreville
6017 Bristol Parkway
Culver City, CA 90230

Jesse A. Kaplan
Freedman & Taitelman, LLP
1901 Avenue of the Stars
Suite 500
Los Angeles, CA 90067

Gerald M. Leverett
PO Box 1676
Bakersfield, CA 93302-1676

Christopher R. Bryant
Hogan Lovells US LLP
875 Third Avenue
New York, NY 10022

Matthew J. Dundon
Dundon Advisers, LLC
440 Mamaroneck Avenue
Suite 507
Sung S. Pak
O'Melveny & Myers, LLP
7 Times Square
New York, NY 10036

Andrew D. Sorkin
O'Melveny & Myers LLP
1625 Eye Street, NW
Washington, DC 20006

Bennett L. Spiegel
Hogan Lovells US LLP
1999 Avenue of the Stars
Ste. 1400
Los Angeles, CA 90067

Gary Svirsky
O'Melveny & Myers, LLP
7 Times Square
New York, NY 10036

Michael A. Taitelman
Freedman & Taitelman, LLP
1901 Avenue of the Stars
Suite 500
Los Angeles, CA 90067

Stephen H. Warren
O'Melveny & Myers, LLP
400 South Hope Street
18th Floor
Los Angeles, CA 90071-2899

Richard L. Wynne
Hogan Lovells US LLP
1999 Avenue of the Stars
Ste. 1400
Los Angeles, CA 9006

# EXHIBIT A

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

|  |  |  |
|---|---|---|
| In Re: | § § § | Case No. 18-52693-rbk |
| ALL AMERICAN OIL & GAS INCORPORATED, et al.,[1] | § § § § | Chapter 11 |
|  | § | Jointly Administered Under |
| Debtor. | § | Case No. 18-52693-rbk |

## ORDER MOTION TO COMPEL COMPLIANCE WITH THE SALE ORDER AND MOTION UNDER 60(b) TO MODIFY EXHIBIT M TO THE SALE ORDER
## [DOCKET NO. 468]

This matter came on before the Court on the *Motion to Compel Compliance with the Sale Order and Motion Under 60(b) to Modify Exhibit M to the Sale Order [Docket No. 468]* (the "Motion") filed jointly by the Official Committee of Unsecured Creditors of All American Oil & Gas Incorporated, et al. (the "Committee") and Brinkman Portillo Ronk, APC ("BPR"). The Court has considered the Motion, any responses relating thereto, any evidence presented, and argument of counsel. The Court finds that: (i) it has jurisdiction over the matters raised in the Motion pursuant to 28 U.S.C. §§ 157 and 1334; (ii) this is a core proceeding pursuant to 28

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: All American Oil & Gas Incorporated (5894); Kern River Holdings Inc. (0508); and Western Power & Steam, Inc. (2088). The location of the Debtors' service address is:9601 McAllister Freeway, Suite 221, San Antonio, Texas 78216.

U.S.C. § 157(b)(2); (iii) proper and adequate notice of the Motion was given and no further notice is necessary; and (iv) good and sufficient cause exists for granting the relief set forth herein.

**IT IS, THEREFORE, ORDERED:**

1. The Motion is hereby GRANTED as set forth herein.

2. KCO7 shall immediately pay all unpaid prepetition amounts owing to the creditors identified on Schedule 2.3(a) to the APA, including, without limitation:

    a. $12,342.00 to TRC Master Fund LLC;

    b. $2,368.92 to Vendor Recovery Fund IV;

    c. $22,015.45 to CRG Financial;

    d. $69,970.11 to Chevron; and

    e. $1,074,570.00 to GE Packaged Power LLC, which is equal to the amount of claim minus the $215,000 already paid.

3. KCO7 shall file and serve on the Debtors and the Committee, through counsel, an updated accounting reflecting amounts paid and any amounts owing to the creditors identified on Schedule 2.3(a) to the APA within ten (10) business days of the date of entry of this Order.

4. The Wind-Down Budget attached as Exhibit M to the Sale Order is hereby modified as follows:

    a. The line item currently reading Brinkman (Committee) shall be altered to read instead: "Brinkman (Committee) (for both pre- and post-closing fees)"

    b. A line item shall be added to the budget right underneath the line item currently reading Brinkman (Committee) and shall read: "Brinkman (Committee) (Post-Closing)"

c. The new Brinkman (Committee) (Post-Closing) line item shall be in the amount of $25,000 per month until the plan effective date to supplement the amount budgeted for BPR in such a way as to make the budgeted amount equal to the estimated budget BPR gave to the Debtors on February 26, 2019.

5.      KCO7 shall fund $100,000 to the Debtors with respect to the Brinkman (Committee) (Post-Closing) line item for the months of March 2019, April 2019, May 2019 and June 2019 within ten (10) business days of the entry of this Order and shall fund the Debtors $25,000 per month thereafter until the effective date of a plan of reorganization or the conversion to a chapter 7 or dismissal of the case.

6.      The Debtors shall be responsible to pay BPR for post-closing fees only after such fees have been approved by the Court.

7.      Counsel for the Committee shall be responsible for giving notice of the entry of this Order within five (5) business days.

8.      To the extent applicable and notwithstanding Bankruptcy Rule 6004(h), 7062, or 9014, or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedures, this Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Order.

9.      This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

####

ORDER PREPARED AND SUBMITTED BY:

BRINKMAN PORTILLO RONK, APC
Daren R. Brinkman (TX Bar No. 3004490)
Laura J. Portillo (admitted *pro hac vice*)
Kevin C. Ronk (admitted *pro hac vice*)

9500 Ray White Road, 2nd Floor
Ft. Worth, TX 76244
Telephone: (682) 226-7437
Facsimile: (800) 381-2192

4333 Park Terrace Drive, Suite 205
Westlake Village, CA 91361
Telephone: (818) 597-2992
Facsimile: (818) 597-2998

*Counsel for the Official Committee of Unsecured
Creditors of All American Oil & Gas, Inc., et al.*